UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In Re: RFC and ResCap Liquidating Trust Litigation | Court File No. 13-cv-3451 (SRN/JJK/HB) |
| *This document relates to:*<br><br>ResCap Liquidating Trust v. PHH Mortgage Corporation, 14-cv-4701 (JRT) | |

**MEMORANDUM OF LAW IN SUPPORT OF PHH MORTGAGE CORP.'S
MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Residential Funding Company, LLC ("RFC"), through Plaintiff Rescap Liquidating Trust ("RLT"), claims it was driven into bankruptcy and suffered "billions of dollars in liabilities and losses" because of defective mortgage loans bought from the 60 plus defendants in this consolidated action ("Action"), including PHH Mortgage Corp. ("PHH Mortgage").  Am. Compl. ¶ 1.[1]  Plaintiff's theory of liability rests on two claims: (1) breach of contract as to PHH Mortgage's warranties of loan quality; and (2) indemnification for losses caused by purported defects in loans Plaintiff sold to third

---

[1] Plaintiff and PHH Mortgage stipulated and agreed that the operative complaint in this Action shall be Plaintiff's First Amended Complaint and accompanying exhibits, as filed in *ResCap Liquidating Trust v. PHH Mortg. Corp.*, Adv. No. 14-02008, ECF No. 25 (Bankr. S.D.N.Y. July 25, 2014).  *See* Stipulation for Joint Designation of the Record, ECF No. 294.  Because this Motion is being filed before the operative Amended Complaint has been administratively placed on the record of this Action, PHH Mortgage refers the Court to the copy of the Amended Complaint attached as an exhibit to the Declaration of John O'Shea Sullivan in Support of Transferred Defendants' Collective Motion to Dismiss Breach of Contract Claims.  *See* ECF No. 270-1.

parties. Am. Compl. ¶¶ 81-92. PHH Mortgage has already joined two common issue motions addressing the universal defects plaguing these claims, and the Amended Complaint brought against PHH Mortgage should be dismissed in its entirety for the reasons stated therein.[2]

Additionally, for reasons unique to PHH Mortgage, the allegations contained in the Amended Complaint are not only implausible—at times they are impossible.[3] First, Plaintiff alleges losses caused by loans purportedly bought from PHH Mortgage that *predate* the contracts appended to the Amended Complaint. Plaintiff alleges the first operative contract was entered into on May 13, 1998. Am. Compl. ¶ 17. As such, all claims based on loans purportedly bought before May 13, 1998, must be dismissed.

Second, PHH Mortgage and Plaintiff entered into a unique Mortgage Loan Flow Purchase, Sale & Servicing Agreement, (the "Flow Agreement") on September 1, 2006, which does not incorporate the "RFC Client Guide" common to virtually all the other

---

[2] *See* Notice of Joinder, ECF No. 264 (joining in defendant Decision One Mortgage Company, LLC's motion to dismiss (ECF No. 215), which shows: 1) any claims for damages on loans already liquidated are time barred; 2) Plaintiff is not entitled to damages purportedly caused by third party claims when it incurred no losses; and 3) any contract claim is untimely as to loans purchased before May 14, 2006.); *see also* Transfer Defendants' Collective Motion to Dismiss Plaintiff's Breach of Contract Claims, ECF No. 266 (showing that Plaintiff's claims dated six years prior to May 28, 2014, the day Plaintiff served the transferred defendants, are barred because under Minnesota law, actions "commence" for purposes of the limitations period when the defendant is served, not when the complaint is filed).

[3] This Court's Pretrial Order No. 4 (ECF No. 214) set forth a briefing schedule allowing PHH Mortgage to join in common issue motions to dismiss, and also separately allowing PHH Mortgage to file a unique issues motion to dismiss.

contracts at issue in this Action. To the contrary, the Flow Agreement, which Plaintiff appended to the Amended Complaint, expressly incorporates the "PHH Guide." The Amended Complaint utterly fails to account for the PHH Guide, and instead alleges only that the "[Client Contract, Flow Agreement], and [RFC] Client Guide collectively form the parties' Agreement, and set the standards to which PHH's loans sold to RFC were expected to adhere." Am. Compl. ¶ 18. This assertion is contradicted by the plain terms of the Flow Agreement. Moreover, Plaintiff failed to plead it provided PHH Mortgage with notice and an opportunity to cure any alleged contractual breach—a condition precedent under the contract, which cannot be met by Plaintiff's unsupported conclusory assertion of satisfaction. All of Plaintiff's breach of contract and indemnification claims brought on or after September 1, 2006, which erroneously rely on the RFC Client Guide, must be dismissed.

