# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

In Re:  RFC and ResCap Liquidating
Trust Litigation

_____

*This document relates to:*                                                        Civ. No. 13-3451 (SRN/JJK/HB)

Residential Company, LLC v. Guaranty
Bank, No. 13-cv-3450 (MJD/FLN)                                          **ORDER**

Residential Funding Company, LLC and
ResCap Liquidating Trust v. Community
West Bank, N.A., No. 13-cv-3468 (JRT/JJK)

Residential Funding Company, LLC and
ResCap Liquidating Trust v. Colonial
Savings, F.A., No. 13-cv-3474 (JNE/TNL)

Residential Funding Company, LLC v. First
Guaranty Mortgage Corporation, No. 13-cv-
3475 (RHK/HB)

Residential Funding Company, LLC and
ResCap Liquidating Trust v. Provident
Funding Associates, L.P., No. 13-cv-3485
(SRN/TNL)

Residential Funding Company, LLC and
ResCap Liquidating Trust v. PNC Bank,
N.A., as successor in interest to National
City Mortgage Co., NCMC Newco, Inc., and
North Central Financial Corporation, No. 13-
cv-3498 (JRT/BRT)

Residential Funding Company, LLC v.
Impac Funding Corp., No. 13-cv-3506
(JNE/SER)

Residential Funding Company, LLC v.
Hometown Mortgage Services, Inc., No. 13-
cv-3509 (PAM/HB)

Residential Funding Company, LLC and
ResCap Liquidating Trust v. Universal

CASE 0:13-cv-03451-SRN-HB   Document 374   Filed 04/16/15   Page 2 of 12

American Mortgage Company, LLC, No. 13-cv-3519 (SRN/JSM)

Residential Funding Company, LLC v. Wells Fargo Bank, N.A. f/k/a Wachovia Mortgage Corporation, First Union National Bank, and First Union Mortgage Corporation, No. 13-cv-3521 (ADM/LIB)

Residential Funding Company, LLC v. BMO Harris Bank, N.A. d/b/a M&I Bank, FSB, No. 13-cv-3523 (JNE/FLN)

Residential Funding Company, LLC v. SouthTrust Mortgage Corp. and Wells Fargo Bank, N.A., No. 13-cv-3524 (DSD/HB)

Residential Funding Company, LLC v. Wells Fargo Financial Retail Credit, Inc., No. 13-cv-3525 (SRN/JSM)

Residential Funding Company, LLC and ResCap Liquidating Trust v. Standard Pacific Mortgage, Inc., No. 13-cv-3526 (JRT/JJK)

Residential Funding Company, LLC and ResCap Liquidating Trust v. National Bank of Kansas City, No. 13-cv-3528 (ADM/TNL)

Residential Funding Company, LLC v. DB Structured Products, Inc. and MortgageIT, Inc., No. 14-cv-143 (ADM/TNL)

Residential Funding Company, LLC v. CTX Mortgage Company, LLC, No. 14-cv-1710 (DSD/TNL)

Residential Funding Company, LLC v. Home Loan Center, Inc., No. 14-cv-1716 (DWF/JJK)

Residential Funding Company, LLC v. Decision One Mortgage Company, LLC and HSBC Finance Corporation, No. 14-cv-1737 (MJD/JSM)

Residential Funding Company, LLC v.

E-Loan, Inc., No. 14-cv-1739 (PAM/JJK)

Residential Funding Company, LLC v. Rescue Mortgage, Inc., No. 14-cv-1740 (PJS/TNL)

Residential Funding Company, LLC v. American Mortgage Network, LLC f/k/a American Mortgage Network, Inc., d/b/a Vertice and AMNET Mortgage LLC, f/k/a AMNET Mortgage, Inc., f/k/a American Residential Investment Trust, Inc. and Wells Fargo Bank, N.A., No. 14-cv-1760 (PJS/TNL)

ResCap Liquidating Trust v. Freedom Mortgage Corporation, No. 14-cv-5101 (MJD/HB)

_____

SUSAN RICHARD NELSON, United States District Judge

In their Motion to Approve Use of Statistical Sampling (Doc. No. 154, Sampling Mot.), Plaintiffs Residential Funding Company, LLC, and the ResCap Liquidating Trust (collectively "RFC") seek an order *in limine* approving their proposed sampling methodology to determine a breach rate for groups of loans sold to RFC by the Defendants in 23 cases where the total number of loans exceeded 500 in an individual case. For the reasons that follow, the motion (Doc. No. 154), is **GRANTED IN PART**, and **DENIED IN PART WITHOUT PREJUDICE** as further stated below.

