# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

In Re:  RFC and ResCap Liquidating
Trust Litigation

_____

*This document relates to:*

Residential Funding Company, LLC v.
Ark-La-Tex Financial Services, LLC,
No. 13-cv-3448 (DWF/TNL)

Residential Funding Company, LLC v.
Academy Mortgage Corporation, No. 13-
cv-3451 (SRN/BRT)

Residential Funding Company, LLC v.
First California Mortgage Company, No.
13-cv-3453 (SRN/JJK)

Residential Funding Company, LLC v.
Community West Bank, N.A., No. 13-cv-
3468 (JRT/JJK)

Residential Funding Company, LLC and
ResCap Liquidating Trust v. Provident
Funding Associates, L.P., No. 13-cv-
3485 (SRN/TNL)

Residential Funding Company, LLC v.
E*Trade Bank, No. 13-cv-3496
(JNE/HB)

Residential Funding Company, LLC v.
PNC Bank, N.A., No. 13-cv-3498
(JRT/BRT)

Residential Funding Company, LLC v.
Branch Banking & Trust Company, No.
13-cv-3513 (PJS/BRT)

_____

Civ. No. 13-3451 (SRN/JJK/HB)

**MEMORANDUM OPINION
AND ORDER**

Residential Funding Company, LLC v.
T.J. Financial, Inc., No. 13-cv-3515
(SRN/SER)

Residential Funding Company, LLC v.
Universal American Mortgage Company,
LLC, No. 13-cv-3519 (SRN/JSM)

Residential Funding Company, LLC v.
BMO Harris Bank, N.A. d/b/a M&I
Bank, FSB, No. 13-cv-3523 (JNE/FLN)

Residential Funding Company, LLC v.
Wells Fargo Financial Retail Credit, Inc.,
No. 13-cv-3525 (SRN/JSM)

Residential Funding Company, LLC and
ResCap Liquidating Trust v. Standard
Pacific Mortgage, Inc., No. 13-cv-3526
(JRT/JJK)

Residential Funding Company, LLC v.
iServe Residential Lending, LLC, No.
13-cv-3531 (PJS/TNL)

Residential Funding Company, LLC v.
CTX Mortgage Company, LLC, No. 14-
cv-1710 (DSD/TNL)

Residential Funding Company, LLC v.
American Mortgage Network, LLC., No.
14-cv-1760 (PJS/TNL)

ResCap Liquidating Trust v. Freedom
Mortgage Corporation, No. 14-cv-5101
(MJD/HB)

Residential Funding Company, LLC v.
Homestead Funding Corp., No. 13-cv-
3520 (JRT/HB)

SUSAN RICHARD NELSON, United States District Judge

Before the Court is the Motion to Strike, or in the alternative, for Judgment on the

Pleadings as to Ten of Defendants' Affirmative Defenses [Doc. No. 148] filed by

Residential Funding Company, LLC ("RFC") and ResCap Liquidating Trust ("the

Trust") (collectively, "Plaintiffs").  This motion was brought against the above-captioned

Defendants (collectively, "Defendants").[1]  For the reasons stated herein, Plaintiffs'

motion is granted in part and denied without prejudice in part.

## I.    BACKGROUND

These lawsuits arise out of Defendants' sale of allegedly defective mortgage loans

to RFC.  (First Am. Compl. ¶ 1.)[2]  Prior to May 2012, RFC was "in the business of

---

[1]   Plaintiffs in Residential Funding Company, LLC v. Homestead Funding Corp., 13-cv-3520 (JRT/HB) ("Homestead"), separately moved to strike, or for judgment on the pleadings [Doc. No. 65], regarding the same affirmative defenses raised by Defendants in this Consolidated Action.  The undersigned judge had previously recused from the Homestead matter.  (See Homestead, Am. Admin. Order of 2/5/15 [Doc. No. 83].)  After Plaintiffs filed the separate motion to strike in Homestead, Defendant Homestead changed legal counsel, eliminating the prior conflict of interest with the undersigned judge.  (See Homestead, Order of 4/23/15 [Doc. No. 113].)  Accordingly, because Homestead may now be included within the Consolidated Action, the Court considers the Homestead parties' briefing in this Order, as the issues raised are identical to those raised in the instant motion.  (Id.)

[2]  There are individual underlying pleadings in each case to which this motion relates, but for ease of reference, the Court simply refers to the First Amended Complaint in RFC's lawsuit against Academy Mortgage Corporation (Case No. 13-cv-3451 [Doc. No. 39]), unless otherwise indicated.  Case-specific references to the claims and defenses at issue are found in the appendix attached as Exhibit A to the Declaration of Anthony P. Alden [Doc. No. 151-1] (the "Citation Appendix").  Although references to Defendant Homestead are not included in the Citation Appendix (see Footnote 1, above), the Complaint and First Amended Complaint in Homestead are substantially similar to the pleadings noted in the Citation Appendix filed in connection with the instant motion.

(Footnote Continued on Following Page)

acquiring and securitizing residential mortgage loans." (Id. ¶ 2.)  RFC acquired the loans

from "correspondent lenders," such as Defendants, who were responsible for collecting

and verifying information from the borrower and underwriting the loans.  (Id. ¶¶ 3, 20.)

RFC alleges that its relationship with each Defendant was governed by a Seller

Contract that incorporated the terms and conditions of the RFC Client Guide

(collectively, "the Agreements").  (Id. ¶¶ 17–18 & Exs. A, B; Citation App'x ¶¶ 7-8, Ex.

A to Alden Decl. [Doc. No. 151-1].)  Those Agreements, or excerpts thereof, are attached

to the First Amended Complaint as Exhibits A and B, respectively.  (See also GMAC

RFC Client Guide, Version 1-06-G01, 3/13/06, Ex. B to Alden Decl. [Doc. No. 151-2].)

Pursuant to the Agreements, Defendants made many representations and warranties

regarding the loans, including: (1) Defendants' origination and servicing of the loans

were "legal, proper, prudent and customary;" (2) Defendants would "promptly notify"

RFC of any material acts or omissions regarding the loans; (3) all loan-related

information that Defendants provided to RFC was "true, complete and accurate;" (4) all

loan documents were "genuine" and "in recordable form;" (5) all loan documents were in

compliance with local and state laws; (6) there was "no default, breach, violation or event

of acceleration" under any note transferred to RFC; (7) each loan was "originated, closed,

and transferred" in compliance with all applicable laws; (8) none of the loans were "high-

---

(Footnote Continued from Previous Page)
(Cf. Homestead, 13-cv-3520 (JRT/HB), Comp. [Doc. No. 1]; First Am. Compl. [Doc. No.
28], Ex. A ("Client Contract") [Doc. No. 28-1]; First Am. Compl. Exs. B-1 to B-15
("Client Guide") [ECF 28-2]; Ans. [Doc. No. 59] with Consolidated Action, 13-cv-3451
(SRN/JJK/HB), Citation App'x, Ex. A to Alden Decl. [Doc. No. 151-1]. )

cost" or "high-risk;" (9) there were no existing circumstances that could render the loans

an "unacceptable investment," cause the loans to become "delinquent," or "adversely

affect" the value of the loans; (10) the loans were underwritten in compliance with the

Client Guide; (11) appropriate appraisals were conducted when necessary; (12) the

market value of the premises was at least equal to the appraised value stated on the loan

appraisals; and (13) there was no fraud or misrepresentation by the borrower or

Defendants regarding the origination or underwriting of the loans.  (First Am. Compl. ¶

24.)

