UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

In Re: RFC and ResCap Liquidating          Case No. 13-cv-3451(SRN/JJK/HB)
Trust Litigation

                              **MEMORANDUM OPINION
                                  AND ORDER**

_____

*This document relates to:*

ResCap Liquidating Trust v. CMG Mortgage,
Inc., Case No. 14-cv-3522 (ADM)

ResCap Liquidating Trust v. Synovus
Mortgage Corp., Case No. 14-cv-3525
(DWF/BRT)

ResCap Liquidating Trust v. Honor Bank f/k/a
The Honor State Bank, Case No. 14-cv-3942
(DWF/JJK)

ResCap Liquidating Trust v. Primary Capital
Advisors, LLC, Case No. 14-cv-3950
(DWF/FLN)

ResCap Liquidating Trust v. PHH Mortgage
Corp., Case No. 14-cv-4701 (JRT)

ResCap Liquidating Trust v. First Mariner
Bank, Case No. 15-cv-0092 (SRN/JJK)

_____

SUSAN RICHARD NELSON, United States District Judge

      Before the Court is the Transfer Defendants' Collective Motion to Dismiss

Plaintiff's Breach of Contract Claims [Doc. No. 266]. The above-captioned Defendants ("Transfer Defendants") seek to dismiss Plaintiff ResCap Liquidating Trust's breach of contract claims as time-barred. For the reasons stated herein, the motion is denied.

I.      BACKGROUND

These lawsuits arise out of the Transfer Defendants' sale of allegedly defective mortgage loans to Residential Funding Corporation ("RFC"). (First Am. Compl. ¶ 1, Case No. 14-cv-3522 [Doc. No. 47].)[1] Plaintiff ResCap Liquidating Trust ("ResCap") is the successor to all of RFC's rights and interests under certain agreements between RFC and the Transfer Defendants. (*Id.* ¶¶ 6, 13.)

A.      **Events Preceding RFC's Bankruptcy**

Prior to May 2012, RFC was "in the business of acquiring and securitizing residential mortgage loans." (*Id.* ¶ 2.) RFC acquired the loans from "correspondent lenders," such as the Transfer Defendants, who were responsible for collecting and verifying information from the borrower and underwriting the loans. (*Id.* ¶¶ 3, 20.) After RFC purchased the loans from the Transfer Defendants, RFC either pooled the loans with similar loans to sell into residential mortgage-backed securitization ("RMBS") trusts or sold the loans to other purchasers. (*Id.* ¶ 3.)

---

[1] There are individual First Amended Complaints filed in each of the cases to which this Order pertains. (*See* Case No. 14-cv-3522 [Doc. No. 47], Case No. 14-cv-3525 [Doc. No. 57], Case No. 14-cv-3942 [Doc. No. 52], Case No. 14-cv-3950 [Doc. No. 53], Case No. 14-cv-4701 [Doc. No. 51], Case No. 15-cv-0092 [Doc. No. 51].) For ease of reference, the Court simply refers to the First Amended Complaint in ResCap Liquidating Trust's lawsuit against CMG Mortgage, Inc. (Case No. 14-cv-3522 [Doc. No. 47]). Even though the paragraph numbering differs slightly among the complaints, the substance of the allegations is generally similar. Where the allegations differ materially in a particular case, the Court will cite to the First Amended Complaint in that case.

As alleged in the First Amended Complaint, RFC's relationship with the Transfer Defendants was governed by a Seller Contract that incorporated the terms and conditions of the RFC Client Guide (collectively, "the Agreements").  (*Id.* ¶¶ 17-18 & Exs. A, B.)[2] Pursuant to the Agreements, the Transfer Defendants made many representations and warranties regarding the loans, which RFC considered to be material.  (*Id.* ¶¶ 24-25.) RFC considered any failure to comply with a representation or warranty an "Event of Default" under the Agreements.  (*Id.* ¶ 26.)  RFC retained sole discretion to declare an Event of Default, and the available remedies include repurchase of the defective loan, substitution of another loan, or indemnification against liabilities resulting from the breach.  (*Id.* ¶¶ 29-30.)  RFC alleges that the Agreements do not, however, require RFC to provide the Transfer Defendants with notice or an opportunity to cure, or demand repurchase within a particular amount of time.  (*Id.* ¶ 30.)

