## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In Re: RFC and RESCAP Liquidating Trust Litigation | Consolidated Action<br>Civil File No. 13-3451 (SRN/JJK/HB) |

*This document relates to:*

Residential Funding Company, LLC v. DB
Structured Products, Inc., and MortgageIT,
Inc.,  No. 14-cv-143 (ADM/TNL)

## MEMORANDUM OPINION AND ORDER

SUSAN RICHARD NELSON, United States District Judge

## I.      INTRODUCTION

This matter is before the Court on the Motion to Dismiss the First Amended Complaint

filed by Defendants DB Structured Products, Inc. ("DBSP"), and MortgageIT, Inc.

("MortgageIT").  (Doc. No. 225.)  After the Court held a hearing on the motion, the parties

entered a stipulation by which DBSP withdrew that portion of the motion seeking to dismiss the

claims against it that were premised on "alter-ego" liability.  (Doc. No. 462 ¶ 7 (agreeing to

withdraw motion to dismiss "Indirect Claims" against DBSP).)  However, the motion survived

the stipulation to the extent MortgageIT seeks to dismiss certain claims against it as time barred.

(*Id.*; Doc. No. 465, May 20, 2015 Order Adopting Stipulation ¶ 1.)  For the reasons set forth

below, the surviving portion of the motion—in which MortgageIT contends that claims based on

breaches of representations and warranties for loans sold prior to August 20, 2008, are barred by

the statute of limitations—is denied.

II.     BACKGROUND

      A.      **Procedural History**

Plaintiff Residential Funding Company, LLC ("RFC"), served its original Complaint on

DBSP on December 16, 2013.  (Case No. 14-cv-143 (ADM/TNL), Doc. No. 1, Notice of

Removal.)  At that time, MortgageIT was not named as a defendant.  In its original Complaint,

RFC alleged that it purchased loans from MortgageIT pursuant to a contract and that DBSP was

liable for MortgageIT's breaches of that contract.  RFC's theory was that DBSP was liable as

MortgageIT's successor in interest.  (Case No. 14-cv-143, Doc. No. 1-1 at 5, Compl.; *Id.*, Compl.

at 7, ¶ 13.)

Eight months later, on August 20, 2014, RFC filed its First Amended Complaint.  (Case

No. 14-cv-143, Doc. No. 36, First Am. Compl.)  There were two major changes in the First

Amended Complaint.  The first was that RFC named MortgageIT as a defendant for the first

time.  (*Id.* ¶ 14.)  As for the claims against MortgageIT in the First Amended Complaint, RFC

alleged that MortgageIT was liable for its own breaches of warranties and representations about

the condition of the loans it sold to RFC, which representations and warranties MortgageIT made

in the parties' contract.  The second major change was that RFC added an additional theory of

recovery against DBSP, asserting that DBSP was MortgageIT's alter ego.  (*Id.* ¶¶ 14, 89-99.)

On May 4, 2015, after this case had been administratively consolidated with several other

related cases into this proceeding, RFC filed a Second Amended Complaint.  (Case No. 13-cv-

3451, Doc. No. 405, Second Am. Compl.)  This Second Amended Complaint is now the

operative pleading.  The major difference between the Second Amended Complaint and the First

Amended Complaint is that RFC has now added allegations regarding DBSP's direct sale of

loans to RFC under a different agreement than the one that governs RFC's relationship with

MortgageIT.  (*E.g.*, Second Am. Compl. ¶¶ 14, 17.)  In the Second Amended Complaint, RFC

did not change the allegations it had made in the First Amended Complaint concerning

MortgageIT's alleged breaches of representations and warranties.

Because RFC filed its Second Amended Complaint after MortgageIT filed the pending

motion to dismiss, but did not alter the allegations it had asserted against MortgageIT in the First

Amended Complaint, the Court can consider MortgageIT's motion to dismiss as being directed

toward the latest version of the pleadings.  *See* 6 Charles Alan Wright & Arthur R. Miller,

*Federal Practice and Procedure* § 1476 at p. 558 (2d ed. 1990) ("[D]efendants should not be

required to file a new motion to dismiss simply because an amended pleading was introduced

while their motion was pending."); *see also Delgado-O'Neil v. City of Minneapolis, et al.*, No.

08-cv-4924 (MJD/JJK), 2010 WL 330322, at *1 n.1 (D. Minn. Jan. 20, 2010) (same) (citing 6

Wright & Miller, § 1476 at p. 558).

### B.       Allegations in the Second Amended Complaint Regarding MortgageIT

RFC alleges the following historical facts in its Second Amended Complaint.  RFC's

relationship with MortgageIT was governed by a Seller Contract that incorporated terms of the

RFC Client Guide (collectively, "the Agreements").  (Second Am. Compl. ¶¶ 17-18, Exs A, B.)

