**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| In re: RFC and ResCap Liquidating Trust Litigation | Case No. 13-cv-3451 (SRN/JJK/HB) |
| *This document relates to:* | |
| Residential Funding Company, LLC v. Mortgage Network, Inc., No. 13-cv-3491 (DWF/HB) | |
| Residential Funding Company, LLC v. Lake Forest Bank & Trust Company, No. 13-cv-3497 (PAM/FLN) | |
| Residential Funding Company, LLC v. Circle Mortgage Corp., No. 13-cv-3545 (PAM/JJK) | **MEMORANDUM OPINION AND ORDER** |
| Residential Funding Company, LLC v. DB Structured Products, Inc. and MortgageIT, Inc., No. 14-cv-143 (ADM/TNL) | |
| Residential Funding Company, LLC v. Home Loan Center, Inc., No. 14-cv-1716 (DWF/JJK) | |
| Residential Funding Company, LLC v. Decision One Mortgage Company, LLC and HSBC Finance Corporation, No. 14-cv-1737 (MJD/JSM) | |
| Residential Funding Company, LLC v. E-Loan, Inc., No. 14-cv-1739 (PAM/JJK) | |
| Residential Funding Company, LLC v. RBC Mortgage Company, No. 14-cv-3093 (PJS/BRT) | |

| | |
|---|---|
| Residential Funding Company, LLC v. CMG Mortgage, Inc., 14-cv-3522 (ADM)<br><br>Residential Funding Company, LLC v. Synovus Mortgage Corp., No. 14-cv-3525 (DWF/BRT)<br><br>Residential Funding Company, LLC v. Honor Bank f/k/a The Honor State Bank, No. 14-cv-3942 (DWF)<br><br>Residential Funding Company, LLC v. Primary Capital Advisors, LLC, No. 14-cv-3950 (DWF)<br><br>Residential Funding Company, LLC v. PHH Mortgage Corporation, No. 14-cv-4701 (JRT)<br><br>Residential Funding Company, LLC v. First Mariner Bank, No. 15-cv-92 (SRN/JJK) | |

SUSAN RICHARD NELSON, United States District Judge

## I.    INTRODUCTION

This matter is before the Court on Defendant Decision One Mortgage Company, LLC's Motion to Dismiss Plaintiff's First Amended Complaint [Doc. No. 215].  Defendants Mortgage Network, Inc. [Doc. No. 262], Lake Forest Bank & Trust Company [Doc. No. 235], Circle Mortgage Corp. [Doc. No. 252], DB Structured Products, Inc. [Doc. No. 249], MortgageIT, Inc. [Doc. No. 249], Home Loan Center, Inc. [Doc. No. 261], HSBC Finance Corporation [Doc. No. 246], E-Loan, Inc. [Doc. No. 251], RBC Mortgage Company [Doc. No. 273], CMG Mortgage, Inc. [Doc. No. 260], Synovus Mortgage

Corp. [Doc. No. 275], Honor Bank f/k/a The Honor State Bank [Doc. No. 269], Primary

Capital Advisors, LLC [Doc. No. 274], PHH Mortgage Corporation [Doc. No. 265], and

First Mariner Bank [Doc. No. 276] each joined this Motion in whole or in part.[1]  For the

reasons set forth below, the Motion is denied.

## II.    BACKGROUND

These lawsuits arise out of Defendants' sale of allegedly defective mortgage loans to

Plaintiff Residential Funding, LLC ("RFC").  (First Am. Compl. ¶ 1.)[2]  Prior to May 2012,

RFC was "in the business of acquiring and securitizing residential mortgage loans."  (Id.

¶ 2.)  RFC acquired the loans from "'correspondent lenders,'" such as Defendants, who

were responsible for collecting and verifying information from the borrower and

underwriting the loans.  (Id. ¶¶ 3, 21.)  RFC alleges that it was understood by Defendants

that RFC would not be re-underwriting the loans.  (Id. ¶ 21.)

According to RFC, its relationship with each Defendant was governed by a Seller

Contract that incorporated the terms and conditions of the RFC Client Guide (collectively,

"the Agreements").  (Id. ¶¶ 18–19 & Exs. A, B-1, B-5–B-31.)  Those Agreements, or

---

[1]      Defendant Sierra Pacific Mortgage Company, Inc. also filed a notice of joinder in
Decision One's Motion [Doc. No. 264], which it subsequently withdrew [Doc. No. 331].
In addition, Defendants DB Structured Products, MortgageIT, CMG Mortgage, Home
Loan Center, and Mortgage Network filed their notices of joinder in the form of a
motion.  Those parties were required only to provide the Court with notice of their intent
to join in Defendant Decision One's Motion.  The Court takes notice of their joinder, and
the joinder "motions" [Doc. Nos. 249, 260, 261, 262] are denied as moot.

[2]      There is a separate operative complaint in each of the cases that are the subject of
this Memorandum Opinion and Order.  However, Decision One is the only party that
fully briefed the Motion.  Accordingly, the Court will cite only to the operative First

excerpts thereof, are attached to the First Amended Complaint.  Pursuant to the Agreements, Defendants made many representations and warranties regarding the loans, including that Defendants would "promptly notify" RFC of any material acts or omissions regarding the loans.  (Id. ¶ 25(b) (citing Client Guide A201(M)).)  The Agreements also provided for certain remedies for RFC in the event of a breach, including repurchase of the defective loan or indemnification against losses and liabilities resulting from the breach.  (Id. ¶¶ 30–34.)

After purchasing loans from Defendants, RFC either pooled the loans to sell into residential mortgage-backed securitization ("RMBS") trusts or sold them to whole loan purchasers.  (Id. ¶¶ 3, 37.)  According to RFC, many of the loans eventually defaulted or became delinquent and, beginning in 2008, RFC faced claims and lawsuits resulting from defective loans it had purchased from Defendants.  (Id. ¶¶ 49, 57.)  By May 2012, RFC had spent millions of dollars repurchasing defective loans, including loans sold to it by Defendants.  (Id. ¶ 78.)  And, on May 14, 2012, RFC filed for Chapter 11 bankruptcy in the Bankruptcy Court for the Southern District of New York.  (Id. ¶ 79; In re Residential Capital, LLC, Case No. 12-12020 (MG) (Bankr. S.D.N.Y.).)

According to RFC, hundreds of proofs of claim related to allegedly defective mortgage loans, including those sold to RFC by Defendants, were filed in connection with the bankruptcy proceedings.  (First Am. Compl. ¶ 80.)  The Bankruptcy Court eventually approved "a global settlement that . . . provided for the resolution of all of the Debtors' RMBS-related liabilities for more than $10 billion in allowed claims."  (Id. ¶ 83.)  The

---

Amended Complaint in that matter [14-cv-1737, Doc. No. 19] for purposes of describing the allegations at issue.

Bankruptcy Court confirmed the Chapter 11 Plan on December 11, 2013, and the Plan became effective on December 17, 2013.  (Id. ¶ 84; Findings of Fact at 1, In re Residential Capital, LLC, Case No. 12-12020 (MG) (Bankr. S.D.N.Y. Dec. 11, 2013) [Doc. No. 6066].)

