## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In Re: RFC and RESCAP Liquidating Trust Litigation | Consolidated Action<br>Civil File No. 13-3451 (SRN/JJK/HB) |

*This document relates to:*
Residential Funding Company, LLC v. DB
Structured Products, Inc., and MortgageIT,
Inc.,  No. 14-cv-0143

### MEMORANDUM OPINION AND ORDER

SUSAN RICHARD NELSON, United States District Judge

## I.      INTRODUCTION

This matter is before the Court on Defendant DB Structured Products, Inc.'s ("DBSP")

Motion to Dismiss the Second Amended Complaint.  (Doc. No. 519.)  DBSP contends that

certain claims RFC first asserted against DBSP in its Second Amended Complaint are barred by

the statute of limitations.  For the reasons set forth below, DBSP's motion is denied.

## II.      BACKGROUND

### A.      Procedural History

Plaintiff Residential Funding Company, LLC ("RFC"), served its original Complaint on

DBSP on December 16, 2013.  (Case No. 14-cv-143 (ADM/TNL), Doc. No. 1, Notice of

Removal.)  In its original Complaint, RFC alleged that it purchased thousands of loans from

Defendant MortgageIT, Inc. ("MortgageIT"), pursuant to a contract and that DBSP was liable for

MortgageIT's breaches of that as MortgageIT's successor in interest.  (Case No. 14-cv-143, Doc.

No. 1-1 at 5, Compl.; *Id.*, Compl. at 7, ¶ 13.)

Eight months later, on August 20, 2014, RFC filed its First Amended Complaint.  (Case No. 14-cv-143, Doc. No. 36, First Am. Compl.)  There were two major changes in the First Amended Complaint.  RFC added MortgageIT as a defendant and alleged that DBSP was MortgageIT's alter ego.  (*Id.* ¶¶ 14, 89-99.)  On May 4, 2015, after this case had been administratively consolidated with several other related cases into this proceeding, RFC filed a Second Amended Complaint.  (Case No. 13-cv-3451, Doc. No. 405, Second Am. Compl.)  This Second Amended Complaint is now the operative pleading.  RFC has now added allegations regarding DBSP's direct sale of loans to RFC under a different agreement than the one that governs RFC's relationship with MortgageIT.  (*See, e.g.*, *id.*, Second Am. Compl. ¶¶ 14, 17.)

On May 28, 2015, the parties stipulated to an extension of time for DBSP to respond to RFC's Second Amended Complaint, which the Court adopted (*id.*, Doc. Nos. 491, 495), and on June 8, 2015, DBSP filed its motion to dismiss the Second Amended Complaint (*id.*, Doc. No. 519).

**B.    Allegations in the Second Amended Complaint Regarding DBSP's Direct Sales**

In multiple previous opinions addressing other defendants' motions to dismiss, this Court has described the general background of this and other related cases in this consolidated proceeding.  (*See generally* Case No. 13-cv-3451, Doc. No. 529, Mem. Opinion and Order 3–5.)  The allegations in the Second Amended Complaint regarding DBSP's direct sale of loans and DBSP's alleged liability to RFC are similar.  RFC alleges that DBSP sold over 175 loans directly to RFC under a "Seller Contract," which it refers to as the "DBSP Contract."  (Second Am. Compl. ¶ 17.)  The DBSP Contract contains 10 pages of representations and warranties to which DBSP's loans were expected to adhere.  (*Id.* ¶¶ 18, 24.)  DBSP allegedly breached a number of those representations and warranties.  (*Id.* ¶ 39.)  The DBSP Contract required repurchase of

such allegedly defective loans and obligated DBSP to indemnify RFC for all losses and liabilities

caused by any breach by DBSP.  (*Id.* ¶¶ 29, 34.)  As a result of DBSP's alleged breaches of the

representations in the DBSP Contract, RFC asserts that it has "incurred obligations, liabilities,

damages, and losses for which it is entitled to recovery from [DBSP]."  (*Id.* ¶ 55.)  Facing

numerous claims and lawsuits stemming from the defective loans DBSP and others sold to it,

RFC filed for bankruptcy on May 14, 2012.  (*Id.* ¶ 58.)  As noted above, RFC then brought this

lawsuit about a year and a half later in December 2013.

