## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In Re: RFC and ResCap Liquidating Trust Litigation | Case No. 13-cv-3451(SRN/JJK/HB) |
| *This document relates to:*<br>Residential Funding Company, LLC v. Lenox Financial Mortgage Corp., Case No. 13-cv-3495 (ADM/FLN) | **MEMORANDUM OPINION AND ORDER** |

SUSAN RICHARD NELSON, United States District Judge

      This matter is before the Court on Defendant Lenox Financial Mortgage Corporation's ("Lenox") Motion to Dismiss and Strike the First Amended Complaint, or Alternatively, Motion for Judgment on the Pleadings [Doc. No. 860] and Lenox's Motion to Transfer Venue to the United States District Court for the Central District of California Pursuant to 28 U.S.C. § 1404(a) [Doc. No. 912]. For the reasons set forth below, the motions are denied.

## I.      BACKGROUND

      The alleged facts giving rise to the lawsuits in this consolidated action have been described in multiple prior orders from this Court. This particular lawsuit arises out of Lenox's sale of allegedly defective mortgage loans to Plaintiff Residential Funding Company, LLC ("RFC"). (Am. Compl. ¶ 1 [Doc. No. 33, Case No. 13-cv-3495].) Prior to May 2012, RFC was "in the business of acquiring and securitizing residential mortgage loans." (*Id.* ¶ 2.) RFC acquired the loans from "'correspondent lenders'" such as Lenox,

who were responsible for collecting and verifying information from the borrower and underwriting the loans. (*Id.* ¶¶ 3, 20). After purchasing the loans, RFC either pooled the loans with similar loans to sell into residential mortgage-backed securitization ("RMBS") trusts or sold the loans to other purchasers. (*Id*. ¶ 3.)

As alleged in the Amended Complaint, RFC's relationship with Lenox was governed by a Seller Contract that incorporated the terms and conditions of RFC's Client Guide, and these documents "collectively form the parties' Agreement, and set the standards to which Lenox's loans sold to RFC were expected to adhere." (*Id.* ¶¶ 16-17.) It is alleged that, pursuant to the Agreement, Lenox made numerous representations and warranties regarding the loans, including that Lenox would "promptly notify" RFC of any material acts or omissions regarding the loans. (*Id.* ¶ 23(b) (citing Client Guide A201(M)).) The Agreement also provided for certain remedies for RFC in the event of a breach, including repurchase of the defective loan or indemnification against losses and liabilities resulting from the breach. (*Id.* ¶¶ 28–32.)

According to RFC, many of the loans sold by Lenox were defective, and beginning in 2008, RFC faced claims and lawsuits resulting from the defective loans it had purchased, including loans from Lenox. (*Id.* ¶¶ 47, 50, 52, 55.) By May 2012, RFC had spent millions of dollars repurchasing defective loans, including loans sold to it by Lenox. (*Id.* ¶ 67.) On May 14, 2012, RFC filed for Chapter 11 bankruptcy protection in the Bankruptcy Court for the Southern District of New York. (*Id.* ¶ 68); *In re Residential Capital, LLC*, Case No. 12-12020(MG) (Bankr. S.D.N.Y.). RFC alleges that hundreds of proofs of claim related to allegedly defective mortgage loans, including those sold to

RFC by Lenox, were filed in connection with the bankruptcy proceedings. (Am. Compl. ¶ 69.) The Bankruptcy Court eventually approved a global settlement for more than $10 billion in allowed claims. (*Id.* ¶ 73.)

RFC claims that Lenox is obligated, pursuant to the Agreement, to compensate RFC for losses and liabilities related to Lenox's breaches of representations and warranties. (*Id.* ¶ 74.) Accordingly, RFC filed a lawsuit asserting two causes of action against Lenox. In Count One, a claim for breach of contract, RFC alleges that Lenox materially breached the representations and warranties it made to RFC, because the mortgage loans it sold to RFC did not comply with those representations and warranties. (*Id.* ¶ 79.) RFC asserts that these material breaches constitute Events of Default under the Agreement and have resulted in losses and liabilities related to the defective loans, as well as losses associated with defending the lawsuits and proofs of claim that stem from those loans. (*Id.* ¶¶ 80–81.) In Count Two, RFC alleges that it is entitled to indemnification from Lenox for those losses and liabilities. (*Id.* ¶¶ 84–86.)

