# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

___

| | |
|---|---|
| In Re: RFC and RESCAP Liquidating Trust Litigation | Civil File No. 13-3451(SRN/HB) |
| | **MEMORANDUM OPINION AND ORDER** |
| *This document relates to*<br>*Residential Funding Company, LLC v.*<br>*Impac Funding Corporation,*<br>*No. 13-CV-3506* | |

___

Jessica J. Nelson and Donald G. Heeman, Felhaber Larson, 220 South Sixth Street, Suite 2200, Minneapolis, Minnesota 55402; Isaac Nesser, Peter E. Calamari, and David Elsberg, Quinn, Emanuel, Urquhart & Sullivan, LLP, 51 Madison Avenue, 22nd Floor, New York, NY 10010; Anthony P. Alden and Johanna Ong, Quinn, Emanuel, Urquhart & Sullivan, LLP, 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017; Jeffrey A. Lipps and Jennifer A.L. Battle, Carpenter Lipps & Leland LLP, 280 Plaza, Suite 1300, 280 North High Street, Columbus, Ohio 43215, for Plaintiffs

Erin Sindberg Porter, Janine W. Kimble, Katherine M. Swenson, and Jenny Gassman-Pines, Greene Espel PLLP, 222 South 9th Street, Suite 2200, Minneapolis, Minnesota 55402, for Defendant Impac Funding Corporation

___

SUSAN RICHARD NELSON, United States District Judge

Before the Court is the Motion to Certify an Order for Interlocutory Review filed by Defendant Impac Funding Corporation ("Impac") [Doc. No. 1596]. For the reasons stated herein, Impac's motion is denied.

## I.   BACKGROUND

In the breach of contract and indemnification action brought by Plaintiff Residential Funding Company, LLC ("RFC") against Impac, RFC asserts liability based

on successor liability.  (RFC v. Impac, No. 13-CV-3506, Compl. ¶¶ 17-20 [Doc. No. 34].) In support of RFC's allegations of successor liability, it points to separate agreements between RFC and Pinnacle Direct Corporation ("Pinnacle Direct"), Pinnacle Direct and Pinnacle Financial Corporation ("Pinnacle Financial), and Pinnacle Financial and Impac. (Id.)  Impac subsequently moved for summary judgment on this issue, claiming that no liability attached to the successor entities.  (Impac's Mot. for Summ. J. [Doc. No. 943].)

This Court's Order of April 27, 2016 ("the Order") denied Impac's motion.  Based on the contractual language of the agreements, the Court found that Impac was not entitled to summary judgment on RFC's indemnification claim and that disputed issues of fact precluded summary judgment as to RFC's breach of contract claim.  (Order at 45 [Doc. No. 1523].)  The Court did not address RFC's alternative common law theories of successor liability, because, by finding that Impac was not entitled to summary judgment based on the contractual language of the agreements, the Court did not need to reach any other basis of liability.  (Id.)

One of the primary contracts at issue is the Asset Purchase Agreement ("APA") between Pinnacle Financial and Impac.  In construing various APA terms in the Order, the Court distinguished between the term "Assets," spelled with an uppercase "A," as opposed to "assets," spelled with a lowercase "a:"

> Impac also argues that the language in Section 2.7(f) excludes liability here. (Def.'s Mem. Supp. Mot. for Summ. J. at 19 [Doc. No. 945].)  Section 2.7(f), however, makes no mention of "Assets," i.e., the Client Contract, unlike Sections 2.6(d) and 2.7(c).  Rather, it excludes liability "related to or arising from the Loan Origination Platform and its operation prior to the

> Closing Date." (APA § 2.7(f), Ex. 23 to Sindberg Porter Aff.) While the Loan Origination Platform is defined as "the assets used or held for use in connection with the Seller's mortgage and construction loan origination business," (id. § 1.1 at IMP000014), "assets" used in this context, with a lowercase "a," are not the same as "Assets," as defined with an uppercase "A." The Court agrees with RFC that the drafters of the APA knew how to reference the Client Contract as an Asset in Sections 2.6(d) and 2.7(c). Accordingly, the exclusion of liability in Section 2.7(f) for "[a]ny Liability related to or arising from the Loan Origination Platform and its operation prior to the Closing Date" does not encompass the Assets, including the Client Contract. Moreover, as discussed, the liability at issue here arose after the May 21, 2007 closing date, as to RFC's indemnification claim, and it is not yet certain when the liability arose as to RFC's breach of contract claim. Accordingly, Impac is not entitled to summary judgment based on the language of the APA.

