UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

In Re: RFC and RESCAP Liquidating Trust Actions

Civil File No. 13-3451 (SRN/JJK/HB)

**ORDER**

_____

**Order Regarding Phase II Rule 30(b)(6) Issues**
_____

SUSAN RICHARD NELSON

Before the Court is the Motion to Compel Phase II 30(b)(6) Deposition Testimony of Plaintiffs [Doc. No. 2115] filed by Defendant First Guaranty Mortgage Corporation ("FGMC"). In addition, similar issues concerning Phase II Rule 30(b)(6) depositions were raised in letters to the Court filed by Defendants Provident Funding Associates, L.P. ("Provident") [Doc. Nos. 2104 & 2077], Synovus Mortgage Corp. ("Synovus") [Doc. No. 2150], and iServe Residential Lending, LLC ("iServe") [Doc. No. 2148]. Defendants represented by attorney Philip Stein of Bilzin Sumberg in this consolidated action, specifically, Colonial Savings, F.A. ("Colonial"), E Trade Bank ("E Trade"), Standard Pacific Mortgage, Inc. ("Standard Pacific"), and CTX Mortgage Company, LLC ("CTX") (collectively, "the Bilzin Sumberg Defendants"), have sought related testimony.

Lastly, before the Court is a dispute between Plaintiffs and PNC Bank, N.A. ("PNC") that relates to PNC's Phase II Rule 30(b)(6) Deposition Notice to Plaintiffs, Topic No. 5.F. (See PNC's Ltr. of 1/24/17 [Doc. No. 2145-1]; Pls.' Ltr. of 1/24/17 at 3-5

1

[Doc. No. 2146].)

## I.  BACKGROUND

In this consolidated action arising out of Defendants' sale of allegedly defective mortgage loans to RFC, the Court directed that Rule 30(b)(6) depositions occur in particular phases and sequences. (See Pretrial Order No. 13 ("Deposition Protocol") [Doc. No. 1094]; Addendum to Pretrial Order No. 13 ("Addendum") [Doc. No. 1694].) In Phase I of the 30(b)(6) depositions, Defendants were to elicit from Plaintiffs' witnesses testimony concerning common practices and policies, applicable to all loans. (See Deposition Protocol at 1-3.) Defendants were permitted to take six days of testimony on such common policies. (Id. at 1.) In taking these depositions, Defendants could use certain exemplar loans to obtain testimony demonstrating how Plaintiffs' common practices and procedures would apply to a given loan. In Phase I of Plaintiffs' depositions of Defendants, Plaintiffs were similarly permitted to inquire about the Defendants' general practices, policies, and procedures. (Id. at 3.)

To address Defendants' concerns that Plaintiffs might have utilized different practices and policies specific to individual defendants, the Court permitted a second phase of 30(b)(6) depositions of Plaintiffs. In Phase II, Defendants were permitted to elicit Defendant-specific testimony, to the extent that RFC's common practices and procedures, addressed in Phase I, did not apply to a particular Defendant. (See Addendum at 1-2.)

## II.   DISCUSSION

### A.   Phase II Rule 30(b)(6) Testimony

In FGMC's Rule 30(b)(6) motion, it seeks to examine RFC's designee on 25 exemplar loans drawn from the 150-loan sample of FGMC's allegedly breached loans.[1] (FGMC's Mem. at 6 [Doc. No. 2117].)  Specifically, FGMC proposes a seven-hour deposition devoted to the factual history of the 25 exemplar loans, covering 13 topics, including the following:  RFC's pre-purchase due diligence assessments; post-purchase quality control investigations and findings; decisions to slot specific loans in particular RMBS trusts; efforts to mitigate the losses on specific loans; and repurchase requests from RMBS trusts to RFC and from RFC to FGMC.  (Id.; see also FGMC Ltr. of 12/23/16 [Doc. No. 2119-2].)  If RFC agrees to stipulate that two of the 13 topics involving losses incurred by Plaintiffs will be addressed by Plaintiffs' experts, FGMC states that it will withdraw these two topics from the 30(b)(6) deposition.  (FGMC's Mem. at 6, n.3.)

