UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

In Re: RFC and RESCAP Liquidating Trust Actions

Civil File No. 13-3451 (SRN/HB)

**ORDER**

_____

Order Regarding the Motion to Compel Discovery of Servicing Records Filed by Defendant Provident Funding and Joined by Defendant First Guaranty Mortgage Corporation
_____

SUSAN RICHARD NELSON, United States District Judge

Before the Court is the Motion to Compel Discovery of Servicing Records filed by Defendant Provident Funding ("Provident") [Doc. No. 2447] and joined by Defendant First Guaranty Mortgage Corporation ("First Guaranty") [Doc. No. 2468]. For the reasons set forth below, Defendants' motion is granted in part and denied in part.

I. DISCUSSION

Defendants bring the instant motion to compel Plaintiffs Residential Funding Company, LLC and the ResCap Liquidating Trust (collectively, "RFC" or "Plaintiffs") to produce servicing records that Provident and First Guaranty identified in their respective loan-by-loan "gap analyses." Provident indicates that "servicing documents" include "payment histories, comment logs, and other hard-copy servicing-related documents." (Provident's Mem. Supp. Mot. to Compel at 1 [Doc. No. 2450].)

1

## A. Homecomings' and GMAC Mortgage's Primary Loan Servicing

In general, the "primary servicing" of a residential mortgage loan consists of collecting the monthly mortgage payments and corresponding with borrowers should any payment issues arise. (Chatleain Aff. ¶ 3 [Doc. No. 2549].) Persons doing this work, "primary servicers," typically maintain two types of data in connection with primary servicing: (1) payment histories, showing amounts and dates of payment, as well as delinquency and default dates, if applicable; and (2) primary servicers' notes, showing evidence of contact with the borrower, such as telephone calls. (Id. ¶ 4.)

Prior to April 2007, Homecomings, RFC's affiliate, undertook the primary servicing for most loans in RFC's residential mortgage backed securities ("RMBS), using a loan servicing system called "LSAMS." (Id. ¶ 5.) After April 2007, the primary servicing data for loans that Homecomings was actively servicing moved to another RFC affiliate, GMAC Mortgage, which assumed the primary servicing responsibility for Homecomings' loans. (Id. ¶ 6.) GMAC Mortgage used a servicing platform called "LoanServ." (Id.) Although LoanServ is a commercially available platform sold and supported by FiServ, Inc. ("FiServ"), GMAC Mortgage used a customized, proprietary version of LoanServ. (Chatleain Aff. ¶ 7; Wahl Aff. ¶ 12 [Doc. No. 1859].) FiServ is a third-party service provider with which GMAC Mortgage contracted for the storage, management, and maintenance of primary servicing data. (Wahl Aff. ¶ 12.) In April 2007, the primary servicing data for loans that had been serviced using the LSAMS system, but were no longer actively serviced, was archived and remained on the LSAMS

system. (Chatleain Decl. ¶ 8; Wahl Aff. ¶ 11.)

Prior to February 2013, GMAC Mortgage used the LoanServ platform to access data stored at FiServ. (Wahl Aff. ¶ 13.) In addition, GMAC Mortgage stored a subset of the data itself in Fi-Serv's data warehouse utility called InformEnt. (Id.) The information stored on InformEnt was designed for reporting purposes and was accessible through an application called Business Objects. (Id. ¶ 14.) The end users of Business Objects required extensive data knowledge and training in that application. (Id.)

