**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

In Re: RFC and ResCap Liquidating Trust Litigation

Case No. 13-cv-3451(SRN/HB)

**MEMORANDUM OPINION AND ORDER**

*This document relates to:*

ResCap Liquidating Trust v. PNC Bank, N.A., as successor to Community Bank of Northern Virginia, Case No. 17-cv-0196

ResCap Liquidating Trust v. Origin Bank, f/k/a Community Trust Financial Corporation, as successor to Cimarron Mortgage Company, Case No. 17-cv-0203

---

SUSAN RICHARD NELSON, United States District Judge

## I. INTRODUCTION

This matter is before the Court on PNC Bank, N.A.'s Motion to Dismiss [Doc. No. 2344] and Origin Bank's Notice of Joinder in Motion to Dismiss for Lack of Subject Matter Jurisdiction [Doc. No. 2350]. For the reasons set forth below, the Court denies PNC's motion to dismiss, grants Origin's motion for joinder, and denies Origin's motion to dismiss.

## II. BACKGROUND

The general facts pertaining to this consolidated action are set forth in previous

rulings by this Court and are incorporated herein by reference. *See, e.g.*, *ResCap Liquidating Trust v. CMG Mortg., Inc.*, Case No. 13-cv-3451, 2015 WL 2373401, at *1-2 (D. Minn. May 18, 2015); *Residential Funding Co. v. Acad. Mortg. Corp.*, 59 F. Supp. 3d 935, 938-41 (D. Minn. 2014); *Residential Funding Co. v. Terrace Mortg. Co.*, 850 F. Supp. 2d 961, 962-64 (D. Minn. 2012).

Stated briefly, prior to May 2012, Residential Funding Corporation ("RFC") "was in the business of acquiring and securitizing residential mortgage loans." (*See* Compl. ¶ 5 [Case No. 17-cv-0196, Doc. No. 1] ("PNC Compl.").) RFC acquired the loans from "correspondent lenders" and distributed the loans by either pooling them with other loans to sell into residential mortgage-backed securitization ("RMBS") trusts or selling them to other purchasers. (*Id.*) To ensure loan quality, RFC required the correspondent lenders to abide by certain representations and warranties regarding the loans. (*Id.* ¶ 7.) According to Plaintiff ResCap Liquidating Trust ("Trust"), the correspondent lenders were responsible for collecting information from borrowers, verifying the accuracy of that information, and underwriting the loans. (*Id.* ¶ 22.)

On May 14, 2012, RFC filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the Southern District of New York. (*Id.* ¶ 55); *In re Residential Capital, LLC*, Case No. 12-12020 (MG) (Bankr. S.D.N.Y. filed May 14, 2012). By that time, RFC had spent millions of dollars repurchasing defective loans. (PNC Compl. ¶ 61.) Hundreds of proofs of claim related to allegedly defective mortgage loans were filed in connection with the bankruptcy proceedings. (*Id.* ¶ 63.) The Bankruptcy Court eventually approved a global settlement that provided for resolution of

the RMBS-related liabilities for more than $10 billion. (*Id.* ¶ 68.) The Chapter 11 bankruptcy plan ("Plan") became effective on December 17, 2013. (*Id.*) Under the Plan, the Trust succeeded to all of RFC's rights and interests. (*Id.* ¶¶ 15, 69.) The purpose of the Trust is to monetize RFC's remaining assets, pursue claims in litigation, and distribute the proceeds to RFC's creditors. (*Id.* ¶ 12.)

Two of the correspondent lenders with whom RFC did business were Community Bank of Northern Virginia ("CBNV"), a predecessor-in-interest to PNC; and Cimarron Mortgage Company ("Cimarron"), a predecessor-in-interest to Origin. (*See* PNC Compl. ¶¶ 16, 19; Compl. ¶¶ 16, 19 [Case No. 17-cv-0203, Doc. No. 1] ("Origin Compl.").) PNC and Origin are sued in these actions in their capacities as successors to CBNV and Cimarron, respectively.[1]

The Trust brings two claims against PNC and Origin: (1) a breach of contract claim founded on alleged breaches of warranties and representations, and (2) an indemnification claim. (PNC Compl. ¶¶ 70-83; Origin Compl. ¶¶ 75-88.) As the basis for federal subject matter jurisdiction, the Trust invokes bankruptcy jurisdiction under 28 U.S.C. § 1334 and diversity jurisdiction under 28 U.S.C. § 1332. (PNC Compl. ¶ 17; Origin Compl. ¶ 17.)

