# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

|  |  |
|---|---|
| In Re: RFC and ResCap Liquidating Trust Litigation | Court File No. 13-cv-3451 (SRN/HB) |
| *This document relates to:*<br><br>ResCap Liquidating Trust v. Home Loan Center, Inc., No. 14-cv-1716 | **PROPOSED JOINT SPECIAL VERDICT FORM** |

Pursuant to the Court's Trial Notice and Final Pretrial Order [Doc. No. 3929], Plaintiff ResCap Liquidating Trust and Defendant Home Loan Center, Inc., jointly file the following respective proposed special verdict forms. The parties attempted to reach a joint proposal, but have fundamental disagreements that they have been unable to resolve. Accordingly, both sides' proposed special verdict forms are included below, along with the other side's objections.

## PLAINTIFF'S PROPOSED SPECIAL VERDICT FORM

1. Do you find in favor of Plaintiff ResCap Liquidating Trust on its claim for indemnification against Defendant Home Loan Center, Inc.?

    _____
    (Yes/No)

    *If your answer to Question 1 is yes, continue to*

    *Question 2. If your answer to Question 1 is no, stop.*

2. If you answered "YES" to Question 1, what is the amount of damages Plaintiff ResCap Liquidating Trust is entitled to recover from Defendant Home Loan Center, Inc.?

    $_____

## DEFENDANT'S OBJECTIONS TO PLAINTIFF'S PROPOSED SPECIAL VERDICT FORM

Home Loan Center objects to Plaintiff's proposed special verdict form and respectfully requests that the Court use Home Loan Center's proposed special verdict form instead. As an initial matter, Plaintiff's proposed form does not even qualify as a "special verdict form" under the Court's pretrial order. *See* ECF 3933. A special verdict is one that requires the jury to make "a written finding for *each issue*." *See* Black's Law Dictionary, *Special Verdict* (10th ed. 2014) (emphasis added). Here, Plaintiff's proposed verdict form merely asks the jury to decide whether it "find[s] in favor" of the Plaintiff and, if so, what the damages are. That is a *general* verdict form, not a *special* one. *See id., General Verdict* (a general verdict is one "by which the jury finds in favor of one party or the other, as opposed to resolving specific fact questions"). By providing a General Verdict form, Plaintiff has ignored this Court's order to exchange "special verdict forms."

Moreover, Plaintiff's barebones general verdict form would contravene the purposes of a special verdict form. *First,* courts employ special verdict forms in "complex" cases, such as this one, to provide necessary guidance to the jury. *See* 4 Leonard B. Sand *et al.*, Modern Federal Jury Instructions–Civil Instr. 78–9, Comment (2018) (noting that "[a] number of courts have recommended that a special verdict be used in complex litigation" and collecting cases). Specifically, such verdict forms ensure that the jury "make[s] explicit decision upon several issues which must be resolved before a proper disposition can be made of the case." *Cate v. Good Bros.*, 181 F.2d 146, 148 (3d Cir. 1950). *Second,* special verdict forms are "very useful" in "facilitating review" and "possibly post-verdict judgments as a matter of law" because they reveal the bases of the jury's decision. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 39 n.8 (1997). Otherwise, the bases for the jury's decision may be "obscured under the enigma wrapped-in-a-mystery of a general verdict." *Bailey v. Kawasaki-Kisen, K.K.*, 455 F.2d 392, 394 (5th Cir. 1972).

Here, Plaintiff's proposed verdict form serves neither purpose. *First,* Plaintiff's proposed verdict form provides the jury with no guidance whatsoever about the specific issues it must decide to resolve this complex case. *Second,* Plaintiff's proposed form would frustrate review by producing a black-box verdict. For example, neither this Court nor the Eighth Circuit would have any way to determine whether the jury found liability only as to certain loans or certain settlements. For these reasons, the Court should reject Plaintiff's general verdict form and adopt Home Loan Center's proposed special verdict form instead.

## DEFENDANT'S PROPOSED SPECIAL VERDICT FORM

**I.     Liability for Certain Categories of Loans**

    **A.     Loans with Assetwise Approvals**

        1.     Has the Plaintiff proven by a preponderance of the evidence that Home Loan Center and RFC agreed that loans with Assetwise approvals would comply with the representations and warranties in the Client Guide?

            Yes _____          No _____

            If your answer is No, Home Loan Center is not liable for the Plaintiff's allegations that certain loans with Assetwise approvals breached representations and warranties in the Client Guide, and you should proceed directly to Part I.B below.

            If your answer is Yes, you must consider the defense of equitable estoppel. Has Home Loan Center proven by a preponderance of the evidence that RFC is equitably estopped from alleging that loans with Assetwise approvals breached representations and warranties in the Client Guide?

            Yes _____          No _____

            If your answer is Yes, Home Loan Center is not liable for the Plaintiff's allegations that certain loans with Assetwise approvals breached representations and warranties in the Client Guide, and you should proceed directly to Part I.B below.

            If your answer is No, you must consider the defense of waiver. Has Home Loan Center proven by a preponderance of the evidence that RFC waived any requirement that loans with Assetwise approvals comply with representations and warranties in the Client Guide?

            Yes _____          No _____

            If your answer is Yes, Home Loan Center is not liable for the Plaintiff's allegations that certain loans with Assetwise approvals breached representations and warranties in the Client Guide, and you should proceed to Part I.B below.

If your answer is No, you must accept the Plaintiff's allegations that certain loans with Assetwise approvals in the Plaintiff's Home Loan Center sample breached representations and warranties in the Client Guide, and you should proceed to Part I.B below.

## B. Bulk Loans

1.  Has the Plaintiff proven by a preponderance of the evidence that Home Loan Center and RFC agreed that the Client Guide would apply to loans sold in "bulk" packages?

    Yes _____          No _____

    If your answer is No, Home Loan Center is not liable for the Plaintiff's allegations that certain "bulk" loans breached representations and warranties in the Client Guide, and you should proceed directly to Part I.C below.

    If your answer is Yes, you must consider the defense of equitable estoppel. Has Home Loan Center proven by a preponderance of the evidence that RFC is equitably estopped from alleging that "bulk" loans breached representations and warranties in the Client Guide?

    Yes _____          No _____

    If your answer is Yes, Home Loan Center is not liable for the Plaintiff's allegations that certain "bulk" loans breached representations and warranties in the Client Guide, and you should proceed directly to Part I.C below.

    If your answer is No, you must consider the defense of waiver. Has Home Loan Center proven by a preponderance of the evidence that RFC waived any requirement that "bulk" loans comply with representations and warranties in the Client Guide?