## BACKGROUND

On or about May 13, 1998, Cendant Mortgage (n/k/a PHH Mortgage Corp.) and RFC entered into a Client Contract, under which PHH Mortgage would sell certain mortgage loans to RFC. Am. Compl., Ex. A. On or about September 1, 2006, the parties entered into the Flow Agreement, which also provided for the sale of loans from PHH Mortgage to RFC. *Id.*[4]

---

[4] PHH Mortgage expressly denies that Exhibits A and B1-B31 to the Amended Complaint constitute the entire—or even the applicable—agreement between the parties. However, insofar as Plaintiff relies upon these documents, it is bound by their terms.

Of the two contracts appended to the Amended Complaint, the Client Contract is the earlier, bearing a date of May 13, 1998. *Id.*, Ex. A, at 2. About 1,684 of the approximately 3,550 mortgage loans listed on Exhibits C-1 and C-2 to the Amended Complaint (or approximately 47.4%) were acquired prior to the date of this contract. *Id.*, Exs. C-1, C-2. No contract covering the acquisition dates of these 1,684 loans was appended to the Amended Complaint, nor does the Amended Complaint contain any allegation that such a contract existed.

The Flow Agreement bears a date of September 1, 2006, and contains an integration clause which expressly replaces all provisions of the Client Contract, including its incorporation of the RFC Client Guide. *See* Am. Compl. Ex. A, at 16, 91 ("This Agreement . . . together with the PHH Guide . . . supersedes all prior agreements"). Approximately 514 of the mortgage loans listed on Exhibits C-1 and C-2 to the Amended Complaint were acquired on or after September 1, 2006, the date of the Flow Agreement (or approximately 14.5%). *Id.*, Exs. C-1, C-2. The Flow Agreement requires written notice and the opportunity to cure in the case of an Event of Default. Am. Compl., Ex. A, at 86, Section 10.01(2) ("written notice of such failure, requiring the same to be remedied, shall have been given to the applicable Seller/Servicer by the Purchaser"). The Amended Complaint does not allege written notice and the opportunity to cure were provided for any purported Event of Default as to any specific loan.

The Flow Agreement makes no mention of the RFC Client Guide, but rather, adopts the PHH Guide. *Id.* at 14-127. The Flow Agreement provides, at Section 3.03(27) ("Conformance With Underwriting Standards"), that mortgage loans were to be

4

"underwritten in accordance with the PHH Guide." *Id.* at 49.  The PHH Guide was not appended to the Amended Complaint, nor were its underwriting standards referenced or stated therein.

On or about December 14, 2013, RFC filed a complaint against PHH Mortgage in the District of Minnesota.  *Residential Funding Co., LLC v. PHH Mortg. Corp.*, Case No. 13-3505, Dkt. 1 (D. Minn.) ("Minnesota Complaint").  Within days, RFC had filed nearly identical complaints against more than 80 other entities, almost all in the District of Minnesota.  RFC voluntarily dismissed its Minnesota Complaint against PHH Mortgage on February 28, 2014, and on May 13, 2014, re-filed the same claims based on the same contracts, as an adversary proceeding in the United States Southern District of New York Bankruptcy Court ("Bankruptcy Court") in the name of Rescap Liquidating Trust.[5]  *See* Notice of Voluntary Dismissal, *RFC v. PHH Mortg. Corp.*, Case No. 13-03503 (Dkt. 20) (D. Minn.).  Plaintiff did not serve PHH Mortgage until May 28, 2014.  *See* Ex. H, Declaration of John O'Shea Sullivan in Support of Transferred Defendants' Collective Motion to Dismiss Breach of Contract Claims, ECF No. 270-1.