RFC's expert, Dr. Karl Snow, has designed a sampling protocol that is described in his expert declaration submitted in support of this motion. (Doc. No. 157-11, Expert Decl. of Karl Snow, Phd ("Snow Decl.") ¶¶ 37-41.) According to his sampling protocol, Dr. Snow will draw a random sample of 150 loans and a backup sample of 100 loans from a population of loans sold by a defendant that experienced losses, or expected losses, greater than $500. He will then conduct statistical tests to confirm the representatives of the sample. After the loans in the

3

sample are re-underwritten to determine whether any representations and warranties made by a defendant were breached, Dr. Snow will extrapolate the sample-based breach rates to the population from which the sample was drawn. Dr. Snow opines that a sample of 150 loans is sufficiently large to identify a breach rate for each population of loans at issue in these 23 cases with a 95% confidence interval and a margin of error of 8 percentage points. (*Id*. at ¶ 39.)

Based on Dr. Snow's declaration, in its memorandum in support of the instant motion, RFC requests the following relief:

> The Court should (i) hold that Plaintiffs may attempt to establish liability and determine damages by use of a statistically valid random sample of loans in substantially the manner set forth in the declaration of Dr. Karl N. Snow submitted with plaintiffs' motion; and (ii) admit into evidence the expert testimony of Dr. Karl N. Snow regarding statistical sampling pursuant to Federal Rule of Evidence 702.

(Doc. No. 156, Pls.' Mem. of Law in Supp. of Mot. to Approve Use of Statistical Sampling ("Pls.' Mem.") 32; Doc. No. 154, Sampling Mot.)

The Defendants object to the entry of such an order. First, Defendants argue that RFC has not demonstrated that Dr. Snow's proposed sampling methodology would reliably generate relevant evidence because RFC failed to offer any explanation of how it intended to use the proposed breach rates. Accordingly, Defendants argue that the Court should not rule on whether RFC may use Dr. Snow's method of determining breach rate through statistical sampling to establish liability or damages until the Court knows the use for which this evidence is to be put and until Defendants have the opportunity to object to its admission. Second, the Defendants argue that the proposed sampling is premature because, at least by Defendants' theory of the case, RFC ultimately will have to prove breaches on a loan-by-loan basis, and Dr. Snow's sampling exercise does not purport to provide loan-by-loan proof of breach. At the very least, if the Court endorses the use of statistical sampling, Defendants assert that the Court should not

prejudge the language of the contracts as to the issue of proof of breach. Third, Defendants argue that they will demonstrate "at the appropriate time" that, to recover for any losses occasioned by a Defendant's loans that RFC sold into a particular securitization, RFC must prove that there were specific loans backing the securitization that breached the contractual representations and warranties and that those breaches caused settlement loss. According to Defendants, Dr. Snow's sampling protocol only draws its 150-loan samples from the entire population of loans with losses sold by any given Defendant, regardless of the securitization in which such loans were placed, and thus, provides no information about the number of purportedly breaching loans within any particular securitization. As a result, Defendants argue that the sampling protocol will be a waste of time and resources and will not yield any admissible evidence. Fourth, the Defendants contend that numerous other aspects of Dr. Snow's protocol cannot be evaluated at this time including: (1) whether Dr. Snow will reliably pick his loan population and samples; (2) whether his use of loans from his back-up samples will bias the sample sent for re-underwriting; (3) whether the re-underwriting will focus on relevant criteria; (4) whether the extrapolation of results will be reliably performed; and (5) whether Dr. Snow's samples will contain time-barred loans sold prior to May 14, 2006. (*See* Doc. No. 255, Defs.' Joint Opp'n to Pls.' Mot. to Approve Use of Statistical Sampling ("Defs.' Opp'n"), *passim*.) Notably, Defendants do not contest the fact that the statistical analysis proposed by Dr. Snow can be used to estimate breach rates in populations of mortgage loans, nor do they raise any objection to Dr. Snow's expert qualifications.