 RFC alleges it considered these representations and warranties to be material, and

any failure to comply constituted an "Event of Default" under the Agreements (Id. ¶¶ 25–

26.)  It retained sole discretion to declare an Event of Default, and the available remedies

include repurchase of the defective loan, substitution of another loan, or indemnification

against liabilities resulting from the breach.  (Id. ¶¶ 29–33.)   RFC alleges that the

Agreements do not, however, require that RFC provide Defendants with notice or an

opportunity to cure, or demand repurchase within a particular amount of time.  (Id.)

 In the various operative Complaints, RFC alleges that, pursuant to these

Agreements, it purchased from each Defendant hundreds or, in some cases, thousands of

mortgage loans, with original principal balances ranging from several million dollars to

over $8 billion.  See, e.g., Am. Compl. ¶ 4, Residential Funding Co., LLC v. Ark-La-Tex

Fin. Servs., LLC, No. 13-cv-3448 (DWF/TNL) [Doc. No. 29]; Am. Compl. ¶ 4.  RFC

then either pooled those loans to sell into residential mortgage-backed securitization

("RMBS") trusts or sold them to whole loan purchasers.  (First Am. Compl. ¶¶ 3, 36.)

RFC alleges, however, that, in many instances, Defendants violated their representations and warranties.  (Id.)  According to RFC, many of the loans eventually defaulted or became delinquent and sustained millions of dollars in losses.  (Id. ¶ 39.) After conducting an internal review, RFC determined that hundreds of loans sold by each Defendant violated the Agreements and resulted in an Event of Default.  (Id. ¶ 41.)  The types of alleged defects included income and employment misrepresentation, owner occupancy misrepresentation, appraisal misrepresentations or inaccuracies, undisclosed debt, insufficient credit scores, lien position, and/or missing or inaccurate documents, among others.  (Id. ¶ 42.)  By May 2012, RFC had spent millions of dollars repurchasing defective loans, including loans sold to it by Defendants.  (Id. ¶ 61.)

On May 14, 2012, RFC filed for Chapter 11 bankruptcy in the Bankruptcy Court for the Southern District of New York.  (Id. ¶ 62); In re Residential Capital, LLC, No. 12-12020 (MG) (Bankr. S.D.N.Y.).  According to RFC, hundreds of proofs of claim related to allegedly defective mortgage loans, including those sold to RFC by Defendants, were filed in connection with the bankruptcy proceedings.  (First Am. Compl. ¶ 63.)  The Bankruptcy Court eventually approved a global settlement that provided for resolution of the RMBS-related liabilities for more than $10 billion.  (Id. ¶ 67.)  The Bankruptcy Court confirmed the Chapter 11 Plan on December 11, 2013, and the Plan became effective on December 17, 2013.  (Id.); Findings of Fact at 1, In re Residential Capital, LLC, No. 12-12020 (MG) (Bankr. S.D.N.Y. Dec. 11, 2013) [Doc. No. 6066].  Under the Plan, the Trust succeeded to RFC's rights and interests, including its claims against Defendants. (First Am. Compl. ¶ 67.)

Accordingly, RFC and the Trust filed these lawsuits, asserting two causes of action against each Defendant.  In Count One, a claim for breach of contract, based on alleged breaches of representations and warranties, RFC alleges that, although it "complied with all conditions precedent, if any, and all of its obligations under the Agreement[s]" (id. ¶ 72), Defendants materially breached the representations and warranties they made to RFC because the mortgage loans they sold to RFC did not comply with those representations and warranties (id. ¶¶ 71, 73).  RFC asserts these material breaches constitute Events of Default under the Agreements and have resulted in losses and liabilities related to the defective loans, as well as losses associated with defending the lawsuits and proofs of claim that stem from those loans.  (Id. ¶¶ 74–75.)  In Count Two, RFC alleges it is entitled to indemnification from Defendants for those losses and liabilities.  (Id. ¶¶ 77–80.)

This motion challenges ten of the affirmative defenses asserted in the Answers filed by Defendants.[3]  Plaintiffs seek to strike or, alternatively, dismiss the following affirmative defenses:  (1) reliance- and knowledge-based defenses that RFC either knew of Defendants' breaches of representations or warranties at the time of entering into the parties' contracts or did not rely on Defendants' representations or warranties; (2) equitable defenses of unclean hands, laches, and *in pari delicto*; and (3) defenses based on the satisfaction of conditions precedent prior to imposing upon Defendants liability for breach of contract or indemnification.  (Pls.' Mem. Supp. Mot. to Strike at 2-3 [Doc. No.

---

[3]  As noted, citations to the case-specific underlying Answers are set forth in the Citation Appendix, Exhibit A to Alden Declaration §§ 7-21 [Doc. No. 151-1].

150].)

Defendants assert that Plaintiffs' motion should be denied for three reasons.  First, Defendants contend that the motion improperly relies on misleading excerpts from the Client Guide and information from outside the pleadings.  (Defs.' Opp'n Mem. at 1 [Doc. No. 253].)  Furthermore, they assert that the motion improperly discounts the allegations in Defendants' Answers and misconstrues the parties' multiple agreements (which, for some Defendants, include multiple versions of the Client Guide as well as commitment letters and certificates).  (Id.)  Second, Defendants argue that Plaintiffs are required to show that they would be prejudiced if Defendants were permitted to develop the ten affirmative defenses in dispute.  (Id. at 2) (citing Connell v. City of New York, 230 F. Supp. 2d 432, 438 (S.D.N.Y. 2002)).  Third, Defendants contend that all of the affirmative defenses raise questions of fact or law that are not properly stricken at this stage in the proceedings.  (Id.)

## II.   DISCUSSION

### A.   Standard of Review

Federal Rule of Civil Procedure 12(f) permits the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." As this Court has noted, a motion to strike a defense should be denied if the defense "is sufficient as a matter of law or if it fairly presents a question of law or fact which the court ought to hear."  U.S. Bank Nat'l Ass'n v. Educ. Loans Inc., No. 11-cv-1445 (RHK/JJG), 2011 WL 5520437, at *5 (D. Minn. Nov. 14, 2011) (denying motion to strike an estoppel defense to a breach of contract claim).  Because Rule 12(f) relief is

considered an "extreme measure," motions under Rule 12(f) are infrequently granted.

E.E.O.C. v. Product Fabricators, Inc., 873 F. Supp. 2d 1093, 1097 (D. Minn. 2012)

(citing Stanbury Law Firm, P.A. v. Internal Revenue Serv., 221 F.3d 1059, 1063 (8th Cir.

2000); Daigle v. Ford Motor Co., 713 F. Supp. 2d 822, 830 (D. Minn. 2010)).   Under the

permissive language of the rule, however, the Court has "liberal discretion" to strike,

Stanbury, 221 F.3d at 1063, and a motion to strike should be granted "if the result is to

make a trial less complicated or otherwise streamline the ultimate resolution of the

action." Daigle, 713 F. Supp.2d at 830.   While the non-movant's well-pleaded facts are

admitted as true on a motion to strike, the district judge need not similarly admit

conclusions of law, Barnidge v. United States, 101 F.2d 295, 297 (8th Cir. 1939),  or

conclusions drawn from the facts.  5C Charles A. Wright & Arthur R. Miller, Federal

Practice and Procedure § 1380 at 403-04 (3d ed. 2004).   Matters outside the pleadings

are generally not considered.  Id. at 404.