When RFC sold the loans acquired from the Transfer Defendants, RFC made its own representations and warranties, in reliance on the information provided to it by the Transfer Defendants.  (*Id.* ¶ 37.)  RFC alleges that, in many instances, the Transfer Defendants violated their representations and warranties, and many of the loans eventually defaulted or became delinquent.  (*Id.* ¶¶ 37, 48.)  After conducting an internal review, RFC determined that numerous loans violated the Agreements and resulted in an Event of Default.  (*Id.* ¶ 49.)  The types of defects included income and employment misrepresentations, owner occupancy misrepresentations, appraisal misrepresentations or

---

[2] The Agreements between RFC and PHH Mortgage Corp. allegedly included a Client Contract, a Client Guide, and a Mortgage Loan Flow Purchase, Sale & Servicing Agreement.  (First. Am. Compl. ¶¶ 17-18, Case No. 14-cv-4701 [Doc. No. 51].)

inaccuracies, undisclosed debt, and missing or inaccurate documents.  (*Id.* ¶ 50.)  RFC alleges that it has incurred liabilities and losses resulting from Defendants' defective loans and litigation regarding the quality of those loans.  (*Id.* ¶¶ 55-57.)

### B.   RFC's Bankruptcy Proceeding

RFC filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the Southern District of New York on May 14, 2012.  (*Id.* ¶ 77); *In re Residential Capital, LLC*, Case No. 12-12020 (MG) (Bankr. S.D.N.Y. filed May 14, 2012).  By this time, RFC had spent millions of dollars repurchasing defective loans, including loans sold to it by the Transfer Defendants.  (First Am. Compl.  ¶ 58, 76).  According to RFC, hundreds of proofs of claim related to allegedly defective mortgage loans, including those sold to RFC by the Transfer Defendants, were filed in connection with the bankruptcy proceedings.  (*Id.* ¶ 78.)  The Bankruptcy Court eventually approved a global settlement that provided for resolution of the RMBS-related liabilities for more than $10 billion.  (*Id.* ¶ 82.)  The Bankruptcy Court confirmed the Chapter 11 Plan on December 11, 2013, and the Plan became effective on December 17, 2013.  (*Id.*); Findings of Fact at 1, *In re Residential Capital, LLC*, Case No. 12-12020 (MG) (Bankr. S.D.N.Y. Dec. 11, 2013) [Doc. No. 6066].  Under the Plan, ResCap succeeded to all of RFC's rights and interests, including its claims against the Transfer Defendants.  (First Am. Compl. ¶ 82.)

### C.   The Present Actions

On May 13, 2014, ResCap commenced separate lawsuits as adversary proceedings against the Transfer Defendants in the United States Bankruptcy Court for the Southern

4

District of New York. (*E.g.*, *ResCap Liquidating Trust v. CMG Mortg., Inc.*, Adv. No. 14-01998 (MG) (Bankr. S.D.N.Y filed May 13, 2014).) ResCap filed amended complaints in those proceedings on July 24 and 25, 2014. (*See* Sullivan Decl. Exs. A-F, Case No. 13-cv-3451 [Doc. Nos. 270-1, 270-2].) ResCap alleged two claims against each Transfer Defendant: (1) a breach of contact claim founded on alleged breaches of warranties and representations, and (2) an indemnification claim. (*E.g.*, Sullivan Decl. Ex. E (First Am. Compl. ¶¶ 88, 95, *ResCap Liquidating Trust v. CMG Mortg., Inc.*, Adv. No. 14-01998 (MG) (Bankr. S.D.N.Y.)) [Doc. No. 270-2].) ResCap invoked federal diversity jurisdiction under 28 U.S.C. § 1332 and bankruptcy jurisdiction under 28 U.S.C. § 1334 in each case. (*Id.* ¶ 15.)