Those Agreements, or excerpts thereof, are attached to the First Amended Complaints as

Exhibits A and B, respectively. Pursuant to the Agreements, MortgageIT made many

representations and warranties regarding the loans, including: (1) MortgageIT's origination and

servicing of the loans was "legal, proper, prudent and customary"; (2) MortgageIT would

"promptly notify" RFC of any material acts or omissions regarding the loans; (3) all loan-related

information that MortgageIT provided to RFC was "true, complete and accurate"; (4) all loan

documents were "genuine" and "in recordable form"; (5) all loan documents were in compliance

with local and state laws; (6) there was "no default, breach, violation or event of acceleration" under any note transferred to RFC; (7) each loan was "originated, closed, and transferred" in compliance with all applicable laws; (8) none of the loans were "high-cost" or "high-risk"; (9) there were no existing circumstances that could render the loans an "unacceptable investment," cause the loans to become "delinquent," or "adversely affect" the value of the loans; (10) the loans were underwritten in compliance with the Client Guide; (11) appropriate appraisals were conducted when necessary; (12) the market value of the premises was at least equal to the appraised value stated on the loan appraisals; and (13) there was no fraud or misrepresentation by the borrower or MortgageIT regarding the origination or underwriting of the loans. (*Id.* ¶ 24.) RFC considered these representations and warranties to be material, and any failure to comply constituted an "Event of Default" under the Agreements. (*Id.* ¶¶ 25-26.) RFC retained sole discretion to declare an Event of Default, and the available remedies include repurchase of the defective loan, substitution of another loan, or indemnification against liabilities resulting from the breach. (*Id.* ¶¶ 28-30.) The Agreements do not, however, require that RFC provide MortgageIT with notice or an opportunity to cure, or demand repurchase within a particular amount of time. (*Id.* ¶ 30.)

In addition and of particular relevance here, RFC alleges that "MortgageIT also has a continuing obligation under Section A201(M) of the Client Guide to promptly notify RFC of any act or omissions which might impact the Loan, the Mortgaged Property, or the Mortgagor (as such terms are defined in the Client Guide)." (*Id.* ¶ 20.) RFC further asserts that "MortgageIT has continually breached this obligation [under Section A201(M)], including through to the present, by failing to inform RFC of the loan defects." (*Id.*)

RFC alleges that, pursuant to these Agreements, it purchased over 8,200 loans from MortgageIT.  (*Id.* ¶ 17.)  RFC then either pooled those loans to sell into residential mortgage-backed securitization ("RMBS") trusts or sold them to whole loan purchasers.  (*Id.* ¶¶ 3.)  A list of the loans sold to RFC by MortgageIT and securitized by RFC is attached to the First Amended Complaint as Exhibit C.  (*Id.* ¶ 19.)

In passing on its own representations and warranties to its buyers, RFC relied on the information provided to it by MortgageIT.  (*Id.* ¶ 38.)  However, RFC alleges that, in many instances, MortgageIT violated its representations and warranties.  (*Id.*)  According to RFC, many of the loans eventually defaulted or became delinquent and sustained millions of dollars in losses.  (*Id.* ¶ 50.)  After conducting an internal review, RFC determined that hundreds of loans sold by MortgageIT violated the Agreements and resulted in an Event of Default.  (*Id.* ¶ 40.)  The review demonstrated that the loans had one or more of the following defects: income and employment misrepresentations, owner occupancy misrepresentations, appraisal misrepresentations or inaccuracies, undisclosed debt, insufficient credit scores, lien position, and missing or inaccurate documents, among others.  (*Id.* ¶ 52.)

RFC alleges that it has incurred liabilities and losses resulting from MortgageIT's (and other correspondent lenders') defective loans and litigation regarding the quality of those loans.  (*See id.* ¶¶ 55-90.)  Beginning in 2008, RFC faced claims and lawsuits resulting from defective loans it had purchased from MortgageIT and other defendants in this consolidated action, (*id.* ¶ 58), and by May 2012, RFC had spent millions of dollars repurchasing defective loans, including loans sold to it by MortgageIT and others, (*id.* ¶ 83).  And, on May 14, 2012, RFC filed for Chapter 11 bankruptcy in the Bankruptcy Court for the Southern District of New York.  (*Id.* ¶ 84; *In re Residential Capital, LLC*, Case No. 12-12020 (MG) (Bankr. S.D.N.Y.).)