RFC claims that Defendants are obligated, pursuant to the Agreements, to compensate RFC for the portion of the global settlement and other losses and liabilities related to Defendants' breaches of representations and warranties.  (Id. ¶ 85.)  Accordingly, RFC filed lawsuits asserting two causes of action against each Defendant.  In Count One, a claim for breach of contract based on alleged breaches of representations and warranties, RFC alleges that, although it "complied with all conditions precedent, if any, and all of its obligations under the Agreement," (id. ¶ 99), Defendants materially breached the representations and warranties they made to RFC because the mortgage loans they sold to RFC did not comply with those representations and warranties, (id. ¶ 100).  RFC asserts that these material breaches constitute Events of Default under the Agreements and have resulted in losses and liabilities related to the defective loans, as well as losses associated with defending the lawsuits and proofs of claim that stem from those loans.  (Id. ¶¶ 101–02.) In Count Two, RFC alleges that it is entitled to indemnification from Defendants for those losses and liabilities.  (Id. ¶¶ 105–09.)

In its Motion to Dismiss, Decision One argues that:  (1) RFC's claims fail because it did not provide the contractually-required notice and opportunity to repurchase or cure prior to bringing this lawsuit; (2) RFC cannot bring suit on liquidated loans; (3) RFC is not entitled to relief with respect to claims brought against it for which it incurred no actual

losses; and (4) the statute of limitations precludes recovery on loans purchased prior to May 14, 2006.  (Mot. to Dismiss of Decision One Mortg. Co. [Doc. No. 215] at 1–2.)  As noted above, several other Defendants joined this Motion in whole or in part.[3]  After the matter was heard on March 31, 2015, RFC was permitted to submit briefing on "unique issues in opposition" to the joinder of certain Defendants[4] [Doc. No. 353], and those Defendants were permitted a reply [Doc. No. 368].  (See Pretrial Order No. 4 [Doc. No. 214] at 3–4.) The issues raised in the supplemental briefing were heard on April 24, 2015.

---

[3]      Therefore, the Court will refer to the arguments raised in support of the Motion as those of "Defendants," collectively.

[4]      In this opposition based on "unique issues," RFC makes four arguments in addition to those it raised in opposition to Decision One's Motion:  (1) Defendant PHH Mortgage and RFC were parties to an agreement different than the Client Guide and which does not permit dismissal of RFC's claims against PHH Mortgage; (2) a potentially-superseded agreement between RFC and Defendant CMG Mortgage further demonstrates that RFC can recover on liquidated loans; (3) Defendant Primary Capital should not be allowed to argue in this Motion the unique issues that it also raises in its separate motion to dismiss; and (4) the Bankruptcy Court's ruling with respect to statute of limitations has no res judicata effect in this litigation.  (Pl.'s Mem. on Unique Issues in Opp. to Defs.' Joinders to Decision One Mortg. Co.'s Mot. to Dismiss on Common Issues [Doc. No. 353] at 1–11.)
        As for RFC's first argument, the issue of the separate agreement between RFC and PHH Mortgage is addressed in PHH Mortgage's Unique Issue Motion to Dismiss [Doc. No. 301], (see Defs.' Reply in Supp. of Their Joinders [Doc. No. 368] at 2), and the Court will address the issue in a separate decision on that motion.  The Court declines to address RFC's second argument because it is unnecessary in light of the Court's decision herein to deny Decision One's Motion as it relates to liquidated loans.  As for RFC's third argument, Primary Capital simply stated that its joinder to Decision One's Motion was subject to the arguments it would make in its Unique Issues Motion to Dismiss. RFC's fourth argument is discussed below in Part III.D.3.

## III.     DISCUSSION

When evaluating a motion to dismiss under Rule 12(b)(6) of the Federal Rules of

Civil Procedure, for failure to state a claim upon which relief can be granted, the Court

assumes the facts in the Complaint to be true and construes all reasonable inferences from

those facts in the light most favorable to the plaintiff.  Morton v. Becker, 793 F.2d 185, 187

(8th Cir. 1986).  However, the Court need not accept as true wholly conclusory allegations,

see Hanten v. Sch. Dist. of Riverview Gardens, 183 F.3d 799, 805 (8th Cir. 1999), or legal

conclusions the plaintiff draws from the facts pled, Westcott v. City of Omaha, 901 F.2d

1486, 1488 (8th Cir. 1990).  In addition, the Court ordinarily does not consider matters

outside the pleadings on a motion to dismiss.  See Fed. R. Civ. P. 12(d).  The Court may,

however, consider exhibits attached to the complaint and documents that are necessarily

embraced by the pleadings, Mattes v. ABC Plastics, Inc., 323 F.3d 695, 697 n.4 (8th Cir.

2003), and may also consider public records, Levy v. Ohl, 477 F.3d 988, 991 (8th Cir.

2007).[5]

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint "must

contain . . . a short and plain statement of the claim showing that the pleader is entitled to

relief."  The U.S. Supreme Court, in Ashcroft v. Iqbal, 556 U.S. 662 (2009), and Bell

Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), clarified that this Rule does not require

---

[5]     Several exhibits were attached to the First Amended Complaint in each matter,
including the Seller Contract entered into with the relevant Defendant (Exhibit A) and
excerpts of the Client Guide (Exhibit B).  The Court may properly consider these
documents because they are attached to the First Amended Complaint and are necessarily
embraced by the pleadings.

that a complaint contain "detailed factual allegations," but it does require that it contain facts

with enough specificity "to raise a right to relief above the speculative level." Twombly,

550 U.S. at 555.  In other words, this standard "calls for enough fact[s] to raise a reasonable

expectation that discovery will reveal evidence of [the claim]." Id. at 556. "Threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do

not suffice." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555).  Thus, to survive a

motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is

plausible on its face." Twombly, 550 U.S. at 570.

Here, Defendants have raised arguments relating to the sufficiency of RFC's

pleading and satisfaction of conditions precedent, RFC's ability to assert claims based on

liquidated loans, RFC's right to relief based on losses and liabilities, and the running of the

statute of limitations as to certain claims.  The Court will address each issue below.

## A.    Conditions Precedent

Defendants first argue that RFC's breach of contract and indemnification claims fail

because RFC does not, and cannot, allege that it performed the conditions precedent

necessary to maintain those claims—i.e., that it gave Defendants the contractually required

notice of breach and opportunity to repurchase or cure the allegedly defective loans.  (Def.

Decision One's Mem. of Law in Supp. of Mot. to Dismiss [Doc. No. 217] ("Def.'s Mem.")

at 12.)  According to Defendants, although RFC alleges that the Agreements did not require

RFC to provide notice and an opportunity to cure, that allegation is contradicted by the plain

terms of the Seller Contract which—as an exhibit to the First Amended Complaint—trumps

the allegations.  (Id. at 12, 14–15.)  Defendants argue that, instead, RFC's allegations state

that it is only requesting relief for loans for which it did not provide notice and seek

repurchase.  (Id. at 15.)  According to Defendants, the failure to perform such conditions

precedent is a basis for dismissal of a breach of contract claim.  (Id. at 13–14.)

In response, RFC argues that a general allegation that all conditions precedent have

been satisfied is sufficient under Federal Rule of Civil Procedure 9(c) and that the

Agreements do not contradict that allegation but rather allow for an exercise of remedies

without a notice obligation.  (See Pl.'s Opp. to Decision One's Mot. to Dismiss [Doc. No.