DBSP's pending motion to dismiss asserts that RFC's claims under the DBSP Contract

are time-barred, which implicates specific contract language that is properly before the Court.

Under Section 2.04 of the DBSP contract, one of the representations and warranties DBSP made

created a "continuing obligation" for DBSP "to notify RFC of any breach of its contractual

representations and warranties for mortgage loans which might adversely affect RFC's interest in

the mortgage loans."  (*Id.* ¶ 20.)  In relevant part, Section 2.04 reads:

> It is understood and agreed that the representations and warranties set forth in this
> Section 2.04 and Section 4 of the Reference Agreement shall survive the sale of
> the Mortgage Loans and shall inure to the benefit of the Owner, notwithstanding
> any restrictive or qualified endorsement or assignment.  Upon discovery by either
> the Company or the Owner of a breach of any of the representations and
> warranties in this Section 2.04 or Section 4 of the Reference Agreement which
> materially and adversely affects the interest of the owner in the related Mortgage
> Loan, the party discovering such breach shall give prompt written notice to the
> other.

(*Id.* ¶ 17, Ex. F, DBSP Contract § 2.04.)

## III.    DISCUSSION

### A.    Motion to Dismiss Standard

Because DBSP brings its motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil

Procedure, the Court must assume that the facts alleged in the Second Amended Complaint are

true and construe all reasonable inferences from those facts in the light most favorable to RFC. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). However, the Court need not accept as true wholly conclusory allegations, *see Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions RFC draws from the facts pled, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). In addition, the Court ordinarily does not consider matters outside the pleadings on a motion to dismiss. *See* Fed. R. Civ. P. 12(d). The Court may, however, consider exhibits attached to the relevant pleading and documents that are necessarily embraced by that pleading, *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003), and may also consider public records, *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007).

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." The U.S. Supreme Court, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), clarified that this Rule does not require that a complaint contain "detailed factual allegations," but it does require that it contain facts with enough specificity "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In other words, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Id.* at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Thus, to survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

As noted above, DBSP's motion to dismiss asserts that certain of RFC's claims are barred by the applicable statute of limitations. Ordinarily, whether an applicable statute of

limitations bars a claim is an affirmative defense that a defendant must plead and prove.[1] *Jessie v. Potter*, 516 F.3d 709, 713 n.2 (8th Cir. 2008).  Thus, "[a]s a general rule, 'the possible existence of a statute of limitations defense is not ordinarily a ground for Rule 12(b)(6) dismissal unless the complaint itself establishes the defense.'"  *Joyce v. Armstrong Teasdale, LLP*, 635 F.3d 364, 367 (8th Cir. 2011) (quoting *Jessie*, 516 F.3d at 713 n.2); *Hile v. Jimmy Johns Highway 55, Golden Valley*, 899 F. Supp. 2d. 843, 847 n.6 (D. Minn. 2012) ("The statute of limitations is an affirmative defense that a defendant must plead and prove, Fed. R. Civ. P. 8(c)(1), and hence questions regarding timeliness generally must be resolved by a motion for summary judgment rather than a motion to dismiss.") (citing *Jessie*, 516 F.3d at 713 n.2).

### B.      The Parties' Arguments

DBSP raises the following arguments in support of its motion to dismiss.  It contends that RFC's direct claims for breach of the DBSP Contract are untimely because RFC did not file its Second Amended Claims until May 4, 2015, asserting direct claims for breach of the DBSP Contract, for the first time, more than six years after DBSP sold loans to RFC under that agreement on January 22, 2007.  (Defs.' Mem. 8–10.)  Next, DBSP contends that RFC's claims under the DBSP contract cannot be saved by the relation-back doctrine because the claims RFC asserts under the DBSP Contract do not arise out of the same conduct, transaction, or occurrence that RFC alleged in its original Complaint and First Amended Complaint.  (*Id.* at 10–12.)  Third, citing New York cases, DBSP contends that RFC's claims under the DBSP Contract cannot be