## II.   LENOX'S MOTION TO DISMISS, TO STRIKE, OR FOR JUDGMENT ON THE PLEADINGS

Lenox moves to dismiss RFC's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), to strike the Amended Complaint pursuant to Rule 12(f), or, alternatively, for judgment on the pleadings pursuant to Rule 12(c). As grounds for the motion, Lenox argues that, by bringing this lawsuit, RFC has acted "in direct contravention to the statutory purpose" of the Troubled Asset Relief Program ("TARP"), which was established under the Emergency Economic Stabilization Act of 2008

("EESA"). (Def.'s Mem. Supp. Mot. Dismiss at 5 [Doc. No. 860, Case No. 13-cv-3451])
(emphasis omitted)).  Before reaching the merits of the motion, the Court must determine
which Rule 12 standard to apply.

### A.     Rule 12(f)

Pursuant to Federal Rule of Civil Procedure 12(f), the Court may strike from a
pleading "any redundant, immaterial, or scandalous matter." Fed. R. Civ. P. 12(f). A
party must file a Rule 12(f) motion "either before responding to the pleading or, if a
response is not allowed, within 21 days after being served with the pleading." Fed. R.
Civ. P. 12(f)(2). RFC filed the Amended Complaint in this action on March 25, 2014.
(Am. Compl., Mar. 25, 2014 [Doc. No. 33, Case No. 13-cv-3495].) In lieu of answering,
Lenox filed a Rule 12(b)(6) motion to dismiss on April 8, 2014. (Def.'s Mot. Dismiss
[Doc. No. 38, Case No. 13-cv-3495].) After that motion was denied, Lenox filed its
Answer on September 12, 2014. (Answer [Doc. No. 66, Case No. 13-cv-3495].)

Setting aside the question of whether Lenox was required to file its Rule 12(f)
motion contemporaneously with its Rule 12(b)(6) motion, *see* Fed. R. Civ. P. 12(g)(2),
Lenox's motion to strike is clearly untimely under Rule 12(f)(2). The motion was filed on
September 15, 2015, more than a year after Lenox responded to the Amended Complaint.
(Def.'s Mot. Dismiss [Doc. No. 860, Case No. 13-cv-3451].) Accordingly, Lenox's
motion to strike the Amended Complaint pursuant to Rule 12(f) is denied as untimely.

Lenox's Rule 12(f) motion is also denied on the merits. Lenox has not shown how
any allegation in RFC's Amended Complaint—much less the entire pleading—is
redundant, immaterial, impertinent, or scandalous.

4

**B.      Rule 12(b)(6)**

Insofar as Lenox's motion is brought pursuant to Rule 12(b)(6), that motion, too, is untimely. A motion asserting a failure to state a claim, filed pursuant to Rule 12(b)(6), must be made before a responsive pleading is filed.  Fed. R. Civ. P. 12(b). Lenox filed its Answer on September 12, 2014, and the time for filing a Rule 12(b)(6) motion has long expired. Consequently, to the extent Lenox seeks to dismiss the Amended Complaint pursuant to Rule 12(b)(6), that basis for dismissal is no longer available.

**C.      Rule 12(c)**

Federal Rule of Civil Procedure 12(c) provides that a motion for judgment on the pleadings is appropriate after the pleadings are closed. Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings will be granted "only where the moving party has clearly established that no material issue of fact remains and the moving party is entitled to judgment as a matter of law." *Waldron v. Boeing Co.*, 388 F.3d 591, 593 (8th Cir. 2004). A motion for judgment on the pleadings is evaluated under the same standard as a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Clemons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009).

When evaluating a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted, the Court assumes the facts alleged in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the plaintiff.  *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986).  However, the Court need not accept as true wholly conclusory allegations, *see Hanten v. School District of Riverview Gardens*, 183 F.3d

799, 805 (8th Cir. 1999), or legal conclusions the plaintiff draws from the facts pled, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).

### 1.     Matters Outside the Pleadings

In support of its motion, Lenox attached more than 1700 pages of materials to "Request[s] for Judicial Notice" [Doc. Nos. 861, 985].  The Court ordinarily does not consider matters outside the pleadings on a motion to dismiss. *See* Fed. R. Civ. P. 12(d). The Court may, however, consider exhibits attached to the complaint and documents that are necessarily embraced by the pleadings, *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003), as well as public records, *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007). The documents provided by Lenox are public records, but are neither attached to nor embraced by the pleadings.  In resolving Lenox's motion, the Court has considered only those submitted materials that are relevant to the issues at hand and do not contain facts subject to reasonable dispute.