(Id. at 44-45.)

In the instant motion before the Court, Impac seeks leave to file an interlocutory appeal to the Eighth Circuit Court of Appeals, arguing that the Order involves a controlling question of law on which there is substantial ground for a difference of opinion. (Def.'s Mem. at 2 [Doc. No. 1598].) Specifically, Impac defines the controlling question of law as: "where the first letter of a defined term in a contract is in upper case, how should a court interpret the same word in lower case? In other words, how should the word "asset" be interpreted in the definition of the Loan Origination Platform?" (Id.) Additionally, Impac argues that certification is appropriate because an immediate appeal would expedite the termination of this litigation and could prevent protracted and expensive litigation, as successor liability is a threshold determination. (Id.)

## II.   DISCUSSION

While courts of appeals have jurisdiction over "all final decisions of the district courts," 28 U.S.C. § 1291, under certain circumstances, a district court may determine that an otherwise non-final order is certified for interlocutory appeal under 28 U.S.C. § 1292(b). See 28 U.S.C.§ 1292(b).   Section 1292(b) provides:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

Id.  The Eighth Circuit has held that certification is an "extraordinary course," requiring the moving party to satisfy three criteria: (1) the order involves a controlling question of law; (2) there is substantial ground for difference of opinion as to that controlling question of law; and (3) certification will materially advance the ultimate termination of litigation.  Union Cnty., Iowa v. Piper Jaffray & Co., 525 F.3d 643, 646 (8th Cir. 2008) (citations omitted).

Although district courts have discretion to certify orders for interlocutory appeal, "[it] has . . . long been the policy of the courts to discourage piece-meal appeals because most often such appeals result in additional burdens on both the court and the litigants." White v. Nix, 43 F.3d 374, 376 (8th Cir. 1994).  Due to this additional burden, motions for certification should be "granted sparingly and with discrimination."  Id.  The legislative history of section 1292 indicates that "it was to be used only in extraordinary

4

cases where decision of an interlocutory appeal might avoid protracted and expensive litigation. It was not intended merely to provide review of difficult rulings in hard cases." Union Cnty., Iowa, 525 F.3d at 646 (quoting United States Rubber Co. v. Wright, 359 F.2d 784, 785 (9th Cir. 1966)). In requesting this extraordinary relief, the movant must meet a heavy burden of establishing that the case is "an exceptional one in which immediate appeal is warranted." Nix, 43 F.3d at 376. In reviewing Impac's request for certification, the Court finds that none of the elements for interlocutory appeal are satisfied.

### A. Whether the Order Addresses a Controlling Question of Law

First, the significance given to the difference between a contractual term's uppercase "A" in one passage, and lowercase "a" in another passage, as a matter of contract interpretation, does not involve a controlling question of law. "A 'question of law,' as construed in § 1292(b), refers to a purely, abstract legal question." See Employers Reinsurance Corp. v. Mass. Mut. Life Ins. Co., No. 06-188-CV-W-FJG, 2010 WL 2540097, at *2 (W.D. Mo. June 16, 2010) (citing Ahrenholz v. Bd. of Trustees of Univ. of Ill., 219 F.3d 674, 676-77 (7th Cir. 2000)).

> Challenging the application of settled law to a specific set of facts is not a question of law. McFarlin v. Conseco Services, L.L.C., 381 F.3d 1251, 1258 (11th Cir.2004) (citing Ahrenholz, 219 F.3d at 676). In Ahrenholz, the court stated that "the question of the meaning of a contract, though technically a question of law when there is no other evidence but the written contract itself, is not what the framers of section 1292(b) had in mind either." 219 F.3d at 676.

Great Lakes Gas Transmission Ltd. P'ship v. Essar Steel Minnesota, LLC, No.

09-CV-3037 (SRN/LIB), 2013 WL 4028144, at *5 (D. Minn. Aug. 7, 2013) (denying motion for interlocutory appeal where the question involved the meaning of a contract) (citing Employers Reinsurance, 2010 WL 2540097, at *2). See also Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas, 426 F. Supp. 2d 125, 128 (S.D.N.Y. 2005) (stating that "a question of contract interpretation typically is not a 'controlling question of law' that serves as a basis for interlocutory appeal.")  As the issue here is one of contract interpretation, it fails to constitute a controlling question of law under § 1292.