FGMC argues that loan-level testimony on the breach loans is central and critical to its defenses in this $100 million+ action.  (Id. at 7.)  Because the exemplar breach loans are considered representative of FGMC's breach loans as a whole, FGMC contends that the factual history of these loans is essential.  (Id. at 10.)  Pointing to the Court's Addendum, FGMC asserts that the only limitation that the Court placed on Phase II

---

[1] FGMC states that it is willing to consider fewer than 25 exemplar breach loans, but the parties' discussions did not progress to that point.  (FGMC's Mem. at 6.)

30(b)(6) depositions was that they not include common issue topics that would have been proper as Phase I topics. (Id. at 11-12) (citing Addendum at 1.)

Further, FGMC contends that it expected to have the opportunity "to conduct the loan-level inquiry on exemplar loans that it has noticed," asserting that RFC asked loan-level questions of FGMC's 30(b)(6) designee, far beyond matters of policy and procedure. (Id. at 13-14.) In particular, FGMC asserts that Plaintiff's counsel examined FGMC's 30(b)(6) witness about underwriting decisions on specific loans, quality control measures on specific loans, and specific attributes of the exemplar loans, including: (1) whether one would ordinarily expect that a borrower in a specific loan file, listing her occupation as engineer, would have had more than 12 years of education; (2) whether, when comparing a borrower's financial information on a loan application against disparities in her bankruptcy filing, the borrower had misrepresented her income in her loan application; (3) whether properties owned by a particular borrower, but not declared on the borrower's loan application, constituted a misrepresentation; and (4) whether the presence of certain information in specific borrowers' files would have raised a red flag for FGMC's underwriter, including a borrower engineer claiming an income of over $75,000, yet listing only a high school education and identifying outstanding consumer debt of over $12,000, the presence of various charged-off accounts on a borrower's credit report, and instances of twelve credit inquiries per month on a particular borrower's credit report. (Kreun Decl. ¶ 14 [Doc. No. 2118].) Counsel for FGMC attests that had he understood that the Deposition Protocol, or any court order, prohibited loan-level questioning in the Phase II

30(b)(6) depositions, he would not have permitted RFC to conduct such examination of his client. (Id. ¶ 15.)

Defendants Provident, iServe, and Synovus raise arguments similar to those asserted by FGMC. Provident argues that it is entitled to depose RFC's Rule 30(b)(6) witness about historical/actual loss amounts, due diligence, and loan-level questions. (Provident's Ltr. of 1/6/17 at 3 [Doc. No. 2104].) Provident contends that the plain language of the Deposition Protocol and Addendum expressly permits inquiry on defendant-specific issues and loan-specific issues in Phase II. (Id. at 3-4.) After obtaining the Court's guidance at the September case management conference, Provident and Plaintiffs have attempted to devise other means by which to obtain the requested information, but Provident contends that Plaintiffs have rejected its proposals. (Id. at 5-6.)

Defendant iServe agrees with the arguments advanced by FGMC. Provident proposes to examine Plaintiff's Rule 30(b)(6) witness on the historical facts of eight at-issue loans. (iServe Ltr. of 2/14/17 [Doc. No. 2148].) Also, iServe seeks defendant-specific testimony regarding breach contentions, pre- and post-acquisition due diligence, testimony about whether RFC granted any exceptions or variances on the underwriting of six at-issue loans inconsistent with an established policy, and damages testimony concerning differences between alleged loss amounts provided to Defendants. (Id. at 2.)