### B.     Sale to Ocwen Loan Servicing, LLC

In February 2013, as part of the bankruptcy proceedings involving GMAC Mortgage and its parent company Residential Capital, LLC, Ocwen Loan Servicing, LLC ("Ocwen") purchased GMAC Mortgage's loan servicing business at auction. (Chatleain Aff. ¶¶ 13-14.) In addition to the mortgage servicing rights, Ocwen acquired all related books and records, computer equipment, fixtures, and real property related to the GMAC Mortgage servicing business, pursuant to the court-approved sale. (Id. ¶ 15; Wahl Aff. ¶ 15.) When Ocwen acquired GMAC Mortgage's servicing platform, it also acquired GMAC Mortgage's infrastructure, servers, platforms, and contracts, including the LSAMS and LoanServ platforms and the contract with FiServ. (Wahl Aff. ¶ 16.) Consequently, all of GMAC Mortgage's available LSAMS data and LoanServ data–including data related to Homecomings and GMAC Mortgage-serviced loans that were liquidated prior to February 2013–were transferred to Ocwen in February 2013. (Id.) Colette Wahl, who oversees the Technology and Operations Group of ResCap, attests that ResCap has no reason to believe

3

that any LSAMS data that was not transferred to LoanServ in April 2007 was deleted between April 2007 and the transfer to Ocwen. (Id. ¶ 17.) Likewise, Wahl states that ResCap has no reason to believe that any LoanServ data was deleted between April 2007 and the transfer to Ocwen in 2013, including data on loans liquidated between April 2007 and February 2013. (Id.)

Following the sale to Ocwen, ResCap requested and obtained from Ocwen a "snapshot" of the primary servicing data stored in the InformEnt data warehouse, as it existed at that time. (Id. ¶ 20.) Ms. Wahl and her colleague Cindy Chatleain, who is also in ResCap's Technology and Operations Group, state that the snapshot data is not readily accessible. (Wahl Aff. ¶¶ 20, 22-25; Chatleain Aff. ¶¶ 19, 24.) It consists of over 650 separate Oracle data tables, with each table containing up to 577 fields, and each field containing up to 100 million rows of data. (Id.) Further, they assert that extracting the data for the more than 7.2 million loans in the snapshot would take more than 400 hours of work, or about 50 days of one person's full-time work. (Wahl Aff. ¶ 23; Chatleain Aff. ¶ 21.) Even then, the information would be incomplete, they contend, and not viewable in a format that would allow a user to review the servicing information in a single document or spreadsheet. (Chatleain Aff. ¶¶ 21-22; Wahl Aff. ¶¶ 24.) Further, because the data fields contain only codes, Ms. Wahl and Ms. Chatleain estimate that it would take several weeks just to calculate an estimate of the work involved in linking the data so that all of the primary servicing data for a given loan could be viewed together, and the codes linked to the appropriate code tables. (Chatleain Aff. ¶ 22; Wahl Aff. ¶ 25.)

### C. Discovery

The factual recitation below by no means fully documents the lengthy discovery process concerning primary loan servicing documents, but notes some of the events identified by the parties in their memoranda. In response to Defendants' request for all loan servicing records, in January 2015, Plaintiffs agreed to produce loan servicing files for the at-issue loans in Plaintiffs' "possession, custody or control" that Plaintiffs could "locate through a reasonable search." (Supalla Decl., Ex. A (RFC's Responses to Defs.' First Set of Interrogs. and Requests for Prod. at Request No. 2) [Doc. No. 2454].) Defendants also subpoenaed third party Ocwen in April 2015 for loan servicing-related documents.

In approximately June 2015, Plaintiffs began to analyze all available servicing-related documents and data in their possession in order to determine what information was retained after the sale of the servicing platform to GMAC Mortgage, and where it might be stored, as well as what servicing-related information was transferred to Ocwen as part of the sale. (Wahl Decl. ¶ 9 [Doc. No. 2548].) After doing so, Plaintiffs worked to locate and produce such primary servicing-related documents and data. (Id. ¶ 10.)

In the course of reviewing the loan servicing-related documents produced by Plaintiffs, Defendants noted gaps in Plaintiff's production. In August 2015, the parties communicated about Plaintiffs' purported production deficiencies. (See Alden Decl. [Doc. No. 2547], Ex. A (8/14/15 Email) (email from Plaintiffs' counsel to Mr. Jorissen, former representative counsel for Defendants on issues regarding the loan servicing documents,

and others, offering to meet and confer with Defendants and Ocwen).)  In October 2015, Mr. Jorissen inquired about RFC's availability to meet and confer with Defendants and Ocwen and also identified the general categories of servicing-related documents that Defendants were seeking. (Alden Decl., Ex. B (10/7/15 Email);  Ex. C (10/16/15 Email).)