Through PNC's motion to dismiss, PNC moves to dismiss all claims against it pursuant to Federal Rule of Civil Procedure 12(b)(1), asserting a lack of subject matter

---

[1] RFC filed suit against PNC in 2013 over loans sold to RFC by National City Mortgage Co. ("National City"), another predecessor-in-interest to PNC. *See Residential Funding Co. v. PNC Bank, N.A.*, Case No. 13-cv-3498 (D. Minn. filed Dec. 13, 2013). Both RFC's 2013 case against PNC and the Trust's 2017 case against PNC are consolidated into this matter.

jurisdiction based on either diversity of citizenship or bankruptcy-related jurisdiction. Alternatively, PNC asks the Court to abstain from exercising jurisdiction under 28 U.S.C. § 1334(c)(1). PNC also contends that the Trust's claims against it are barred by the prohibition against claim splitting. Origin seeks leave to join in PNC's arguments concerning subject matter jurisdiction and asks the Court to dismiss all claims against it on those grounds.

## III. DISCUSSION

### A. Bankruptcy "Related To" Subject Matter Jurisdiction

PNC argues that this Court lacks bankruptcy jurisdiction in that the Trust's claims are not "related to" the underlying bankruptcy proceedings. PNC acknowledges that this Court has already determined the existence of "related to" jurisdiction in several earlier cases consolidated in this action, but asks the Court to give "fresh consideration" to the issue. (PNC's Mem. Supp. Mot. Dismiss at 9 n.4 [Doc. No. 2347].)

#### 1. The May 18, 2015 Order

In an Order dated May 18, 2015, this Court determined that bankruptcy jurisdiction existed pursuant to 28 U.S.C. § 1334(b) in several cases transferred to the District of Minnesota from the United States Bankruptcy Court for the Southern District of New York. (Order at 8-12, May 18, 2015 [Doc. No. 452] ("Transfer Defs. Order").) The supporting legal authority and rationale for that determination bear repeating.

Federal district courts "have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). "Congress did not delineate the scope of 'related to' jurisdiction, but

its choice of words suggests a grant of some breadth." *Celotex Corp. v. Edwards*, 514 U.S. 300, 307-08 (1995); *see In re NWFX, Inc.*, 881 F.2d 530, 533 (8th Cir. 1989) (construing broadly the concept of "related to" jurisdiction). Federal subject matter jurisdiction exists in a "related to" case when there is "some nexus between the civil proceeding and the Title 11 case." *Integrated Health Servs. of Cliff Manor, Inc. v. THCI Co., LLC*, 417 F.3d 953, 958 (8th Cir. 2005) (quoting *Specialty Mills, Inc. v. Citizens State Bank*, 51 F.3d 770, 774 (8th Cir. 1995)). "A claim is 'related to' a bankruptcy proceeding within the meaning of § 1334(b) if it 'could conceivably have any effect' on the bankruptcy estate." *Kocher v. Dow Chem. Co.*, 132 F.3d 1225, 1230-31 (8th Cir. 1997) (*quoting Abramowitz v. Palmer*, 999 F.2d 1274, 1277 (8th Cir. 1993)).

The test in the Eighth Circuit to determine "related to" jurisdiction is whether the outcome of the civil case "could conceivably have any effect on the estate being administered in bankruptcy." *Specialty Mills*, 51 F.3d at 774 (quoting *Dogpatch Props., Inc. v. Dogpatch U.S.A., Inc. (In re: Dogpatch U.S.A., Inc.*), 810 F.2d 782, 786 (8th Cir. 1987)); *see Greenpond S., LLC v. Gen. Elec. Capital Corp.*, Case No. 14-cv-1214 (SRN/TNL), 2015 WL 225227, at *4 (D. Minn. Jan. 16, 2015) (citing *Buffets, Inc. v. Leischow*, 732 F.3d 889, 894 (8th Cir. 2013)). "These possible effects include any matter that could alter the debtor's rights, liabilities, options, or freedom of action . . . and which in any way impacts upon the handling and administration of the bankrupt estate." *Integrated Health Servs.*, 417 F.3d 953, 958 (8th Cir. 2005) (quoting *Dogpatch Props.*, 810 F.2d at 786) (internal quotation marks omitted). Even a case that "portends a mere