    Yes _____          No _____

    If your answer is Yes, Home Loan Center is not liable for the Plaintiff's allegations that certain "bulk" loans breached representations and warranties in the Client Guide, and you should proceed to Part I.C below.

4

If your answer is No, you must accept the Plaintiff's allegations that certain "bulk" loans in the Plaintiff's Home Loan Center sample breached representations and warranties in the Client Guide, and you should proceed to Part I.C below.

### C.     POA Loans

1.     Has the Plaintiff proven by a preponderance of the evidence that Home Loan Center and RFC agreed that the Client Guide would apply to pay option adjustable rate mortgage loans sold in 2006–2007 ("POA loans")?

Yes _____              No _____

If your answer is No, Home Loan Center is not liable for the Plaintiff's allegations that certain POA loans breached representations and warranties in the Client Guide, and you should proceed directly to Part II below.

If your answer is Yes, you must consider the defense of equitable estoppel. Has Home Loan Center proven by a preponderance of the evidence that RFC is equitably estopped from alleging that POA loans breached representations and warranties in the Client Guide?

Yes _____              No _____

If your answer is Yes, Home Loan Center is not liable for the Plaintiff's allegations that certain POA loans breached representations and warranties in the Client Guide, and you should proceed to Part II below.

If your answer is No, you must consider the defense of waiver. Has Home Loan Center proven by a preponderance of the evidence that RFC waived any requirement that POA loans comply with representations and warranties in the Client Guide?

Yes _____              No _____

If your answer is Yes, Home Loan Center is not liable for the Plaintiff's allegations that certain POA loans breached representations and warranties in the Client Guide, and you should proceed to Part II below.

If your answer is No, you must accept the Plaintiff's allegations that certain POA loans in the Plaintiff's Home Loan Center sample breached representations and warranties in Client Guide, and you should proceed directly to Part II below.

## II.     MBIA Settlement

### A.     Reasonableness and Good Faith

1.     Has the Plaintiff proven by a preponderance of the evidence that the amount of the MBIA Settlement was reasonable and prudent?

Yes _____                    No _____

If your answer is No, the Plaintiff may not seek damages with respect to the MBIA Settlement, and you should proceed directly to Part III below.

If your answer is Yes, you should proceed to the next question.

2.     Has the Plaintiff proven by a preponderance of the evidence that RFC entered the MBIA Settlement in good faith?

Yes _____                    No _____

If your answer is No, the Plaintiff may not seek damages with respect to the MBIA Settlement, and you should proceed directly to Part III below.

If your answer is Yes, you should proceed to the next question.

### B.     Causation, Allocation, and Damages

With respect to the MBIA Settlement, the Plaintiff may seek indemnity from Home Loan Center only for the portion of the settlement, if any, relating to contract or fraud claims that RFC allegedly breached representations to MBIA, where the alleged breaches were caused by breaches of Home Loan Center's representations to RFC. These claims are referred to as "indemnifiable claims."

The Plaintiff may not seek indemnity from Home Loan Center for portions of the MBIA Settlement relating to claims that were not caused by breaches of Home Loan Center's representations to RFC. These claims may

include(a) contract or fraud claims that RFC allegedly breached representations to MBIA, where the alleged breaches were caused by other originators' breaches of representations to RFC; (b) contract or fraud claims that RFC allegedly breached representations to MBIA, where RFC was solely responsible for the alleged breaches; (c) claims that RFC allegedly breached its servicing obligations to MBIA; and (d) claims against RFC's corporate parent, Ally Financial, Inc. These claims are referred to as "non-indemnifiable claims."

The Plaintiff bears the burden of allocating the MBIA Settlement among the indemnifiable and non-indemnifiable claims based on the relative value of the claims at the time of settlement.

## 1.     Valuing Each Claim Resolved by the MBIA Settlement

The first step in performing this allocation is to value of each of the claims resolved by the MBIA settlement. The Plaintiff bears the burden of proving these values to a reasonable degree of certainty.

a.     Has the Plaintiff proven to a reasonable degree of certainty the value of indemnifiable contract or fraud claims that RFC allegedly breached representations to MBIA, where the alleged breaches were caused by breaches of Home Loan Center's representations to RFC?

Yes _____          No _____

If your answer is No, the Plaintiff may not recover damages with respect to the MBIA Settlement, and you should proceed directly to Part III below.

If your answer is Yes, please specify in the table below the value of these claims at the time of settlement.

b.     Has the Plaintiff proven to a reasonable degree of certainty the value of non-indemnifiable contract or fraud claims that RFC allegedly breached representations to MBIA, where the alleged breaches were caused by other originators' breaches of representations to RFC?

Yes _____          No _____

If your answer is No, the Plaintiff may not recover damages with respect to the MBIA Settlement, and you should proceed directly to Part III below.

If your answer is Yes, please specify in the table below the value of these claims at the time of settlement.

c.    Has the Plaintiff proven to a reasonable degree of certainty the value of non-indemnifiable contract or fraud claims that RFC allegedly breached representations to MBIA, where RFC was solely responsible for the alleged breaches?

Yes _____                    No _____

If your answer is No, the Plaintiff may not recover damages with respect to the MBIA Settlement, and you should proceed directly to Part III below.

If your answer is Yes, please specify in the table below the value of these claims at the time of settlement.

d.    Has the Plaintiff proven to a reasonable degree of certainty the value of non-indemnifiable claims that RFC allegedly breached its servicing obligations to MBIA?

Yes _____                    No _____

If your answer is No, the Plaintiff may not recover damages with respect to the MBIA Settlement, and you should proceed directly to Part III below.

If your answer is Yes, please specify in the table below the value of these claims at the time of settlement.

e.    Has the Plaintiff proven to a reasonable degree of certainty the value of non-indemnifiable claims by MBIA against RFC's corporate parent, Ally Financial, Inc.?

Yes _____                    No _____

If your answer is No, the Plaintiff may not recover damages with respect to the MBIA Settlement, and you should proceed directly to Part III below.

If your answer is Yes, please specify in the table below the value of these claims at the time of settlement.

f.     If you find that the MBIA Settlement resolved other non-indemnifiable claims, has the Plaintiff proven to a reasonable degree of certainty the value of those claims?

Yes _____          No _____

If your answer is No, the Plaintiff may not recover damages with respect to the MBIA Settlement, and you should proceed directly to Part III below.