---

[5] In its order approving a global settlement, the Bankruptcy Court in *In re Residential Capital*, No. 12-12020 (S.D.N.Y. Bankr.) discharged RFC of all liabilities, including any claims that could be asserted against RFC, effective December 17, 2013 ("Bankruptcy Order").  The Bankruptcy Order also authorized the creation of a "Liquidating Trust," which allowed for, among other things, the transference of interest in any cause of action "that was or could have been commenced by [RFC] prior to [December 17, 2013]."  Creditors of RFC were originally allowed to receive cash or units of interest in the Liquidating Trust.  However, since entry of the Bankruptcy Order, Rescap Liquating Trust has become publically traded, allowing non-creditor investors to share in the benefit of proceeds recovered by Plaintiff in this Action.

## **LEGAL STANDARD**

A complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation," and "[f]actual *allegations* must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (emphasis added).

A written instrument that is an exhibit to a complaint is part of the pleading "for all purposes" (Fed. R. Civ. P. 10(c)), and is properly considered by the Court on a motion to dismiss or motion for judgment on the pleadings. *M.M. Silta, Inc. v. Cleveland Cliffs, Inc.*, 616 F.3d 872, 876 (8th Cir. 2010) ("Where, as here, the claims relate to a written contract that is part of the record in the case, we consider the language of the contract when reviewing the sufficiency of the complaint."); *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). Further, any factual allegations that are contradicted by exhibits attached to a complaint should not be accepted as true. *See Cohen v. United States*, 129 F.2d 733, 735-36 (8th Cir. 1942) ("This motion . . . admits, for the purpose of the motion, all facts which are well pleaded. . . . [but] does not admit facts . . . which appear by a record or document included in the pleadings to be unfounded."); *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 146-47 (2d Cir. 2011) ("Furthermore, where a conclusory allegation in the complaint is contradicted by a

6

document attached to the complaint, the document controls and the allegation is not accepted as true.") (citation omitted); *Badgerow v. Honeywell Int'l, Civ.*, No. 02-612, 2002 U.S. Dist. LEXIS 25385, at *4-5 (D. Minn. Dec. 9, 2002) ("If a document attached to the complaint contradicts the complaint's allegations, the document controls and the court need not accept as true the inconsistent allegations in the complaint.") (citations omitted).

This is especially the case where the appended exhibit is the subject of the claim and "reveals facts which foreclose recovery as a matter of law. . . " *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 674 (2d Cir. 1995) ("For example, a written contract appended to the complaint will defeat invocation of the Statute of Frauds"); *N. Ind. Gun & Outdoor Shows v. City of S. Bend*, 163 F.3d 449, 456 (7th Cir. 1998) (rule appropriately applied in "contract disputes in which a plaintiff attaches a contract to the complaint and makes an allegation that the contract on its face clearly disputes.").

## ARGUMENT

It is basic contract hornbook law that a contract claim cannot lie without sufficiently pleading the existence of the governing contract. *See, e.g., Commercial Assoc., Inc. v. Work Connection, Inc.*, 712 N.W.2d 772, 782 (Minn. Ct. App. 2006) ("To establish a breach-of-contract claim, a plaintiff must show that: (1) **a contract was formed**; (2) the plaintiff performed any conditions precedent; and (3) the defendant breached the contract.") (emphasis added). The Amended Complaint is rife with pleadings based upon a universal "Agreement," the very nature and existence of which is contradicted by Plaintiff's own exhibits. This Court should dismiss those claims based

upon loans that pre-date any contract appended to the Amended Complaint, as well as those loans acquired pursuant to the parties' Flow Agreement, whose terms contradict the conclusory allegations of the Amended Complaint.

## I.   Claims Based Upon Loans That Pre-Date the Client Contract Should Be Dismissed.

Claims based upon loans with an acquisition date prior to the effective date of the Client Contract—May 13, 1998—should be dismissed because the Amended Complaint fails to allege that such loans are subject to any agreement.  To be clear, this is not simply an issue of whether or not Plaintiff attached the governing agreement to the Amended Complaint.  Obviously, Plaintiff did not.  This is an issue of notice, the sufficiency of Plaintiff's allegations, and the futility of any amendment.  The Amended Complaint expressly states that "[o]ver *the course of the parties' relationship*, PHH sold over 3,500 mortgage loans to RFC pursuant to the Client Contract dated as of May 13, 1998."  Am. Compl. ¶ 17.  Plaintiff thus *expressly* avers that the "course" of the parties relationship began on May 13, 1998—the date of the alleged first operative agreement.