In RFC's Reply Memorandum, RFC suggests the following alternative to its initial request for an order approving statistical sampling as a method to prove liability and damages and admitting Dr. Snow's expert testimony "into evidence" at the outset of the case:

> Alternatively, the Court should hold the protocol described in Dr. Snow's declaration is scientifically valid and admissible in this case for the purpose of identifying a random, representative sample of loans from the indicated population, and that if the protocol is implemented as Dr. Snow indicates, the Sampling Defendants may not challenge on *Daubert* grounds that a 150-loan sample is sufficiently large to identify a breach rate with a margin of error at the 95% confidence level of no more than +/- 8 percentage points for binary questions.

(Doc. No. 333, Pls.' Reply Mem. in Further Supp. of Mot. to Approve Use of Statistical Sampling ("Pls.' Reply") at 30.) This alternative proposal simply recognizes the mathematical principles underlying Dr. Snow's proposed statistical sampling methodology. It does not include any determination about whether – or how – RFC may use the results of the statistical sampling exercise at trial. Nor does it require this Court to rule on the admission of the expert testimony of Dr. Snow at trial. RFC derived this alternative approach from the statistical sampling order issued by Bankruptcy Judge Martin Glenn in the four parallel cases pending in the United States Bankruptcy Court Southern District of New York. *In re Residential Capital, LLC*, No. 14-ap-7900-mg, Doc. No. 56 at 5 (Bankr. S.D.N.Y. Jan. 13, 2015) ("Resolving the sampling methodology and sample selection now will substantially aid in the prompt and efficient administration of these cases without prejudicing the parties' rights.")

At the hearing on March 31, 2015, Defendants' counsel stated that Defendants did not object to the substance of RFC's alternative proposal so long as it was made clear that Defendants maintained their right to challenge various ways in which the sampling protocol is implemented and applied.[1] Defendants also wish to preserve each of the legal challenges,

---

[1] Defense counsel stated that: "If the question is whether drawing 150 loan sample from a population at random will . . . allow you to say that whatever result applies to the – that population as a whole with a 95 percent confidence level at a maximum plus or minus 8 percent margin of error, then the answer is, yes, we don't disagree with that." (Doc. No. 359, Tr. of March 31, 2015 Hr'g 143:2-8.)

6

described above, that they raised in response to RFC's original request for a determination that RFC may use evidence of a breach rate to prove liability and damages. Defendants did, however, suggest that it would be more efficient for the Court to wait until much later in the case to make any ruling on statistical sampling.

The Court will issue an order granting the alternative relief sought by RFC. There are significant benefits that can be derived from this early ruling on the use of the sampling protocol to identify the loan sample size and the method of identifying a breach rate for a defined population of loans sold by a defendant to RFC. The re-underwriting process that is involved in sampling 150 loans is expensive and time-consuming. If it turned out at the end of fact and expert discovery that the sampling methodology was not valid (i.e., a sample of 150 loans was not sufficiently large to identify a breach rate or the margin of error is too large) then Plaintiffs would be forced to resample, simply because RFC's expert had not come up with a statistically valid protocol. Early disclosure by RFC of the identity of the sample loan files selected by Dr. Snow and the results of his tests for representativeness will assist the Defendants in deciding whether to use different sampling methodologies and different samples to conduct their own tests. And prompt disclosure of the results of the actual re-underwriting of the sample loans will not only provide the parties with important information about the merits of the case but will also allow adequate time for defendants to conduct discovery about the re-underwriting process in preparation for trial.