As an alternative to moving to strike under Rule 12(f), Plaintiffs move for partial

judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).  Rule 12(c) provides that a

party may move for judgment on the pleadings after the pleadings are closed, but early

enough not to delay trial, where "no material issue of fact remains to be resolved and the

movant is entitled to judgment as a matter of law." Faibisch v. Univ. of Minn., 304 F.3d

797, 803 (8th Cir. 2002).  Courts therefore apply to Rule 12(c) motions the same standard

of review applicable to Rule 12(b)(6) motions to dismiss.  Ginsburg v. InBev NV/SA,

623 F.3d 1229, 1233, n.3 (8th Cir. 2010).  The court accepts as true all facts pleaded by

the non-moving party and grants all reasonable inferences from the pleadings in the non-

moving party's favor. <u>Faibisch</u>, 304 F.3d at 803 (citing <u>United States v. Any & All Radio Station Transmission Equip.</u>, 207 F.3d 458, 462 (8th Cir. 2000)).   As with a Rule 12(f) motion, "[w]hen considering a motion for judgment on the pleadings (or a motion to dismiss under Fed. R. Civ. P. 12(b)(6)), the court generally must ignore materials outside the pleadings, but it may consider 'some materials that are part of the public record or do not contradict the complaint,' as well as materials that are 'necessarily embraced by the pleadings.'" <u>Porous Media Corp. v. Pall Corp.</u>, 186 F.3d 1077, 1079 (8th Cir. 1999) (quoting <u>Missouri ex rel. Nixon v. Coeur D'Alene Tribe</u>, 164 F.3d 1102, 1107 (8th Cir.); <u>Piper Jaffray Cos. v. National Union Fire Ins. Co.</u>, 967 F. Supp. 1148, 1152 (D. Minn. 1997)).   See also 5B Wright & Miller, *supra*, §1357 at 376 (court may consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned").

Defendants argue that Plaintiffs cannot prevail under the demanding standard required to strike an affirmative defense under Rule 12(f).  (Defs.' Opp'n Mem. at 5 [Doc. 253].)   In addition, they contend that Plaintiffs have failed to establish the likely existence of prejudice, which, Defendants argue, is required before affirmative defenses may be stricken under Rule 12(f).  (<u>Id.</u>) (citing <u>Collette v. Zenith Dredge Co.</u>, 11 F.R.D. 594, 595 (D. Minn. 1951); <u>Scribner v. McMillan</u>, No. 06-cv-4460 (DWF/RLE), 2007 WL 685048, at *5 (D. Minn. Mar. 2, 2007)).  Finally, Defendants argue that under either Rule 12(c) or 12(f), Plaintiffs improperly rely on material outside the pleadings.

The Court finds Plaintiffs' motion appropriate under Rule 12(f).  Since the 1948

amendment of Rule 12(f), that provision has served as an acceptable remedy to "dispose of a wholly insufficient defense at the pleading stage" and a plaintiff need not instead move to dismiss an answer under Rule 12(c).  5C Wright & Miller, *supra*, §1381 at 408-09; <u>see also</u> <u>Aaron v. Martin</u>, No. 4:11CV1661 FRB, 2013 WL 466242, at *2 (E.D. Mo. Feb. 7, 2013) (noting that the federal rules "provide two ways for a party to challenge the sufficiency of an affirmative defense:  a motion for judgment on the pleadings under Rule 12(c), or a motion to strike under Rule 12(f)").  Rule 12(f) is the "primary procedure for objecting to an insufficient defense."  5C Wright & Miller, *supra*, § 1380 at 390.  As to whether a plaintiff moving to strike an affirmative defense must demonstrate prejudice, courts have found that where a challenged defense fails as a matter of law or is immaterial to the matter, the resources and time expended to counter such a defense constitute per se prejudice.  <u>See</u> <u>Panzella v. Cnty. of Nassau</u>, No. 13-CV-5640 (SFJ) (SIL), 2015 WL 224967, at *2 (E.D.N.Y. Jan. 15, 2015) (requiring the plaintiff to defend against immaterial defenses would be prejudicial to the plaintiff); <u>Specialty Minerals, Inc. v. Pluess-Staufer AG</u>, 395 F. Supp. 2d 109, 114 (S.D.N.Y. 2005) (striking unclean hands defense and finding that the increased time and expense to try the issue would constitute prejudice to the plaintiff).  The Court finds that similar prejudice exists here.  Therefore, finding that Rule 12(f) is a procedurally proper means of disposing of affirmative defenses, the Court does not address Plaintiffs' alternative basis for the motion under Rule 12(c).

As to the documents that the Court may properly consider on a Rule 12 motion, the materials in question are a particular complete version of the Client Guide (Ex. B to

Alden Decl. [Doc. No. 151-2]), and excerpts from the Client Guides (Exs. B-A200 to Alden Decl. [Doc. No. 151-3 to 151-34]), as well as the Citation Appendix, which identifies the specific provisions at issue in the underlying complaints and answers. (Citation App'x, Ex. A to Alden Decl. [Doc. No. 151-1].)  As documented in the Citation Appendix, "Client Guides" were attached to the underlying complaints.  (See id. ¶ 2.)  In general, courts may consider a contract on a Rule 12 motion because contracts on which a claim is based are embraced by the pleadings.  Gorog v. Best Buy Co., 760 F.3d 787, 791 (8th Cir. 2014); see also Stahl v. United States Dep't of Agric., 327 F.3d 697, 700 (8th Cir. 2003) (stating that in a Rule 12 motion in a case involving a contract, the court could consider the contract documents).  Defendants, however, argue that many of the Client Guide versions cited in the Citation Appendix were not attached to the operative complaints.  (Defs.' Opp'n Mem. at 12-13 [Doc. No. 253].)  Where reference to the Client Guides may be necessary to resolve a particular ground on which the instant motion is based, the Court addresses this below in its legal analyses.  To the extent that Defendants challenge the Court's consideration of the Citation Appendix, it is properly before the Court.  The Citation Appendix merely provides citations to specific paragraphs in the pleadings themselves and does not contradict the pleadings.

Finally, for purposes of the instant motion, based on the choice-of-law provisions in the parties' Agreements, it appears that Minnesota and New York law apply.  (Citation App'x ¶ 15, Ex. A to Alden Decl. [Doc. No. 151-1]) (citing applicable choice-of-law provisions).

### B.      Reliance- and Knowledge-Based Defenses

As noted, Plaintiffs seek to strike six defenses that essentially assert that (1) RFC did not rely on Defendants' representations or warranties, or (2) RFC knew of Defendants' breaches of representations and warranties when it entered into the parties' contracts.  (Pls.' Mem. Supp. Mot. to Strike at 2-3 [Doc. No. 150].)  Specifically, Plaintiffs identify the following assertions of Defendants that Plaintiffs' claims are barred, in whole or in part, by the following reliance- and knowledge-based defenses:  (1) "the doctrine of assumption of the risk" (Citation App'x  ¶ 8, Ex. A to Alden Decl. [Doc. No. 151-1]); (2) "because [RFC] would have purchased the loans . . . even if it knew the alleged deficiencies in the loan documents, and any alleged deficiencies were not material." (id. ¶ 9); (3) "because [RFC] did not rely on the representations and warranties on which Plaintiff[s] [are] suing, and to the extent [RFC] did rely on such representations and warranties, [RFC]'s reliance was not reasonable or justified."  (id. ¶ 10); (4) by "the doctrine of estoppel" (id. ¶ 11); (5) by "the doctrines of consent, acquiescence, and/or ratification" (id. ¶ 12); and (6) "because [RFC] failed to perform adequate due diligence regarding the underlying mortgage loan sales" (id. ¶ 13).