The cases subject to the present motion were transferred to the United States District Court for the District of Minnesota by either stipulation or motion. The parties stipulated to withdraw the bankruptcy reference and transfer venue to this District in two cases. (Stip. & Order, *ResCap Liquidating Trust v. Synovus Mortg. Corp.*, Case No. 14-cv-3525 [Doc. No. 31]; Stip. & Order, *ResCap Liquidating Trust v. Honor Bank*, Case No. 14-cv-3942 [Doc. No. 26].)[3] The other four cases were transferred here pursuant to court orders granting motions to withdraw the bankruptcy reference and transfer venue. (Order at 7, *ResCap Liquidating Trust v. CMG Mortg., Inc.*, Case No. 14-cv-3522 [Doc. No. 21]; Order at 1, 12, *ResCap Liquidating Trust v. Primary Capital Advisors, LLC*, Case No. 14-cv-3950 [Doc. No. 31]; Order at 1 & n.1, *ResCap Liquidating Trust v. PHH*

---

[3] When the Court refers to a document filed in both the Southern District of New York adversary proceeding and the District of Minnesota transferred action, the Court will cite to the record in the Minnesota action.

*Mortg. Corp.*, Case No. 14-cv-4701 [Doc. No. 33]; Order at 4, *ResCap Liquidating Trust v. First Mariner Bank*, Case No. 15-cv-0092 [Doc. No. 25].) ResCap filed a First Amended Complaint in each of the six transferred cases on April 17, 2015.

### D. The Transfer Defendants' Motion to Dismiss

The Transfer Defendants now move to dismiss as untimely ResCap's breach of contract claims, asserting the claims are time-barred under Minnesota's six-year statute of limitations, Minn. Stat. § 541.05, subd. 1(1); 11 U.S.C. § 108(a)(2); and Minn. R. Civ. P. 3.01(a).[4] (Transfer Defs.' Mem. Supp. Mot. Dismiss at 5, Case No. 13-cv-3451 [Doc. No. 268].) As the Transfer Defendants calculate the time, Minnesota's six-year statute of limitations ran from May 14, 2006, to May 14, 2012, when RFC filed a Chapter 11 bankruptcy petition. (*Id.* at 9.) By operation of 11 U.S.C. § 108(a), the statute of limitations was extended for two years, until May 14, 2014. (*Id.* at 8-9.) Although ResCap filed the adversary actions on May 13, 2014, it did not serve the summonses and complaints on the Transfer Defendants until May 28, 2014. (*See* Sullivan Decl. Exs. G-L (Affs. Service) [Doc. No. 270-2].) The Transfer Defendants ask the Court to measure the commencement of the transferred actions under Minn. R. Civ. P. 3.01(a), which establishes that a civil action is commenced on the date the summons is served on a defendant. (Transfer Defs.' Mem. Supp. Mot. Dismiss at 5 (citing Minn. R. Civ. P. 3.01(a)).) Applying this rule would result in a finding that the actions were commenced on May 28, 2014, which would render untimely ResCap's breach of contract claims

---

[4] The Transfer Defendants assume for the purposes of the motion that 11 U.S.C. § 108(a)(2) extended the state statute of limitations for two years. (Transfer Defs.' Mem. Supp. Mot. Dismiss at 5.)

against the Transfer Defendants.[5]

In response, ResCap argues that the Court should measure the commencement date of the transferred actions under Federal Rule of Civil Procedure 3, which establishes that a civil action is commenced on the date the complaint is filed. (ResCap's Mem. Opp'n Mot. Dismiss at 2.) Applying this rule would result in a finding that the actions were commenced timely on May 13, 2014.