According to RFC, hundreds of proofs of claim related to allegedly defective mortgage loans, including those sold to RFC by MortgageIT, were filed in connection with the bankruptcy proceedings. (*Id.* ¶ 85.) The Bankruptcy Court eventually approved a global settlement that provided for resolution of the RMBS-related liabilities for more than $10 billion. (*Id.* ¶ 89.) The Bankruptcy Court confirmed the Chapter 11 Plan on December 11, 2013, and the Plan became effective on December 17, 2013. (*Id.*; Findings of Fact at 1, *In re Residential Capital, LLC*, Case No. 12-12020 (MG) (Bankr. S.D.N.Y. Dec. 11, 2013) (Doc. No. 6066).) Under the Plan, the ResCap Liquidating Trust succeeded to RFC's rights and interests, including its claims against MortgageIT. (Second Am. Compl. ¶ 13.)

RFC alleges that MortgageIT is obligated, pursuant to the Agreements, to compensate RFC for the portion of the global settlement, and other losses, related to MortgageIT's breaches of representations and warranties. (*Id.* ¶ 90.) Accordingly, RFC initiated this (and several other) lawsuits between December 12 and 16, 2013, asserting two causes of action against each defendant, although as noted above, RFC did not sue MortgageIT when it initiated this action. In Count One, a claim for breach of representation and warranty, RFC alleges that, although it "complied with all conditions precedent, if any, and all of its obligations under the Agreement[s]," (*id.* ¶ 105), MortgageIT materially breached the representations and warranties it made to RFC because the mortgage loans it sold to RFC did not comply with those representations and warranties, (*id.* ¶ 106). RFC asserts that these material breaches constitute Events of Default under the Agreements and have resulted in losses and liabilities related to the defective loans, as well as losses associated with defending the lawsuits and proofs of claim that stem from those loans. (*Id.* ¶¶ 107-08.) In Count Two, RFC alleges that it is entitled to

indemnification, pursuant to provisions in the Agreements, from MortgageIT for those losses and liabilities.  (*Id.* ¶¶ 111-15.)

### III.   DISCUSSION

#### A.   Motion to Dismiss Standards

When evaluating a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted, the Court assumes the facts in the Complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the plaintiff.  *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986).  However, the Court need not accept as true wholly conclusory allegations, *see Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions the plaintiff draws from the facts pled, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).  In addition, the Court ordinarily does not consider matters outside the pleadings on a motion to dismiss.  *See* Fed. R. Civ. P. 12(d).  The Court may, however, consider exhibits attached to the complaint and documents that are necessarily embraced by the pleadings, *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003), and may also consider public records, *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007).

#### B.   The Parties' Arguments

MortgageIT argues that pursuant to Rule 12(b)(6), the Court should dismiss RFC's claims against MortgageIT concerning breaches of representations and warranties for loans sold before August 20, 2008.  MortgageIT asserts that all such claims are barred by Minnesota's six-year statute of limitations for breach-of-contract claims.  (Doc. No. 227, Defs.' Mem. in Supp. of Mot. to Dismiss ("Defs.' Mem.") 20-27.)  MortgageIT contends that the representations and warranties regarding the loans it sold to RFC concerned the condition of the loans at the time

each loan was sold.  As a result, MortgageIT argues, RFC's cause of action for breaches of those

representations and warranties accrued when the loans were sold.  (Defs.' Mem. 20-21.)

Because RFC first sued MortgageIT on August 20, 2014, when RFC filed the First Amended

Complaint, MortgageIT argues that "[a]pplying Minnesota's six year statute of limitations . . .

any claims for breach of representations and warranties sold prior to August 20, 2008 [six years

before MortgageIT was named a defendant] must be time-barred."  (*Id.* at 21.)  Based on the

procedural history discussed above, MortgageIT further asserts that August 20, 2008, is the

appropriate cutoff date for RFC's claims because RFC's First Amended Complaint does not

relate back to the date of the original Complaint.  (*Id.* at 21 n.7; Doc. No. 231, Defs.' Reply

Mem. in Supp. of Mot. to Dismiss ("Defs.' Reply") 9-11.)

In response, RFC argues that the statute of limitations on its breach of representation and

warranty claims was tolled by its bankruptcy filing, and as a result, at a minimum, such claims

are timely with respect to all loans sold to RFC on or after May 14, 2006.  (Doc. No. 236, Pl.'s

Resp. to Defs.' Mot. to Dismiss ("RFC's Resp.") 27-28.)  Next, RFC contends that its claims

against MortgageIT relate back to the date of the original Complaint, which was filed on

December 16, 2013, making MortgageIT's proposed August 20, 2008 cutoff irrelevant.  (*Id.* at

28-32.)  Further, RFC argues that its contract claims are timely for loans sold prior to May 14,

2006, because Section A201(M) of the Client Guide governing the parties' relationship imposes

on MortgageIT a "continuing obligation" to "'promptly notify [RFC] of any occurrence, act, or

omission' which 'may materially affect' the loans 'of which [MortgageIT] has knowledge[.]'"