223] ("Pl.'s Opp.") at 4–7, 10.)  In addition, RFC asserts that failure to satisfy a condition

precedent is an affirmative defense involving disputes of facts and for which Defendant

bears the burden of pleading and proving, and that it would not make sense to bar RFC's

claims for a failure to notify Defendants of breaches when Defendants had an obligation to

notify RFC of those breaches.  (See id. at 7–12.)  RFC also asserts that there is no

affirmative allegation that notice was not provided and that, even if the First Amended

Complaint alleges that notice was given as to some loans, it does not mean that notice was

not given as to others.  (Id. at 6–7.)

Defendants' arguments fail for the same reasons this Court discussed in its decision

in Residential Funding Co. v. Academy Mortgage Corp., 59 F. Supp. 3d 935, 949–51 (D.

Minn. 2014).  First, the elements of a breach of contract claim based on alleged breaches of

representations and warranties are:  existence of a warranty, reliance on the warranty, breach

of the warranty, and a causal link between the breach and the alleged harm.  See Hendricks

9

v. Callahan, 972 F.2d 190, 192–94 (8th Cir. 1992) (citing Midland Loan Fin. Co. v.

Masden, 14 N.W.2d 475, 481 (Minn. 1944)).[6]  Thus, satisfaction of conditions precedent is

not an element of RFC's claims that RFC was required to plead.  Moreover, the cases relied

upon by Defendants for the proposition that conditions precedent are enforceable and that

the failure to provide notice when required may bar a subsequent breach of contract claim,

(see Def.'s Mem. at 12–14), were either decided on summary judgment—without a

discussion of pleading requirements—or involved an admission of noncompliance with a

condition precedent.  See Cameo Homes v. Kraus-Anderson Constr. Co., 394 F.3d 1084,

1085 (8th Cir. 2005) (summary judgment); Sterling Fed. Bank, F.S.B. v. DLJ Mortg.

Capital, Inc., No. 09 C 6904, 2010 WL 3324705, at *4 (N.D. Ill. Aug. 20, 2010)

(admission); Valspar Refinish, Inc. v. Gaylord's, Inc., 764 N.W.2d 359, 363 (Minn.

2009) (summary judgment); Blaine Econ. Dev. Auth. v. Royal Elec. Co., 520 N.W.2d

473, 476 (Minn. Ct. App. 1994) (summary judgment); Surgical Principals, Inc. v. Minn.

Med. Dev., Inc., No. A13-0694, 2014 WL 1660662, at *1 (Minn. Ct. App. Apr. 28, 2014)

(summary judgment).  Therefore, they are inapplicable to the present Motion.

Second, even assuming that satisfaction of conditions precedent is an element that

RFC was required to plead, RFC's allegations are sufficient.  Under Rule 9(c), "[i]n

pleading conditions precedent, it suffices to allege generally that all conditions precedent

have occurred or been performed."  Fed. R. Civ. P. 9(c).  Therefore, RFC's general

allegation that it "complied with all conditions precedent, if any, and all of its obligations

---

[6]        The parties agree that Minnesota law governs RFC's claims.

under the Agreement" is adequate.  See, e.g., Cummins Law Office, P.A. v. Norman Graphic Printing Co., 826 F. Supp. 2d 1127, 1129 (D. Minn. 2011) (finding the plaintiff's allegation that "'[a]ny conditions precedent to [its] right to demand performance by [the defendant] have been performed'" to be sufficient under Rule 9); Residential Funding Co. v. Broadview Mortg. Corp., Civ. No. 13-3463 (ADM/SER), 2014 WL 4104819, at *8 (D. Minn. Aug. 19, 2014) (finding RFC's allegations in a similar case that "it performed all of its obligations to Defendants, and 'all conditions precedent to the relief sought in this action, if any, have been satisfied,'" to be sufficient at the pleading stage).

Third, all inferences must be drawn in RFC's favor at this stage of the proceedings. Thus, although Decision One argues that its Seller Contract with RFC contained a "specially-negotiated Addendum" with a unique notice requirement, (Reply Brief in Supp. of Mot. to Dismiss of Def. Decision One [Doc. No. 221] ("Def.'s Reply") at 1),[7] RFC points to an amendment to the Seller Contract and a later version of the Client Guide that purport to change or eliminate any notice requirement, (Pl.'s Opp. at 5 n.2, 10). Without the benefit of a more developed record, the Court is unable to determine which

---

[7]     Decision One cites to the following contract language that is contained in a June 2000 Addendum to the Seller Contract:

> Notwithstanding anything else appearing in this Agreement to the contrary, GMAC/RFC shall not exercise any other rights and remedies against or with respect to Client or any affected Loan unless and until Client has first been afforded the opportunity to cure or repurchase such affected Loan, as provided in Section 8.A.1. above, and Client has failed to cure or repurchase in the time allowed.

(First Am. Compl., Ex. A at 33; see Def.'s Mem. at 12; Def.'s Reply at 1 n.1.)  Section 8.A.1. requires written notice.  (See First Am. Compl., Ex. A at 30.)

contractual provisions were in effect and governed the parties' relationship at the relevant time.  Likewise, although Defendants contend that RFC admitted its failure to provide an opportunity to repurchase by conceding that it sold the loans to third parties, (see Def.'s Mem. at 15–16; Def.'s Reply at 1–2), RFC points to language in the agreements stating that RFC was not required to seek repurchase within a particular period of time, (see Pl.'s Opp. at 12 n.12).[8]  In light of the absence of an affirmative allegation that RFC did not provide notice, whether Defendants did, indeed, receive or have notice is a question of fact.  See MASTR Asset Backed Sec. Trust 2006-HE3 ex rel. U.S. Bank Nat'l Ass'n v. WMC Mortg., LLC, 983 F. Supp. 2d 1104, 1113–14 (D. Minn. 2013) (stating that a trustee should be given an opportunity to prove that the mortgage originator knew of a breach of representations and warranties because "[i]f, as the Trustee pleads, [the originator] knew of a breach . . . and the Trustee did not, then the Trustee did not have an opportunity to request [the originator] to cure or repurchase the defective mortgage, as provided by the sole remedies clause" of their

---

[8]     For example, RFC cites to the following provisions of the Client Guide:

GMAC-RFC is not required to demand repurchase within any particular period of time, and may elect not to require immediate repurchase. . . .

. . . .

GMAC-RFC may demand that a Client repurchase, and Client must repurchase, a Loan after foreclosure . . . .

(First Am. Compl., Ex. B-1 at 58, 60; Pl.'s Opp. at 12 n.12.)  RFC also points to a provision of the Seller Contract that states that "[t]he option to request or accept repurchase of any Loan is at the sole discretion of GMAC/RFC."  (First Am. Compl., Ex. A at 30; Pl.'s Opp. at 12 n.12.)

agreement).  Any inferences in Defendants' favor on these issues, based solely on the

pleadings and the conflicting language in the exhibits to the pleadings, would be improper

on a motion to dismiss.