---

[1]      The parties do not dispute that the law of the State of New York applies to the statute-of-limitations dispute between RFC and DBSP for the claims arising under the DBSP Contract. (Case No. 13-cv-3451, Doc. No. 521, Defs.' Mem. of Law in Supp. of Mot. to Dismiss Second Am. Compl. ("Defs.' Mem.") 8–9; *Id.*, Doc. No. 576, Pl.'s Mem. of Law in Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Opp'n"), *passim* (presenting no argument that New York law does not apply).) under New York law, "[t]he statute of limitations is an affirmative defense which must be pleaded and proved by the party invoking it. . . ."  *Paladino v. Time Warner Cable of New York City*, 793 N.Y.S.2d 63, 64 (N.Y. App. Div. 2005) (internal parenthetical citation omitted).

rendered timely by the "continuing obligation" theory that depends on language in Section 2.04 of the DBSP Contract.  (*Id.* at 12–17.)  Finally, DBSP argues that, even if the Second Amended Complaint adequately alleges a failure to notify claim, such a theory of recovery would not revive RFC's time-barred claims for breaches of representations and warranties that accrued at the time the loans were sold under the DBSP Contract.  (*Id.* at 17–18.)

RFC does not dispute that it asserted the direct claims for breach of the DBSP Contract more than six years after DBSP sold loans to RFC under that agreement.  Instead, RFC asserts that its claims under the DBSP Contract are timely under the relation-back doctrine.  (*Id.* at 7–10.)  And RFC contends that, just as this Court has concluded in other decisions applying Minnesota law, when applying New York law, its "continuing obligation" theory renders its claims timely for purposes of the motion to dismiss.  (Pl.'s Opp'n 3–6.)  Each of these reasons, RFC argues, provides a sufficient basis to deny DBSP's motion to dismiss.

**C.    Analysis**

**1.    Relation Back**

The parties dispute whether RFC's claims under the DBSP Contract relate back to the original Complaint in this action.  As this Court's prior opinions have explained, because RFC filed for bankruptcy protection on May 14, 2012, under section 108(a) of the Bankruptcy Code, the statute of limitations would be extended for two years for any claims that were not yet expired by that date.  (*See* Case No. 13-cv-3451, Doc. No. 529, Mem. Opinion and Order 25.)  Thus, contract claims subject to a six-year statute of limitations that concern loans sold on or after May 14, 2006,[2] would be timely if asserted before May 14, 2014.  Because RFC did not amend its pleading to assert direct claims against DBSP under the DBSP Contract until after

---

[2]    The DBSP Contract is dated January 22, 2007.  (Second Am. Compl., Ex. F.)

May 14, 2014, its claims would not be timely if those direct claims under the DBSP Contract do not relate back to the original Complaint.  If, however, RFC's claims under the DBSP Contract do relate back to the original Complaint, then those claims would fall within the limitations period as extended by section 108(a) of the Bankruptcy Code, and they would not be barred by the statute of limitations.

DBSP argues that RFC's claims under the DBSP Contract do not relate back because they do not arise out of the same conduct, transaction, or occurrence set out in the original Complaint.  (Defs.' Mem. 10–12.)  Relation-back is governed by Rule 15(c) of the Federal Rules of Civil Procedure.  In relevant part, Rule 15(c) provides that:

> An amendment to a pleading relates back to the date of the original pleading when:
>
> . . . .
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading[.]

Fed. R. Civ. P. 15(c)(1)(B).  Rule 15(c) is "liberally construed" because its purpose "is to permit cases to be decided on their merits." *Alpern v. Utilicorp United, Inc.*, 84 F.3d 1525, 1543 (8th Cir. 1996).  An amended pleading asserts a claim that arises out of the same conduct, transaction, or occurrence that is set out in the original pleading where "the amended complaint is related to the general fact situation alleged in the original pleading." *Id.*  Whether an amended pleading relates back to the date of the original pleading is within the district court's discretion. *Shea v. Esensten*, 208 F.3d 712, 720 (8th Cir. 2000).

DBSP cites several cases to support its argument that claims based on a separate contract cannot relate back to an original pleading that asserts breaches of a different contract.  (Defs.' Mem. 10–12.)  However, none of these cases involves circumstances similar to this case. *See*