### 2.     TARP and EESA

Congress enacted the EESA "to restore liquidity and stability to the financial system of the United States," in part by protecting home values and preserving homeownership. 12 U.S.C. § 5201(1), (2)(B). The TARP was established as part of the EESA "to purchase, and to make and fund commitments to purchase, troubled assets from any financial institution, on such terms and conditions as are determined by the Secretary" of the Treasury ("Secretary"). *Id.* § 5211(a)(1). The Office of the Special Inspector General for the TARP ("SIGTARP") was established to "conduct, supervise, and coordinate" the Secretary's management of TARP programs. *Id.* § 5231(c)(1).

Lenox accuses RFC of misusing and mismanaging TARP funds, and seeks to dismiss RFC's claims on this basis.  But none of the statutory provisions Lenox cites provide it with a legal basis to dismiss RFC's claims as a matter of law. For example, § 5211(e) instructs the Secretary of the Treasury ("Secretary") to "take such steps as may be necessary to prevent unjust enrichment of financial institutions participating in a program established under this section, including by preventing the sale of a troubled asset to the Secretary at a higher price than what the seller paid to purchase the asset." 12 U.S.C. § 5211(e). This provision speaks only to the Secretary's authority and does not confer any private rights, claims, or defenses.  Thus, Lenox's request that the Court "disgorge the TARP funds or dismiss these actions with prejudice" pursuant to § 5211(e), (Def.'s Mem. Supp. Mot. Dismiss at 20 [Doc. No. 860, Case No. 13-cv-3451]), has no legal footing.

In addition, the EESA instructs the Secretary of the Treasury to consider several goals in administering the TARP, including "(1) protecting the interests of taxpayers by maximizing overall returns and minimizing the impact on the national debt; [and] (2) providing stability and preventing disruption to financial markets in order to limit the impact on the economy and protect American jobs, savings, and retirement security." 12 U.S.C. § 5213(1), (2). This provision does not encompass enforcement by one private party against another, however, such as Lenox seeks to accomplish here through a dismissal of RFC's claims.

Lenox also cites 18 U.S.C. § 1031, which makes it a criminal offense to knowingly execute a scheme or artifice through the TARP with the intent (1) to defraud

the United States or (2) obtain money through fraudulent means. 18 U.S.C. § 1031(a).

Lenox cannot rely on this criminal statute in its pursuit of dismissal for failure to state a

claim. Nor was RFC charged with or convicted of a violation of the statute.

Section § 5229 of the TARP expressly addresses judicial review, but provides only

for a private right of action directly against the Secretary. 12 U.S.C. § 5229(a). The

statute does not create any other private rights or any defenses against a recipient of funds

such as RFC. *See In re Shirk*, 437 B.R. 592, 606 (Bankr. S.D. Ohio 2010) (citing *Pantoja*

*v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d 1177, 1185 (N.D. Cal. 2009);

*Gardner v. Am. Home Mortg. Servicing, Inc.*, 691 F. Supp. 2d. 1192, 1203 (E.D. Cal.

2010); *Huestis v. Indymac Fed. Bank*, No. 2:09-cv-01739-GEB-DAD, 2010 WL

1416714, at *7 (E.D. Cal. Apr. 8, 2010)).

Indeed, there is no provision of the TARP that provides any legal basis for the

Court to dismiss RFC's claims against Lenox. *Cf. Wachovia Bank, Nat'l Ass'n v. Lone*

*Pine, Inc.*, No. 1:09-cv-02983-JOF, 2010 WL 2553880, at *2 (N.D. Ga. June 15, 2010)

("[B]ecause TARP does not contain a private right of action, Defendants may not raise it

as an affirmative defense to Plaintiff's breach of contract claim."); *see also Nivia v.*

*Nation Star Mortg., LLC*, No. 14-14048, 2015 WL 4930287, at *3 (11th Cir. Aug. 19,

2015) (holding "TARP provides no private right of action against private entities").

Lenox disclaims any intent to pursue a private right of action, explaining that it is

"seek[ing] dismissal based upon Plaintiffs prosecuting this action in violation of federal

law." (Def.'s Mem. Supp. Mot. Dismiss at 24 [Doc. No. 860, Case No. 13-cv-3451].) But

Lenox has not identified any established "violation of federal law," and as discussed

above, there is no statutory authority for this Court to determine in this action whether or not RFC violated the TARP.

Relatedly, Lenox argues that RFC's misuse of TARP funds violated the spirit and purpose of TARP and Congress's intent in establishing the program, and that allowing RFC's claims to proceed would legitimize and reward its conduct. This Court cannot conclude, however, based on the limited record before it and under a Rule 12(b)(6) standard, that RFC's breach-of-contract and indemnification claims against Lenox fail as a matter of law in light of TARP's purposes and Congressional intent. Nor has Lenox provided any authority in support of its request to dismiss RFC's claims on this ground.