Moreover, the Court's ruling in the Order cannot be considering "controlling," as the Court declined to rule on RFC's alternative common law basis for successor liability. See Shukh v. Seagate Tech., LLC, No. 10-CV-404 (JRT/JJK), 2011 WL 4947608, at *3 (D. Minn. Oct. 18, 2011) (stating that where an alternative basis exists for an order, the basis challenged on appeal is not "controlling.")  In addition, the Court determined that RFC's indemnification claim arose after the May 21, 2007 closing date and that a fact question existed as to when RFC's breach of contract claim arose.   A question is not controlling if the litigation would necessarily continue, regardless of how the question were decided. Conlin v. Sw. Cmty. Coll., No. 99-CV-247-C, 2001 WL 1018799, at *2 (W.D.N.C. Mar. 2, 2001).  At the very least, if the Eighth Circuit were to reverse this Court's ruling, the matter would be remanded for this Court to consider RFC's alternative basis for successor liability.  For all of these reasons, the Court finds lacking the requirement that the issue concern a controlling question of law.

### B. Whether There is a Substantial Ground for Difference of Opinion

Notably, the Order did not impose or apply a rule of law concerning how a court should interpret a previously capitalized word in lower case. (Pls.' Opp'n Mem. at 6 [Doc. No. 1606].) While Impac has identified cases in which courts have interpreted upper and lower case contractual terms either the same or differently, (Def.'s Mem. at 10 [Doc. No. 1598]), none of the cases apply a general rule of law regarding the significance of capitalization of contractual terms in contract interpretation, and none of them arise under California law, which is the applicable law at issue. Impac identifies no contradictory authority in this regard. In interpreting the APA, the Court applied the familiar rule of contract construction that requires contracts to be interpreted according to their plain language and ordinary meaning. (Order at 23; 35-36 [Doc. No. 1523].) "[M]ere disagreement with the district court's ruling does not constitute a 'substantial ground for difference of opinion' within the meaning of § 1292(b). Rather, the 'difference of opinion' must arise out of genuine doubt as to the correct legal standard." Kapossy v. McGraw-Hill, Inc., 942 F. Supp. 996, 1001 (D. N.J. 1996). It appears here, however, that Impac simply disagrees with the Court's ruling. But this is not a proper basis for certification for interlocutory review.

While Impac contends that a dearth of precedent may influence a court's decision to permit an interlocutory appeal, (Def.'s Mem. at 9 [Doc. No. 1598]), the Eighth Circuit has stated that "'a dearth of cases' does not constitute 'substantial ground for difference of opinion.'" Union Cnty., 525 F.3d at 647 (citing White, 43 F.3d at 378). Moreover,

there is no dearth of precedent here, as California law follows the general rule that a plain reading of a contract governs contract interpretation.  See George v. Automobile Club of S. Cal, 135 Cal. Rptr. 3d 480, 484 (Cal. Ct. App. 2011).

### C. Whether an Interlocutory Appeal Would Materially Advance the Ultimate Termination of the Litigation

Again, certification of an interlocutory appeal is proper only when it will materially advance the ultimate termination of the litigation.  Union Cnty., 525 F.3d at 646.  Permitting Impac to file an interlocutory appeal would not materially advance the ultimate termination of this litigation because other legal bases support the Order and the Court declined to address RFC's alternative theory of successor liability based on the common law, as noted above.  Under these circumstances, permitting an interlocutory appeal would likely unnecessarily prolong the litigation.  See Ray, 971 F. Supp. 2d at 896 (noting that if the movant were to prevail on interlocutory appeal, the appeal would advance the ultimate termination of the litigation, but finding that an alternative outcome was reasonably likely, namely, that the Court of Appeals would affirm the district court's ruling, thus "dramatically and unnecessarily prolong[ing the litigation], at significant expense to both parties.").

Accordingly, for the reasons stated herein, the Court finds that Impac has not met the heavy burden of establishing the factors necessary to warrant the exceptional relief of interlocutory appeal.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Impac Funding Corporation's Motion to Certify an Order for Interlocutory Review [Doc. No. 1596] is **DENIED**.

Dated: June 20, 2016

                                                s/Susan Richard Nelson
                                                SUSAN RICHARD NELSON
                                                United States District Court Judge