Following the December case management conference, Defendant Synovus believed that it had reached agreement with Plaintiffs on the scope of the Phase II topics. (Synovus Ltr. of 1/24/17 at 2 [Doc. No. 2150].) Among other things, Synovus understood

that Plaintiffs would provide a written summary of the testimony that it agreed to provide, along with certain stipulations.  (Id.)  Shortly before the January case management conference, however, Synovus contends that Plaintiffs reneged on their earlier agreement, pointing to unfruitful Phase II 30(b)(6) depositions taken by Defendants represented by Bilzin Sumberg.  (Id.)  Synovus notes that the parties did not have time to meet and confer prior to the January case management conference.  (Id. at 3.)  If, however, the parties are directed to engage in further meet and confer efforts, Synovus indicates that it may require a short extension of the current schedule, which requires the completion of Phase II 30(b)(6) depositions of Plaintiffs by the end of February 2017.  (Id.)  While Synovus states that it has been able to resolve certain areas of disagreement with RFC, it seeks the Court's guidance on the use of exemplar loans during Phase II depositions.  (Id. at 8-9.)

RFC opposes Defendants' requests, arguing that they improperly seek testimony concerning common issues.[2]  (Pls.' Opp'n Mem. at 3-4 [Doc. No. 2138].)  Plaintiffs contend that common issues testimony was obtained in the Phase I 30(b)(6) depositions and in individual witness depositions.  (Id.)  In addition, RFC argues that FGMC improperly seeks damages discovery and loan-by-loan testimony, directly contravening the Court's prior statements that damages discovery will occur in the expert discovery phase and that loan-by-loan discovery will not be permitted.  (Id. at 5-9.)  Morever, Plaintiffs contend that in their Rule 30(b)(6) deposition of FGMC, they sought testimony

---

[2] While the Court cites to Plaintiffs' response to FGMC, Plaintiffs raise the same arguments in opposition to Provident, iServe, and Synovus.  (See Pls.' Ltr. of 1/24/17; 1/26/17 Hr'g Tr. at 121-30 [Doc. No. 2177] (filed under seal).)

on only five exemplar loans, as opposed to the 25 exemplar loans proposed by FGMC. (Id. at 9.) Denying that they elicited loan-by-loan testimony in that deposition, RFC contends that it referenced five specific loan exemplars in order to "ground a line of questions about FGMC's policies" concerning an agreed-upon product exception and the regular practice between FGMC and RFC. (Id.) (citing FGMC R. 30(b)(6) Dep. at 216-20, Ex. F to Nesser Decl. [Doc. No. 2139-6] (filed under seal)).

Federal Rule of Civil Procedure 26(b) provides for the discovery of non-privileged matter relevant to any party's claim or defense. This standard is liberal in scope and interpretation, "extending to those matters which are relevant and reasonably calculated to lead to the discovery of admissible evidence." Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1991). Pursuant to Fed. R. Civ. P. 30(b)(6), a party may name an organization as a deponent, describing "with reasonable particularity the matters for examination." The organization then designates a witness or witnesses to testify on its behalf. Fed. R. Civ. P. 30(b)(6). The witness or witnesses must testify about matters known or "reasonably available to the organization." Id.

The Court has reviewed all of the parties' arguments concerning the scope of Phase II depositions and appreciates the dedicated, time-intensive efforts that the parties have undertaken to resolve their disagreements. All parties may rest assured, that during the course of discovery, they will be permitted to obtain all of the information to which they are entitled. In order to sensibly organize discovery in a consolidated action such as this, with parity in mind, the Court has implemented an orderly discovery process. Pursuant to

that process, the parties have produced millions of pages of documents. They have taken numerous depositions of fact witnesses. And, as to Rule 30(b)(6) depositions, the Court has implemented a bifurcated process.

As noted, the purview of the Phase I 30(b)(6) depositions of Plaintiffs was common issues, neither Defendant-specific nor loan-specific. (See Deposition Protocol at 1-2.) However, in order to provide some context, the Deposition Protocol and Addendum did not preclude, during Phase I, examination concerning the application of RFC's common policies to exemplar loans.

As to the Phase II 30(b)(6) discovery at issue here, both sides raise good arguments. The requested testimony is relevant and Defendants are entitled to confront Plaintiffs with certain Defendant-specific facts that appear to suggest that Plaintiffs did not apply their policies to Defendants' loans. However, Defendants overreach with respect to the Phase II depositions, seeking, for example "a systematic examination of RFC's handling and assessment of the specific Breach loans," (FGMC's Mem. at 16), and testimony that explains the difference between sets of loan level loss figures. (See Provident Ltr. of 1/6/17 at 6).