While the deadline for Defendants to bring a motion to compel this discovery was set for September 30, 2016, at the August 2016 Case Management Conference, the Court extended the deadline to November 16, 2016, stating that this was "[a] brief extension because I'm really not feeling like this is moving forward."  (8/18/16 CMC Tr. at 28 [Doc. No. 1744].)  On September 15, 2016, the Court directed Defendants to identify any gaps in the loan servicing data, meet and confer, and provide a status update to the Court on September 29, 2016, (Minute Entry of 9/16/16 at 3 [Doc. No. 1800]), observing that "we haven't made any progress in this in so long."  (9/15/16 CMC Tr. at 32-33 [Doc. No. 1806].)

In October 2016, Plaintiffs served the Wahl Affidavit, in which Ms. Wahl provided background concerning, among other things: (1) GMAC Mortgage's transfer of servicing data to Ocwen; (2)  the contents of the InformEnt snapshot of primary servicing data that Ocwen provided to ResCap; and (3) explanations for why certain servicing-related information is unavailable from Plaintiffs.  (See Wahl Decl. ¶ 19.)  Much of this information was provided in response to Defendants' written questions.  (Id.)

On November 16, 2016, Provident provided a "missing loan documents spreadsheet," indicating that it was missing, among other categories of information,

6

complete loan servicing documentation for 878 at-issue loans out of 889 loan files. (Supalla Decl., Ex. B (11/16/16 Email); Blake Decl., Ex. A (11/16/16 Excel spreadsheet).) In subsequent correspondence, Provident provided a general summary of the types of missing documents. (Supalla Decl., Ex. C (12/8/16 Letter).)

On November 29, 2016, counsel for Ocwen emailed Mr. Alden, and others, with a quote of approximately $130,000 to process and Bates stamp the approximately 770,000 loan file records that it had located. (Alden Decl., Ex. H (11/29/16 Email.) Nearly two months later, Defendants asked Ocwen to deliver the materials. (Alden Decl. ¶ 22.)

Also in the final quarter of 2016, Plaintiffs learned for the first time that Ocwen stored some of its documents with a document storage vendor called Corodata. (Wahl Decl. ¶ 16.) As Ocwen's contract with Corodata was about to expire, Plaintiffs assumed the contract and reviewed the Corodata-stored documents, pulling all of the files associated with at-issue loan numbers that matched Corodata's inventory list. (Id.) On April 6, 2017, Mr. Alden provided to defense counsel an inventory list of Ocwen's boxes maintained by Corodata. (Alden Decl., Ex. D (4/6/17 Email).)

In addition, in late 2016, because most Defendants had not yet committed to a date certain by which they would provide their lists of loan-servicing-related deficiencies in Plaintiffs' and Ocwen's productions, the Court again extended the deadline and ordered Defendants to identify any such gaps by February 15, 2017, and to bring any motion to compel regarding the deficiencies in time to be heard at the March 2017 Case Management Conference. (12/2/16 Order ¶ 4 [Doc. No. 2007].)

First Guaranty served its gap analysis on Plaintiffs on March 24, 2017, identifying missing servicing-related data for 25 at-issue loans out of approximately 1,455. (Dulis Decl., Ex. A (3/24/17 Email), and Provident provided an updated summary gap analysis on that date as well. (Supalla Decl., Ex. D (3/24/17 Letter).)