contingent or tangential effect on a debtor's estate meets the broad jurisdictional test." *In re Titan Energy, Inc.*, 837 F.2d 325, 330 (8th Cir. 1988).

This Court determined in its Order of May 18, 2015, that RFC's claims could conceivably have an effect on the implementation, interpretation, or administration of the Plan for the following reasons. First, the Plan expressly preserved RFC's claims and transferred them to the Trust to pursue. (Transfer Defs. Order at 10 (citing *ResCap Liquidating Trust v. Primary Capital Advisors, LLC (In re Residential Capital, LLC)*, 527 B.R. 865, 871 (S.D.N.Y. 2014); *Residential Funding Co. LLC v. Greenpoint Mortg. Funding, Inc. (In re Residential Capital, LLC)*, 519 B.R. 593, 600 (S.D.N.Y. 2014)).) The very purpose of those actions was to prosecute those claims. (*Id.*) Second, the Plan provided for RFC's creditors to share in any recovery obtained by the Trust. (*Id.* (citing *Primary Capital*, 527 B.R. at 871; *Greenpoint*, 519 B.R. at 600).) "An action is related to the bankruptcy case if 'it affects the amount of property available for distribution or the allocation of property among creditors.'" *Luker v. Reeves (In re Reeves)*, 65 F.3d 670, 675 (8th Cir. 1995) (quotation omitted). Finally, the Plan expressly provided for the retention of jurisdiction over the claims, and the claims fell within the scope of the Plan. (Transfer Defs. Order at 11 (citing *Primary Capital*, 527 B.R. at 871; *Greenpoint*, 519 B.R. at 600).)

### 2. PNC-Specific Arguments

PNC first contends that the Trust's claims cannot conceivably have any effect on the bankruptcy estate, because the estate ceased to exist when the Plan was confirmed. *See Binder v. Price Waterhouse & Co. (In re Resorts Int'l, Inc.)*, 372 F.3d 154, 165 (3d

Cir. 2004) ("At the most literal level, it is impossible for the bankrupt debtor's estate to be affected by a post-confirmation dispute because the debtor's estate ceases to exist once confirmation has occurred.").

The Court disagrees that "related to" bankruptcy jurisdiction automatically and invariably dissipates when a bankruptcy plan is confirmed. Courts should not apply the "related to" jurisdiction test "so literally as to entirely bar post-confirmation bankruptcy jurisdiction." *In re Resorts*, 372 F.3d at 165. Although "the scope of bankruptcy court jurisdiction diminishes with plan confirmation, bankruptcy court jurisdiction does not disappear entirely." *Id.* Bankruptcy jurisdiction still exists, even after a plan has been confirmed, "if there is sufficient connection to the bankruptcy." *Id.* at 164. That connection is present in these consolidated matters.

Unlike the Plan in these actions, the bankruptcy plan in *In re Resorts* did not preserve the claims sought to be litigated, nor would the resolution of the claims brought there have affected the estate. *Id.* at 169-70. These distinctions are present in several other cases on which PNC relies. *See Faricy Law Firm, P.A. v. A.P.I. Asbestos Settlement Trust (In re A.P.I., Inc.)*, 537 B.R. 902, 904, 911-13 (Bankr. D. Minn. 2015) (finding no jurisdiction where claim was not preserved in the plan and did not belong to the estate); *Shandler v. DLJ Merch. Banking, Inc. (In re Insilco Techs., Inc.)*, 330 B.R. 512, 524-25 (Bankr. D. Del. 2005) (same); *Falise v. Am. Tobacco Co.*, 241 B.R. 48, 60 (E.D.N.Y. 1999) ("The language of the Plan does not come close to contemplating a suit

such as the instant one."). Consequently, PNC's reliance on those cases is unavailing.[2]