If your answer is Yes, please specify in the table below the value of these claims at the time of settlement.

g.     If the Plaintiff has proven the value of each of the foregoing claims at the time of settlement, you should sum the values of the claims and specify the total value of all claims at the bottom of the second column below.

h.     You then should divide the value of each claim by the total value of all claims and specify the result in percentage terms in the third column. The percentages should add up to 100% at the bottom of the third column. These percentages represent the value of each claim *relative* to the total value of all claims resolved in the settlement.

| Settled Claims | Value of Claims at time of Settlement as Proven by Plaintiff | Relative Value of Claims as Percentage of Total Value of Claims |
|---|---|---|
| Indemnifiable contract or fraud claims that RFC allegedly breached representations to MBIA, where the alleged breaches were caused by breaches of Home Loan Center's representations to RFC | | |
| Non-indemnifiable contract or fraud claims that RFC allegedly breached representations to MBIA, where the alleged breaches were caused by other originators' breaches of representations to RFC | | |
| Non-indemnifiable contract or fraud claims that RFC allegedly breached representations to MBIA, where RFC was solely responsible for the alleged breaches | | |
| Non-indemnifiable claims that RFC allegedly breached its servicing obligations to MBIA | | |
| Non-indemnifiable claims against RFC's corporate parent, Ally Financial, Inc. | | |
| Any other non-indemnifiable claims resolved by the MBIA Settlement | | |
| **Total Value of Claims at Time of Settlement** | | 100% |

## 2.   Allocating the MBIA Settlement Based on Relative Value

The second step is to allocate a portion of the MBIA Settlement to the indemnifiable claims. To do so, you must multiply the relative value of the indemnifiable claims in percentage terms (in the shaded box above) by $1,450,000,000. The result may not exceed

$35,848,224, which are the damages alleged by the Plaintiff with respect to the MBIA Settlement.

Specify the result here:  _____

## III.  FGIC Settlement

### A.  Reasonableness and Good Faith

1.  Has the Plaintiff proven by a preponderance of the evidence that the amount of the FGIC Settlement was reasonable and prudent?

Yes _____          No _____

If your answer is No, the Plaintiff may not seek damages with respect to the FGIC Settlement, and you should proceed directly to Part IV below.

If your answer is Yes, you should proceed to the next question.

2.  Has the Plaintiff proven by a preponderance of the evidence that RFC entered the FGIC Settlement in good faith?

Yes _____          No _____

If your answer is No, the Plaintiff may not seek damages with respect to the FGIC Settlement, and you should proceed directly to Part IV below.

If your answer is Yes, you should proceed to the next question.

### B.  Causation, Allocation, and Damages

With respect to the FGIC Settlement, the Plaintiff may seek indemnity from Home Loan Center only for the portion of the settlement, if any, relating to contract or fraud claims that RFC allegedly breached representations to FGIC, where the alleged breaches were *caused* by breaches of Home Loan Center's representations to RFC. These claims are referred to as "indemnifiable claims."

The Plaintiff may not seek indemnity from Home Loan Center for portions of the FGIC Settlement relating to claims that were *not caused* by breaches of Home Loan Center's representations to RFC. These claims may include

(a) contract or fraud claims that RFC allegedly breached representations to FGIC, where the alleged breaches were caused by other originators' breaches of representations to RFC; (b) contract or fraud claims that RFC allegedly breached representations to FGIC, where RFC was solely responsible for the alleged breaches; (c) claims that RFC allegedly breached its servicing obligations to FGIC; and (d) claims against RFC's corporate parent, Ally Financial, Inc. These claims are referred to as "non-indemnifiable claims."

The Plaintiff bears the burden of allocating the FGIC Settlement among the indemnifiable and non-indemnifiable claims based on the relative value of the claims at the time of settlement.

**1.      Valuing Each Claim Resolved by the FGIC Settlement**

The first step in performing this allocation is to value of each of the claims resolved by the FGIC settlement. The Plaintiff bears the burden of proving these values to a reasonable degree of certainty.

a.      Has the Plaintiff proven to a reasonable degree of certainty the value of indemnifiable contract or fraud claims that RFC allegedly breached representations to FGIC, where the alleged breaches were caused by breaches of Home Loan Center's representations to RFC?

Yes _____             No  _____

If your answer is No, the Plaintiff may not recover damages with respect to the FGIC Settlement, and you should proceed directly to Part IV below.

If your answer is Yes, please specify in the table below the value of these claims at the time of settlement.

b.      Has the Plaintiff proven to a reasonable degree of certainty the value of non-indemnifiable contract or fraud claims that RFC allegedly breached representations to FGIC, where the alleged breaches were caused by other originators' breaches of representations to RFC?

Yes _____             No  _____

If your answer is No, the Plaintiff may not recover damages with respect to the FGIC Settlement, and you should proceed directly to Part IV below.

If your answer is Yes, please specify in the table below the value of these claims at the time of settlement.

c.   Has the Plaintiff proven to a reasonable degree of certainty the value of non-indemnifiable contract or fraud claims that RFC allegedly breached representations to FGIC, where RFC was solely responsible for the alleged breaches?

Yes _____          No _____

If your answer is No, the Plaintiff may not recover damages with respect to the FGIC Settlement, and you should proceed directly to Part IV below.

If your answer is Yes, please specify in the table below the value of these claims at the time of settlement.

d.   Has the Plaintiff proven to a reasonable degree of certainty the value of non-indemnifiable claims that RFC allegedly breached its servicing obligations to FGIC?

Yes _____          No _____

If your answer is No, the Plaintiff may not recover damages with respect to the FGIC Settlement, and you should proceed directly to Part IV below.

If your answer is Yes, please specify in the table below the value of these claims at the time of settlement.

e.   Has the Plaintiff proven to a reasonable degree of certainty the value of non-indemnifiable claims by FGIC against RFC's corporate parent, Ally Financial, Inc.?

Yes _____          No _____

If your answer is No, the Plaintiff may not recover damages with respect to the FGIC Settlement, and you should proceed directly to Part IV below.

13

If your answer is Yes, please specify in the table below the value of these claims at the time of settlement.

f.   If you find that the FGIC Settlement resolved other non-indemnifiable claims, has the Plaintiff proven to a reasonable degree of certainty the value of those claims?

Yes _____          No _____

If your answer is No, the Plaintiff may not recover damages with respect to the FGIC Settlement, and you should proceed directly to Part IV below.