Moreover, this is not a pleading deficiency Plaintiff could cure with amendment, because Plaintiff's reliance on the Client Contract is pervasive throughout the Amended Complaint.  For example, Plaintiff alleges:

- "Pursuant to the *Agreement* [defined by Plaintiff to mean only the Client Contract, Flow Agreement, and RFC Client Guide], Defendant PHH Mortgage made a number of representations and warranties with respect to the loans . . ." *Id*. ¶ 24 (emphasis added);

- "PHH materially breached its extensive contractual representations and warranties by delivering loans that were not originated or underwritten in accordance with the requirements of the *Agreement*[.]" *Id*. ¶ 39 (emphasis added);

8

- "RFC and Defendant PHH entered into a valid and enforceable *Agreement* pursuant to which RFC acquired over 3,500 mortgage loans from PHH." *Id*. ¶ 82 (emphasis added);

- "Pursuant to the parties' *Agreement*, PHH made representations and warranties to RFC regarding the quality and characteristics of the mortgage loans Defendant sold to RFC." *Id*. ¶ 83 (emphasis added);

- "Defendant's material breaches constitute Events of Default under the Agreement." *Id*. ¶ 86 (emphasis added).

Indeed, it is clear from the Amended Complaint's own allegations that Plaintiff's theory as to PHH Mortgage's liability rests on contracts that Plaintiff has failed to show exist, or as the next section will show, contracts that simply did not contain the provisions that Plaintiff has alleged. As such, all claims based on the 1,684 mortgage loans listed on Exhibits C-1 and C-2 which predate the Client Contract must be dismissed with prejudice.

## II. Claims Based Upon Loans Acquired Under the Terms of the Flow Agreement Should Be Dismissed.

Plaintiff attaches two loan purchase contracts to the Amended Complaint: the Client Contract and the Flow Agreement. Plaintiff alleges in the Amended Complaint that these "Contracts and [the RFC] Client Guide collectively form the parties' Agreement, and set the standards to which PHH's loans sold to RFC were expected to adhere." Am. Compl. ¶ 18. But Plaintiff is wrong on this count, and Plaintiff's error renders defective all contract and indemnification claims based on post-September 1, 2006 loans.

A.      <u>Plaintiff's Contradictory Pleadings on the Parties' Purported "Agreement" Should be Given No Weight.</u>

While courts primarily consider the allegations in the complaint in determining whether to grant a Rule 12(b)(6) motion, courts additionally consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, *and exhibits attached to the complaint. . .*" *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012) (emphasis added).  Moreover, while a court must view the allegations of the complaint in the light most favorable to the plaintiff in deciding a motion to dismiss, if "certain allegations are inconsistent with the terms of a written document that is attached to or otherwise considered part of the complaint, the inconsistent allegations are not accepted as true, and the terms of the written document, fairly construed, prevail." *Williams v. Gusky (In re President Casinos, Inc.)*, 502 B.R. 841, 848 (Bankr. E.D. Mo. 2013) (*citing Dames & Moore v. Baxter & Woodman, Inc.*, 21 F. Supp. 2d 817, 823 (N.D. Ill. 1998); *see also Badgerow*, 2002 U.S. Dist. LEXIS 25385, at *4-5.

Because the allegations in the Amended Complaint conflict with its own exhibits, the language in the exhibits controls.  Plaintiff claims that the Client Contract, the Flow Agreement and the RFC Client Guide "collectively form the parties' Agreement." Am. Compl. ¶ 18.  But to the contrary, the Flow Agreement attached to the Amended Complaint *does not adopt the RFC Client Guide*.  Instead, it expressly adopts the PHH Guide:

> "[t]his Agreement . . . together with the *PHH Guide*, and each Purchase Price and Terms Letter, contain the entire agreement between the parties hereto."