Whether or not any early Court order about statistical sampling is issued, it is inevitable that, given the size of the loan pools in issue, statistical sampling of some kind will be done. And defendants will be pressing, as they already have, to find out the identity of each loan file sampled, the nature of any claimed defect in a loan for which breach is claimed, the process by

which loan files were actually chosen for sampling, the process and details of the sample re-underwriting and the results obtained. Defendants will need to obtain this information not only to prepare their defense at trial, but also to assist them in deciding whether to conduct their own sampling or their own re-underwriting of the RFC's samples. RFC, in turn, will seek to discover a similar array of information from the Defendants. The establishment of a statistical sampling disclosure schedule will assist the parties and the Court in managing such discovery in this very complex litigation. The Court will manage the statistical sampling process by requiring the parties to exchange information on a statistical sampling disclosure schedule described below.

This Court recognizes that three judges in this District decided that RFC's motions for an order on the admissibility of the sampling protocol were premature and denied the motions without prejudice in individual cases before these matters were consolidated for pretrial administration. *Residential Funding Co. v. PNC Bank, N.A.*, No. 13-cv-3498 (JRT/JSM) (D. Minn.) (Doc. No. 117, Dec. 17, 2014); *Residential Funding Co. v. First Guaranty Mortgage Corp.*, No. 13-cv-3475 (RHK/HB) (D. Minn.) (Doc. No. 69, Dec. 12, 2014); *Residential Funding Co. v. Golden Empire Mortg., Inc.*, No. 13-cv-3466 (PJS/JJK) (D. Minn.) (Doc. No. 88, Nov. 26, 2014). However, in those pre-consolidation sampling motions, RFC sought a determination that it could use expert testimony and analysis of statistical sampling to prove liability and damages at trial, which is what RFC originally sought when it filed the sampling motion now before this Court.[2] This Court will not make any determination at this stage of the case about whether – or

---

[2]   In their pre-consolidation rulings, Judges Tunheim, Kyle, and Schiltz all recognized that determining the admissibility of expert evidence prior to the completion of discovery was premature and would not be appropriate. *See Residential Funding Co. v. PNC Bank, N.A.*, No. 13-cv-3498 (JRT/JSM), Doc. No. 117 at 2 ("Although the Court may ultimately agree with Plaintiffs that they may prove their case at trial using statistical sampling, at this point, the Court concludes that it is premature to make a determination about the appropriateness of statistical

(Footnote Continued on Following Page)

how – RFC may use statistical sampling at trial. Also, to the extent those judges were concerned that RFC's previous motions involved possible limitations on the Defendants' right to conduct discovery outside of the sample loans, RFC has now disavowed any such attempt to limit discovery. *Compare Residential Funding Co. v. Golden Empire Mortg., Inc.*, No. 13-cv-3466 (PJS/JJK), Doc. No. 88 at 3 ("Plaintiffs apparently hope to obtain an early ruling on this issue in order to limit the scope of discovery"), *with* Pls.' Mem. 10 ("Plaintiffs do not seek by this motion to restrict Defendants' ability to obtain discovery to which they are entitled, and this motion, if granted, would not do so."). Here, as noted above, RFC has significantly narrowed the request for relief in these 23 cases and seeks only a limited determination that Dr. Snow will not be challenged on the grounds that he is not qualified as an expert on statistical sampling (which Defendants have not challenged), and a determination that Dr. Snow's proposed sampling protocol would yield a statistical result at a particular confidence level with a particular margin of error for the populations sampled (a proposition Defendants indicated they would not dispute, *see supra* note 1).

As they did in the companion cases before Judge Glenn in the Bankruptcy Court for the Southern District of New York, Defendants in these cases have preserved their rights to object in the future to any use by RFC of the sample and its analysis to prove liability or damages. (*See In re Residential Capital, LLC*, No. 14-ap-7900-mg, Doc. No. 66 ¶¶ 14-15 (Bankr. S.D.N.Y. Feb. 10, 2015).) This includes, for example, the Defendants' argument that the breach rate derived

---

(Footnote Continued from Previous Page)
sampling."); *Residential Funding Co. v. First Guaranty Mortgage Corp.*, No. 13-cv-3475 (RHK/HB), Doc. No. 69 at 1-2 (agreeing with other courts that an early decision on the admissibility of expert evidence was premature); *Residential Funding Co. v. Golden Empire Mortg., Inc.*, No. 13-cv-3466 (PJS/JJK), Doc. No. 88 at 3 ("[T]he Court will not hear *Daubert* or summary-judgment motions until discovery is completed, unless a magistrate judge recommends otherwise and the Court agrees with that recommendation.").