Article A200 of the Client Guide states that "the Client is fully liable for any misrepresentation or breach of warranty regardless of whether it or GMAC-RFC actually had, or reasonably could have been expected to obtain, knowledge of the facts giving rise to such misrepresentation or breach of warranty."  (Ex. B to Alden Decl. [Doc. No. 131-2 at 37].)  Also in Article A200, Defendants "acknowledge[d] that GMAC-RFC purchase[d] Loans in reliance upon the accuracy and truth of the Client's warranties and

representations and upon the Client's compliance with the agreements, requirements, terms and conditions set forth in the Client Contract and this Client Guide." (Id.)

In opposition to Plaintiffs' motion, Defendants argue that their defenses based on knowledge and reliance properly apply to Plaintiffs' indemnification claim, pointing to other language in the Client Guide that supports their defenses. (Defs.' Opp'n Mem. at 17 [Doc. No. 253].)  Specifically, Defendants note that language in the Client Guide states that Defendants would indemnify Plaintiffs "'for any losses from any claim, demand, defense or assertion against or involving [RFC] based on or grounded upon, or resulting from such misstatement or omission or a breach of any representation, warranty or obligation made by [RFC] in reliance upon such misstatement or omission.'" (Id.) (citing PNC First Am. Compl. ¶ 33) (quoting Client Guide A202(II)).  In addition, Defendants contend that Plaintiffs improperly group together the distinct defenses of ratification, acquiescence, and consent among the reliance- and knowledge-based defenses that they move to strike.  (Id.)  Furthermore, Defendants contend that they are entitled to plead reliance- and knowledge-based defenses against Plaintiffs' breach of warranty claim.  (Id. at 19.)

The Court finds that questions of fact preclude relief under Rule 12(f) for certain reliance- and knowledge-based defenses.[4]  Defendants assert that many Client Guide

---

[4]  Specifically, the Court denies without prejudice Plaintiffs' motion with respect to the following reliance- and knowledge-based defenses:  (1) "because [RFC] would have purchased the loans . . . even if it knew the alleged deficiencies in the loan documents, and any alleged deficiencies were not material" (Citation App'x ¶ 9, Ex. A to Alden Decl. [Doc. No. 151-1]); (2) "because [RFC] did not rely on the representations and warranties

(Footnote Continued on Following Page)

versions cited in Plaintiff's Citation Appendix were not attached to the operative complaints and that newly produced versions of the Client Guide supplement the excerpts attached to the Complaint.  (Defs.' Opp'n Mem. at 12-13 [Doc. No. 253].)  Moreover, Plaintiffs acknowledge that at least one Defendant has not received all versions of the Client Guide.  (Pls.' Mem. Supp. Mot. to Strike at 7, n.3 [Doc. No.150].)  In addition, Defendants assert that "Plaintiffs also fail to address that the terms of the Client Guide are altered and superseded by any conflicting terms in the parties' seller contracts and/or commitment letters, which are ignored in both Plaintiffs' complaints and their motion." (Defs.' Opp'n Mem. at 13 [Doc. No. 253].)   Finally, with respect to estoppel, Defendants note that the Court will be required to examine RFC's conduct.  (Id. at 25) (citing Multi-Tech Sys., Inc. v. Floreat, Inc., No. 01-cv-1320 (DDA/FLN), 2002 WL 432016, at *4 (D. Minn. Mar. 18, 2002)) (stating that equitable estoppel is a defense to a contract when the defendant "has altered his position for the worse in good faith reliance upon the conduct of the party seeking to enforce the contract.")  Given the limited development of the record at this point, the Court is unable to rule that no genuine issues of fact remain in dispute as to defenses based on knowledge and reliance.   Accordingly, the Court denies without prejudice Plaintiffs' motion to strike these particular affirmative defenses.

---

(Footnote Continued from Previous Page)
on which Plaintiff[s] [are] suing, and to the extent [RFC] did rely on such representations and warranties, [RFC]'s reliance was not reasonable or justified" (id. ¶ 10); (3) estoppel (id. ¶ 11); and (4) "because [RFC] failed to perform adequate due diligence regarding the underlying mortgage loan sales" (id. ¶ 13).  The Court separately addresses the defenses of assumption of the risk, and consent, acquiescence, and/or ratification.

### C.      Assumption of the Risk

In addition to arguing that assumption of the risk should be stricken as a knowledge- and reliance-based defense, Plaintiffs also argue that it should be stricken for the independent reason that it applies only to claims sounding in tort, not in contract. (Pls.' Mem. Supp. Mot. to Strike at 12 [Doc. No. 150].)

As Plaintiffs correctly note, assumption of the risk is a defense to a tort claim and is not applicable to breach of contract or indemnification claims.  See Leawood Bancshares Inc. v. Alesco Preferred Fundings X, Ltd., No. 10 Civ. 5637 (JSR), 2011 WL 1842295, at *4 (S.D.N.Y. May 9, 2011) (stating that, as a matter of law, assumption of the risk is not a proper defense to a breach of contract action); Goblirsch v. Western Land Roller Co., 246 N.W.2d 687, 691 (Minn. 1976) (referring to the "tort defense of assumption of risk"); Hagberg v. Colonial & Pac. Frigidways, Inc., 157 N.W.2d 33, 37 (Minn. 1968) (finding that defenses such as contributory negligence and assumption of risk were not available where the action was not an action for common-law negligence). While Defendants cite Powers v. Siats, 70 N.W.2d 344, 349-50 (Minn. 1955), arguing that assumption of the risk may arise by contract or by conduct of the promisor, Powers did not involve an "assumption of the risk" defense.  Instead, the court found that the defendant could not assert an "impossibility of performance" defense because the defendant learned of the impossibility in time to rectify the situation but failed to do so. Id. at 349.  Moreover, as Plaintiffs note, the court in Powers relied on Corbin on Contracts, which states that the assumption of risk defense "is not so popular in the law of torts that it should be imported into the field of contract."  4-14 Corbin on Contracts §

14.3 (2014).   The Court agrees with Plaintiffs that "[c]ontracting parties may 'assume' risks by allocating them, but that is a question of contract interpretation, not an 'assumption of risk' defense."  (Pls.' Mem. Supp. Mot. to Strike at 14 [Doc. No. 334]) (citing 27 Williston on Contracts § 70:80).  Moreover, the Court notes that three Defendants in this consolidated action, and a fourth in a similar but unconsolidated action in this District, have stipulated to dismiss their assumption of risk defense for this reason. See Residential Funding Co. v. Standard Pac. Mortg., Inc., No. 13-cv-3526 (D. Minn. Dec. 15, 2014), Stipulation of Dismissal [Doc. No. 125]; Residential Funding Co. v. T.J. Fin., Inc., No. 13-cv-3515 (D. Minn. Dec. 15, 2014) , Stipulation of Dismissal [Doc. No. 99]; Residential Funding Co. v. Univ. Am. Mortg. Co., 13-cv-3519 (D. Minn. Dec. 15, 2014), Stipulation of Dismissal [Doc. No. 111]; Residential Funding Co. v. Homestead Funding Corp., No. 13-cv-3520 (D. Minn. Feb. 11, 2015), Stipulation of Dismissal [Doc. No. 85].