## II.   DISCUSSION

### A.   Legal Standard on a Rule 12(b)(6) Motion to Dismiss

When evaluating a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted, the Court assumes the facts alleged in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the plaintiff. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). However, the Court need not accept as true wholly conclusory allegations, *see Hanten v. School District of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions the plaintiff draws from the facts pled, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). In addition, the Court ordinarily does not consider matters outside the pleadings on a motion to dismiss. *See* Fed. R. Civ. P. 12(d). The Court may, however, consider exhibits attached to the complaint and documents that are necessarily embraced by the pleadings, *Mattes v. ABC*

---

[5] The parties do not dispute that RFC acquired the loans at issue from CMG, Synovus, Primary Capital, PHH Mortgage, and Honor Bank before May 28, 2008. (*See* Transfer Defs.' Mem. Supp. Mot. Dismiss at 5 n.6.) Although First Mariner may have sold some loans to RFC after May 28, 2008, ResCap has not alleged any defects in those loans. (*Id.*)

*Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003), as well as public records, *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007).

> B.   **The Tension Between Minnesota Rule of Civil Procedure 3.01(a) and Federal Rule of Civil Procedure 3**

There is a fundamental difference between Minnesota law and federal law concerning when an action is commenced.  Under Minnesota law, an action is commenced on the date the summons is served on the defendant, regardless of when the complaint is filed.  Minn. R. Civ. P. 3.01(a).  ResCap served the summonses on the Transfer Defendants on May 28, 2014, and under Minnesota law, these actions were commenced on that date.  By contrast, under federal law, an action is commenced on the date the complaint is filed.  Fed. R. Civ. P. 3.  ResCap filed the initial complaint in these actions on May 13, 2014, and under federal law, the actions were commenced on that date.  The question for the Court is whether to apply Minnesota Rule 3.01(a) or Federal Rule 3 to determine the commencement date of these actions.

> C.   **Federal Subject Matter Jurisdiction**

The Transfer Defendants argue that Minnesota Rule 3.01(a) establishes the commencement date, because these matters are proceeding in federal court under diversity jurisdiction.  But the issue is not resolved by mere reference to the basis for federal jurisdiction.  ResCap pleaded both diversity jurisdiction under 28 U.S.C. § 1332 and bankruptcy jurisdiction under 28 U.S.C. § 1334(b), and the Court finds that both statutes provide a source for federal subject matter jurisdiction.

There is no dispute that the Court has diversity jurisdiction pursuant to § 1332. Diversity jurisdiction "requires an amount in controversy greater than $75,000 and complete diversity of citizenship of the litigants." *OnePoint Solutions, LLC v. Borchert*, 486 F.3d 342, 346 (8th Cir. 2007) (citing 28 U.S.C. § 1332(a)). These requirements are met in each of the transferred actions.

Section 1334 provides for several forms of federal bankruptcy jurisdiction, including cases that "relate to" a bankruptcy. *See* 28 U.S.C. § 1334(b) (granting federal district courts jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11"). "Congress did not delineate the scope of 'related to' jurisdiction, but its choice of words suggests a grant of some breadth." *Celotex Corp. v. Edwards*, 514 U.S. 300, 307-08 (1995); *see In re NWFX, Inc.*, 881 F.2d 530, 533 (8th Cir. 1989) (construing broadly the concept of "related to" jurisdiction). Federal subject matter jurisdiction exists in a "related to" case when there is "some nexus between the civil proceeding and the Title 11 case." *Integrated Health Servs. of Cliff Manor, Inc. v. THCI Co., LLC*, 417 F.3d 953, 958 (8th Cir. 2005) (quoting *Specialty Mills, Inc. v. Citizens State Bank*, 51 F.3d 770, 774 (8th Cir. 1995)); *see Kocher v. Dow Chem. Co.*, 132 F.3d 1225, 1230 (8th Cir. 1997) ("A claim is 'related to' a bankruptcy proceeding within the meaning of § 1334(b) if it 'could conceivably have any effect' on the bankruptcy estate.") (*quoting Abramowitz v. Palmer*, 999 F.2d 1274, 1277 (8th Cir. 1993)).