(*Id.* at 32.)

###### C.       Analysis

Based on the allegations in the pleadings alone, the Court cannot conclude that all of

RFC's claims for loans sold prior to August 20, 2008, are time barred.  RFC's allegations

concerning Section A201(M) of the Client Guide preclude such a conclusion.  In Section

A201(M), MortgageIT made the representation and warranty that it would notify RFC of any

occurrence, act, or omission that materially affected the loans MortgageIT sold to RFC.  (Second

Am. Compl. ¶ 20; Case No. 14-cv-143, Doc. No. 36, First Am. Compl. ¶ 20.)  RFC further

alleges that "MortgageIT has continually breached this obligation, including through to the

present, by failing to inform RFC of the loan defects."  (Second Am. Compl. ¶ 20; Case No. 14-

cv-143, Doc. No. 36, First Am. Compl. ¶ 20.)  Thus, as this Court concluded in *Residential*

*Funding Co., LLC v. Academy Mortgage Corp.*, No. 13-cv-3451, 2014 WL 5860566 (D. Minn.

Nov. 12, 2014), "it is plausible from the face of the [pleading] that one of the allegedly breached

warranties related to an event that occurred, if at all, after the sale of a loan."  *Id.* at *11.

Taking the inferences from the pleadings in RFC's favor, as the Court must, if RFC

proves that MortgageIT breached its representation and warranty that it would notify RFC of

information it learned or events that occurred after the loans were sold, and that post-sale

acquisition of information or the discovery of post-sale events materially affected the loans, then

RFC's claims relating to such issues would not be time-barred even if the loans were sold prior

to August 20, 2008.  The cause of action for such a breach of this contractual provision would

arise on the date of the post-sale event.  *See id.* at *11 (citing *City of Pipestone v. Wolverine Ins.*

*Co.*, Civ. No. 4-84-634, 1985 WL 1845, at *4 (D. Minn. June 28, 1985)) ("Where a warranty

relates to a future event that will determine whether or not it is breached, the statute [of

limitations] does not begin to run until the happening of such future event.").  The Court cannot

resolve this issue based solely on the face of the pleadings because the dates when MortgageIT

allegedly breached the representation and warranty in Section A201(M) of the Client Guide is an

issue that goes beyond the pleadings.  To conclude otherwise would be to take the reasonable

inferences from the allegations in the pleadings in MortgageIT's favor, contrary to the proper

Rule 12(b)(6) standard.

Because RFC's "continuing obligation" theory prevents the Court from concluding, on

the face of the pleadings alone, that the statute of limitations bars all of RFC's claims for

breaches of representations and warranties for loans sold prior to August 20, 2008, the Court

need not consider the parties' other arguments.[1]

---

[1]      MortgageIT argues that the First Amended Complaint (which named MortgageIT as a
defendant in this case for the first time on August 20, 2014) does not relate back to the date the
original Complaint was served (December 16, 2013).  MortgageIT also asserts that RFC cannot
take advantage of the two-year extension of the statute of limitations provided by 11 U.S.C.
§ 108(a)(2), if the First Amended Complaint does not relate back.  However, the Court need not
address either of these arguments as a result of its determination of the "continuing obligation"
issue.  If, for example, MortgageIT sold loans to RFC before August 20, 2008, and then, after the
sale was completed, MortgageIT failed to notify RFC of events that occurred or information
MortgageIT learned in January 2011 that materially affected the loans, then RFC's claims
concerning the breach of Section A201(M) of the Client Guide would not be time-barred even if
the First Amended Complaint does not relate back to the date of the original pleading.  The same
is true regardless of whether RFC commenced this action against MortgageIT within the two-
year period by which the statute of limitations was extended pursuant to 11 U.S.C. § 108(a)(2).
In other words, for purposes of determining whether RFC has failed to state a claim under Rule
12(b)(6), the Court's resolution of the "continuing obligation" issue has rendered the relation-
back analysis and the application of section 108(a)(2) moot.  In its briefing, although MortgageIT
disputed RFC's "continuing obligation" theory's viability, it presented no argument that
dismissal would be required if RFC prevailed on that issue.  (*See* Defs.' Mem. 22-27 (addressing
RFC's "continuing obligation" theory under Section A201(M) of the Client Gude); Defs.' Reply
11-13 (same).)

For the foregoing reasons, **IT IS HEREBY ORDERED** that the surviving portion of the

Motion to Dismiss the First Amended Complaint [Doc. No. 225], is **DENIED**.


Dated: June 8, 2015                                    s/Susan Richard Nelson
                                                       SUSAN RICHARD NELSON
                                                       United States District Judge