### B.    Liquidated Loans

Defendants next argue that RFC's claims based on liquidated loans fail because the

Client Guide contained a "survival clause" in Section A209(c), under which the

representations and warranties at issue were only effective for the "life of the loans":

> GMAC-RFC's remedies for breach of the representations, warranties and
> covenants shall survive the sale and delivery of the Loan to GMAC-RFC and
> funding of the related purchase price by GMAC-RFC, and will continue in
> full force and effect for the remaining life of the Loans, notwithstanding any
> termination of this Client Guide and the related Funding Documents, or any
> restrictive or qualified endorsement on any mortgage Note or assignment of
> mortgage or Loan approval or other examination of or failure to examine any
> related mortgage Loan file by GMAC-RFC.

(First Am. Compl., Ex. B-1 at 58; see Def.'s Mem. at 16–19.)  Defendants argue that courts

interpret such language as limiting the time period in which lawsuits arising from a breach

of the representation and warranty must be filed.  (See Def.'s Mem. at 17–18; Def.'s Reply

at 5.)  In response, RFC argues that Defendants have incorrectly interpreted the Client

Guide and that the survival clause actually contains language of extension; that several other

provisions of the Client Guide and Seller Contract make it clear that RFC's rights and

remedies are preserved as to foreclosed and liquidated loans; and that Defendants' argument

is premature because there is no evidence before the Court as to the status of the loans.

(Pl.'s Opp. at 12–19.)

The Court cannot properly dismiss RFC's claims based on liquidated loans at this stage of the proceedings.  First, in each of the Eighth Circuit and District of Minnesota cases relied upon by Defendants, the contract language at issue expressly limited the time period in which claims based on breaches of the contract could be asserted.  For example, in Eckert v. Titan Tire Corp., the contractual language at issue provided that "'[t]he representations and warranties of the parties . . . and the right to make a claim for indemnification hereunder for breaches of representations and warranties or otherwise with respect thereto shall survive only for a period of one (1) year after the Closing Date.'"  514 F.3d 801, 803 (8th Cir. 2008) (emphasis added).  The Eighth Circuit held that "the plain language of [the contract] makes it clear that the parties sought to require that claims for breaches of representations and warranties . . . be brought within one year of the close of the transaction."  Id. at 804 (emphasis added); see also Pentair, Inc. v. Wis. Energy Corp., 545 F. Supp. 2d 917, 920 (D. Minn. 2008) ("'The representations and warranties shall survive the Closing for a period lasting until, and no claim or action shall be brought . . . for breach of a representation or warranty after the lapse of, twelve (12) months after the Closing.'"); Caddy Prods., Inc. v. Greystone Int'l, Inc., Civ. No. 05-301 (JRT/FLN), 2006 WL 2385149, at *2 (D. Minn. Aug. 17, 2006) ("'The representations and warranties . . . , and all claims with respect to such representations and warranties hereunder, shall terminate upon the expiration of two (2) years following the Closing Date.'").  Contrary to the language at issue in those cases, Section A209(c) does not expressly restrict the time period in which a claim based on representations and warranties can be initiated.  Accordingly, the contractual

14

language is—at best—ambiguous, in which case its interpretation cannot be resolved on a motion to dismiss.  See Olympus Ins. Co. v. AON Benfield, Inc., 711 F.3d 894, 898 (8th Cir. 2013) ("If the court determines that a contract is ambiguous, its interpretation then becomes a question of fact for the jury and the district court should not grant a motion to dismiss.").

Second, RFC has identified multiple other provisions of the parties' Agreements that contradict Defendants' restrictive reading of Section A209(c).  (See Pl.'s Opp. at 15–16.)  For example, Section 205(C) of the Client Guide provides that, in certain circumstances, RFC's remedies survive after a loan has been paid in full:

> Client's representations, warranties and covenants with respect to each Loan, and GMAC-RFC's remedies for Client's breach of such representations, warranties and covenants with respect to each Loan will continue in full force and effect until the latest of: (i) the date such Loan has been irrevocably paid in full, (ii) the date the last limitations period for bringing claims against GMAC-RFC or its successors or assigns concerning the subject matter of Client's representations and warranties with respect to such Loan expire under all applicable law, and (iii) the date any claim, suit or other proceeding against GMAC-RFC or its successors or assigns concerning the subject matter of Client's representations, warranties and covenants with respect to such Loan have been conclusively determined or settled and all applicable appeals have been exhausted.

(First Am. Compl., Ex. B-1 at 30.)  While Defendants argue that these additional contractual provisions are inapplicable to the present situation, (see Def.'s Reply at 5), Defendants fail to address how the provisions may be harmonized with Section A209(c), as required under Minnesota law.  See Chergosky v. Crosstown Bell, Inc., 463 N.W.2d 522, 525 (Minn. 1990) ("We construe a contract as a whole and attempt to harmonize all clauses of the contract.").

Accordingly, Defendants' motion to dismiss RFC's claims that are based on liquidated loans is denied.

### C.      Actual Losses

Defendants also argue that RFC's indemnification and breach of contract claims are barred except to the extent that RFC seeks actual losses or damages.  (Def.'s Mem. at 19.) Defendants assert that the pre-December 1, 2005 Client Guide's indemnification provision provided relief only as to "losses" and not "liabilities," and so Defendants' indemnification obligation did not arise under that version of the Client Guide until RFC incurred actual loss or damage.  (Id. at 20–21.)  And, according to Defendants, the post-December 1, 2005 amendment to the Client Guide's indemnification provision to include relief as to "liabilities" provides no additional relief to RFC beyond indemnification for actual losses because RFC was released from all "liabilities" in the bankruptcy proceedings.  (Id. at 21– 22.)  Finally, Defendants argue that the breach of contract claims can only be maintained to the extent that RFC suffered actual damages.  (Id. at 22.)

RFC, on the other hand, argues that the pre-December 1, 2005 Agreements' indemnification provisions cover "liabilities" and "claims," and so RFC is not limited to recovery for its out-of-pocket losses.  (Pl.'s Opp. at 19–24.)  To the extent that there is any dispute regarding the proper interpretation of the indemnification provisions at issue, RFC argues, those disputes cannot be resolved on a motion to dismiss.  (Tr. of Mar. 31, 2015 Status Conference and Hr'g [Doc. No. 359] ("Tr.") at 93.)  In addition, RFC asserts that Defendants are not relieved of their indemnification obligations by virtue of the bankruptcy

proceedings because only RFC—and not RFC's bankruptcy estate—was discharged from its liabilities, and the Confirmation Order and Chapter 11 Plan expressly preserve the indemnity claims and the estate's ability to pursue those claims after confirmation of the Plan.  (Id. at 24–27; Tr. at 93–96.)

The Court again finds that it cannot properly dismiss RFC's claims at this stage of the proceedings on the grounds asserted by Defendants.  First, the parties dispute the correct interpretation and application of the pre-December 1, 2005 Agreements' indemnification provisions.  For example, Section A212 of a pre-December 1, 2005 Client Guide provided:

> The Client shall indemnify GMAC-RFC from all losses, damages, penalties, fines, forfeitures, court costs and reasonable attorneys' fees, judgments, and any other costs, fees and expenses resulting from any Event of Default. This includes any act or failure to act or any breach of warranty, obligation or representation contained in the Client Contract; **or** from any claim, demand, defense or assertion against or involving GMAC-RFC based on or resulting from such breach or a breach of any representation, warranty or obligation made by GMAC-RFC in reliance upon any warranty, obligation or representation made by the Client contained in the Client Contract.