*Dodd v. United States*, 614 F.3d 512 (8th Cir. 2010) (concluding that an amended motion for post-conviction relief under 28 U.S.C. § 2255 did not relate back to the original pro se motion where new claims for relief presented in the amended motion did not arise out of the same common core of operative facts as the claims originally raised); *United States v. Craycraft*, 167 F.3d 457 (8th Cir. 1999) (concluding that an amended motion for post-conviction relief under 28 U.S.C. § 2255 did not relate back to the original motion where the original pleading alleged ineffective assistance of counsel based on a failure to file an appeal and the amended motion alleged ineffective assistance based on a failure to pursue a downward departure and failure to object to the type of drugs at issue); *Ikeri v. Sallie Mae, Inc.*, Civil No. 13-1943 (DSD/JSM), 2014 WL 4071953, at *3–4 (D. Minn. Aug. 18, 2014) (concluding that a claim for breach of contract that became the sole count in the action through an amended complaint filed after expiration of the statute of limitations did not relate back to the date of the original pleading because the contract claim involved a different plaintiff than the plaintiff who originally filed the case, asserted an entirely different theory of relief than the case initially involved, and concerned a different relationship between the new plaintiff and the defendant than was at issue in the original pleading); *Coronna v. County of Suffolk*, No. 05-cv-6016, 2008 WL 2371421 (E.D.N.Y. June 9, 2008) (refusing to allow an amended pleading to relate back to the date of the original pleading where the original complaint alleged an assault by police officers on a public road and the amended complaint alleged an assault by prison officials in a jail in a location more than 25 miles away).

*Craycraft* amply illustrates the inapplicability of these cases to the circumstances at issue here. In *Craycraft*, a criminal defendant was convicted of conspiring to distribute methamphetamine pursuant to a guilty plea. 167 F.3d at 453. As part of the plea agreement, the

defendant anticipated that the government would file a motion for a downward departure from the mandatory minimum sentence if the defendant cooperated with the government's prosecution of other defendants.  *Id.*  But the government never filed that motion, and instead sought to enhance the defendant's sentence based on a prior state court felony drug conviction.  *Id.*  One year after he was sentenced, the defendant's counsel moved to reduce his sentence based on substantial assistance, but the district court denied that motion due to lack of supporting evidence that the government proceeded in bad faith or with unconstitutional motive.  *Id.*  Several years later, the defendant filed a pro se motion to vacate his sentence under 28 U.S.C. § 2255.  *Id.*  The defendant later amended his claim on two separate occasions.  *Id.*  The district court denied his motion, and in considering his appeal, the Eighth Circuit Court of Appeals found that his original motion was timely filed, but his amendments to it were not.  *Id.* at 456.  In his original motion, the defendant asserted that his counsel had been ineffective for failing to pursue a downward departure for substantial assistance, failing to object to the characterization of methamphetamine, and failing to raise challenges to his prior state conviction.  *Id.*  His amended motion added the claim that "his counsel failed to file an appeal as instructed."  *Id.*  In concluding that the amended claim did not relate back to the original motion, the court of appeals explained that "[f]ailing to file an appeal is a separate occurrence in both time and type from a failure to pursue a downward departure or failure to object to the type of drugs at issue."  *Id.* at 457.  It concluded: "[w]e cannot say that his original petition would provide notice of such a different sort of theory."  *Id.*

Unlike the defendant's change of course in *Craycraft*, RFC's amended claim is not so "distinctly separate," *id.*, from the claim set forth in RFC's original Complaint.  DBSP had notice of the fact that RFC sought to recover for breaches of contractual representations and warranties relating to the sale of thousands of loans from the outset of this litigation.  RFC has merely added

allegations in this case that clarify which contract applies to a subset of the loans that have been at issue since this litigation began.

DBSP also cites *In re Rationis Enterprises, Inc. of Panama*, 45 F. Supp. 2d 365 (S.D.N.Y. 1999), in support of its argument that the Second Amended Complaint asserts claims that involve a different transaction or different conduct. The facts and reasoning of *In re Rationis*, however, are not persuasive here. *In re Rationis* was a so-called limitation proceeding under 46 U.S.C. §§ 181 *et seq*. There, the maritime limitation proceeding involved the submission of hundreds of claims by claimants that believed they were entitled to recover for losses sustained following the sinking of a cargo vessel. The claimant in *In re Rationis*, Washington, originally filed claims regarding three bills of lading within the one-year statutory deadline. After the one-year statutory deadline for submitting such claims expired, Washington sought to add another claim under a fourth bill of lading. The court concluded that each bill of lading was a separate transaction. *Id.* at 367. The *In re Rationis* court noted that in an earlier case, *Farr Man Coffee, Inc. v. M.S. Jala Tapi*, No. 87-cv-2223 (SWK), 1988 WL 3489 (S.D.N.Y. Jan. 11, 1988), the court concluded that separate bills of lading were not separate transactions within the meaning of Rule 15(c). The *Farr Man* court reasoned that this was the case because all the claims submitted under separate bills of lading arose "from a single occurrence—the non-delivery of a number of bags of coffee to their designated recipient[.]" 1988 WL 3489, at *1. In distinguishing *Farr Man*, the *In re Rationis* court did not explain how the general factual background and legal theories forming the basis of claims under separate bills of lading arise out of different conduct, occurrences, or transactions within the meaning of Rule 15(c). 45 F. Supp. 2d at 367. Instead, it reasoned that *Farr Man* involved "only two parties, rather than a limitation proceeding with more than a thousand claimants." 45 F. Supp. 2d at 367. And the *In re Rationis*