For the above reasons, the Court denies Lenox's motion to dismiss, to strike, or for judgment on the pleadings.

## III.   LENOX'S MOTION TO TRANSFER VENUE

Despite having agreed to a forum selection clause in the principal agreement between the parties, litigated this case in Minnesota for two years, and previously taken the position in opposition to RFC's motion to transfer that venue is proper in Minnesota, Lenox moves to transfer venue. Lenox moves to transfer this case to the United States District Court for the Central District of California.

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "[A] proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of*

*Tex.*, — U.S. —, 134 S. Ct. 568, 579 (2013) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988)).

A § 1404(a) analysis requires the Court to engage in a three-step inquiry. First, the Court must determine whether the District of Minnesota is a proper venue, without regard to the forum-selection clause. This is because "[s]ection 1404(a) applies only if the initial federal forum is a proper venue," pursuant to 28 U.S.C. § 1391. *See* 14D Charles Alan Wright, *et al.*, *Federal Practice and Procedure* § 3829 (4th ed.). Second, the Court must determine the validity of the forum-selection clause. *Rogovsky Enter., Inc. v. Masterbrand Cabinets, Inc.*, 88 F. Supp. 3d 1034, 1040 (D. Minn. 2015). If the clause is valid, then third and finally, the Court must consider any public-interest factors put forth by the parties. *Atl. Marine*, 134 S. Ct. at 582.

Neither RFC nor Lenox discusses the first step of the inquiry.  Indeed, both parties have argued in this case—albeit it at different times—that venue most decidedly *is* proper in Minnesota. (*See generally* Def.'s Mem. Opp'n Mot. Transfer Venue [Doc. No. 35, Case No. 13-cv-3495]; Pl.'s Mem. Opp'n Mot. Transfer Venue [Doc. No. 979 in Case No. 13-cv-3451].) There is no apparent dispute that the District of Minnesota is a proper venue, and the Court thus proceeds to the second inquiry.

As the party defying the forum-selection clause, Lenox has the burden to establish its invalidity. *Rogovsky*, 88 F. Supp. 3d at 1042 (citing *Atl. Marine*, 134 S. Ct. at 581; *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)). But Lenox does not address the validity of the forum-selection clause or present any basis to conclude the clause is invalid. Consequently, the Court finds the clause valid.

The public-interest factors relevant to the third inquiry "may include 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law.'" *Atl. Marine*, 134 S. Ct. at 581 n.6.  A court must not consider, on the other hand, private interests such as access to evidence, the availability and cost of compulsory process for attendance, and other practical problems affecting the convenience of the parties. *Id.* at 581 & n.6.

Here, Lenox offers only private interest factors in support of its motion to transfer, and the Court rejects these interests out of hand. As for the public-interest factors, they weigh against transfer. Administrative difficulties flowing from court congestion have already been greatly alleviated by the consolidation of Lenox with other similar defendants in the District of Minnesota, and the goals of promoting just and efficient litigation have been met.  (*See* Am. Order at 2, Jan. 29, 2015 [Doc. No. 94, Case No. 13-cv-3495].) Unconsolidating this case would work a contrary effect.  As to the local-interest factor, there is no question that Minnesota has an interest in having this controversy decided here. RFC had its principal place of business in Minnesota at the time of the relevant events, more than sixty similar cases are being litigated in the District of Minnesota, and several similar actions are being litigated in the Minnesota state courts. Third, the public's interest in having the case resolved "in a forum that is at home with the law" is best met here. Lenox does not dispute that RFC's claims will be decided under Minnesota law.

In sum, this case is not so unusual or exceptional such that it should be transferred

despite a valid forum-selection clause.  Consequently, the Court denies Lenox's motion to transfer venue.

Accordingly, **IT IS HEREBY ORDERED** that

1. Defendant Lenox Financial Mortgage Corporation's Motion to Dismiss and Strike the First Amended Complaint, or Alternatively, Motion for Judgment on the Pleadings [Doc. No. 860] is **DENIED**; and

2. Defendant Lenox Financial Mortgage Corporation's Motion to Transfer Venue to the United States District Court for the Central District of California Pursuant to 28 U.S.C. § 1404(a) [Doc. No. 912] is **DENIED**.

Dated: December 7, 2015                    s/Susan Richard Nelson
                                           SUSAN RICHARD NELSON
                                           United States District Judge