With parity in mind, the Court provides the following guidance. During Phase II, Defendants may seek testimony regarding RFC's practices that were unique or specific to a particular Defendant. But, for example, not included within the Defendant-specific scope of Phase II depositions, are questions seeking contention answers or answers to legal issues, calculation of damages, or common issues. Defendants had a full and fair

8

opportunity to explore common issues during Phase I. They will have a full and fair opportunity to explore many of their contested Phase II 30(b)(6) topics at a different point in the discovery process. For example, contention interrogatories will be permitted at a later date. Extensive expert discovery is contemplated, with disclosures and depositions that will support the parties' positions on the ultimate questions of breach and damages.

Thus, during Phase II 30(b)(6) depositions, Defendants may not ask whether a breach occurred. This is a legal issue. Likewise, with respect to reunderwriting guidelines, RFC might argue that the Client Guide applies, while a given Defendant might argue that Defendant-specific guidelines apply. That is also a legal issue. Thus, a question to a 30(b)(6) witness, asking the witness to agree that the Client Guide is inapplicable, is outside the bounds of Phase II testimony.

Based on a review of Plaintiffs' Rule 30(b)(6) deposition of FGMC, there does appear to be an issue of parity, however. Granted, the portion of the transcript cited by RFC in opposition to FGMC's motion supports Plaintiffs' position that a limited number of exemplar loans were used in reference to broader questions concerning FGMC's overall policies and practices. (See FGMC R. 30(b)(6) Dep. at 216-20, Ex. F to Nesser Decl.) (filed under seal).) But the portion of the transcript that FGMC identified by page number at the case management conference, (1/26/17 Hr'g Tr. at 104) (citing FGMC R. 30(b)(6) Dep. at 514-65, Ex. A to Supp'l Kreun Decl. [Doc. No. 2160-1] (filed under seal)), shows that RFC at times asked case-specific questions about facts that may have contradicted FGMC's common policies. (See, e.g., FGMC R. 30(b)(6) Dep. at 525-26; 542-43, Ex. A

9

to Supp'l Kreun Decl.)  As the Court has also previously stated, loan-by-loan testimony is not permitted during Phase II 30(b)(6) discovery, but, in parity, Defendants may ask similar loan-specific questions regarding a limited number of exemplar loans where there is evidence of facts contradictory to the application of RFC's general policies and practices.  Consistent with this approach and the scope of testimony noted above, Plaintiffs and the Bilzin Sumberg Defendants reached a compromise in which those Defendants identified eight exemplar loans for which they sought to obtain Phase II Defendant-specific testimony from RFC.

Importantly, as well, to the extent that the Bilzin Sumberg Defendants possessed documents that contradicted the application of a common RFC practice or policy to one of their exemplar loans, the parties argued that Defendants could establish that fact by showing the witness the document and asking about its authenticity as a matter of "historical fact."  After having taken some of these depositions, however, the parties have found them neither particularly efficient nor fruitful and are exploring other means by which to address these issues.  (See 1/26/17 Hr'g Tr. at 108; 122-23.)

While Defendants FGMC, Provident, iServe, and Synovus may also take such testimony concerning eight of their exemplar loans, the experience of Plaintiffs and the Bilzin Sumberg Defendants is instructive and will provide guidance.  The Court therefore directs Plaintiffs and all of these Defendants to meet and confer in an effort to propose an alternate means by which to obtain the Defendant-specific evidence in question.  Should the parties fail to reach a resolution, these Defendants may proceed to conduct the Phase II

30(b)(6) depositions in accordance with this guidance.

For all of these reasons, FGMC's motion, and Defendants' letter requests, are granted in part and denied in part.