Anthony Alden, counsel for RFC, attests that throughout this process, he and other members of Plaintiffs' counsel have expended at least 750 hours assisting Defendants with gaining access to primary servicing-related discovery. (Alden Decl. ¶ 9.) This includes time spent in meet-and-confers with counsel for Defendants and Ocwen as well as other entities involved in loan servicing such as Specialized Loan Servicing LLC and Equator LLC, ("Equator"), (id. ¶¶ 2-5), and assisting with the preparation of the Chatleain and Wahl affidavits, among other things. (Id. ¶¶ 6-7.) Plaintiffs also argue that despite taking 48 hours of Rule 30(b)(6) testimony of RFC, and over 100 depositions of Plaintiffs' former and current employees, Defendants failed to ask about the location of servicing-related records. (Pls.' Opp'n Mem. at 14 [Doc. No. 2545].) Nor did they serve any Rule 30(b)(6) deposition notices on Ocwen. (Id.)

In the Wahl Declaration, submitted in support of Plaintiffs' opposition to the instant motion, Ms. Wahl addresses Plaintiffs' search for primary servicing-related documents and data. (Wahl Decl. ¶ 8.) She notes that, among other things, Plaintiffs ran the at-issue loan numbers over the FileNet system–a repository of loan-related documents–and pulled documents from the combined repository of RFC, Homecomings, and GMAC Mortgage data, spoke to multiple former employees of RFC, Homecomings, and GMAC Mortgage

8

to confirm that FileNet was the imaging system used by each entity, and produced the responsive, non-privileged documents that they had located. (Id. ¶ 11.) Ms. Wahl estimates that Plaintiffs spent approximately 12,288 hours pulling the loan and servicing-related documents from FileNet, which involved the "utilization of multiple business and IT experts from ResCap, and the development of tools to support the process." (Id.) Further, pursuant to Defendants' request, Plaintiffs spent approximately 450 hours requesting, reformatting, and producing the LSAMS data that had been transferred to Ocwen as part of the sale of GMAC Mortgage's servicing platform. (Id. ¶ 17.) She also notes that Plaintiffs interviewed at least 10 former RFC, Homecomings, and GMAC Mortgage employees concerning those companies' respective servicing-related systems, document storage and retention policies, and where additional documents might be located. (Id. ¶ 18.)

Referring to her previously submitted affidavit of October 17, 2016, Ms. Wahl estimates that she and other ResCap employees spent approximately 40 hours preparing the document, (id. ¶ 19); her colleague, Ms. Chatleain, and other ResCap employees spent approximately 40 hours preparing the Chatleain Affidavit. (Id. ¶ 20.) Ms. Wahl also attests that Plaintiffs spent more than 20 hours researching Equator, a third-party vendor that appears to have been used at one point by RFC, Homecomings, and/or GMAC Mortgage to facilitate sales of mortgaged properties, and documents held by Equator, LLC. (Id. ¶ 21.) In conclusion, Ms. Wahl states, "ResCap is currently unaware of any other sources within its possession that would contain non-duplicative primary servicing-

9

related data or documents pertaining to the at-issue loans." (Id. ¶ 22.)

### D. Motion to Compel

In the instant motion, Defendants argue that the servicing records in question are relevant, "critical pieces of evidence" necessary to their defense of Plaintiffs' claims, discoverable under the rules, and within Plaintiffs' control. (Provident's Mem. Supp. Mot. to Compel at 1, 11.) They ask this Court to order the production of the requested materials. (Id.) Alternatively, Defendants seek "an affidavit, declaration, or Rule 30(b)(6) deposition testimony explaining in detail why the missing servicing records cannot be produced." (Id. at 17.)

## II. DISCUSSION

Under Rule 26, the Federal Rules authorize discovery

> regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

Rule 34 describes the general procedures and requirements for discovery requests within the scope of Rule 26(b), requiring the responding party "to produce and permit the requesting party . . . to inspect, copy, test, or sample" items "in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1).