PNC also relies on this Court's decision in *Greenpond* for the proposition that the bankruptcy estate—and bankruptcy jurisdiction with it—cease to exist when a plan is confirmed. But *Greenpond* spoke in more general terms than PNC allows. In *Greenpond*, this Court said: "*Generally*, once a bankruptcy debtor's reorganization plan has been confirmed, 'the estate of the debtor, and thus the bankruptcy court's jurisdiction, ceases to exist.'" 2015 WL 225227, at *5 n.1 (quoting *In re D & P P'ship*, 91 F.3d 1072, 1074 (8th Cir. 1996)). PNC omitted the qualifying language preceding the Court's pronouncement in its memorandum. (PNC's Mem. Supp. Mot. Dismiss at 9.) Moreover, the Court acknowledged in *Greenpond* the possibility of post-confirmation "related to" jurisdiction, either through the retention of jurisdiction in a confirmation order or when a claim relates to the administration and interpretation of a plan. *Id.* at *5 n.1, *9 n.3. PNC disregards this language as well.

In ruling on an earlier motion to dismiss filed by consolidated Defendant Decision One Mortgage Company, LLC, the Court remarked that although the estate of a debtor typically ceases to exist once a Chapter 11 plan is confirmed, "this is not always the case." (Order at 18, June 16, 2015 [Doc. No. 537] ("Decision One Order") (quoting *United States v. Unger*, 949 F.2d 231, 233 (8th Cir. 1991)).) The termination of a bankruptcy estate "is expressly subject to the terms and provisions of the confirmed

---

[2] PNC contends in its letter of June 8, 2017, that "jurisdiction does not exist merely because a claim is preserved for litigation by a liquidating trust." (Golin Letter at 2 [Doc. No. 2638]) (emphasis omitted). This may be so, but whether a plan explicitly preserves a claim is a factor in determining whether a case is related to a bankruptcy proceeding.

plan," and "the confirmed plan need not state in explicit terms that the bankruptcy estate is to continue in existence." *Id.* (quoting *In re Canton Jubilee, Inc.*, 253 B.R. 770, 776 (Bankr. E.D. Tex. 2000) (internal citations omitted)). Thus, whether a bankruptcy estate has been "terminated" for the purpose of determining "related to" jurisdiction depends on the language of the bankruptcy plan, but the plan need not specifically provide that the bankruptcy estate continues to exist.

The Court further observed in the Decision One Order that "the plain language of the Bankruptcy Court's Confirmation Order and the Chapter 11 Plan demonstrates that the claims at issue were not extinguished upon confirmation of the Plan," and that "the Order and Plan authorized the creation of a 'Liquidating Trust,' into which RFC was to transfer and assign its assets." (Decision One Order at 18-19.) Moreover, the Plan and Confirmation Order preserved the Trust's (and the RFC bankruptcy estate's) causes of action, and the liabilities underlying RFC's indemnity claims were preserved through the exchange of "units" for allowed claims and through the obligation on the Trust to maximize the unitholders' recovery.[3] (Decision One Order at 20.)

PNC provides no convincing reason to depart from the Decision One Order. It is beyond dispute that the Trust was established for the purpose of administering, winding down, and distributing the assets of RFC's bankruptcy estate, and that the Plan expressly preserved the claims now asserted against PNC and Origin. (*See* Scheck Decl. Ex. A

[3] To effectuate the purpose of the Trust under the Plan, RFC's creditors were issued "units" of the Trust proportionate to their share of allowed claims. (Griffin Decl. Ex. 1 (Plan art. III.D.3(d) at 50) [Doc. No. 2348-1].) Unitholders receive distributions of cash as the Trust liquidates assets. (*See* Plan art. VII.C at 85.)