If your answer is Yes, please specify in the table below the value of these claims at the time of settlement.

g.   If the Plaintiff has proven the value of each of the foregoing claims at the time of settlement, you should sum the values of the claims and specify the total value of all claims at the bottom of the second column below.

h.   You then should divide the value of each claim by the total value of all claims and specify the result in percentage terms in the third column. The percentages should add up to 100% at the bottom of the third column. These percentages represent the value of each claim *relative* to the total value of all claims resolved in the settlement.

| Settled Claims | Value of Claims at time of Settlement as Proven by Plaintiff | Relative Value of Claims as Percentage of Total Value of Claims |
|---|---|---|
| Indemnifiable contract or fraud claims that RFC allegedly breached representations to FGIC, where the alleged breaches were caused by breaches of Home Loan Center's representations to RFC | | |
| Non-indemnifiable contract or fraud claims that RFC allegedly breached representations to FGIC, where the alleged breaches were caused by other originators' breaches of representations to RFC | | |
| Non-indemnifiable contract or fraud claims that RFC allegedly breached representations to FGIC, where RFC was solely responsible for the alleged breaches | | |
| Non-indemnifiable claims that RFC allegedly breached its servicing obligations to FGIC | | |
| Non-indemnifiable claims against RFC's corporate parent, Ally Financial, Inc. | | |
| Any other non-indemnifiable claims resolved by the FGIC Settlement | | |
| **Total Value of Claims at Time of Settlement** | | 100% |

2. **Allocating the FGIC Settlement Based on Relative Value**

The second step is to allocate a portion of the FGIC Settlement to the indemnifiable claims. To do so, you must multiply the relative value of the indemnifiable claims in percentage terms (in the shaded box above) by $415,000,000. The result may not exceed $864,865,

which are the damages alleged by the Plaintiff with respect to the FGIC Settlement.

Specify the result here:

## IV.   Syncora Settlement

### A.   Reasonableness and Good Faith

1.   Has the Plaintiff proven by a preponderance of the evidence that the amount of the Syncora Settlement was reasonable and prudent?

Yes _____          No _____

If your answer is No, the Plaintiff may not seek damages with respect to the Syncora Settlement, and you should proceed directly to Part V below.

If your answer is Yes, you should proceed to the next question.

2.   Has the Plaintiff proven by a preponderance of the evidence that RFC entered the Syncora Settlement in good faith?

Yes _____          No _____

If your answer is No, the Plaintiff may not seek damages with respect to the Syncora Settlement, and you should proceed directly to Part V below.

If your answer is Yes, you should proceed to the next question.

### B.   Causation, Allocation, and Damages

With respect to the Syncora Settlement, the Plaintiff may seek indemnity from Home Loan Center only for the portion of the settlement, if any, relating to contract or fraud claims that RFC allegedly breached representations to Syncora, where the alleged breaches were *caused* by breaches of Home Loan Center's representations to RFC. These claims are referred to as "indemnifiable claims."

The Plaintiff may not seek indemnity from Home Loan Center for portions of the Syncora Settlement relating to claims that were *not caused* by breaches of Home Loan Center's representations to RFC.  These claims

may include (a) contract or fraud claims that RFC allegedly breached representations to Syncora, where the alleged breaches were caused by other originators' breaches of representations to RFC; (b) contract or fraud claims that RFC allegedly breached representations to Syncora, where RFC was solely responsible for the alleged breaches; (c) claims that RFC allegedly breached its servicing obligations to Syncora; and (d) claims against RFC's corporate parent, Ally Financial, Inc. These claims are referred to as "non- indemnifiable claims."

The Plaintiff bears the burden of allocating the Syncora Settlement among the indemnifiable and non-indemnifiable claims based on the relative value of the claims at the time of settlement.

**1.    Valuing Each Claim Resolved by the Syncora Settlement**

The first step in performing this allocation is to value of each of the claims resolved by the Syncora settlement. The Plaintiff bears the burden of proving these values to a reasonable degree of certainty.

a.    Has the Plaintiff proven to a reasonable degree of certainty the value of indemnifiable contract or fraud claims that RFC allegedly breached representations to Syncora, where the alleged breaches were caused by breaches of Home Loan Center's representations to RFC?

Yes _____                No _____

If your answer is No, the Plaintiff may not recover damages with respect to the Syncora Settlement, and you should proceed directly to Part V below.

If your answer is Yes, please specify in the table below the value of these claims at the time of settlement.

b.    Has the Plaintiff proven to a reasonable degree of certainty the value of non-indemnifiable contract or fraud claims that RFC allegedly breached representations to Syncora, where the alleged breaches were caused by other originators' breaches of representations to RFC?

Yes _____                No _____

If your answer is No, the Plaintiff may not recover damages with respect to the Syncora Settlement, and you should proceed directly to Part V below.

If your answer is Yes, please specify in the table below the value of these claims at the time of settlement.

c.  Has the Plaintiff proven to a reasonable degree of certainty the value of non-indemnifiable contract or fraud claims that RFC allegedly breached representations to Syncora, where RFC was solely responsible for the alleged breaches?

Yes _____          No _____

If your answer is No, the Plaintiff may not recover damages with respect to the Syncora Settlement, and you should proceed directly to Part V below.

If your answer is Yes, please specify in the table below the value of these claims at the time of settlement.

d.  Has the Plaintiff proven to a reasonable degree of certainty the value of non-indemnifiable claims that RFC allegedly breached its servicing obligations to Syncora?

Yes _____          No _____

If your answer is No, the Plaintiff may not recover damages with respect to the Syncora Settlement, and you should proceed directly to Part V below.

If your answer is Yes, please specify in the table below the value of these claims at the time of settlement.

e.  Has the Plaintiff proven to a reasonable degree of certainty the value of non-indemnifiable claims by Syncora against RFC's corporate parent, Ally Financial, Inc.?

Yes _____          No _____

If your answer is No, the Plaintiff may not recover damages with respect to the Syncora Settlement, and you should proceed directly to Part V below.

If your answer is Yes, please specify in the table below the value of these claims at the time of settlement.

f. If you find that the Syncora Settlement resolved other non-indemnifiable claims, has the Plaintiff proven to a reasonable degree of certainty the value of those claims?

Yes _____    No _____

If your answer is No, the Plaintiff may not recover damages with respect to the Syncora Settlement, and you should proceed directly to Part V below.

If your answer is Yes, please specify in the table below the value of these claims at the time of settlement.

g. If the Plaintiff has proven the value of each of the foregoing claims at the time of settlement, you should sum the values of the claims and specify the total value of all claims at the bottom of the second column below.

h. You then should divide the value of each claim by the total value of all claims and specify the result in percentage terms in the third column. The percentages should add up to 100% at the bottom of the third column. These percentages represent the value of each claim *relative* to the total value of all claims resolved in the settlement.

| Settled Claims | Value of Claims at time of Settlement as Proven by Plaintiff | Relative Value of Claims as Percentage of Total Value of Claims |
|---|---|---|
| Indemnifiable contract or fraud claims that RFC allegedly breached representations to Syncora, where the alleged breaches were caused by breaches of Home Loan Center's representations to RFC | | |
| Non-indemnifiable contract or fraud claims that RFC allegedly breached representations to Syncora, where the alleged breaches were caused by other originators' breaches of representations to RFC | | |
| Non-indemnifiable contract or fraud claims that RFC allegedly breached representations to Syncora, where RFC was solely responsible for the alleged breaches | | |
| Non-indemnifiable claims that RFC allegedly breached its servicing obligations to Syncora | | |
| Non-indemnifiable claims against RFC's corporate parent, Ally Financial, Inc. | | |
| Any other non-indemnifiable claims resolved by the Syncora Settlement | | |
| **Total Value of Claims at Time of Settlement** | | 100% |

## 2. Allocating the Syncora Settlement Based on Relative Value

The second step is to allocate a portion of the Syncora Settlement to the indemnifiable claims. To do so, you must multiply the relative value of the indemnifiable claims in percentage terms (in the shaded box above) by $7,113,000. The result may not exceed $4,574, which are the damages alleged by the Plaintiff with respect to the Syncora Settlement.