Am. Compl. Ex. A, at 91 (emphasis added). Plaintiff has not alleged, and cannot allege in good faith, that the PHH Guide is the same as the RFC Client Guide. The Flow Agreement in its third paragraph clearly states that, unlike the RFC Client Guide, the PHH Guide is a PHH Mortgage document:

> PHH Mortgage has established certain terms, conditions and loan programs as described in the PHH Investor Manual (the "PHH Guide"), which may be updated from time to time, and Purchaser is willing to purchase Mortgage Loans that comply with the terms of such terms, conditions and loan programs. The applicable provisions of the current PHH guide are attached hereto as Schedule C.

Am. Compl., Ex. A, at 20 ¶ 3. Plaintiff did not append any version of the PHH Guide to its Amended Complaint even though it was incorporated into the Flow Agreement; by contrast, Plaintiff did append the RFC Client Guide, which is wholly inapplicable to loans RFC acquired after September 1, 2006. Nor does Plaintiff plead a breach of any provisions of the PHH Guide. As such, any claims purportedly based on the Flow Agreement, which incorporated the PHH Guide, are defective and must be dismissed.

B.     <u>Plaintiff Failed to Satisfy the Flow Agreement's Notice Provisions</u>.

Claims based upon loans acquired under the Flow Agreement and PHH Guide also should be dismissed because Plaintiff failed to plead it provided PHH Mortgage with notice and an opportunity to cure. The Flow Agreement describes an Event of Default as:

> [A]ny failure . . . to perform in any material respect any of the covenants or agreements . . . which continues unremedied for a period of 30 days after the date on which written notice of such failure, requiring the same to be remedied, shall have been given to the applicable Seller/Servicer by the Purchaser[.]

Am. Compl., Ex. A at 86, Section 10.01(2). Plaintiff does not allege that RFC provided such written notice to PHH Mortgage. Nor can Plaintiff's conclusory and non-committal assertion that "all conditions precedent to the relief sought in this action, if any, have been satisfied," Am. Compl. ¶ 36, be reconciled with its allegation that it had no such obligation, Am. Compl. ¶ 31—an allegation clearly at odds with the Event of Default provision upon which Plaintiff relies. Am. Compl. ¶ 27; *see Badgerow*, 2002 U.S. Dist. LEXIS 25385, at *4-5 (court not required to favorably reconcile allegations contradicted by exhibits).

As an attachment to the Amended Complaint, the parties' Flow Agreement controls as to any loans acquired thereunder, and the contract's terms are sufficient to warrant dismissal in the face of contradictory conclusory allegations. *See supra*, Part II-A. Plaintiff denies it had any obligation to provide notice and the opportunity to cure, and selectively cites to a portion of the very same provision for its allegation of an "Event of Default" by PHH Mortgage. Am. Compl. ¶ 27. Any claims based upon loans acquired pursuant to the Flow Agreement should be dismissed for Plaintiff's failure to plead that it provided written notice and the opportunity to cure as to those loans acquired under the Flow Agreement and PHH Guide. As to those loans, Plaintiff has failed to state a plausible claim by making only conclusory allegations, which are contradicted by the clear terms of the Flow Agreement appended to and relied on in the Amended Complaint.

## CONCLUSION

For the foregoing reasons, PHH Mortgage respectfully requests the Court enter judgment in its favor and dismiss those claims based upon loans that pre-date any

contract appended to the Amended Complaint, as well as those loans acquired pursuant to the parties' Flow Agreement, whose very terms contradict the conclusory allegations of the Amended Complaint.  The remaining loans should be dismissed pursuant to the common issue motions, to which PHH Mortgage has joined.

Dated:  March 24, 2015

WEINER BRODSKY KIDER PC

By:  /s/ David M. Souders
David M. Souders (*pro hac vice*)
Tessa K. Somers (*pro hac vice*)
1300 19th Street NW Fifth Floor
Washington, DC 20036
Telephone:  (202) 628-2000
Facsimile:  (202) 628-2011
souders@thewbkfirm.com
somers@thewbkfirm.com

MASLON LLP
David T. Schultz, #169730
Nicole E. Narotzky, #329885
3300 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-4140
Telephone: (612) 672-8399
Facsimile: (612) 642-8399
david.schultz@maslon.com
nicole.narotzky@maslon.com

**ATTORNEYS FOR DEFENDANT
PHH  MORTGAGE CORPORATION**