from the sampling has no relevance because the contract in issue requires RFC to prove breach on a loan-by-loan basis. Nor does this order foreclose Defendants' argument that the overall breach rate derived by Dr. Snow's proposed analysis is not relevant because in order to recover, RFC must prove that there were specific loans backing a particular securitization that breached the contractual representations and warranties, and that those breaches caused loss through the settlement of a claim arising out of that securitization. If relevant to RFC's theories of liability and damages, the breach rate may be admissible (assuming the methodology was properly applied) and may be accorded such weight as appropriate. *See In re Residential Capital, LLC*, No. 14-ap-7900-mg, Doc. No. 66 ¶ 15 (Bankr. S.D.N.Y. Feb. 10, 2015). Further, Defendants have preserved their rights to object to the implementation of the sample protocol. This includes the rights of the Defendants to challenge the following:

(1) The applicability of [RFC's] Sampling Protocol to loans outside the Population;

(2) Both the methodology [RFC] uses in conducting its re-underwriting analyses of the loans included in the Samples and the results of those re-underwriting analyses;

(3) The methodology [RFC] ultimately uses for extrapolating the results of its reunderwriting analysis for any Sample to the Population from which the Sample was drawn;

(4) The weight a fact-finder should afford to any purported breach rate for any Sample or Population, including due to the margin of error associated with extrapolating the Breach Rate to the Population; and

(5) Any opinions expressed by any of [RFC's] experts to the extent those opinions (a) are not expressly set forth in the Sampling Protocol in Dr. Snow's declaration, (b) differ in any way from the statements set forth in the Sampling Protocol in Dr. Snow's declaration, or (c) are based on information not set forth in the Sampling Protocol in Dr. Snow's declaration.

*In re Residential Capital, LLC*, No. 14-ap-7900-mg, Doc. No. 66 ¶ 14 (Bankr. S.D.N.Y. Feb. 10, 2015).

This Court concludes that early decisions on the sampling issues will streamline the administration of these very complex cases, and therefore grants the sampling motion in part and denies the motion in part without prejudice. Accordingly, this Court grants the sampling motion only to the extent that RFC seeks the limited ruling that: (1) Dr. Snow is a qualified expert witness with respect to the selection and construction of RFC's proposed samples, and the extrapolation of a breach rate from those samples to the populations from which they were drawn; (2) subject to the full reservation of the Defendants' rights as set forth in this Order, the sampling protocol set forth in Dr. Snow's declaration is scientifically valid and admissible in these cases for the purpose of identifying a random sample of loans from the population of loans at issue in each case; and (3) Defendants have agreed they will not challenge that a 150-loan sample is sufficiently large to identify a breach rate with a margin of error at the 95% confidence level of no more than +/- 8 percentage points for binary questions. To the extent RFC seeks any further early *Daubert* or admissibility ruling, as it did when it initially filed its sampling motion, the sampling motion is denied without prejudice.

The Court will add a statistical sampling disclosure schedule to the case management order in this case. The parties are ordered to meet and confer and to submit to the Court two (2) days before the status conference on April 24, 2015, their proposal(s) for a statistical sampling disclosure schedule including the nature of timing of disclosures and objections. The parties should be guided in this effort by the discovery schedule already in effect, and by the procedures adopted in the parallel litigation before Judge Glenn in the bankruptcy proceedings in the Southern District of New York. (*See* Doc. No. 257-3, Feb. 10, 2015 Order in *In re Residential Capital, LLC*, No. 14-ap-7900-mg, Doc. No. 66 ¶¶ 16-17.)

**THEREFORE, IT IS HEREBY ORDERED THAT:**

Plaintiffs' Motion to Approve Use of Statistical Sampling [Doc. No. 154] is **GRANTED IN PART and DENIED IN PART WITHOUT PREJUDICE**, as set forth herein.

Date: April 16, 2015

                                            s/Susan Richard Nelson
                                            SUSAN RICHARD NELSON
                                            United States District Judge