For all of these reasons, the Court grants Plaintiffs' motion to strike the assumption of the risk defense because it is inapplicable in a breach of contract action.

## D.     Conditions Precedent

Plaintiffs move to strike any defense based on the failure to comply with any conditions precedent, arguing that none of the contracts at issue include conditions precedent.  Moreover, Plaintiffs contend that Defendants fail to state any conditions precedent with the particularity required by Fed. R. Civ. P. 9(c).  (Pls.' Mem. Supp. Mot. to Strike at 17-18 [Doc. No. 150].)   In response, Defendants argue that the terms and elements of the parties' agreements are in dispute.   (Defs.' Opp'n Mem. at 33-35 [Doc.

No. 253].)  They also assert that they have satisfied the particularity requirement in their pleading. (Id.)

As an initial matter, Defendants contend that Plaintiffs waived any challenge to the conditions precedent defense because Plaintiffs did not include this challenge in pre-consolidation briefing.  (Id. at 34, n. 24.)   The Court disagrees. This Court itself has the authority to strike material from the pleadings *sua sponte* pursuant to Fed. R. Civ. P. 12(c), and will consider Plaintiffs' motion as to this defense.

Here, as noted, there is a factual dispute about the terms and contracts that govern the parties' relationships.   In support of Defendants' argument that this defense should not be stricken, they contend that "the specific terms and contracts governing the loan sales at issue here are in dispute and cannot be determined at this point in the proceedings without a properly developed record." (Defs.' Opp'n Mem. at 34 [Doc. No. 253].) However, under New York and Minnesota law, a conditions precedent defense requires the contract in question to clearly and unambiguously provide for this defense. Toyomenka Pacific Petroleum, Inc. v. Hess Oil Virgin Islands Corp., 771 F. Supp. 63, 67 (S.D.N.Y. 1991) ("Under New York law, a contractual duty will not be construed as a condition precedent absent clear language showing that the parties intended to make it a condition."); Schneider v. U.S.G. Interiors, Inc., No. C5-98-1650, 1999 WL 171499, at *3 (Minn. Ct. App. Mar. 30, 1999) ("A condition precedent to performance of an obligation will not be inferred absent unequivocal contract language.")  In addition, under Fed. R. Civ. P. 9(c), a party denying that a condition precedent has occurred or been performed, must plead this defense with particularity.  Because, as Defendants

themselves contend, the contracts and terms are in dispute, a conditions precedent

defense – which requires both specific reference to contractual language and particularity

in pleading – fails at this time. Accordingly, the Court grants Plaintiffs' motion to strike

this defense.  Defendants may re-plead a conditions precedent defense, however, should

the particular agreements in question contain such language and assuming that the

pleading of the defense satisfies the particularity requirements of Rule 9(c).

### E.      Equitable Defenses

Plaintiffs move to strike the affirmative defenses of unclean hands, laches, and *in*

*pari delicto*, arguing that they are inapplicable to Plaintiffs' claims as a matter of law

because Plaintiffs' claims are legal, contractual claims.  (Pls.' Mem. Supp. Mot. to Strike

at 13-17 [Doc. No. 150].)  Defendants contend, however, that these defenses are

applicable to Plaintiffs' claims for three reasons:  (1) Plaintiffs seek the remedy of

declaratory judgment in their prayer for relief; (2) Plaintiffs may seek the equitable

remedy of specific performance; and (3) Plaintiffs may seek to amend the complaints to

include equitable claims or remedies.  (Defs.' Opp'n Mem. at 28-29 [Doc. No. 253].)

The Court addresses these general arguments first, then discusses the particular equitable

defenses separately.

The fact that Plaintiffs seek declaratory relief among their remedies is not, on its

own, determinative of whether their claims sound in law or equity.  While "declaratory

relief per se is neither equitable nor legal," see Northgate Homes, Inc. v. City of Dayton,

126 F.3d 1095, 1099 (8th Cir. 1997), "[r]equesting monetary relief to compensate the

injured party for a breach of contract and to restore the injured party to the place that it

would have been but for the breach is quintessential legal relief." Rexam Inc. v. United Steelworkers of America, No. 03-cv-2998 (ADM/AJB), 2005 WL 2128939, at *3 (D. Minn. Aug. 10, 2005) (citing Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 213-15; White v. Martin, No. 99-1447, 2002 U.S. Dist. LEXIS 6899, at *11 (D. Minn. April 12, 2002)); see also N.Y. Dist. Council of Carpenters Pension Fund v. Savasta, No. 99-cv-11362, 2005 WL 22872, at *3 (S.D.N.Y. Jan. 4, 2005) (stating that a claim for money damages "arising from a contractual obligation is 'quintessentially an action at law'"); Moore v. Medtronic, Inc., No. 99-cv-2066 (ADM/AJB), 2001 WL 1636248, at *3 (D. Minn. July 30, 2001) (granting summary judgment on defendant's laches defense because "Moore's sole cause of action is breach of contract, a legal remedy. . ."); United Prairie Bank-Mountain Lake v. Haugen Nutrition & Equip., LLC, 813 N.W.2d 49, 57 (Minn. 2012) ("[W]e conclude that a claim for a monetary payment under a contractual indemnity provision is a legal claim . . ."); Hudson View II Assocs. v. Gooden, 644 N.Y.S.2d 512, 516 (App. Div. 1996) ("A cause of action seeking money damages for breach of contract is quintessentially an action at law.")  Here, the fact that declaratory relief is among Plaintiffs' requested remedies does not determine whether Plaintiffs' claims sound in equity or law.  In fact, when the specific relief is examined, Plaintiffs' request for monetary damages in compensation for the alleged contractual breaches is a request for legal relief.

Defendants also contend that their equitable defenses should not be stricken because Plaintiffs may, at some unspecified time, seek specific performance or otherwise seek to amend their claims to assert equitable relief.  (Defs.' Opp'n Mem. at 28-29 [Doc.

20

No. 253]) (emphasis added).  These arguments, however, are speculative.  At this point in the litigation, the Court's focus is not on hypothetical possibilities, but on the Complaints as currently pleaded, in which Plaintiffs do not seek equitable remedies.  Moreover, to the extent that Plaintiffs seek to amend the pleadings to assert equitable remedies, Defendants may similarly seek leave to amend their answers.  Based on the current pleadings, however, Defendants' arguments are unavailing.

### 1.    Unclean Hands

The equitable maxim that "he who comes into equity must come with clean hands" is "a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant."  Precision  Instrument Mfg. Co. v. Automotive Maintenance Machinery Co., 324 U.S. 806, 814 (1945).  Thus, under both New York and Minnesota law, a defense of unclean hands applies to claims that arise in equity and are not legal in nature.  See Uto v. Job Site Servs. Inc., 269 F.R.D. 209, 213 (E.D.N.Y. 2010) ("[I]t is black-letter law that '[u]nclean hands is an equitable defense' … [and] 'can only be asserted with respect to equitable—not legal—claims.'");  Progressive Techs., Inc. v. Shupe, No. A04-1110, 2005 WL 832059, at *4 (Minn. Ct. App. Apr. 12, 2005) (stating that unclean hands is an equitable defense and not a defense to a contractual claim) (citing Fred O. Watson Co. v. U.S. Life Ins. Co., 258 N.W.2d 776, 778 (Minn. 1977)); Bieter Co. v. Blomquist, 848 F. Supp. 1446, 1450-51 (D. Minn. 1994) (finding that "unclean hands "is not a valid defense to a claim for damages in Minnesota").  Courts have recognized an exception to this rule, stating, "This rule applies

to equitable actions <u>unless</u> it can be shown that the delay would result in substantial injury to innocent parties." <u>In re WCAL Charitable Trust</u>, No. A09-703, 2009 WL 5092650, at *5 (Minn. Ct. App. Dec. 29, 2009) (citing <u>Aronovitch v. Levy</u>, 56 N.W.2d 570, 574 (1953)) (emphasis in original).