The test in the Eighth Circuit to determine "related to" jurisdiction is whether the outcome of the civil case "could conceivably have any effect on the estate being

9

administered in bankruptcy." *Specialty Mills*, 51 F.3d at 774 (quoting *Dogpatch Props., Inc. v. Dogpatch U.S.A., Inc. (In re: Dogpatch U.S.A., Inc.)*, 810 F.2d 782, 786 (8th Cir. 1987)); *see Greenpond S., LLC v. Gen. Elec. Capital Corp.*, No. 14-cv-1214 (SRN/TNL), 2015 WL 225227, at *4 (D. Minn. Jan. 16, 2015) (citing *Buffets, Inc. v. Leischow*, 732 F.3d 889, 894 (8th Cir. 2013)). "These possible effects include any matter that could alter the debtor's rights, liabilities, options, or freedom of action . . . and which in any way impacts upon the handling and administration of the bankrupt estate." *Integrated Health Servs.*, 417 F.3d 953, 958 (8th Cir. 2005) (quoting *Dogpatch Props.*, 810 F.2d at 786) (internal quotation marks omitted). Even a case that "portends a mere contingent or tangential effect on a debtor's estate meets the broad jurisdictional test." *In re Titan Energy, Inc.*, 837 F.2d 325, 330 (8th Cir. 1988).

Under this broad standard, the Court finds that ResCap's claims against the Transfer Defendants could conceivably have an effect on the implementation, interpretation, or administration of the Chapter 11 Plan. The Plan expressly preserved RFC's claims and transferred them to ResCap to pursue. (*See* Order at 6, *ResCap Liquidating Trust v. Primary Capital Advisors, LLC*, Case No. 14-cv-3950 [Doc. No. 31]); *see Residential Funding Co. LLC v. Greenpoint Mortg. Funding, Inc. (In re Residential Capital, LLC)*, 519 B.R. 593, 600 (S.D.N.Y. 2014). The very purpose of these actions is to prosecute those claims. In addition, the Chapter 11 Plan provides for RFC's creditors to share in any recovery obtained by ResCap. (*See* Order at 6, *Primary Capital Advisors*, Case No. 14-cv-3950 [Doc. No. 31]); *see Greenpoint Mortg. Funding*, 519 B.R. at 600. "An action is related to the bankruptcy case if 'it affects the amount of

10

property available for distribution or the allocation of property among creditors.'" *Luker v. Reeves (In re Reeves)*, 65 F.3d 670, 675 (8th Cir. 1995) (quotation omitted). Finally, the Plan expressly provides for the retention of jurisdiction over ResCap's claims, and ResCap's claims fall within the scope of the Plan. (*See* Order at 7, *Primary Capital Advisors*, Case No. 14-cv-3950 [Doc. No. 31]); *see Greenpoint Mortg. Funding*, 519 B.R. at 600.

These circumstances are more than sufficient to meet not only the Eighth Circuit's "any conceivable effect" test, but also the more stringent, Second Circuit, post-confirmation "close nexus" test. (Order at 6, *Primary Capital Advisors*, Case No. 14-cv-3950 [Doc. No. 31]); *Greenpoint Mortg. Funding*, 519 B.R. at 600. In *Greenpoint*, the court considered whether it had "related to" bankruptcy jurisdiction pursuant to § 1334(b) over RFC's state law claims for breach of contract and indemnification. 519 B.R. at 599. The court acknowledged the claims were not created by the Bankruptcy Code and would be cognizable outside the adversary proceeding. *Id.* When the *Greenpoint* case was filed, RFC's Chapter 11 Plan had already been confirmed by the Bankruptcy Court, and it was an open question in the Second Circuit whether to apply the "any conceivable effect" test or the "close nexus" test in a post-confirmation case. *Id.* at 600. The court found that bankruptcy jurisdiction existed under the more rigorous "close nexus" standard, precisely for the reasons set forth above:

> The confirmed plan of liquidation expressly preserves RFC's claims and transfers them to the liquidating trust to prosecute. . . . RFC's claims in this action are such transferred claims, and any funds recovered will be distributed to the creditors of the estate. . . . Further, the plan also expressly provides for retention of jurisdiction over these claims, by preserving both

> "exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 cases and the Plan," and jurisdiction over "any Causes of Action preserved under the Plan."