(First Am. Compl., Ex. B-24 at 35 (emphases added).)  While Defendants argue that "claim"[9] is merely a "subcategory of an 'Event of Default,'" (Def.'s Reply at 7), RFC argues that the only grammatically-correct reading applies "The Client shall indemnify GMAC-RFC" to the text both preceding and following "or" (i.e., "The Client shall

---

[9]     Defendants do not challenge RFC's argument that indemnification from "claims" includes indemnification from "liabilities," (see Def.'s Reply at 7–8,), and the case law appears to support RFC's position, see Christy v. Menasha Corp., 211 N.W.2d 773, 777 (Minn. 1973) (stating that "[an] agreement . . . to indemnify not just against loss or damage but also against mere claims, . . . a fortiori must be construed to be an indemnity agreement against accrued liability as well as against loss or damage"), overruled on other grounds by Farmington Plumbing & Heating Co. v. Fischer Sand & Aggregate, Inc., 281 N.W.2d 838, 842 n.4 (Minn. 1979).

indemnify GMAC-RFC from all losses . . . or from any claim . . . ."), (Tr. at 88–89).  The

Court finds this contractual language to be sufficiently ambiguous to prevent resolution of

this issue on a motion to dismiss.[10]  See Olympus Ins. Co., 711 F.3d at 898.

Second, although the estate of a debtor normally ceases to exist once a Chapter 11

plan is confirmed, "this is not always the case."  United States v. Unger, 949 F.2d 231, 233

(8th Cir. 1991).  Courts have recognized that termination of a bankruptcy estate "is

expressly subject to the terms and provisions of the confirmed plan, and that the confirmed

plan need not state in explicit terms that the bankruptcy estate is to continue in existence."

In re Canton Jubilee, Inc., 253 B.R. 770, 776 (Bankr. E.D. Tex. 2000) (internal citations

omitted); see Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n, 997 F.2d 581, 587 (9th

Cir. 1993) ("The reversion of property from the estate to the debtor upon confirmation

contained in 11 U.S.C. § 1141(b) is explicitly subject to the provisions of the plan."); In re

Ernst, 45 B.R. 700, 702 (Bankr. D. Minn. 1985) ("All estate property is vested in the debtor

at confirmation, except as the plan specifically provides otherwise.  Accordingly, in the

absence of a plan provision retaining property in an estate, the estate ceases to exist.").  And,

here, the plain language of the Bankruptcy Court's Confirmation Order and the Chapter 11

Plan demonstrates that the claims at issue were not extinguished upon confirmation of the

Plan.  Rather, both the Order and Plan authorized the creation of a "Liquidating Trust," into

---

[10]     In opposition to this Motion, RFC alleged that Section A202 of the pre-December 1, 2005 Client Guides and Section 7 of the Seller Contract also provide for Defendants' indemnification of RFC for "liabilities."  (Pl.'s Opp. at 21–23.)  Defendants disagree. (Def.'s Reply at 7–8.)  In light of the Court's holding as to Section A212, the Court declines to address whether the additional contractual provisions might also prevent dismissal of RFC's claims.

which RFC was to transfer and assign its assets, see In re Residential Capital, LLC, Case

No. 12-12020 (MG) (Bankr. S.D.N.Y. Dec. 11, 2013) [Doc. No. 6065] ("Confirmation

Order") ¶¶ 21, 24; In re Residential Capital, LLC, Case No. 12-12020 (MG) (Bankr.

S.D.N.Y. Dec. 11, 2013) [Doc. No. 6065-1] ("Chapter 11 Plan") at 79, and they preserved

the Liquidating Trust's (and Estates') causes of action[11]:

> 48.  Preservation of Causes of Action.  Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan . . . the Borrower Claims Trust with respect to Borrower-Related Causes of Action, and the Liquidating Trust with respect to all other Causes of Action, shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action of the Debtors or the Debtors' Estates . . . . The Liquidating Trustees and the Borrower Claims Trustee, as applicable, are deemed representatives of the Estates for the purpose of prosecuting, as applicable, the Liquidating Trust Causes of Action, Borrower-Related Causes of Action and any objections to Claims pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.

Confirmation Order ¶ 48 (emphases added); see Chapter 11 Plan at 74–75.  The

Confirmation Order discharged only the debtors' personal liability:

> 42.  Discharge.  Except as expressly provided in the Plan or the Confirmation Order, (a) each holder (as well as any trustees and agents on behalf of each holder) of a Claim against or Equity Interest in a Debtor shall be deemed to have forever waived, released and discharged the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Equity Interests, rights and liabilities that arose prior to the Effective Date and (b) all such holders shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any discharged Claim against or terminated Equity Interest in the Debtors.

---

[11]      According to the Chapter 11 Plan, "Causes of Action" includes "all Claims, actions, causes of action, . . . liabilities, . . . [and] indemnity claims (including those of the Debtors, and/or the bankruptcy estate of any Debtor created pursuant to sections 301 and 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases)."  Chapter 11 Plan at 7–8.

Confirmation Order ¶ 42 (emphases added).

At oral argument, Defendants conceded that the indemnity claims were transferred to the Liquidating Trust but argued that, in order for those indemnity claims to be viable, there must be underlying liabilities in the form of allowed claims.  (Tr. at 107.)  According to Defendants, those allowed claims were discharged by the following language in the Chapter 11 Plan:

> Except to the extent that a holder of an Allowed Claim or Equity Interest, as applicable, agrees to a less favorable treatment, such holder shall, in full and final satisfaction, settlement, release, and discharge of and in exchange for such holder's Allowed Claim or Equity Interest, receive the treatment described below under the Plan.

(Chapter 11 Plan at 40; see Tr. at 58–59.)  However, the creditors received "Units" in exchange for the allowed claims, which entitle them to receive a pro rata share of recoveries that the Liquidating Trust obtains on their claims, and the Liquidating Trust is obligated to maximize those recoveries.  See, e.g., Chapter 11 Plan at 40–52, 85–86; In re Residential Capital, LLC, Case No. 12-12020 (MG) (Bankr. S.D.N.Y. Dec. 11, 2013) [Doc. No. 6064] ("Liquidating Trust Agreement") at 37.  Thus, the liabilities underlying RFC's indemnity claims remain.

The cases cited by Defendants are not to the contrary.  In Trapp v. R-Vec Corp., for example, the Minnesota Court of Appeals confirmed that, unless a reorganization plan provides for survival of a claim, that claim will be discharged upon the court's confirmation of the plan.  359 N.W.2d 323, 328 (Minn. Ct. App. 1984).  The court went on to hold that no indemnity obligation can arise from a judgment entered on a claim that was discharged

in bankruptcy because such a judgment is void.  Id.  Unlike the claim at issue in Trapp, the indemnification claims at issue in this case were not discharged by the Bankruptcy Court's Confirmation Order.