court concluded that the fourth bill-of-lading claim was untimely because allowing such a claim

to be litigated would encourage the filing of similar post-deadline claims, thereby delaying the

proceedings. *Id.* at 367–68. Thus, the *In re Rationis* court determined that the amended claim

was untimely based on the nature of the particular limitation proceeding before it and a desire to

prevent undue delay. That reasoning says little about whether the conduct, transaction, or

occurrence set out in the direct claims against DBSP in the Second Amended Complaint in this

case arise out of "the same operative facts surrounding" the claims asserted in RFC's original

Complaint. *See Dodd*, 614 F.3d at 516 (concluding that one claim in the defendant's amended

motion under 28 U.S.C. § 2255 did relate back to a similar claim in the original motion because

both claims "refer[red] to the same operative facts").

When RFC commenced this suit, the factual background and legal theories on which

RFC based its claims is nearly identical to the factual background and legal theories on which

RFC bases its amended claims in the Second Amended Complaint. In the original Complaint,

RFC alleged breaches of contractual representations and warranties found in the Client Guide in

connection with RFC's purchase of thousands of loans from mortgage originators, including

DSBP's co-defendant, MortageIT. DBSP's liability was premised on its status as MortgageIT's

successor, but the thrust of the lawsuit was essentially the same when this case started as it is

today. Through its Second Amended Complaint, RFC now seeks to recover directly from DBSP

for its own breaches of similar representations and warranties made in the DBSP Contract, rather

than as MortgageIT's alter-ego or successor. This came about because the progress of this

lawsuit revealed that RFC bought some of the loans at issue directly from DBSP under a similar,

but separate contract. The DBSP Contract governs the same type of relationship that RFC made

the subject of this lawsuit from its outset. The discovery in this case that a subset of the loans at

issue were sold pursuant to a separate contract than the one RFC originally identified is not surprising given the reality of the industry in which this dispute arose.  Accordingly, the underlying facts and legal theory are sufficiently similar that DBSP can be said to have been on notice of "general fact situation and legal theory upon which the amending party proceeds[.]" *Glover v. FDIC*, 698 F.3d 139, 146 (3d Cir. 2012) (cited with approval in *Ikeri*, 2014 WL 4071953, at *4).  Allowing the claims under the DBSP Contract to relate back to the date of the original pleading in this case will not deprive DBSP of the notice that the statute of limitations is intended to provide.

Liberally construing Rule 15(c)(1)(B), the Court concludes that the direct claims RFC asserted against DBSP under the DBSP Contract in the Second Amended Complaint relate back to the original Complaint, and the motion to dismiss is denied.

### 2.    Continuing Obligation

Because the Court has concluded that the direct claims against DBSP under the DBSP Contract asserted in RFC's Second Amended Complaint relate back to the original Complaint, it need not reach the "continuing obligation" argument raised in the parties' briefing.  Similarly, the Court need not address DBSP's argument that even if the Second Amended Complaint adequately alleges a failure-to-notify claim, such a theory of recovery would not revive RFC's time-barred claims for breaches of representations and warranties that accrued at the time the loans were sold under the DBSP Contract.

## IV.    CONCLUSION

Based on the foregoing, DBSP's Motion to Dismiss the Second Amended Complaint (Doc. No. 519), is **DENIED**.

Dated: September 29, 2015

s/Susan Richard Nelson
SUSAN RICHARD NELSON
United States District Judge