**B.     PNC Bank**

The dispute between PNC and Plaintiffs concerns information related to PNC's Phase II 30(b)(6) Deposition Notice, Topic 5.F.  This topic "seeks PNC-specific information regarding loans that National City repurchased from RFC or for which it provided another repurchase remedy, such as a make-whole payment, and in particular whether and to what extent any such repurchase remedy from National City caused RFC to repurchase the loan from the RMBS trust that held the loan, or to provide a make-whole or other repurchase remedy, to the trust."  (PNC Ltr. of 1/24/17 at 1-2 [Doc. No. 2145-1].)

PNC contends that immediately prior to the October case management conference, Plaintiffs offered to compromise by providing "information sufficient for PNC to determine, with respect to the loans National City repurchased from RFC, 'whether RFC left such loans in the RMBS trusts . . . or whether it purchased those loans out of the trusts, and whether RFC passed funds received from National City on account of such loans on to the RMBS trusts or whether it retained those funds and, if so, what became of them.'" (Id. at 2.)

PNC further contends that in the parties' initial meet and confer sessions, Plaintiffs proposed to provide the requested data from RFC's correspondent and investor repurchase databases, known as ARMS and IRD.  (Id.)  Subsequently, Plaintiffs informed PNC that

they would not make representations about ARMS and IRD sufficient for PNC to rely on the data.  (Id.)  Instead, Plaintiffs offered to enter into a stipulation identifying information sources that <u>could</u> have the relevant information.  (Id.)  PNC then clarified that it did not want emails or "one-off documents from non-centralized sources," but rather, wanted Plaintiffs to identify the most complete sources of information that RFC used in its ordinary course of business.  (Id.)  While Plaintiffs had told PNC that a potential source of the information was the MBIA bankruptcy expert reports, PNC contends that it found none of the information there.  (1/26/17 Hr'g Tr. at 73 [Doc. No. 2177].)

PNC argues that the requested information is relevant and it therefore seeks an order from the Court directing Plaintiffs to "provide sufficient information for PNC to determine, with respect to the loans for which National City provided a repurchase remedy to RFC: (1) whether RFC repurchased those loans from the trusts or provided some other repurchase remedy, such as a make-whole payment, and (b) if not, what became of the National City repurchase funds that RFC received from PNC."  (PNC Ltr. of 1/24/17 at 3.)

In response, Plaintiffs contend that PNC is not entitled to this information during Phase II 30(b)(6) depositions.  (Pls.' Ltr. of 1/24/17 [Doc. No. 2146].)  In addition, Plaintiffs assert that this request is inappropriate because the Court previously ruled that Defendants could seek an additional two hours of testimony from RFC's Rule 30(b)(6) deponent Deanna Horst on this very issue.  (Id.) (citing 12/15/16 Hr'g Tr. at 130 [Doc. No. 2072].)  Plaintiffs therefore argue that the Court's earlier ruling obviates the need for the testimony sought in Topic 5.F.  (Id.)

In addition to the two hours of testimony from Ms. Horst, in order to resolve this issue, Plaintiffs shall provide to PNC sufficient information as to the best sources of this data, specifying where the information can be found, including whether the ARMS and IRD databases are the best sources of this data.  PNC's request is therefore granted in part and denied in part.

**THEREFORE IT IS HEREBY ORDERED THAT:**

1. Defendant First Guaranty Mortgage Corporation's Motion to Compel Phase II 30(b)(6) Deposition Testimony of Plaintiffs [Doc. No. 2115] is **GRANTED in part** and **DENIED in part**;

2. The ruling with respect to First Guaranty Mortgage Corporation also applies to similar issues raised in letters to the Court filed by Defendants Provident Funding Associates, L.P. [Doc. Nos. 2104 & 2077], Synovus Mortgage Corp. [Doc. No. 2150], and iServe Residential Lending, LLC [Doc. No. 2148]; and

3. Defendant PNC's request [Doc. No. 2145-1] is **GRANTED in part** and **DENIED in part**.

Dated: February 10, 2017                       s/Susan Richard Nelson
                                               SUSAN RICHARD NELSON
                                               United States District Judge