There is no dispute that the loan-servicing documents are relevant. As to their importance, Defendants' pace in identifying Plaintiffs' purportedly deficient productions,

and their failure to obtain any Rule 30(b)(6) testimony on the subject from Plaintiffs or Ocwen, undercuts their position that the "missing servicing records are critical pieces of evidence[.]" (Provident's Mem. Supp. Mot. to Compel at 1.) In any event, Defendants argue that because Plaintiffs agreed to produce loan servicing records in their possession, custody, or control, they are obliged to produce the missing records. (Id. at 14-15.) The Court rejects this argument. As quoted above, Rule 26 expressly provides that, even with requests for relevant evidence, courts are to balance the burden or expense of discovery to the producing party against the benefit of the discovery to the requesting party. Fed. R. Civ. P. 26(b)(1). Moreover, in Plaintiffs' interrogatory responses, they agreed to produce loan servicing files for the at-issue loans in their "possession, custody or control" that they could "locate <u>through a reasonable search</u>." (Supalla Decl., Ex. A (RFC's Responses to Defs.' First Set of Interrogs. and Requests for Prod. at Request No. 2)) (emphasis added). Plaintiffs have satisfied that representation. Their efforts to search for the requested loan-servicing files and to assist third parties in searching for them, as detailed in the Chatleain Affidavit, Wahl Affidavit, and Wahl Declaration, have been reasonable, if not also herculean.

Defendants cite <u>Damgaard v. Avera Health</u>, No. 13-cv-2192 (RHK/JSM), 2014 WL 12599853, at *2 (D. Minn. June 9, 2014), for the proposition that "control" broadly includes documents over which the responding party has "the legal right or practical ability to demand." (citing <u>In re Application of Hallmark Capital Corp.</u>, 534 F. Supp. 2d 981, 982 (D. Minn. 2008); <u>Triple Five of Minn., Inc. v. Simon</u>, 212 F.R.D. 523, 527 (D.

11

Minn. 2002); Prokosch v. Catalina Lighting, Inc., 193 F.R.D. 633, 636 (D. Minn. 2000)). While Defendants acknowledge that RFC no longer has physical possession or custody of the records, they nevertheless assert that RFC has control over the locations, documents, and data where the missing servicing records exist, and should be ordered to retrieve them. (Provident's Mem. Supp. Mot. to Compel at 15.) For factual support for this proposition, Defendants refer to Section 6.4 of the Asset Purchase Agreement between RFC and Ocwen, which addresses records and post-closing access to information. (Id.) But Plaintiffs correctly note that any such duty to "preserve and retain" records arose between Plaintiffs and Ocwen–not Plaintiffs and Defendants–and arose after the February 2013 Ocwen-RFC closing date. (Pls.' Opp'n Mem. at 4 n.1) (citing Alden Decl., Ex. X § 6.4 (Ocwen-RFC APA)).

Plaintiffs have made clear, through two affidavits and a declaration, that RFC and Ocwen have undertaken diligent, good faith efforts to locate the requested discovery. There is little more "control" that Plaintiffs could exert and Ocwen itself has searched for the materials. While the loan-servicing records would be beneficial to Defendants, the burden of complying with the request has been largely shouldered by Plaintiffs, at a significant expenditure of time and money. Most importantly, there appears to be no additional loan-servicing discovery that Plaintiffs could reasonably find, nor do Defendants suggest where the missing records could be. Accordingly, Defendants' motion to compel Plaintiffs to produce missing loan-servicing related discovery is denied in part. As to Defendants' alternative request for an affidavit, declaration, or Rule 30(b)(6)

deposition testimony explaining why the records cannot be produced, Defendants' motion is granted in part. Plaintiffs shall provide a sworn affidavit stating that they have conducted a reasonable search for the requested information within their possession, custody, or control and have produced all relevant, non-privileged documents identified in that search.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1. The Motion to Compel Discovery of Servicing Records filed by Defendant Provident Funding [Doc. No. 2447] and joined by Defendant First Guaranty Mortgage Corporation is **GRANTED in part** and **DENIED in part**.

Dated: June 21, 2017

s/Susan Richard Nelson
SUSAN RICHARD NELSON
United States District Judge