(Disclosure Statement for the Joint Chapter 11 Plan art. II.N at 44-45, *In re Residential Capital*, *LLC*, Case No. 12-12020 (MG) (Bankr. S.D.N.Y. Aug. 23, 2013) ("Disclosure Statement") [Doc. No. 2506-1]; Griffin Decl. Ex. 1 (Plan arts. I.A.27 at 4, I.A.173 at 20, VI.B at 79) [Doc. No. 2348-1].) Both the Disclosure Statement and the Liquidating Trust Agreement envisioned that the winding down would commence after the Plan was confirmed. (*See* Disclosure Statement art. II.N at 44-45; Griffin Decl. Ex. 3 (Liquidating Trust Agreement § 2.2(c) at 12) [Doc. No. 2348-3].) Given the Trust's appointment as representative and task of winding down the bankruptcy estate *after* confirmation of the Plan, "the estate must also still exist post-confirmation. Otherwise, the [representative] would represent nothing." *Sergent v. McKinstry*, 472 B.R. 387, 399 (E.D. Ky. 2012).

This is consistent with authority from the same bankruptcy court that approved the RFC global settlement and confirmed the Plan. In *Residential Funding Co., LLC v. UBS Real Estate Securities, Inc. (In re Residential Capital, LLC)*, the Honorable Martin Glenn, United States Bankruptcy Judge, rejected the argument that a post-confirmation action would have no effect on the RFC bankruptcy proceedings, because "any recovery in this action will go to RFC's creditors under the terms of the confirmed Plan." 515 B.R. 52, 67 (Bankr. S.D.N.Y. 2014) (discussing effect on the bankruptcy proceedings in the context of abstention). Judge Glenn further remarked that "any judgment in favor of RFC in this action will result in an affirmative recovery for the RFC bankruptcy estate, which is being administered by the Trust. The potential benefit to RFC's creditors alone is sufficient to find an effect on the efficient administration of the estate." *Id.* at 68. The same is true here. The Trust is participating in the administration of RFC's bankruptcy

estate by pursuing claims and distributing funds, and the claims have not just a conceivable—but an actual—effect on the estate.

The specific provisions of the Plan and the purpose and obligations of the Trust distinguish this case from *Fairfield Communities, Inc. v. Daleske (In re Fairfield Communities, Inc.*), 142 F.3d 1093 (8th Cir. 1998), on which PNC relies. First, there was no indication in *Fairfield* that the bankruptcy estate continued to exist after the plan was confirmed. *See id.* at 1095. Second, the issue in *Fairfield* was whether a plan's retention of jurisdiction "over cases involving the enforcement of the plan" covered claims that had arisen *after* the plan was confirmed. *Id.* Because the claims had arisen after confirmation, there was no basis for jurisdiction. *Id.* at 1096. That is not the situation here, where the alleged breaches arose before the Plan was confirmed. Third, PNC mischaracterizes *Fairfield*'s statement that a bankruptcy court "*may* explicitly retain jurisdiction" in a confirmation order, *id.* at 1095 (emphasis added), by changing "may" to "must" in its memorandum. (PNC's Mem. Supp. Mot. Summ. J. at 16.) *Fairfield* does not stand for the proposition that bankruptcy jurisdiction exists only if explicitly retained in a confirmation order.[4]

The Eighth Circuit's more recent decision in *GAF Holdings, LLC v. Rinaldi (In re Farmland Industries, Inc.)*, 567 F.3d 1010 (8th Cir. 2009), demonstrates that "related to"

---

[4] In PNC's letter of June 8, 2017, PNC pointed out that "the instant lawsuits were not filed in the bankruptcy court that is charged with administering and interpreting the bankruptcy plan and that explicitly retained jurisdiction." (Letter at 1-2 [Doc. No. 2638]) (quotation marks and alteration omitted). But neither the "any conceivable effect" test nor PNC's self-styled "administration and interpretation" test require an action to be filed in the bankruptcy court that retained jurisdiction for "related to" jurisdiction to exist.

jurisdiction may exist under the "any conceivable effect" test in post-confirmation litigation. *Id.* at 1019. There, the court determined that "related to" jurisdiction existed because the liquidating trustee was paying money out of the bankruptcy estate for the legal fees of two former corporate officers. *Id.* at 1020. The court held that the actual effect on the estate was sufficient to invoke jurisdiction, and indicated that even the possibility of indemnification would have sufficed. *Id.* Though not on point factually, *Farmland* is significant for its application of the "any conceivable effect" test after a plan's confirmation.