Specify the result here: _____

## V.   Trust Settlement

### A.   Reasonableness and Good Faith

1.   Has the Plaintiff proven by a preponderance of the evidence that the amount of the Trust Settlement was reasonable and prudent?

Yes _____          No _____

If your answer is No, the Plaintiff may not seek damages with respect to the Trust Settlement, and you should proceed directly to Part VI below.

If your answer is Yes, you should proceed to the next question.

2.   Has the Plaintiff proven by a preponderance of the evidence that RFC entered the Trust Settlement in good faith?

Yes _____          No _____

If your answer is No, the Plaintiff may not seek damages with respect to the Trust Settlement, and you should proceed directly to Part VI below.

If your answer is Yes, you should proceed to the next question.

### B.   Causation, Allocation, and Damages

With respect to the Trust Settlement, the Plaintiff may seek indemnity from Home Loan Center only for the portion of the settlement, if any, relating to contract, fraud, or negligence claims that RFC allegedly breached representations to trusts, where the alleged breaches were *caused* by underlying breaches of Home Loan Center's representations to RFC. These claims are referred to as "indemnifiable claims."

The Plaintiff may not seek indemnity from Home Loan Center for portions of the Trust Settlement relating to claims that were *not caused* by breaches of Home Loan Center's representations to RFC. These claims may include (a) contract, fraud or negligence claims that RFC allegedly breached representations to trusts, where the alleged breaches were caused by other

originators' breaches of representations to RFC; (b) contract, fraud, or negligence claims that RFC allegedly breached representations to trusts, where RFC was solely responsible for the alleged breaches; (c) claims that RFC allegedly breached its servicing obligations to trusts; (d) claims by non-debtor sponsored or "NDS" trusts, and (e) claims against RFC's corporate parent, Ally Financial, Inc. These claims are referred to as "non-indemnifiable claims."

The Plaintiff bears the burden of allocating the Trust Settlement among the indemnifiable and non-indemnifiable claims based on the relative value of the claims at the time of settlement.

**1.      Valuing Each Claim Resolved by the Trust Settlement**

The first step in performing this allocation is to value of each of the claims resolved by the Trust Settlement. The Plaintiff bears the burden of proving these values to a reasonable degree of certainty.

a.      Has the Plaintiff proven to a reasonable degree of certainty the value of indemnifiable contract, fraud, or negligence claims that RFC allegedly breached representations to trusts, where the alleged breaches were caused by breaches of Home Loan Center's representations to RFC?

Yes _____                    No _____

If your answer is No, the Plaintiff may not recover damages with respect to the Trust Settlement, and you should proceed directly to Part VI below.

If your answer is Yes, please specify in the table below the value of these claims at the time of settlement.

b.      Has the Plaintiff proven to a reasonable degree of certainty the value of non-indemnifiable contract, fraud, or negligence claims that RFC allegedly breached representations to trusts, where the alleged breaches were caused by other originators' breaches of representations to RFC?

Yes _____                    No _____

If your answer is No, the Plaintiff may not recover damages with respect to the Trust Settlement, and you should proceed directly to Part VI below.

If your answer is Yes, please specify in the table below the value of these claims at the time of settlement.

c.  Has the Plaintiff proven to a reasonable degree of certainty the value of non-indemnifiable contract, fraud, or negligence claims that RFC allegedly breached representations to trusts, where RFC was solely responsible for the alleged breaches?

Yes _____          No _____

If your answer is No, the Plaintiff may not recover damages with respect to the Trust Settlement, and you should proceed directly to Part VI below.

If your answer is Yes, please specify in the table below the value of these claims at the time of settlement.

d.  Has the Plaintiff proven to a reasonable degree of certainty the value of non-indemnifiable claims that RFC allegedly breached its servicing obligations to trusts?

Yes _____          No _____

If your answer is No, the Plaintiff may not recover damages with respect to the Trust Settlement, and you should proceed directly to Part VI below.

If your answer is Yes, please specify in the table below the value of these claims at the time of settlement.

e.  Has the Plaintiff proven to a reasonable degree of certainty the value of non-indemnifiable claims involving non-debtor sponsored or "NDS" trusts?

Yes _____          No _____

If your answer is No, the Plaintiff may not recover damages with respect to the Trust Settlement, and you should proceed directly to Part VI below.

If your answer is Yes, please specify in the table below the value of these claims at the time of settlement.

f.    Has the Plaintiff proven to a reasonable degree of certainty the value of non-indemnifiable claims by trusts against RFC's corporate parent, Ally Financial, Inc.?

Yes _____         No _____

If your answer is No, the Plaintiff may not recover damages with respect to the Trust Settlement, and you should proceed directly to Part VI below.

If your answer is Yes, please specify in the table below the value of these claims at the time of settlement.

g.    If you find that the Trust Settlement resolved other non-indemnifiable claims, has the Plaintiff proven to a reasonable degree of certainty the value of those claims?

Yes _____         No _____

If your answer is No, the Plaintiff may not recover damages with respect to the Trust Settlement, and you should proceed directly to Part VI below.