Here, however, this action does not arise in equity or invoke an equitable remedy, nor is there "substantial injury to innocent parties." Accordingly, as a matter of law, there is no legal basis for the assertion of an unclean hands defense. To the extent that Plaintiffs' motion seeks to strike this defense, it is granted.

## 2.   Laches

Plaintiffs argue that they should not be required to litigate a laches defenses in tandem with a statute of limitations defense.[5] (Pls.' Mem. in Supp. Mot. to Strike at 14-15 [Doc. No. 150].) The doctrine of laches is defined as "[t]he equitable doctrine by which a court denies relief to a claimant who has unreasonably delayed in asserting the claim, when that delay has prejudiced the party against whom relief is sought." Black's Law Dictionary (9th ed. 2009); <u>accord</u> <u>Martin v. Dicklich</u>, 823 N.W.2d 336, 340 (Minn. 2012) (citations omitted). Laches applies to equitable claims, but not to purely legal claims. <u>See</u> <u>Medinol Ltd. v. Boston Scientific Corp.</u>, 346 F. Supp. 2d 575, 609 (S.D.N.Y. 2004); <u>Bongard v. Bongard</u>, 380 N.W.2d 592, 595 (Minn. Ct. App. 1986) (noting that

---

[5] Currently under advisement with the Court is a motion filed by Defendant Decision One Mortgage Company, LLC, and joined by certain other Defendants, in which they seek the dismissal of portions of Plaintiffs' breach of contract claim based on, among other things, expiration of the statute of limitations. (<u>See</u> Decision One Mem. Supp. Mot. to Dismiss at 29-36 [Doc. No. 217].)

laches is inapplicable where legal rights alone are in dispute) (citations omitted).  As the Supreme Court has explained, laches was developed by courts of equity and "its principal application was, and remains, to claims of an equitable cast for which the Legislature has provided no fixed time limitation."   Petrella v. Metro-Goldwyn-Mayer, Inc., 134 S. Ct. 1962, 1973 (2014).   Thus, where an applicable statute of limitations applies, "laches cannot be invoked to bar legal relief . . . ."   Id. at 1974; see also Advanced Cardiovascular Systems, Inc. v. Scimed Life Sys., Inc., 988 F.2d 1157, 1161 (Fed. Cir. 1993) ("When a limitation on the period for bringing suit has been set by statute, laches will generally not be invoked to shorten the statutory period.")

Again, Plaintiffs assert legal claims for breach of contract and indemnification, to which statutes of limitation apply.  Accordingly, as a matter of law, a defense of laches is inapplicable to this action, which involves purely legal claims.  Plaintiffs' motion to strike Defendants' laches defense is therefore granted.

### 3.    *In Pari Delicto*

Plaintiffs contend that the defense of *in pari delicto* – or "equal fault" – is inapplicable because it only applies in breach of contract actions involving an illegal contract or where the performance of the contract contemplates illegal conduct.  (Pls.' Mem. Supp. Mot. to Strike at 16 [Doc. No. 150].)  Defendants argue, however, argue that there is no such requirement.  (Defs.' Opp'n Mem. at 30-31 [Doc. No. 253].)  Furthermore, they contend that this is a fact-intensive defense, inappropriate for resolution on a motion to dismiss.  (See id.)

Under Minnesota law, courts have applied the defense of *in pari delicto* in three

circumstances:

> (1) preventing enforcement of a contract the performance of which is illegal; (2) preventing enforcement of an equitable remedy when the parties have been involved in mutually unlawful activity; or (3) use as a defense in a tort claim of one party against another.

Brubaker v. Hi-Banks Resort Corp., 415 N.W.2d 680, 684 (Minn. Ct. App. 1987). Notably, the court in Brubaker stated, "We find no cases where the doctrine was used to defeat the performance of a contract which was in itself not illegal." See also Katun Corp. v. Clarke, 484 F.3d 972, 978 (8th Cir. 2007) (noting that "Minnesota courts will not apply the doctrine 'to defeat the performance of a contract which was in itself not illegal' either on its face or in its enforcement.") New York law similarly applies *in pari delicto* to illegal conduct. See ImagePoint, Inc. v. JPMorgan Chase Bank, Nat. Ass'n, 27 F. Supp. 3d 494, 515 (S.D.N.Y. 2014) (stating that "parties to a fraudulent or illegal transaction who are *in pari delicto* may not invoke judicial aid to undo the consequences of their illegal acts.") (citation omitted).

Defendants do not assert that the contracts were illegal, nor do Plaintiffs seek the enforcement of an equitable remedy or assert a tort claim. See Brubaker, 415 N.W.2d at 684. While Defendants cite Minnesota legal authority for the proposition that an illegal contract is not required under Minnesota law for application of the *in pari delicto* defense (Defs.' Opp'n Mem. at 30-31 [Doc. No. 253]), the Court finds Defendants' authority inapposite. For example, Deephaven Capital Mgmt., LLC v. Schnell, No. 06-cv-844 (JRT/FLN), 2007 WL 101821, at * 3-4 (D. Minn. Jan. 8, 2007), which Defendants cite for the proposition that Plaintiffs cannot "seek indemnity for their own fraud" (Defs.'

Opp'n Mem. at 30-31 [Doc. No. 253]), does not even refer to *in pari delicto*. Rather, in

Deephaven, the court rejected an implied indemnity claim for federal securities

violations, 2007 WL 101821, at *3-4, while Plaintiffs here assert a claim for indemnity

based on express contract terms. Another of Defendants' authorities, In re Hansel, Nos.

02–93495 & 08–3177, 2012 WL 3113849 (Bankr. D. Minn. June 15, 2012), is similarly

inapplicable. In re Hansel involved a legal malpractice claim in a bankruptcy adversary

proceeding where both the debtor and the attorney acted fraudulently. Id. at *1. Not

surprisingly, the court in In re Hansel relied on authorities recognizing the application of

*in pari delicto* as a tort defense. Id. at * 9-12. Similarly, State v. AAMCO Automatic

Transmissions, Inc., 199 N.W.2d 444, 445-46 (Minn. 1972), concerned the cross-claim

and counterclaim of two co-defendants who were jointly sued for the same deceptive

advertising and sales practices. There, the Minnesota Supreme Court applied *in pari

delicto* to actions for tortious fraud or other intentional wrongdoing. Id. Finally, the

Court also finds Christians v. Grant Thornton LLP, 733 N.W.2d 803, 814 (Minn. Ct.

App. 2007), inapplicable. Christians was a case brought by a debtor's trustee against the

debtor's auditor for malpractice and breach of contract based on the auditor's

overestimation of the debtor's equity. Id. at 806-07. The auditor overestimated the

debtor's equity because the debtor had withheld information from the auditor. Id.

The Court acknowledges that, in many circumstances, factual disputes concerning

the mutual fault of the parties might render Rule 12(b)(6) dismissal of *in pari delicto*

inappropriate. See Stephenson v. Deutsche Bank AG, 282 F. Supp. 2d 1032, 1066 (D.