*Id.* Correspondingly, this Court finds that it has § 1334(b) bankruptcy jurisdiction in these matters under both the "any conceivable effect" standard and the "close nexus" standard.

      **D.**     *Walker v. Armco Steel Corporation* **and 11 U.S.C. § 108(a)(2)**

Against this jurisdictional backdrop, the Court frames the parties' arguments. In reliance on *Walker v. Armco Steel Corporation*, 446 U.S. 740 (1980), the Transfer Defendants argue that the Court must apply Minnesota Rule 3.01(a) to establish when the actions were commenced, because ResCap has alleged solely state law claims, the claims are governed by a state statute of limitations, and the actions are proceeding in federal court under diversity jurisdiction.

*Walker* originated as a federal case founded on diversity jurisdiction. 446 U.S. at 741. The United States Supreme Court determined that a state's service of process requirements were an integral part of the applicable state statute of limitations, and thus controlled when the action was commenced for the purpose of tolling the limitations period. *Id.* at 752-53. The Oklahoma statute of limitations at issue provided that an action was not commenced until the defendant was served with process. *Id.* at 742-43 (citing 12 Okla. Stat. § 95 (1971) (repealed Nov. 1, 1984)). The plaintiff did not serve process within the limitations period or the statutory sixty-day grace period, however, and conceded the suit would have been barred in state court. *Id.* at 748. Adopting the lower courts' reasoning that the service requirement was "an integral part" of the statute of

12

limitations, the Court drew a distinction between Federal Rule 3 as a procedural rule, and the Oklahoma statute, which the Court found was a substantive law requiring actual service on and notice to the defendant. *Id.* The Court concluded that "in diversity actions[] Rule 3 governs the date from which various timing requirements of the Federal Rules begin to run, but does not affect state statutes of limitations." *Id.* at 751.

In response to the Transfer Defendants' *Walker* argument, ResCap argues that the timeliness of its claims is not governed by a state statute of limitations, but by a federal statute, 11 U.S.C. § 108(a)(2). According to ResCap, the operation of § 108(a)(2) renders *Walker* distinguishable and inapplicable.

Section 108(a)(2) provides:

(a) If applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of—
. . .
(2) two years after the order for relief.

11 U.S.C. § 108(a)(2). An "order for relief" includes "[t]he commencement of a voluntary case under a chapter of this title." 11 U.S.C. § 301(b).

There is no dispute that ResCap, as the bankruptcy trustee, is entitled to proceed under § 108(a)(2). *See Residential Funding Co., LLC v. Cmty. W. Bank, N.A.*, Case No. 13-cv-3468 (JRT/JJK), 2014 WL 5207485, at *8 (D. Minn. Oct. 14, 2014) (citing *Antioch Litig. Trust v. McDermott Will & Emery LLP*, 500 B.R. 755, 763 (S.D. Ohio 2013)). Further, this Court has already determined in a related matter that § 108(a)(2) applies to

RFC's breach of representation and warranty claims. *Acad. Mortg. Corp.*, 2014 WL 5860566, at *11 (finding that "if the statute of limitations governing a debtor's claim has not expired prior to the filing of the bankruptcy petition, the trustee may commence an action on that claim before the later of the end of the statutory limitations period or 'two years after the order for relief.'").

      The Court agrees with ResCap that *Walker* is inapposite to the transferred actions on several grounds.  First, while a state statute of limitations, Minn. Stat. § 541.05, subd. 1(1), provided an initial six-year limitations period in which to bring suit, ResCap filed these actions under the authority of § 108(a)(2), a federal statute, which explicitly authorized ResCap to file the cases within two years of the bankruptcy filing.  There was no such intervening federal statute in *Walker*.  Second, *Walker* referred to the Oklahoma service requirements as an "integral part" of the applicable state statute of limitations, and while Minnesota's service rule may be an integral part of Minnesota's statute of limitations, the Minnesota statute of limitations is not the statute presently governing the timeliness of ResCap's claims.  Section 108(a)(2) is the operational statute, and the Transfer Defendants have not shown Minnesota's service rule to be an integral part of § 108(a)(2).  Third, this Court has bankruptcy jurisdiction, as well as diversity jurisdiction, over ResCap's claims.  Such dual grounds for jurisdiction were not present in *Walker*.  Fourth, *Walker* explicitly acknowledged that a state's service requirements would not apply in the face of a governing federal rule: "There is simply no reason why, in the absence of a controlling federal rule, an action based on state law which concededly would be barred in the state courts by the state statute of limitations should proceed