And, in Bank of India v. Trendi Sportswear, Inc., the court's statement that an indemnification claim does not arise under New York law until the party seeking indemnification has incurred an out-of-pocket loss, pertained to a situation in which there was no contractual indemnification agreement.  No. 89 CIV.5996 JSM, 2002 WL 84631, at *1–4 (S.D.N.Y. Jan. 18, 2002).  The court held that, where a judgment against a debtor was discharged in bankruptcy and never paid, the debtor could not maintain a claim for indemnification because there was no out-of-pocket loss.  Id. at *4–5.  The result in that case presumably would have been different if, as here, the indemnity claims were premised—by contract—on losses and liabilities and were not discharged by the Confirmation Order.  See Pfizer, Inc. v. Stryker Corp., 348 F. Supp. 2d 131, 150–51 (S.D.N.Y. 2004) (stating that New York recognizes agreements that indemnify against liability, under which the "right to indemnification . . . arises when the party faces a fixed liability, even though it has not paid the claim and thus suffered no damage").

Finally, the entirety of Defendants' argument as to RFC's breach of contract claims is as follows:

> It is black-letter law that, to maintain an action for breach of contract, RFC must have suffered damages.  See, e.g., Jensen v. Duluth Area YMCA, 688 N.W.2d 574, 578–79 (Minn. App. 2004) ("A breach of contract claim fails as a matter of law if the plaintiff cannot establish that he or she has been damaged by the alleged breach.").  In its Amended Complaint, RFC fails to identify any defective loans not addressed by the Global Settlement.  RFC's

contract claim, like its indemnification claim, is barred to the extent that it did
not incur actual losses.

(Def.'s Mem. at 22–23.)  Defendants argue in their reply brief that RFC's failure to dispute

the proposition that, "to maintain its breach-of-contract claim, RFC must have suffered

actual damages," means those claims are barred.  (Def.'s Reply at 6.)

The Court finds that, despite RFC's failure to address this issue, Defendants have not

met their burden of establishing that RFC has failed to state a claim for breach of contract.

Defendants merely argued that one of the elements of a breach of contract claim is

damages—an indisputable statement.  Defendants cite to no authority for the proposition

that "damages" must consist of "actual losses," or what "actual losses" would encompass

for these purposes.  Nor do Defendants explain why RFC would be required "to identify any

defective loans not addressed by the Global Settlement" in order to properly allege

damages, or why the following allegation of breach of contract damages contained in RFC's

Complaint is insufficient:

> RFC has suffered loss, harm, and financial exposure directly attributable to
> [Defendants'] material breaches, including liabilities and losses stemming
> from the defective loans, as well as attorneys' fees, litigation-related
> expenses, and other costs associated with both defending dozens of lawsuits
> and proofs of claim filed against RFC stemming in part from materially
> defective loans sold to RFC from [Defendants] and fees and costs incurred in
> prosecuting this action.

(First Am. Compl. ¶ 102.)  For these reasons, Defendants' arguments that RFC's

indemnification and breach of contract claims are barred except to the extent that RFC seeks

actual losses lack merit.

**D.     Statute of Limitations**

Finally, Defendants contend that RFC's claims for breach of representation and warranty are time-barred to the extent that RFC seeks relief for loans it purchased prior to May 14, 2006, and that RFC is collaterally estopped by decisions issued in this District and by the Bankruptcy Court from arguing otherwise.  These arguments fail.

**1.     Timeliness**

Defendants argue that RFC's claims for breach of representation and warranty accrued on the date that RFC purchased the loans from Defendants and, accordingly, Minnesota's six-year statute of limitations for contract claims bars any claims based on loans sold to RFC more than six years prior to the filing of the First Amended Complaint. (Def.'s Mem. at 23–24.)  Even if the two-year tolling provision in the U.S. Bankruptcy Code applies, Defendants assert, all of RFC's claims for breach of representation and warranty based on loans sold to RFC before May 14, 2006 (i.e., six years prior to RFC's bankruptcy filing) are time-barred.  (Id. at 24.)  Defendants argue that decisions from this District to the contrary are inapplicable to the extent that they rely on RFC's allegations that Defendants failed to notify RFC of defective loans because a failure to fulfill pre-suit remedial obligations does not affect accrual of the statute of limitations.  (Id. at 24–26.) However, Defendants contend that, even if the notice requirement could give rise to a separate cause of action, that claim would fail for lack of causation because RFC does not allege that Defendants' failure to comply with a notice requirement caused RFC any loss. (Id. at 27.)

23

In response, RFC argues that its breach of representation and warranty claims based on loans sold to RFC prior to May 14, 2006 are timely because Defendants had continuing contractual obligations to notify RFC of loan defects, and the statute of limitations for claims based on breaches of those obligations did not necessarily accrue at the sale of the loans.  (Pl.'s Opp. at 27–28.)  RFC contends that it pled these breaches in Paragraph 21 of the First Amended Complaint:

> [Defendants] ha[ve] a continuing obligation under Section A201(M) of the Client Guide to promptly notify RFC of any act or omissions which might impact the Loan, the Mortgaged Property, or the Mortgagor . . . . [Defendants] ha[ve] continually breached this obligation, including through to the present, by failing to inform RFC of the loan defects. . . .

(First Am. Compl. ¶ 21; <u>see</u> Pl.'s Opp. at 29.)  RFC argues that these obligations can give rise to independent breach of contract claims and that whether Defendants breached their obligations is a question of fact that cannot be decided on a motion to dismiss.  (Pl.s' Opp. at 30–33.)  In addition, RFC asserts that it adequately pled causation by alleging that "RFC has suffered loss, harm, and financial exposure directly attributable to [Defendants'] material breaches."  (First Am. Compl. ¶ 102; <u>see</u> Pl.'s Opp. at 33–34.)  Finally, RFC contends that Section A209(C) of the Client Guide (which provides that RFC's remedies for breaches of the representations and warranties survive the sale of the loans and continue for the full life of the loans) extends the statute of limitations.  (Pl.'s Opp. at 34–35.)

Because it does not appear to the Court from the face of the First Amended Complaint that the limitations period has necessarily run as to any of the loans at issue, none of RFC's breach of representation and warranty claims are properly dismissed as time-

barred.  See Varner v. Peterson Farms, 371 F.3d 1011, 1016 (8th Cir. 2004) (citation

omitted) ("[W]hen it 'appears from the face of the complaint itself that the limitation period

has run,' a limitations defense may properly be asserted through a Rule 12(b)(6) motion to

dismiss.").  Under § 108(a) of the Bankruptcy Code, if the statute of limitations governing a

debtor's claim has not expired prior to the filing of the bankruptcy petition, the trustee may

commence an action on that claim before the later of the end of the statutory limitations

period or "two years after the order for relief."  11 U.S.C. § 108(a).  The parties agree that

Minnesota has a six-year statute of limitations for contract claims.  See Minn. Stat.

§ 541.05, subd. 1(1).  And, here, the instant actions were filed in December 2013, which is

within the two-year period following the Bankruptcy Court's order for relief.  Accordingly,

because the six-year statute of limitations had not expired as to loans sold to RFC on or after

May 14, 2006 at the time RFC filed its bankruptcy petition on May 14, 2012, those claims

are not time-barred.  See 11 U.S.C. § 1107(a) (stating that "a debtor in possession shall have

all the rights . . . and powers, and shall perform all the functions and duties . . . of a trustee

serving in a case under [Chapter 11]"); Johnson v. First Nat'l Bank of Montevideo, 719 F.2d

270, 278 n.11 (8th Cir. 1983) (citations omitted) ("Although the language of § 108 refers

only to the trustee, it is generally agreed that the debtor-in-possession is also entitled to the

statute's privileges."); Residential Funding Co., LLC v. Wallick & Volk, Inc., Civ. No. 13-

3512 (MJD/JJG), 2014 WL 3955257, at *5 (D. Minn. Aug. 13, 2014) (finding that RFC was

entitled to invoke § 108(a) in a similar case).