PNC argues, nonetheless, that the Trust must meet a higher standard than the "any conceivable effect" test and show that its claims "involve the administration and interpretation" of the Plan. (PNC's Mem. Supp. Mot. Dismiss at 12.) There is no question that the Trust's claims meet this standard. Multiple courts, including this one, have determined that the Trust's claims against correspondent lenders such as PNC and Origin relate to the administration and interpretation of the Plan. (Transfer Defs. Order at 10-11; Decision One Order at 18-20); *ResCap Liquidating Trust v. U.S. Bank, N.A.*, Case No. 16-cv-4067, 2017 WL 2437242, at *3 (D. Minn. June 5, 2017); *Primary Capital*, 527 B.R. at 871. To summarize, the Plan expressly preserved the claims and transferred them to the Trust to pursue on behalf of the estate's creditors, and the purpose of these actions is to pursue those claims. The Plan provides for RFC's creditors to share in any recoveries obtained by the Trust and for the Trust to distribute such funds. In addition, this Court has already been called upon to interpret the Plan in a related case to determine whether the Trust's claims were extinguished when the Plan was confirmed. (Decision

One Order at 18-19.) And, several consolidated Defendants, including PNC, have subpoenaed and deposed numerous witnesses regarding the bankruptcy proceedings and settlement, including questions about the provisions of the Plan and the Confirmation Order. (Scheck Decl. ¶ 5.)

Other courts have found that claims similar to those brought here involve the implementation and administration of a bankruptcy plan. *See McKinstry v. Sergent*, 442 B.R. 567, 576 (E.D. Ky. 2011) (because a liquidating trust's sole purpose is to wind down the bankrupt debtor's affairs, liquidate its assets, and distribute recovered funds, concluding that the claims necessarily related to the implementation and execution of the plan); *Kirschner v. Grant Thornton LLP (In re Refco, Inc. Sec. Litig.*), 628 F. Supp. 2d 432, 443 (S.D.N.Y. 2008) (finding the administration and implementation of a confirmed plan directly at issue because the claims brought by the liquidating trust arose under the plan, and thus, concluding that "related to" jurisdiction existed).

In sum, the Trust's claims directly affect the implementation, interpretation, and administration of the Plan, and "related to" jurisdiction is present.

**3. Abstention**

PNC asks the Court to abstain from exercising jurisdiction "in the interest of justice, or in the interest of comity with State courts or respect for State law." *See* 28 U.S.C. § 1334(c)(1). PNC argues that the federal interest in adjudicating the Trust's claims is too attenuated from RFC's estate, and that the Trust's claims sound in state law and should be adjudicated in state court.

Federal courts have a "virtually unflagging obligation . . . to exercise the

jurisdiction given them." *Col. River Water Conserv'n Dist. v. United States*, 424 U.S. 800, 817-18 (1976). A court should remain mindful of this principle when deciding whether to exercise its discretionary authority to abstain under § 1334(c)(1). *See UBS Real Estate*, 515 B.R. at 67.

There are several reasons why the Court will not abstain from exercising jurisdiction. First, these actions could have a direct effect on the bankruptcy estate, which will benefit from any recovery. *See id.* at 67-68. Second, though the claims are grounded in state law, the cases are "fundamentally tied to RFC's bankruptcy." *See U.S. Bank*, 2017 WL 2437242, at *4. Third, the state law claims are not so complex that comity favors abstention. *See UBS Real Estate*, 515 B.R. at 68. Fourth, this Court has already expended substantial time and resources in managing the cases consolidated into this action, and to abstain now from jurisdiction in these newly-filed matters would be a tremendous and needless waste of judicial resources. *See U.S. Bank*, 2017 WL 2437242, at *4.

### B. Subject Matter Jurisdiction Based on Diversity of Citizenship

Because the Court finds that "related to" jurisdiction clearly exists, the Court does not reach the question of whether subject matter jurisdiction could also be founded on diversity of citizenship.

### C. Claim Splitting

PNC argues that the Trust's claims are barred by the rule against claim splitting and that the Trust should have combined its National City-based claims with its CBNV-based claims in the action filed against PNC in 2013. PNC contends that the Trust's

purported claim splitting will prevent it from mounting an efficient defense and waste judicial resources.