If your answer is Yes, please specify in the table below the value of these claims at the time of settlement.

h.    If the Plaintiff has proven the value of each of the foregoing claims at the time of settlement, you should sum the values of the claims and specify the total value of all claims at the bottom of the second column below.

i.    You then should divide the value of each claim by the total value of all claims and specify the result in percentage terms in the third column. The percentages should add up to 100% at the bottom of the third column. These percentages represent the value of each claim *relative* to the total value of all claims resolved in the settlement.

| Settled Claims | Value of Claims at time of Settlement as Proven by Plaintiff | Relative Value of Claims as Percentage of Total Value of Claims |
| --- | --- | --- |
| Indemnifiable contract, fraud, or negligence claims that RFC allegedly breached representations to trusts, where the alleged breaches were caused by breaches of Home Loan Center's representations to RFC | | |
| Non-indemnifiable contract, fraud, or negligence claims that RFC allegedly breached representations to trusts, where the alleged breaches were caused by other originators' breaches of representations to RFC | | |
| Non-indemnifiable contract, fraud, or negligence claims that RFC allegedly breached representations to trusts, where RFC was solely responsible for the alleged breaches | | |
| Non-indemnifiable claims that RFC allegedly breached its servicing obligations to trusts | | |
| Non-indemnifiable claims by NDS Trusts | | |
| Non-indemnifiable claims against RFC's corporate parent, Ally Financial, Inc. | | |
| Any other non-indemnifiable claims resolved by the Trust Settlement | | |
| **Total Value of Claims at Time of Settlement** | | 100% |

## 2.    Allocating the Trust Settlement Based on Relative Value

The second step is to allocate a portion of the Trust Settlement to the indemnifiable claims. To do so, you must multiply the relative value of the indemnifiable claims in percentage terms (in the shaded box above) by $7,091,200,000. The result may not exceed $6,479,463,

which are the damages alleged by the Plaintiff with respect to the Trust Settlement.

Specify the result here: _____

## VI.   Attorney's Fees and Expenses

### A.   Reasonableness

1.   Has the Plaintiff proven by a preponderance of the evidence that the amount of attorney's fees and expenses that RFC incurred in bankruptcy and pre-bankruptcy litigation was reasonable?

Yes _____          No _____

If your answer is No, the Plaintiff may not recover damages for such attorney's fees and expenses. You should stop, proceed no further, and sign and return the Special Verdict Form to the Court.

If your answer is Yes, you should proceed to the next question.

### B.   Causation, Allocation, and Damages

1.   With respect to the attorney's fees and expenses RFC incurred in bankruptcy and pre-bankruptcy litigation, the Plaintiff may seek indemnity from Home Loan Center only for the portion of the attorney's fees and expenses, if any, relating to the litigation of claims caused by breaches of Home Loan Center's representations to RFC. The Plaintiff may not seek indemnity for portions of the attorney's fees and expenses relating to the litigation of other claims or issues.

Here, the Plaintiff contends that $808,415 of the attorney's fees and expenses that RFC incurred in bankruptcy and pre-bankruptcy litigation should be allocated to Home Loan Center.

Has the Plaintiff proven to a reasonable degree of certainty that this portion of the attorney's fees and expenses was caused by breaches of Home Loan Center's representations and warranties to RFC?

Yes _____          No _____

If your answer is Yes, then damages will be assessed against Home Loan Center in the amount of $808,415 with respect to the attorney's fees and expenses RFC incurred in bankruptcy and pre-bankruptcy litigation. You should stop, proceed no further, and sign and return the Special Verdict Form to the Court.

If your answer is No, has the Plaintiff proven to a reasonable degree of certainty that some amount less than $808,415 should be allocated to Home Loan Center with respect to the attorney's fees and expenses that RFC incurred in bankruptcy and pre-bankruptcy litigation?

Yes _____                    No  _____

If your answer is No, then the Plaintiff may not recover damages with respect to such attorney's fees and expenses. You should stop, proceed no further, and sign and return the Special Verdict Form to the Court.

If your Answer is Yes, specify the amount of RFC's attorney's fees and expenses from bankruptcy and pre-bankruptcy litigation that was caused by breaches of Home Loan Center's representations and warranties to RFC:

_____
Foreperson

Dated: _____

## PLAINTIFF'S OBJECTIONS TO DEFENDANT'S PROPOSED SPECIAL VERDICT FORM

## GENERAL OBJECTIONS

1.     Defendant's Special Verdict Form is inconsistent with and contrary to the Court's summary judgment ruling [Doc. No. 4307], *Daubert* ruling [Doc. No. 4471], and case law.

2.     Defendant's Special Verdict Form will not assist the jury in its deliberations.  It is unnecessarily biased, complex and lengthy and will likely confuse the jury and create an unreasonable risk of jury error.   Moreover, Defendant has not articulated a good cause basis to deviate from a verdict form stating the simple concept of liability and damages to the jury. *Aderans Co. v. Jablonski*, 787 F. Supp. 882, 885-86 (D. Minn. 1992) (indicating that a proposed special verdict form was properly rejected because it "was unwieldy and could have made the jury's task more difficult or confusing."); *Bombardier Rec. Prods. v. Arctic Cat Inc.*, No. 12-2706 (JRT/LIB), 2018 U.S. Dist. LEXIS 132584, at *29 (D. Minn. Aug. 7, 2018) (rejecting special-verdict form that was overly complicated, and instead, "favoring simplicity, used a form that asked simply whether all the asserted claims of each patent were invalid, and on what grounds.").

3.     Defendant's Special Verdict Form is prejudicial, incomplete, inaccurate, argumentative, confusing, and misleading.

## SPECIFIC OBJECTIONS

## PLAINTIFF'S OBJECTIONS TO SECTION I

Plaintiff incorporates its objections to HLC's Proposed Jury Instruction Nos. 13-20.

Plaintiff objects to the questions for all three categories of loans on the special verdict form as biased, prejudicial, confusing, contrary to the Court's summary judgment ruling, and an improper shifting of the burden on Home Loan Center's equitable estoppel affirmative defense.   By separating out three factual categories of loans, the special verdict form gives improper credibility to disputed facts Home Loan Center finds important.

### A. Applicability of Client Guide

Plaintiff further objects to the special verdict form's focus on the applicability of Client Guide representations and warranties rather than the Client Guide generally as

contrary to the Court's summary judgment ruling and the case law, prejudicial and confusing, inconsistent with the claim asserted in this case, and an improper shifting of the burden as to Home Loan Center's equitable estoppel affirmative defense.   In particular:

- By focusing on proof of an agreement that loans would comply with Client Guide representations and warranties, the questions suggest that Plaintiff is pursuing a breach of contract claim rather than an indemnification claim.

- To obtain indemnification, RFC need only prove that the Client Guide generally (rather than any particular provision or every provision) governed the parties' sale of loans. *See* SJ Order at 5 n.5.   Asking the jury whether Plaintiff proved that the loans at issue would comply with the representations in the Client Guide risks prejudice and confusion if the jury were to find that a particular representation did not apply.   For example, Section A202(A) contains multiple representations, including that each of the loans "meets the applicable program terms and criteria set forth in this Client Guide" and has true, complete, and accurate information.   As this Court has recognized, the Client Guide allowed the parties to agree to substitute different program terms from those set forth in the Client Guide.   Thus, a jury could improperly conclude, under Home Loan Center's question, that such an agreement means Plaintiff is not entitled to indemnification.