Minn. 2002); Index Fund, Inc. v. Hagopian, 107 F.R.D. 95, 101 (S.D.N.Y. 1985). Here,

however, nothing about the nature of the parties' agreements is alleged to have been illegal, nor have Plaintiffs asserted tort claims against Defendants. Accordingly, because the Court finds *in pari delicto* is inapplicable as matter of law, Plaintiffs' motion to strike this defense is granted.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      Plaintiffs' Motions to Strike, or in the Alternative, for Judgment on the Pleadings as to Ten of Defendants' Affirmative Defenses (Consolidated Action, 13-cv-3451 (SRN/JJK/HB) [Doc. No. 148] & Residential Funding Co., LLC v. Homestead Funding Corp., No. 13-cv-3520 (JRT/HB) [Doc. No. 65]) are **GRANTED IN PART and DENIED IN PART WITHOUT PREJUDICE**, as set forth herein.

2.      With respect to Residential Funding Company, LLC and ResCap Liquidating Trust v. Ark La-Tex Financial Services, LLC, No. 13-cv-3448 (DWF/TNL):

        a.      Defendant Ark La-Tex Financial Services, LLC's affirmative defense of assumption of risk (contained in Defendant's Eleventh Affirmative Defense, ECF No. 67) is **STRICKEN/DISMISSED WITH PREJUDICE**;

        b.      Defendant Ark La-Tex Financial Services, LLC's affirmative defense of unclean hands (contained in Defendant's Ninth Affirmative Defense, ECF No. 67) is **STRICKEN/DISMISSED WITH PREJUDICE**;

    c.    Defendant Ark La-Tex Financial Services, LLC's affirmative defense of laches (contained in Defendant's Ninth Affirmative Defense, ECF No. 67) is **STRICKEN/DISMISSED WITH PREJUDICE**; and

    d.    Defendant Ark La-Tex Financial Services, LLC's affirmative defense that Plaintiffs' causes of action are barred by failure to satisfy a condition precedent (contained in Defendant's Twelfth Affirmative Defense, ECF No. 67) is **STRICKEN WITHOUT PREJUDICE/DISMISSED WITHOUT PREJUDICE**.

3.    With respect to <u>Residential Funding Company, LLC v. Academy Mortgage Corporation</u>, No. 13-cv-3451 (SRN/BRT):

    a.    Defendant Academy Mortgage Corporation's affirmative defense of laches (contained in Defendant's Third Affirmative Defense, ECF No. 78) is **STRICKEN/DISMISSED WITH PREJUDICE**; and

    b.    Defendant Academy Mortgage Corporation's affirmative defenses of assumption of risk, unclean hands, and *in pari delicto* (contained in Defendant's Ninth Affirmative Defense, ECF No. 78) are **STRICKEN/DISMISSED WITH PREJUDICE**.

4.    With respect to <u>Residential Funding Company, LLC v. First California Mortgage Company</u>, No. 13-cv-3453 (SRN/JJK):

    a.    Defendant First California Mortgage Company's affirmative defense of laches (contained in Defendant's Second Affirmative Defense,

ECF No. 83) is **STRICKEN/DISMISSED WITH PREJUDICE**; and

     b.     Defendant First California Mortgage Company's affirmative defense of unclean hands (contained in Defendant's Tenth Affirmative Defense, ECF No. 83) is **STRICKEN/DISMISSED WITH PREJUDICE**.

5.     With respect to <u>Residential Funding Company, LLC and ResCap Liquidating Trust v. Community West Bank, N.A.</u>, No. 13-cv-3468 (JRT/JJK):

     a.     Defendant Community West Bank N.A.'s affirmative defense of unclean hands (contained in Defendant's Twelfth Affirmative Defense, ECF No. 61) is **STRICKEN/DISMISSED WITH PREJUDICE**; and

     b.     Defendant Community West Bank N.A.'s affirmative defense of assumption of risk (contained in Defendant's Twentieth Affirmative Defense, ECF No. 61) is **STRICKEN/DISMISSED WITH PREJUDICE**.

6.     With respect to <u>Residential Funding Company, LLC and ResCap Liquidating Trust v. Provident Funding Associates, L.P.</u>, No. 13-cv-3485 (SRN/TNL):

     a.     Defendant Provident Funding Associates, L.P.'s affirmative defense of assumption of the risk (contained in Defendant's Seventh Affirmative Defense, ECF. No. 85) is **STRICKEN/DISMISSED WITH PREJUDICE**;

b.      Defendant Provident Funding Associates, L.P.'s affirmative defense of laches (contained in Defendant's Eighth Affirmative Defense, ECF. No. 85) is **STRICKEN/DISMISSED WITH PREJUDICE**;

c.      Defendant Provident Funding Associates, L.P.'s affirmative defense of unclean hands (contained in Defendant's Ninth Affirmative Defense, ECF. No. 85) is **STRICKEN/DISMISSED WITH PREJUDICE**; and

d.      Defendant Provident Funding Associates, L.P.'s affirmative defense that Plaintiffs had failed to comply with one or more contractual conditions precedent to bringing suit (contained in Defendant's Seventeenth Affirmative Defense, ECF. No. 85) is **STRICKEN WITHOUT PREJUDICE/DISMISSED WITHOUT PREJUDICE**.

7.      With respect to Residential Funding Company, LLC and ResCap Liquidating Trust v. PNC Bank, N.A., as successor in interest to National City Mortgage Co., NCMC Newco, Inc., and North Central Financial Corporation, No. 13-cv-3498 (JRT/BRT):

a.      Defendant PNC Bank's affirmative defense of assumption of risk (contained in Defendant's Twenty-Second Affirmative Defense, ECF No. 85) is **STRICKEN/DISMISSED WITH PREJUDICE**;

b.      Defendant PNC Bank's affirmative defense of laches (contained in Defendant's Twenty-Fourth Affirmative Defense, ECF No. 85) is **STRICKEN/DISMISSED WITH PREJUDICE**;

c.      Defendant PNC Bank's affirmative defense that Plaintiffs' claims are barred because Plaintiffs have failed to comply with one or more contractual conditions precedent (contained in Defendant's Twenty Seventh Affirmative Defense, ECF No. 85) is **STRICKEN WITHOUT PREJUDICE/DISMISSED WITHOUT PREJUDICE**;

d.      Defendant PNC Bank's affirmative defense of unclean hands (contained in Defendant's Twenty-Ninth Affirmative Defense, ECF No. 85) is **STRICKEN/DISMISSED WITH PREJUDICE**; and

e.      Defendant PNC Bank's affirmative defense of *in pari delicto* (contained in Defendant's Twenty-Ninth Affirmative Defense, ECF No. 85) is **STRICKEN/DISMISSED WITH PREJUDICE**.

8.      With respect to <u>Residential Funding Company, LLC v. Branch Banking & Trust Co.</u>, No. 13-cv-3513 (PJS/BRT):

a.      Defendant Branch Banking & Trust Co.'s affirmative defense of laches (contained in Defendant's First and Seventeenth Affirmative Defenses, ECF No. 65) is **STRICKEN/DISMISSED WITH PREJUDICE**;

b.      Defendant Branch Banking & Trust Co.'s affirmative defense that

Plaintiff has failed to comply with one or more contractual

obligations and/or contractual conditions precedent (contained in

Defendant's Eighth Affirmative Defense, ECF No. 65) is

**STRICKEN WITHOUT PREJUDICE/DISMISSED WITHOUT**

**PREJUDICE**; and

c.      Defendant Branch Banking & Trust Co.'s affirmative defense of

unclean hands (contained in Defendant's Ninth Affirmative Defense,

ECF No. 65) is **STRICKEN/DISMISSED WITH PREJUDICE**.