14

through litigation to judgment in federal court . . . ." 446 U.S. at 753. Section 108(a)(2) is precisely such a rule; it controls when the trustee may commence an action when faced with the expiration of a fixed period of time. When ResCap commenced these actions pursuant to and in accordance with the time period prescribed by § 108(a)(2), Minn. Stat. § 541.05 no longer controlled the commencement of the actions.

This conclusion is supported by *Mukamal v. Cosmos, Inc. (In Re: Palm Beach Finance Partners, L.P.)*, Adv. No. 11-02970-BKC-PGH-A (Bankr. S.D. Fla. July 30, 2013). *Mukamal* was an avoidance action filed in bankruptcy court pursuant to 11 U.S.C. § 541 by a liquidating trustee. Adv. No. 11-02970, slip op. at 2. Faced with whether to apply Federal Rule 3 or Minnesota Rule 3.01 to determine the commencement date of the action, the court described § 108(a)(2) as "provid[ing] an additional time period within which" to commence the action. *Mukamal*, Adv. No. 11-02970, slip op. at 34-35. "It is this time period, not the time period pr[e]scribed by the Minnesota statute of limitations, which is now at issue." *Id.* at 35.

> Accordingly, Federal Rule of Civil Procedure 3 must apply to determine whether the Plaintiff "commenced" this adversary proceeding "before the later of . . . two years after the order for relief." *See* 11 U.S.C. § 108(a). It would make little sense for the Court to use Minnesota's (or any other state's) definition of "commence" to determine whether an adversary proceeding was commenced within the two-year limitations period prescribed by § 108 of the Bankruptcy Code.

*Id.*

The Court finds *Mukamal* persuasive. These actions were "commenced" in federal court within the time period prescribed by § 108(a)(2). This statute explicitly authorizes a trustee to "commence" an action within two years of an order for relief. It

15

would make little sense to apply Minnesota's definition of "commence" to a federal statute that governs the commencement of an action in federal court.

As a final matter, the Transfer Defendants attribute some significance to the name of § 108, "Extension of Time," and suggest that the statute extended not only Minnesota statute of limitations but also Minnesota's service requirements. This position is not supported by the statutory language or case authority, however, and in light of the above discussion, the Court declines to adopt the argument.

### E. Application of § 108(a)(2)

Applying § 108(a)(2) to these proceedings, the "applicable nonbankruptcy law" that fixed the period of time within which to commence these actions was Minnesota's six-year statute of limitations. With respect to loans sold to RFC by the Transfer Defendants on or after May 14, 2006, that six-year period had not expired when RFC filed the Chapter 11 petition on May 14, 2012. *See Acad. Mortg. Corp.*, 2014 WL 5860566, at *11. The filing of the bankruptcy petition operated as an "order for relief" under § 108(a)(2) and thus extended the time for ResCap to "commence" suit on the breach of contract claims from May 14, 2012, to May 14, 2014.

ResCap filed the complaints in these matters, pursuant to § 108(a)(2), on May 13, 2014. Given that ResCap commenced the actions under a federal statute that not only authorized the commencement of the actions but also prescribed the time to do so, the Court looks to Federal Rule 3 to determine the date the actions were commenced. Under Federal Rule 3, the actions were commenced on the date the complaints were filed. Accordingly, the breach of contract claims are timely.

Therefore, **IT IS HEREBY ORDERED** that the Transfer Defendants' Collective Motion to Dismiss Plaintiff's Breach of Contract Claims [Doc. No. 266] is **DENIED**.

Dated: May 18, 2015                                  s/Susan Richard Nelson
                                                     SUSAN RICHARD NELSON
                                                     United States District Judge