As for the loans sold prior to that date, the continuing obligation theory that RFC advances is not based on Defendants' alleged failure to fulfill pre-suit remedial obligations, but rather is based on Defendants' alleged breaches of a representation and warranty under Section A201(M) that they "'[would] promptly notify GMAC-RFC of any occurrence, act, or omission regarding [Defendants], the Loan, the Mortgaged Property or the Mortgagor of which [Defendants] ha[ve] knowledge, which . . . may materially affect [Defendants], the Loan, the Mortgaged Property or the Mortgagor.'" (First Am. Compl. ¶ 25(b) (quoting Client Guide A201(M)); see id. ¶ 21.) As this Court discussed in Academy Mortgage, "'[w]here a warranty relates to a future event that will determine whether or not it is breached, the statute does not begin to run until the happening of such future event.'" 59 F. Supp. 3d at 952 (quoting City of Pipestone v. Wolverine Ins. Co., Civ. No. 4-84-634, 1985 WL 1845, at *4 (D. Minn. June 28, 1985)). As alleged, a breach of the representation and warranty in Section A201(M) could relate to an event that occurred, if at all, after the sale of a loan. Accordingly, it is plausible from the face of the First Amended Complaint that the statute of limitations for a claim based on a loan sold to RFC prior to May 14, 2006 would not begin to run until after May 14, 2006. And, because the date upon which any Defendant allegedly breached Section A201(M) is a question of fact that goes beyond the pleadings, the Court cannot resolve the issue at this stage of the proceedings.

Moreover, RFC has sufficiently pled causation: RFC alleged in Paragraphs 21 and 25(b) of the First Amended Complaint that Defendants had a continuing notification obligation to RFC and that such obligation constituted a representation and warranty; RFC

alleged in Paragraph 21 that "[Defendants] ha[ve] continually breached this obligation, including through to the present, by failing to inform RFC of the loan defects"; RFC incorporated by reference all allegations in those paragraphs into its claim for breach of contract; and RFC alleged in Paragraph 102 that it "has suffered loss, harm, and financial exposure directly attributable to [Defendants'] material breaches."

Defendants' reliance on Residential Funding Co. v. Mortgage Outlet, Inc., No. 13-CV-3447, 2014 WL 4954645 (D. Minn. Oct. 1, 2014), for the proposition that RFC's claimed damages are not linked to any breach of a notice obligation, (see Def.'s Mem. at 27), is misplaced.  In that case, the court rejected RFC's argument that the defendants continually breached their duty to notify RFC of problems with the loans because the argument was raised for the first time at oral argument and was not pled in the complaint. Mortg. Outlet, 2014 WL 4954645, at *5.  While the complaint did recite the contractual language imposing a duty on the defendants to notify RFC of any act, occurrence, or omission that may materially affect the loan, the court found that reference to be insufficient to state a claim because "nothing in the amended complaints gave defendants fair notice that RFC was making the claim that defendants breached this provision anew each and every day that they failed to notify RFC of a pre-existing problem of a loan."  Id.  As discussed above, however, the First Amended Complaint in this case did allege that Defendants "continually breached" their notification obligation, "including through to the present," and it did adequately plead causation.  Accordingly, the Motion is denied in this regard.

## 2.     Collateral estoppel—District of Minnesota decisions

Defendants also argue that RFC's claims based on loans sold prior to May 14, 2006

are barred by collateral estoppel because such claims have been held to be time-barred in six

prior cases from this District.  (Def.'s Mem. at 28–30 (citing Mem. Op. and Order,

Residential Funding Co. v. Greenpoint Mortg. Funding, Inc., Civ. No. 13-3538

(DWF/SER), Doc. No. 70 (D. Minn. Oct. 15, 2014); Residential Funding Co. v. Cmty. W.

Bank, N.A., Civ. No. 13-3468 (JRT/JJK), 2014 WL 5207485 (D. Minn. Oct. 14, 2014);

Mortgage Outlet, 2014 WL 4954645; Residential Funding Co. v. Americash, Civ. No. 13-

3460 (DSD/JJG), 2014 WL 3577312 (D. Minn. July 21, 2014); Residential Funding Co. v.

Mortg. Access Corp., Civ. No. 13-3499 (DSD/FLN), 2014 WL 3577403 (D. Minn. July 21,

2014); Residential Funding Co. v. Embrace Home Loans, Inc., 27 F. Supp. 3d 980 (D.

Minn. 2014)).)  Defendants' argument must be analyzed under Minnesota law because the

law of the forum that rendered the first judgment controls the preclusion analysis and, in

diversity cases, a federal district court applies the rules of preclusion of the state in which

the court sits.  See St. Paul Fire & Marine Ins. Co. v. Compaq Computer Corp., 539 F.3d

809, 821–22 (8th Cir. 2008)  Under Minnesota law, collateral estoppel bars litigation of an

issue if:

> (1) the issue was identical to one in a prior adjudication; (2) there was a final
> judgment on the merits; (3) the estopped party was a party or in privity with a
> party to the prior adjudication; and (4) the estopped party was given a full and
> fair opportunity to be heard on the adjudicated issue.

Ellis v. Mpls. Comm'n on Civil Rights, 319 N.W.2d 702, 704 (Minn. 1982) (citation and

internal quotation marks omitted).

28

Defendants claim that each element is present in this case: (1) the issue of whether

RFC's contract claim arising out of loans sold before May 14, 2006 is time-barred is

identical as between the present and prior cases, including RFC's continuing obligation

theory; (2) there was a final adjudication on the merits in the prior cases because the claim

was dismissed; (3) RFC was a party, or in privity with a party, to the prior adjudications;

and (4) RFC had a fair and full opportunity to be heard in the prior proceedings. (Def.'s

Mem. at 29–30 & n.15.) RFC, on the other hand, argues that there is no identity of issues,

no final judgment was entered in the prior cases, and the issue has not been fully litigated by

RFC. (Pl.'s Opp. at 36–37.) In particular, RFC asserts that the allegations in the First

Amended Complaint regarding Defendants' continuing obligations are "materially more

detailed" than those considered in the prior cases, and that whether those obligations were

breached depends on whether and when Defendants had knowledge of loan defects and

when it should have notified RFC of those defects. (Id. at 37.)

The Court finds that collateral estoppel does not operate to bar RFC's claims on

statute of limitations grounds in this instance because the issue in this case is not identical to

the issue in the prior adjudications. The courts in the prior adjudications rejected RFC's

statute of limitations argument based on the continuing obligation theory, not because they

found it to be an inviable legal theory, but because RFC had not properly alleged a claim

based on that theory in its complaint. See Mem. Op. and Order, Greenpoint Mortg.

Funding, Civ. No. 13-3538 (DWF/SER), Doc. No. 70 at 7; Cmty. W. Bank, 2014 WL

5207485, at *8–9 & n.6; Mortgage Outlet, 2014 WL 4954645, at *5; Americash, 2014 WL

3577312, at *5; <u>Mortg. Access</u>, 2014 WL 3577403, at *5; <u>Embrace Home Loans</u>, 27 F.