The prohibition on claim-splitting requires a plaintiff to "bring all claims arising out of a common set of facts in a single lawsuit." *Elgin v. Dep't of Treasury*, 567 U.S. 1, 34 (2012). A court has the "discretion to enforce that requirement as necessary 'to avoid duplicative litigation.'" *Id.* (quoting *Col. River Water Conserv'n Dist.*, 424 U.S. at 817). Principles of res judicata apply, except the requirement of a final judgment. *MacIntyre v. Lender Processing Servs., Inc.*, Case No. 12-1514 (PAM/SER), 2012 WL 4872678, at *2 (D. Minn. Oct. 15, 2012).

A court evaluating whether res judicata applies must consider whether: (1) there has been a final judgment on the merits of a cause of action; (2) the court that issued the judgment was of competent jurisdiction; (3) the person seeking to preclude the claim was a party or a privy to a party in the first litigation; and (4) the claim sought to be precluded either was actually litigated or is a claim that might have been offered in the first litigation. *See Lundquist v. Rice Mem'l Hosp.*, 238 F.3d 975, 977 (8th Cir. 2001). In order to be barred by res judicata, a claim must "arise[] out of the same nucleus of operative fact[s]" as the prior claim or be "based upon the same factual predicate." *Hufsmith v. Weaver*, 817 F.2d 455, 461 (8th Cir. 1987) (citation and internal quotation marks omitted). To determine whether the claims are the same, the Court examines "the factual bases for the claims, not the legal theories." *Citimortgage, Inc. v. Chicago Bancorp, Inc.*, Case No. 4:14-CV-01278-AGF, 2015 WL 631365, at *5 (E.D. Mo. Feb. 12, 2015) (quotation omitted).

The Court finds that principles of res judicata do not apply because the Trust's claims against PNC as successor to CBNV do not arise out of the same nucleus of operative facts as the Trust's claims against PNC as successor to National City. RFC purchased more than 21,300 mortgage loans from CBNV pursuant to a client contract dated May 15, 1998. (PNC Compl. ¶¶ 16, 19; Ex. B.) RFC also purchased more than 74,500 mortgage loans originated by National City and its affiliates from PNC pursuant to contracts in February 1986, April 2002, and December 2004. (Second Am. Compl. ¶ 17; Ex. A [Case No. 13-cv-3451, Doc. No. 1150].) There is no dispute that the claims in the second PNC action relate to different loans, different contracts, and different originators than the claims in the first PNC action. Therefore, the claims did not need to be brought in the same suit. *See CitiMortgage*, 2015 WL 631365, at *4 (determining that each loan sold and each repurchase demand "present[ed] a unique set of operative facts giving rise to potential relief," and though the plaintiff could have grouped claims involving different loans together in one lawsuit, it was not required to do so); *Lehman Bros. Holdings Inc. v. Gateway Funding Diversified Mortg. Servs., L.P.*, 942 F. Supp. 2d 516, 532 (E.D. Pa. 2013) (finding second lawsuit not barred by *res judicata* because the two cases involved different loans); *Nordhorn v. Ladish Co.*, 9 F.3d 1402, 1404 (9th Cir. 1993) (where second lawsuit alleged a breach of a different contract by a different company, holding the cases did not involve the same claim for purposes of res judicata).

With respect to PNC's argument that it will be prejudiced by having to litigate two separate actions, the Court is not unsympathetic to PNC's situation. But any burden caused by the Trust's decision to litigate its claims against PNC in two separate actions

filed almost four years apart can be alleviated through efficient case management.

Therefore, **IT IS HEREBY ORDERED** that:

1. PNC Bank, N.A.'s Motion to Dismiss [Doc. No. 2344] is **DENIED**; and
2. Origin Bank's Notice of Joinder in Motion to Dismiss for Lack of Subject Matter Jurisdiction [Doc. No. 2350] is **GRANTED** insofar as the motion requests permission to join in PNC's arguments concerning subject matter jurisdiction, but **DENIED** as to dismissal.

Dated: July 21, 2017

s/Susan Richard Nelson
SUSAN RICHARD NELSON
United States District Judge