- The Court has found that it is Home Loan Center's burden under its equitable estoppel defense to show that RFC promised Home Loan Center that it would not enforce a particular representation and warranty (or other provision) as to a particular loan. *See* SJ Order at 115-16.   Requiring Plaintiff to prove that "the loans would comply with the Client Guide's representations and warranties" as an element of its indemnification claim would shift this burden of proof.

- This question suggests that breaches of the Client Guide representations and warranties are disputed when the Court has ruled that Plaintiff has sole discretion to determine breaches of the representations and warranties in the Client Guide. *See* SJ Order at 72-73.

### B. Estoppel and Waiver

Plaintiff objects to the inclusion of any questions relating to waiver because waiver is not a valid defense in the case.   Instead, Home Loan Center has an equitable estoppel defense. *See* SJ Order at 115; 8/23/18  Pretrial Conf.  Tr. 199:23-200:4; 211:17-212:14."

Plaintiff further objects to the questions regarding equitable estoppel and waiver as biased, confusing, and contrary to the Courts summary judgment ruling and the Client

Guide.  Although the jury is being asked to step through every conceivable element (and many non-elements) of Plaintiff's indemnification claim with detailed questions, Defendant is not required to do the same for its affirmative defenses, which ask a general question not tied to any elements.  Plaintiff objects to the questions regarding estoppel and waiver in that they improperly tell the jury that the jury must determine the affirmative defenses before reaching other elements of the indemnification claim.  The affirmative defenses should not be a threshold issue before the jury reaches the other elements of the indemnification claim.  For example, the estoppel defense applies only with respect to breaches for which Plaintiff seeks indemnification.  By requiring the jury to consider the defense before a determination of those breaches and Plaintiff's entitlement to indemnification, there is a risk that the jury applies the affirmative defense when it is not relevant to the breaches at issue.  Plaintiff further objects that the questions misstate the effect of the affirmative defense, as determined by the Court in its rulings. Equitable estoppel applies on a loan-by-loan basis and not as to an entire subject matter category of loans.  *See* SJ Order at 115-16.  Otherwise, equitable estoppel becomes a blanket waiver defense that the Court already has rejected.  *See id.*

Plaintiff objects to separate questions directed to separate categories loans as biased, prejudicial, and confusing.  Home Loan Center has a single equitable estoppel defense—not three separate defenses.  In addition, by separating out three factual categories of loans, the question gives improper credibility to disputed facts Home Loan Center finds important.

## PLAINTIFF'S OBJECTIONS TO SECTIONS II-V

### A.      Reasonableness and Good Faith

Plaintiff incorporates its objections to HLC's Proposed Jury Instruction Nos. 21-22.

Plaintiff objects to these questions as contrary to law and the Client Guide, prejudicial, confusing, and imposing a greater burden on Plaintiff than required.  Plaintiff further objects as these questions are contrary to the Summary Judgment Order, including pages 27-28, and 80.  Plaintiff further objects as these questions misstate the settlements for which Plaintiff seeks indemnity.

### B.      Causation, Allocation, and Damages

Plaintiff incorporates its objections to HLC's Proposed Jury Instruction Nos. 24-26; 22.

Plaintiff objects to a special verdict form that asks the jury about causation as to each of four bankruptcy settlements as contrary to law and the Client Guide, prejudicial, confusing, and imposing a greater burden on Plaintiff than required:

- *Contrary to law and the Client Guide*:  Plaintiff is entitled to recover all losses and liabilities based on, grounded upon, or resulting from an Event of Default or any material misstatement or omission made by a lender.   Client Guide §§ A202(II), A212.   As contemplated by the Client Guide, the losses and liabilities may include many components, including damages, penalties, fines, forfeitures, court costs and reasonable attorneys' fees, judgments, and any other costs, fees and expenses.  Despite these multiple components, Plaintiff need only prove a single claim for indemnity, and not multiple claims as to each component.   Indeed, requiring Plaintiff to prove its claim as to each component of the losses and liabilities it seeks to recover as damages would run contrary to settled law because Plaintiff need only prove that its allocation of damages is reasonable and non-speculative.  *See* SJ Order at 149-50 ("'Once the fact of loss has been shown, the difficulty of proving its amount will not preclude recovery so long as there is proof of a reasonable basis upon which to approximate the amount.'" (quoting *Poppler v. Wright Hennepin Coop. Elec. Ass'n*, 834 N.W.2d 527, 546 (Minn. Ct. App. 2013), *aff'd sub nom. Poppler v. Wright Hennepin Coop. Elec. Ass'n*, 845 N.W.2d 168 (Minn. 2014))); SJ Order at 173-74.

- In addition, requiring Plaintiff to prove causation as to the four settlements would be prejudicial and confusing and would impose a greater burden on Plaintiff than the law requires.  Home Loan Center believes the four relevant settlements are the Trust settlement, MBIA settlement, FGIC settlement, and Syncora settlement, but Plaintiff also seeks indemnification for the Ambac settlement.   That settlement is part of the case, and excluding it from the special verdict form while including other settlements is likely to confuse the jury.  Home Loan Center maintains that the Ambac settlement should not be referenced in the form because Home Loan Center does not receive an allocation of that settlement.  But this argument demonstrates why Home Loan Center's  questions are objectionable:   Home Loan Center is conflating an allocation with the elements of the contractual indemnity claim, thereby imposing a greater burden on Plaintiff than the law requires.  An allocation is governed by different standards than the element of a claim.  *See, e.g.*, SJ Order at 97, 99, 173-76.  Home Loan Center's questions also are prejudicial. Dr. Snow conducted his allocation based on two categories of Allowed Claims in the bankruptcy:  the Trust Claims and the Monoline Claims.  This Court has already recognized that Dr. Snow's allocation methodology presents a reasonable, non-speculative way to allocate the settlements.  *Id.* at 173-76. Questions to the jury implying Plaintiff must prove its claims separately as to

each monoline settlement would be entirely inconsistent with Dr. Snow's methodology and the Court's summary judgment opinion.

Plaintiff objects to questions alleging that it must prove a causal connection with respect to each breach as contrary to law, imposing a greater burden on Plaintiff than the law requires, confusing, and biased. An at-issue loan may breach multiple representations and warranties of the Client Guide, and these questions would require Plaintiff to prove a causal connection between each of those breaches and the claims resolved in the bankruptcy to recover, when a causal connection between breaches in combination may suffice.

Plaintiff objects to the language that it "may seek indemnity from Home Loan Center only for the portion of the settlement, if any, relating to the claims that were caused by breaches of Home Loan Center's representations to RFC" because it is contrary to the Court's summary judgment ruling. As the summary judgment ruling makes clear, Plaintiff need only show a causal connection between Home Loan Center's breaches and the settlements to establish Home Loan Center's *liability*. SJ Ruling at 93-98. As long as Home Loan Center's breaches were a contributing cause to RFC's potential liability to the RMBS Trusts and monoline insurers, Home Loan Center caused the settlements for purposes of its own liability. The ***amount of damages*** is a different issue, for which the jury must consider Dr. Snow's Allocated Breaching Loss Approach. *Id.* at 98.