9.      With respect to <u>Residential Funding Company, LLC v. BMO Harris Bank,</u>

<u>N.A. d/b/a M&I Bank, FSB</u>, No. 13-cv-3523 (JNE/FLN):

a.      Defendant BMO Harris Bank, N.A.'s affirmative defense of

assumption of risk (contained in Defendant's Fourteenth Affirmative

Defense, ECF No. 75) is **STRICKEN/DISMISSED WITH**

**PREJUDICE**;

b.      Defendant BMO Harris Bank, N.A.'s affirmative defense of laches

(contained in Defendant's Sixteenth Affirmative Defense, ECF No.

75) is **STRICKEN/DISMISSED WITH PREJUDICE**;

c.      Defendant BMO Harris Bank, N.A.'s affirmative defense that

Plaintiff's claims are barred because Plaintiff failed to comply with

one or more conditions precedent (contained in Defendant's

Nineteenth Affirmative Defense, ECF No. 75) is **STRICKEN**

**WITHOUT PREJUDICE/DISMISSED WITHOUT PREJUDICE**;

d.    Defendant BMO Harris Bank, N.A.'s affirmative defense of unclean hands (contained in Defendant's Twenty-First Affirmative Defense, ECF No. 75) is **STRICKEN/DISMISSED WITH PREJUDICE**; and

e.    Defendant BMO Harris Bank, N.A.'s affirmative defense of *in pari delicto* (contained in Defendant's Twenty-First Affirmative Defense, ECF No. 75) is **STRICKEN/DISMISSED WITH PREJUDICE**.

10.    With respect to <u>Residential Funding Company, LLC v. Wells Fargo Financial Retail Credit, Inc.</u>, No. 13-cv-3525 (SRN/JSM):

a.    Defendant Wells Fargo Financial Retail Credit, Inc.'s affirmative defense of laches (contained in Defendant's Seventh Affirmative Defense, ECF No. 101) is **STRICKEN/DISMISSED WITH PREJUDICE**;

b.    Defendant Wells Fargo Financial Retail Credit, Inc.'s affirmative defense of assumption of risk (contained in Defendant's Fourteenth Affirmative Defense, ECF No. 101) is **STRICKEN/DISMISSED WITH PREJUDICE**; and

c.    Defendant Wells Fargo Financial Retail Credit, Inc.'s affirmative defense that Plaintiff's claims are barred because Plaintiff has failed to comply with one or more contractual conditions precedent

(contained in Defendant's Nineteenth Affirmative Defense, ECF No.

101) is **STRICKEN WITHOUT PREJUDICE/DISMISSED**

**WITHOUT PREJUDICE**;

11.    With respect to <u>Residential Funding Company, LLC and ResCap</u>

<u>Liquidating Trust v. Standard Pacific Mortgage, Inc.</u>, No. 13-cv-3526 (JRT/JJK):

      a.    Defendant Standard Pacific Mortgage Inc.'s affirmative defense of

laches (contained in Defendant's Fifteenth Affirmative Defense,

ECF No. 83) is **STRICKEN/DISMISSED WITH PREJUDICE**.

12.    With respect to <u>Residential Funding Company, LLC and ResCap</u>

<u>Liquidating Trust v. iServe Residential Lending, LLC, as successor to United Residential</u>

<u>Lending, LLC</u>, No. 13-cv-3531 (PJS/TNL):

      a.    Defendant iServe Residential Lending, LLC's affirmative defense of

assumption of risk (contained in Defendant's Thirteenth Affirmative

Defense, ECF No. 75) is **STRICKEN/DISMISSED WITH**

**PREJUDICE**; and

      b.    Defendant iServe Residential Lending, LLC's affirmative defense of

laches (contained in Defendant's Fifteenth Affirmative Defense,

ECF No. 75) is **STRICKEN/DISMISSED WITH PREJUDICE**.

13.    With respect to <u>Residential Funding Company, LLC v. CTX Mortgage</u>

<u>Company</u>, No. 14-cv-1710 (DSD/TNL):

a. Defendant CTX Mortgage Company's affirmative defense of assumption of risk (contained in Defendant's Tenth Affirmative Defense, 13-cv-3451 ECF No. 141) is **STRICKEN/DISMISSED WITH PREJUDICE**; and

b. Defendant CTX Mortgage Company's affirmative defense that Plaintiff's claims are barred because it failed to comply with one or more contractual conditions precedent (contained in Defendant's Fifteenth Affirmative Defense, 13-cv-3451 ECF No. 141) is **STRICKEN WITHOUT PREJUDICE/DISMISSED WITHOUT PREJUDICE**.

14. With respect to <u>Residential Funding Company, LLC v. American Mortgage Network, LLC f/k/a American Mortgage Network, Inc., d/b/a Vertice and AMNET Mortgage LLC, f/k/a AMNET Mortgage, Inc., f/k/a American Residential Investment Trust, Inc. and Wells Fargo Bank, N.A.,</u> No. 14-cv-1760 (PJS/TNL):

a. Defendants American Mortgage Network, LLC, Amnet Mortgage LLC, and Wells Fargo Bank, N.A.'s affirmative defense of laches (contained in Defendants' Seventh Affirmative Defense, ECF No. 33) is **STRICKEN/DISMISSED WITH PREJUDICE**;

b. Defendants American Mortgage Network, LLC, Amnet Mortgage LLC, and Wells Fargo Bank, N.A.'s affirmative defense of assumption of risk (contained in Defendants' Fourteenth Affirmative

Defense, ECF No. 33) is **STRICKEN/DISMISSED WITH PREJUDICE**; and

  c.  Defendants American Mortgage Network, LLC, Amnet Mortgage LLC, and Wells Fargo Bank, N.A.'s affirmative defense that Plaintiff's claims are barred because Plaintiff failed to comply with one or more contractual conditions precedent (contained in Defendants' Nineteenth Affirmative Defense, ECF No. 33) is **STRICKEN WITHOUT PREJUDICE/DISMISSED WITHOUT PREJUDICE**;

15.  With respect to <u>Residential Funding Company, LLC v. Homestead Funding Corp.</u>, No. 13-cv-3520 (JRT/HB):

  a.  Defendant Homestead Funding Corp.'s Affirmative Defense of laches (contained in Defendant's Sixth Affirmative Defense) is **STRICKEN/DISMISSED WITH PREJUDICE;**

  b.  Defendant Homestead Funding Corp.'s Affirmative Defense of unclean hands (contained in Defendant's Sixth Affirmative Defense) is **STRICKEN/DISMISSED WITH PREJUDICE;**

  c.  Defendant Homestead Funding Corp.'s Affirmative Defense of assumption of risk (contained in Defendant's Sixth Affirmative Defense) is **STRICKEN/DISMISSED WITH PREJUDICE;** and

      d.     Defendant Homestead Funding Corp.'s Affirmative Defense of failure to satisfy conditions precedent (contained in Defendant's Eighth Affirmative Defense) is **STRICKEN WITHOUT PREJUDICE/DISMISSED WITHOUT PREJUDICE.**

Date: April 28, 2015

<u>s/Susan Richard Nelson</u>
SUSAN RICHARD NELSON
United States District Judge