Supp. 3d at 983–84.[12]   As discussed above, this Court has rejected Defendants' argument

that RFC's continuing obligation theory is not properly pled in this case.   And, now that

RFC has pled a claim for Defendants' breach of a continuing notification obligation,

whether the statute of limitations has run as to its claims based on loans purchased prior to

May 14, 2006 is a different issue.

### 3.   Collateral estoppel—Bankruptcy Court decision

Finally, five Defendants (CMG Mortgage [Doc. No. 260], PHH Mortgage [Doc.

No. 265], Honor Bank [Doc. No. 269], Primary Capital Advisors [Doc. No. 274], and

Synovus Mortgage [Doc. No. 275]) point out that they were each a party to briefing on

the statute of limitations issue in front of the Bankruptcy Court in the Southern District of

New York prior to their cases being transferred to this District.   According to Defendants,

the Bankruptcy Court's subsequent ruling that RFC's breach of contract claims as to

loans it acquired prior to May 14, 2006 are time-barred is either further support for

Decision One's Motion to Dismiss or provides an additional reason for dismissal—i.e.,

on "res judicata" grounds.   Although RFC interpreted the reference to "res judicata" to

mean claim preclusion, (<u>see</u> Pl.'s Mem. on Unique Issues in Opp. to Defs.' Joinders to

Decision One Mortg. Co.'s Mot. to Dismiss on Common Issues [Doc. No. 353] at 9–10),

Defendants noted in response that "res judicata" refers to both claim <u>and</u> issue preclusion

---

[12]      In fact, in one of those cases, <u>Residential Funding Co. v. Embrace Home Loans,</u>
<u>Inc.</u>, the court permitted RFC's claims based on the continuing obligation theory to
proceed after RFC had sufficiently re-pled the theory in an amended complaint.   Civ. No.
13-3457, 2015 WL 1275340, at *2–3 (D. Minn. Mar. 19, 2015).

and argued that RFC's statute of limitations arguments are barred by issue preclusion given the Bankruptcy Court's ruling, (see Defs.' Reply in Supp. of Their Joinders [Doc. No. 368] at 7–9).

The Court finds that RFC is not collaterally estopped by the Bankruptcy Court Order from arguing that its claims are not barred by the statute of limitations.[13] The preclusive effect of a bankruptcy court's ruling is determined by federal law. In re Kane, 254 F.3d 325, 328 (1st Cir. 2001). According to the Second Circuit, "[a] party is collaterally estopped from raising an issue in a proceeding if: (1) the identical issue was raised in a previous proceeding; (2) the issue was 'actually litigated and decided' in the previous proceeding; (3) the party had a 'full and fair opportunity' to litigate the issue; and (4) the resolution of the issue was 'necessary to support a valid and final judgment on the merits.'" Interoceanica Corp. v. Sound Pilots, Inc., 107 F.3d 86, 91 (2d Cir. 1997)

---

[13]    Neither is RFC estopped under the doctrine of claim preclusion. As discussed herein, the preclusive effect of a bankruptcy court's ruling is determined by federal law. In re Kane, 254 F.3d 325, 328 (1st Cir. 2001). "In determining whether claim preclusion applies to preclude later litigation, a federal court in the Second Circuit must find that 'the earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action.'" In re XO Commc'ns, Inc., 330 B.R. 394, 452 n.40 (Bankr. S.D.N.Y. 2005) (citation omitted). Here, as each of the five Defendants concedes, their cases were transferred to the District of Minnesota while briefing was ongoing in the Bankruptcy Court. Accordingly, at the time the Bankruptcy Court issued its order, those Defendants were no longer parties to the proceedings. Notably, they are not even listed in the case caption for that decision. See In re ResCap Liquidating Trust Mortg. Purchase Litig., 524 B.R. 563 (Bankr. S.D.N.Y. 2015). Because the order issued by the Bankruptcy Court did not pertain to Defendants CMG Mortgage, PHH Mortgage, Honor Bank, Primary Capital Advisors, or Synovus Mortgage, the dismissal of RFC's breach of contract claims for pre-May 14, 2006 loans on statute of limitations grounds has no preclusive effect as to those Defendants in this litigation.

(citation omitted).  As was the case with the other decisions from this District, discussed above, the issue raised in the present Motion and the issue decided by the Bankruptcy Court are not identical.  Rather, it appears that RFC had not properly alleged its continuing obligation theory in its complaint filed in the Bankruptcy Court.  See In re ResCap Liquidating Trust Mortg. Litig., 524 B.R. at 588–92.  Moreover, there was no final judgment on the merits in that case.  The Bankruptcy Court granted the defendants' motion to dismiss only in part, and there is no indication in the decision that the breach of contract claims based on loans sold to RFC prior to May 14, 2006 were dismissed with prejudice.[14]  In fact, RFC filed an amended complaint against each of these five Defendants once their actions were removed to this District.  Accordingly, the doctrine of collateral estoppel does not support dismissal of RFC's claims based on loans sold prior to May 14, 2006.[15]

---

[14]    Defendants argue that the Eighth Circuit in Rick v. Wyeth, Inc., 662 F.3d 1067 (8th Cir. 2011), found dismissal of a claim as time-barred to be a determination on the merits, even where the dismissal was without prejudice.  (Defs.' Reply in Supp. of Their Joinders at 8.)  However, Defendants' reliance on Rick is misplaced because the Eighth Circuit was applying New York law, under which a dismissal on statute of limitations grounds is "sufficiently close to the merits" where the dismissed claim was litigated to summary judgment.  662 F.3d at 1072.  The present case has not been litigated to summary judgment.

[15]    According to Defendant PHH Mortgage, it has two contracts with RFC, one subject to Minnesota law and the other to New York law, and Decision One's Motion relates only to the contract subject to Minnesota law [Doc. No. 265].  Therefore, PHH Mortgage argues that if res judicata is deemed inapplicable by this Court, PHH Mortgage should be permitted to brief the statute of limitations issue under New York law.  As RFC notes, however, the Court permitted Defendants to bring "unique issues motions to dismiss," (see Pretrial Order No. 4 at 4–5), and, although PHH Mortgage filed such a motion [Doc. No. 299], it failed to raise its New York statutes of limitations argument therein.  This is the case, despite PHH Mortgage's acknowledgment that its second

**IV.    ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED THAT**:

       1.       The Notices of Joinder filed by Defendants DB Structured Products, Inc. and MortgageIT, Inc. [Doc. No. 249], CMG Mortgage, Inc. [Doc. No. 260], Home Loan Center, Inc. [Doc. No. 261], and Mortgage Network, Inc. [Doc. No. 262] in the form of motions are **DENIED AS MOOT**; and

       2.       Defendants' Motion to Dismiss Plaintiff's First Amended Complaint [Doc. No. 215] is **DENIED**.

Dated:  June 11, 2015              s/Susan Richard Nelson
                                       SUSAN RICHARD NELSON
                                       United States District Judge

---

agreement with RFC is "very different" than the Client Guide.  (Defs.' Reply in Supp. of Their Joinders at 2.)  Given PHH's multiple opportunities to raise its arguments, the Court declines to grant it permission to file yet another motion.