As to damages and the Allocated Breaching Loss Approach, the jury need not consider a laundry list of purportedly "non-indemnifiable claims," as Home Loan Center's proposed questions mandate. Rather, the jury must consider whether Dr. Snow's Allocated Breaching Loss Approach is reasonable and non-speculative, based upon the evidence presented. Moreover, as to certain of Home Loan Center's "non-indemnifiable claims," such as RMBS Trust servicing claims, the bankruptcy settlements already allocated them. As to others, such as "claims against RFC's corporate parent, Ally Financial, Inc.," the bankruptcy settlements make clear that they were not a part of the "Allowed Claim" for which Plaintiff seeks indemnity.

As this Court recognized in its summary judgment opinion (at 149-50, 173-76), damages need only be proven using a reasonably certain, non-speculative basis, and "[o]nce the fact of loss has been shown, the difficulty of proving its amount will not preclude recovery so long as there is proof of a reasonable basis upon which to approximate the amount." SJ Order at 150 (internal quotation omitted). The jury in this case is being asked to consider Dr. Snow's Allocated Breaching Loss Approach. The Court has already found that "the Allocated Breaching Loss Approach offers a reasonably certain basis for assessing and allocating damages that is not speculative, remote, or conjectural," SJ Order at 174 (internal quotations omitted), and "that the Allocated Breaching Loss Approach provides a reliable, non-speculative basis for calculating

damages in this case," *id.* at 176.  Thus, any questions posed to the jury should be limited to the application of that approach, and not with respect to hypothetical allocation approaches that have nothing to do with this case.  Moreover, the jury should not be required to make mathematically precise calculations as to the allocation of every conceivable claim or issue, as would be required by Home Loan Center's form.  This Court expressly rejected such mathematical calculations in its summary judgment opinion.  See SJ Order at 150.

Plaintiff objects to the questions and charts proposed requiring detailed calculations because they impose a burden on Plaintiff substantially greater than what is required by the law.  The questions and charts require a mathematical precision that is not required in an allocation.  Further, the questions ask the jury to decide whether a *value* can be determined to a reasonable degree of certainty.  This is not the law.  Again, the jury is required only to consider whether the *basis* for allocating damages is reasonable and non-speculative.  The amount or value can be approximate.  *See, e.g.*, SJ Order at 150 (an amount need only be approximate).

## PLAINTIFF'S OBJECTIONS TO SECTION VI

Plaintiff incorporates its objections to HLC's Proposed Jury Instruction Nos. 27-29.

Plaintiff objects to all instructions regarding pre-petition and bankruptcy attorneys' fees and costs because, as Plaintiff has informed Home Loan Center, it does not intend to present this portion of its claim at trial.  The parties are meeting and conferring regarding a proposal for proof of attorneys' fees and costs, and Plaintiff reserves its rights to present proof of pre-petition and bankruptcy attorneys' fees and costs in connection with attorneys' fees and costs to be recovered from this litigation.

Plaintiff objects to the question on reasonableness in Section VI (A) because it is contrary to the Client Guide in requiring a finding of reasonable expenses and is contrary to case law in denying recovery altogether if any portion of attorneys' fees and expenses is found not to be reasonable.

Plaintiff incorporates its objections from Part B of its objections to Sections II to V.

As with the verdict form for each of the separate settlements, Defendant's verdict form for attorneys' fees and costs imposes a burden on Plaintiff greater than required by law, improperly conflates the elements of a claim with an allocation, and is contrary to case law, the Court's summary judgment ruling, and the Client Guide.

Dated:  October 2, 2018

FELHABER LARSON

By:  */s/ Jessica J. Nelson*
Donald G. Heeman, #286023
Jessica J. Nelson, #347358
Randi J. Winter, #0391354
220 South Sixth Street, Suite 2200
Minneapolis, MN  55402-4504
Telephone:  (612) 339-6321
Facsimile:  (612) 338-0535
dheeman@felhaber.com
jnelson@felhaber.com
rwinter@felhaber.com


CARPENTER LIPPS & LELAND LLP
Jeffrey A. Lipps (*pro hac vice*)
Jennifer A.L. Battle (*pro hac vice*)
280 Plaza, Suite 1300
280 North High Street
Columbus, Ohio 43215
Telephone:  (614) 365-4100
Facsimile:  (614) 365-9145
lipps@carpenterlipps.com
battle@carpenterlipps.com

QUINN EMANUEL URQUHART
& SULLIVAN, LLP

Peter E. Calamari (*pro hac vice*)
Jennifer J. Barrett (*pro hac vice*)
Sascha N. Rand (*pro hac vice*)
Isaac Nesser (*pro hac vice*)
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone:  (212) 849-7000
Facsimile:  (212) 849-7100
petercalamari@quinnemanuel.com
jenniferbarrett@quinnemanuel.com
sascharand@quinnemanuel.com
isaacnesser@quinnemanuel.com


QUINN EMANUEL URQUHART
& SULLIVAN, LLP
William C. Price (*pro hac vice*)
Anthony P. Alden (*pro hac vice*)
Johanna Ong (*pro hac vice*)
Matthew Scheck (*pro hac vice*)
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100
williamprice@quinnemanuel.com
anthonyalden@quinnemanuel.com
johannaong@quinnemanuel.com
matthewscheck@quinnemanuel.com

*Attorneys for Plaintiff ResCap Liquidating Trust*

ZELLE LLP

By:  */s/ Elizabeth V. Kniffen*
     Daniel Millea, #0245963
     Elizabeth V. Kniffen, #0346329
     Rory Zamansky, #0330620
     500 Washington Avenue South
     Suite 4000
     Minneapolis, MN 55415
     Telephone: (612) 339-2020
     Facsimile: (612) 336-9100
     dmillea@zelle.com
     ekniffen@zelle.com
     rzamansky@zelle.com

WILLIAMS & CONNOLLY LLP
     R. Hackney Wiegmann (*pro hac vice*)
     Matthew V. Johnson #0324875
     Jesse T. Smallwood (*pro hac vice*)
     725 Twelfth Street, N.W.
     Washington, DC 20005
     Telephone: (202) 434-5000
     Facsimile: (202) 434-5029
     hwiegmann@wc.com
     mjohnson@wc.com
     jsmallwood@wc.com

*Attorneys for Defendant Home Loan
Center, Inc.*