# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In Re: RFC and RESCAP Liquidating Trust Action | Case No. 13-cv-3451 (SRN/HB) |
| *This document relates to*: | **OMNIBUS MEMORANDUM OPINION AND ORDER RE: MOTIONS IN LIMINE** |
| ResCap Liquidating Trust v. Home Loan Center, Inc., Case No. 14-cv-1716 (SRN/HB) | |

SUSAN RICHARD NELSON, United States District Judge

Plaintiff ResCap Liquidating Trust ("ResCap") and Defendant Home Loan Center ("HLC") are set for trial on Monday October 15, 2018. The parties have collectively filed 19 motions in limine in advance of trial. This Order resolves these motions, for the most part. It also defers ruling on some issues until trial, or until an appropriate proffer is offered. Each motion is addressed in turn. The Court assumes familiarity with the facts and procedural background of this litigation. [1]

## I. RESCAP'S MOTIONS IN LIMINE

### ResCap's Motion in Limine No. 1

#### A. ResCap's Argument

ResCap makes three arguments in support of this motion. *First*, ResCap argues that the Court should not allow HLC to assert that "the 'value of the Allowed Claims established by the bankruptcy Settlements is different than their face amount as established by the

---

[1]    ResCap's motions in limine against CTX and Standard Pacific, and CTX and Standard Pacific's motions in limine against ResCap, remain under advisement.

bankruptcy Plan and Judge Glenn's Findings of Fact." (Pl.'s Mot. in Limine No. 1 [Doc No. 4015] at 1.) ResCap contends that, per this Court's Summary Judgment ruling, a debtor may be indemnified for the full amount of its liabilities, *i.e.*, the Allowed Claims. (*See* Aug. 15, 2018 Order [Doc. No. 4307] ("Summ. J. Order")) at 81-90 (interpreting Client Guide to allow recovery on all liabilities, not just out-of-pocket losses).)[2] As such, ResCap is concerned that HLC will "improperly shift the [jury's] focus to the purported 'value' of the bankruptcy distributions projected to be made on those liabilities," or imply to the jury that "indemnifying [ResCap] for the Allowed Claims would either give [ResCap] an unfair 'windfall' or improperly 'punish' [HLC]." (Pl.'s Mot. in Limine No. 1 at 2-3.)

Relatedly, ResCap argues that HLC should not be allowed to "argue that an unduly large portion of the RMBS Settlement should be allocated to servicing claims, because those claims were entitled to be paid 100 cents on the dollar." (*Id.*) To allow such argument, ResCap avers, would contradict the Bankruptcy Court's clear allocation of servicing claims, as established by the bankruptcy Plan and Judge Glenn's Findings of Fact.

*Second*, ResCap argues that the Court should not allow HLC to assert that "RFC's creditors were fully satisfied in the bankruptcy." (Pl.'s Mot. in Limine No. 1 at 1.) ResCap's primary argument is that the Court's Summary Judgment ruling forecloses these assertions. (*See* Summ. J. Order at 57 ("[T]he applicable language in this case did not extinguish the Allowed Claims themselves or [HLC's] obligation to indemnify [ResCap] for them.").)

---

[2]     This order may also be found at *In re RFC and RESCAP Liquidating Trust Action*, --- F. Supp. 3d ---, 2018 WL 3911424 (D. Minn. 2018).

*Third*, ResCap argues that the Court should not allow HLC to argue that "this litigation will not benefit RFC's creditors because certain Trust units either have traded or were distributed to GMAC's and ResCap's creditors in exchange for the pooling of their assets in the Trust." (Pl.'s Mot. in Limine No. 1 at 1-2.) ResCap argues that evidence about the identity of current holders," particularly hedge funds, is irrelevant. (*Id*. at 5.) The current unitholders have stepped into RFC's shoes, and are therefore "no different under the law than RFC's creditors as they existed at the time of bankruptcy." (*Id*. at 4-5; *see also Bayside Holdings, Ltd. v. Viracon, Inc.*, 709 F.3d 1225, 1228 (8th Cir. 2013) ("An assignment places the assignee in the shoes of the assignor, giving the assignee the same legal rights as the assignor's before the assignment").) "The fact that the Debtors and their creditors agreed to share in recoveries from these lawsuits as well as other assets has no bearing on [HLC's] liability." (Pl.'s Mot. in Limine No. 1 at 6.)

## B. HLC's Response

With respect to ResCap's *first argument*, HLC argues that the jury must learn the "basic principle of bankruptcy practice," "that the cash value of allowed claims differ from their face value." (Def.'s Opp. to Pl.'s Mot. in Limine No. 1 [Doc. No. 4170] at 2.) To evaluate the reasonableness of the settlement and questions of allocation, the jury will need to at least "understand what an Allowed Claim is," and "when unsecured creditors have an incentive to object to allowed claims of other unsecured creditors." (*Id*. at 2, 4.) Further, the jury would need to know this information to calculate damages, to determine what ResCap's "actual losses" were. (*Id*. at 5.)

HLC separately addresses the "allocation of servicing claims" aspect of ResCap's first argument. HLC first argues that the Court should grant its own Motion in Limine No. 9 [Doc. No. 4010], *see infra* at 52-55, which would bar ResCap from using the Bankruptcy Court's Findings of Fact to prove the terms the settling parties agreed to in May 2013. (Def.'s Opp. at 5.) Apart from that motion, though, HLC avers that it needs to introduce evidence about the Allowed Claims' relationship to servicing claims to rebut Donald Hawthorne's expert testimony about the limited value of the servicing claims and to bolster its allocation argument. (*Id.* at 6.) In particular, HLC wants to use the supplemental terms sheet of the Settlement to show how the parties and Judge Glenn (allegedly) mistakenly allocated only 1% of the Allowed Claims to (non-indemnifiable) servicing claims in the Trusts' bankruptcy Settlement when they should have allocated something more like 14%. (*Id.*)

With respect to ResCap's *second argument*, HLC admits that it was awaiting this Court's Summary Judgment opinion, which, as noted above, ruled against them on this issue. (*Id.* at 7.)

With respect to ResCap's *third argument*, HLC first offers a compromise proposal: If the Court grants HLC's Motion in Limine No. 3 [Doc. No. 3979], *see infra* at 37-40, which seeks to preclude ResCap from arguing that "RFC's creditors" are the beneficiaries of this action and have never been "made whole," HLC will not introduce evidence concerning unitholders. (*Id.* at 8.)

However, if ResCap is allowed to assert that it is seeking to recover money for "RFC's creditors," HLC needs to be able to explain to the jury that the "true beneficiaries of

this action are the unitholders in the Liquidating Trust, which are not and have never been identical to RFC's creditors," and now include many "third-party investors." (*Id.* at 9.)

## C. Ruling

The Court's Summary Judgment and *Daubert* rulings effectively decide the first two arguments in ResCap's favor.

*First Argument*: Because the Court held on Summary Judgment that ResCap may seek indemnification for the value of the Allowed Claims, and not just for its actual losses, any evidence or argument that the value of the Allowed Claims established by the bankruptcy Settlements is, or should be, different than their face amount as established by the bankruptcy Plan and Judge Glenn's Findings of Fact, including any testimony re-allocating the amounts the bankruptcy Settlements allocated to servicing claims, is improper. (*See* Summ. J. Order at 81-90 (stating that ResCap may recover on the total value of the Allowed Claims).)[3] Furthermore, the only evidence HLC cites in support of this testimony comes from Professor Triantis's expert report, whose testimony the Court excluded in its *Daubert* ruling. (*See* Sept. 19, 2018 Order [Doc. No. 4471] ("*Daubert* Order") at 58-62.)[4]

*Second Argument*: In addition, evidence or argument asserting that "RFC's creditors' claims were fully satisfied in the bankruptcy," is contrary to the Court's Summary Judgment

---

[3]     The Court specifically addresses HLC's arguments about allocation of servicing claims in its discussion of HLC's Motion in Limine No. 9. *See infra* at 52-55.

[4]     This order may also be found at *In re RFC and RESCAP Liquidating Trust Action*, 2018 WL 4489685 (D. Minn. Sept. 19, 2018).

ruling because this Court held that "the express language of the Bankruptcy Court's Confirmation Order and Chapter 11 Plan demonstrated that the claims at issue were not extinguished upon confirmation of the Plan." (Summ. J. Order at 52.) It will not be permitted.

*Third Argument*: The Court decides this portion of ResCap's Motion in tandem with HLC's Motion in Limine No. 3. *See infra* at 37-40. To resolve these issues, the Court will simply read the following statement in its description of this case to the jury, which the parties jointly agreed upon in their proposed "Introduction to the Case": "The Liquidating Trust stands in the shoes of RFC for purposes of this case and was formed to, among other things, seek recovery of additional assets for its unitholders. The unitholders include former creditors of RFC and certain of its affiliates, and others to whom such creditors sold their units. RFC no longer exists and will not receive any money recovered by the Liquidating Trust." (*See* Joint Statement of the Case [Doc. No. 4494] at 1-2.)

Neither party may present argument or evidence that, after the litigation commenced, certain Trust units were sold or traded. Evidence about "trading units" is simply irrelevant to ResCap's contractual indemnity claim, and is likely to unnecessarily confuse, and potentially prejudice, the jury.

For the foregoing reasons, ResCap's Motion in Limine No. 1 is GRANTED.

## ResCap's Motion in Limine No. 2

### A. ResCap's Argument

In this motion, ResCap makes three arguments. *First*, ResCap argues that the Court should "preclude [HLC] from offering any statements made in complaints, proofs of claim,

expert reports, or other court filings as proof that RFC or any of its affiliates engaged in misconduct." (Pl.'s Mot. in Limine No. 2 [Doc. No. 4017] at 1.) ResCap broadly contends that this evidence is irrelevant in light of the Court's ruling granting ResCap summary judgment with regard to the indemnifiability of mere allegations of misconduct. (*See* Summ. J. Order at 42 ("Given the lack of any evidence of intentional wrongdoing, the Court finds no public policy violation in permitting [ResCap] to seek indemnification on these claims."); *id*. at 108 n.39 ("[T]his Court has held that [HLC] must indemnify [ResCap] for its own *alleged*, but unproven, misconduct.").)

ResCap also argues that complaints, bankruptcy proofs of claim, and expert reports are inadmissible hearsay. *See*, *e.g.*, *Insignia Sys. Inc. v. News Am. Mktg. In-Store, Inc*., No. 04-cv-4213 (JRT/AJB), 2011 WL 382964, at *2 (D. Minn. Feb. 3, 2011) ("Complaints, and the charges and allegations they contain, are hearsay under the Federal Rules of Evidence."). Moreover, ResCap asserts that it would be unduly prejudicial to allow a jury to see "unproven complaint allegations" and "assertions set forth in a Rule 26 expert report," as they might be misconstrued as "tried and tested 'expert' opinion." (Pl.'s Mot. in Limine No. 2 at 4.)

*Second*, ResCap argues that the Court should exclude the aforementioned "misconduct evidence" even if offered for a purpose besides affirmative proof of misconduct, such as allocation. Because all claims based on alleged misconduct are indemnifiable, ResCap contends, there is "no need for any 'allocation' to purportedly non-indemnifiable claims based on alleged misconduct." (*Id*. at 5.)

*Third*, ResCap argues in the alternative that, if any of the "misconduct evidence" is introduced, it should be accompanied by a limiting instruction stating: "(1) the hearsay assertions are not evidence or proof of any misconduct, but rather the unproven allegations of a third party; (2) the assertions or allegations were not subject to challenge by RFC or consideration by the Court or any other fact finder; and (3) there has been no finding or misconduct by RFC relating to any of these allegations." (*Id*. at 6.)

### B. HLC's Response

HLC responds that the "misconduct evidence" contained in complaints, proofs of claim, expert reports, and other court filings is relevant, non-hearsay, and non-prejudicial.

This evidence is relevant, HLC argues, because, under the *UnitedHealth Group* allocation analysis, "the entire record of the underlying case – up until the point that the Settlement was executed – is admissible on the question of allocation." *UnitedHealth Group, Inc. v. Columbia Cas. Co.*, 47 F. Supp. 3d 863, 886 (D. Minn. 2014). And, because fraud claims are not indemnifiable under Minnesota law, such evidence is relevant to allocation here. (Def.'s Opp. to Pl.'s Mot. in Limine No. 2 [Doc. No. 4185] at 4.) Furthermore, this evidence is not hearsay, HLC contends, because it will be offered "not to prove the truth of the matter asserted," but to show the information "available to a reasonable person in RFC's position at the time of the Settlement, *i.e.*, to show the effect on the listener." (*Id*. at 5 (citing *UnitedHealth*, 47 F. Supp. 3d at 886).) Finally, this evidence is not unduly prejudicial, HLC argues, because it merely shows that "RFC faced and settled valuable, non-indemnifiable claims for its own misconduct."  (*Id*. at 6.)

In the event this evidence does come before the jury, HLC argues that ResCap's proposed three-part limiting instruction will cause jury confusion and is inconsistent with the Eighth Circuit's model jury instructions. (*Id*. at 7-9.) HLC notes that RFC moved to dismiss MBIA's fraud claim, and a court rejected that motion, and that RFC answered the complaints against it and engaged in discovery. (*Id*.) All of this shows, HLC contends, that these allegations against RFC were not "unchallenged," and were neither "proven" nor "unproven." (*Id*.) Instead, HLC proposes the Court use Eighth Circuit Civil JIG § 2.09: "The evidence you are about to hear may be considered by you only on the [issue]. It may not be considered for any other purpose." (*Id*. at 9.)

### C. Ruling

As the Court held in its Summary Judgment ruling, and hopefully clarified at the August 23 motion hearing, the settlement of mere allegations against RFC of misconduct is indemnifiable. Hence, this evidence is not relevant to allocating as between indemnifiable and non-indemnifiable losses and liabilities. (*See* Summ. J. Order at 57 (holding that, "given the lack of any evidence of intentional wrongdoing," ResCap may "seek indemnification for these claims [of fraud and intentional misconduct]"); Hearing Tr. at 134-35 ("I have already ruled that those claims [of fraud and intentional misconduct] are indemnifiable. There's not a question about allocating between indemnifiable and non-indemnifiable claims.").)

As such, the only reason the aforementioned "complaints, proofs of claim, expert reports, or other court filings," could be introduced into evidence is to assist the jury in determining the reasonableness of the Bankruptcy Settlements. For instance, ResCap's expert on reasonableness, Mr. Hawthorne, considered, *inter alia*, MBIA's pre-petition in

rendering his opinion that RFC's settlements with the Monoline Insurers were reasonable. (*See* Def.'s Opp. at 3 n.1.)

After the Court heard argument on this motion, though, the parties submitted letters raising an even broader question: whether *any* hearsay litigation document from the pre-petition litigation and bankruptcy may be introduced to the jury as simply evidence available to RFC at the time it entered the bankruptcy settlements (and hence not for the truth of the matter asserted). (*Compare, e.g.*, HLC's Oct. 2, 2018 Letter at 1-5 [Doc. No. 4503] (arguing that such evidence is not hearsay, and is admissible for both allocation and reasonableness purposes) *with* ResCap's Oct. 3, 2018 Letter at 1-3 [Doc. No. 4508] (conceding that proofs of claims against RFC are admissible for their operative legal effect, but arguing that all of the other pre-petition documents on HLC's exhibit list contain hearsay and, at the least, raise substantial confusion and prejudice issues).) The Court discussed this issue with the parties at the October 4 hearing, and instructed both sides to provide further briefing. (*See* Oct. 4, 2018 Hearing Tr. [Doc. No. 4539] at 35-36, 39.) The Court will accordingly defer ruling to the extent that broader issue is interwound with this motion.

For the foregoing reasons, ResCap's Motion in Limine No. 2 is GRANTED IN PART and DEFFERED IN PART.

### ResCap's Motion in Limine No. 3

#### A. ResCap's Argument

In this motion, ResCap makes two separate arguments. *First*, ResCap argues that the Court should "preclude [HLC] from submitting to the jury any evidence, testimony, or

reference to Quinn Emanuel's previous representation of any party (including bankruptcy creditors or claimants) against RFC, GMAC, or other ResCap entities." (Pl.'s Mot. in Limine No. 3 [Doc. No. 4019] at 1.) ResCap contends that this evidence would be irrelevant and unduly prejudicial. The evidence is not relevant because "[t]he fact that other Quinn Emanuel partners – as opposed to another law firm – represented creditors alleging fraud [against RFC] is not evidence that fraud actually occurred," and "does not make any fact at issue in these actions more or less probable." (*Id.* at 3.) Further, the evidence would be unduly prejudicial because, though "trained attorneys understand that a lawyer's representation of a client does not constitute an endorsement of that client's views or activities, non-trained jury members would likely be confused if an attorney represented different interests in a different lawsuit." (*Id.* at 4 (quoting *Monsanto Co. v. Bayer Bioscience N.V.*, No. 00-cv-1915 (ERW), 2005 WL 5989796, at *15 (E.D. Mo. Oct. 28, 2005)) (excluding reference to one law firm's representation of the other client.)

*Second*, ResCap argues that the Court should preclude HLC from making any suggestion that Carpenter Lipps & Leland LLP has taken inconsistent positions in its representation of RFC. Jeffrey Lipps, who at one time appeared on both parties' witness list,[5] represented RFC during its bankruptcy and provided testimony regarding RFC's potential exposure as a result of such claims, and the defenses RFC had to those claims.

---

[5]     Based on recent submissions to the Court, it seems that HLC no longer wishes to introduce testimony from Mr. Lipps at trial, and is now raising objections to his testimony unrelated to the present motion. (*See* ResCap's Br. in Support of the Trial Testimony of Jeffrey Lipps [Doc. No. 4534]; HLC's Letter in Response [Doc. No. 4536] at 1-3.)

ResCap avers that any attempt to "draw a link" between Mr. Lipps' prior testimony and his current role as counsel for ResCap will be both prejudicial and confusing. (*Id*. at 6.)

### B. HLC's Response

With respect to Quinn Emanuel, HLC contends that Quinn Emanuel not only represented Allstate in a fraud lawsuit against RFC (in which Allstate made many of the same allegations as MBIA), but that a Quinn partner filed a Proof of Claim against RFC, and thus declared under penalty of perjury that RFC committed fraud. (*See* Def.'s Opp. to Pl.'s Mot. in Limine No. 3 [Doc. No. 4209] at 3-5.) Because HLC believes that ResCap will contend at trial (through its counsel at Quinn Emanuel) that the fraud claims RFC established in bankruptcy had no value, HLC "should be permitted to inform the jury that Quinn Emanuel attorneys previously signed and filed a Complaint and Proof of Claim alleging that RFC committed fraud." (*Id*. at 7.) If ResCap wants to persuade the jury that the fraud claims were baseless, HLC contends that "it should not be able to escape the fact that its own trial counsel investigated, filed, and attested to the truthfulness of such claims." (*Id*. at 9.)

With respect to Jeffrey Lipps, HLC asserts that it should be able to attack Mr. Lipps for bias or inconsistency, just like any other fact witness. "If Mr. Lipps appears as a witness at trial and attempts to undercut his prior position expressed during the bankruptcy proceedings, HLC should be permitted to explore his changing assertions and bias." (*Id*. at 10.)

### C. Ruling

The Court agrees with ResCap that any prior representations of any party by Quinn Emanuel is irrelevant to this case, and certainly unduly prejudicial to ResCap. As such, the Court precludes HLC from submitting to the jury any evidence, testimony, or reference to Quinn Emanuel's previous representation of any party (including bankruptcy creditors or claimants) against RFC, GMAC, or other ResCap entities.

As for Mr. Lipps, the Court notes that the parties appeared to reach common ground on this question at the August 23 hearing. ResCap's counsel conceded that, if Mr. Lipps takes the stand, it is "fair game" for him to be impeached with inconsistent prior statements. (Hearing Tr. at 157.) HLC's counsel then agreed that this concession "probably addresses the issue." (*Id.* at 158.) To the extent specific issues arise relating to the impeachment of Mr. Lipps, the Court will address them during the portion of its October 9 hearing discussing Mr. Lipps, and/or during trial.

For the foregoing reasons, ResCap's Motion in Limine No. 3. is GRANTED IN PART and DEFERRED IN PART.

## ResCap's Motion in Limine No. 4

### A.  ResCap's Argument

In this motion, ResCap seeks to exclude four different kinds of arguments by HLC, whether introduced through "evidence, argument, or expert testimony": (1) that "information regarding confidential mediation communications may be necessary, useful, or relevant to determine any issue in these matters, including, but not limited to, the reasonableness, allocation, or indemnifiability of the Settlements"; (2) that "[HLC] may be prejudiced by its inability to discover or present to the jury confidential mediation

materials"; (3) that "the jury's decision could be affected by those materials"; and (4) that "[ResCap] or any other party refused to produce confidential mediation materials, or successfully opposed a motion that was joined by [HLC] seeking to obtain discovery of such materials." (Pl.'s Mot. in Limine No. 4 [Doc. No. 4021] at 1.)

In addition, ResCap asks that, if any information is presented to the jury regarding the confidentiality of mediation, the Court should limit such evidence to a Court-approved script. According to ResCap, this script should simply "inform the jury of the basic facts concerning the mediation, that mediations are usually confidential to facilitate settlement discussions, and that confidentiality here was required by a court order." (*Id*. at 2.)

In support of this motion, ResCap argues that, per Judge Glenn's Order blocking discovery of mediation materials, questions of settlement reasonableness and allocation "must be decided by objective considerations." (*Id*. at 6 (citing *In re Residential Capital, LLC*, 536 B.R. 132, 148 (Bankr. S.D.N.Y. 2015)).) As such, "there is no need to inquire into subjective considerations of what the mediator or parties said or believed during the course of confidential mediation deliberations." (*Id*.) Further, because Judge Glenn is responsible for the mediation material remaining confidential, not ResCap, it would be prejudicial to suggest that ResCap is blocking relevant facts, or that "there is something nefarious or improper about this mediation simply because it was confidential." (*Id*. at 9.)

## B. HLC's Response

HLC generally ripostes that, "[ResCap] asks the Court to permit it to trumpet mediation when it helps its case" with respect to the alleged good faith and reasonableness of the Settlements, but yet "preclude [HLC] from responding with any testimony that

'highlights or disparages the confidentiality' of that same mediation." (Def.'s Opp. to Pl.'s Mot. in Limine No. 4 [Doc No. 4191] at 1.)

HLC first concedes that, if the Court grants HLC's Motion in Limine No. 2 [Doc. No. 3968] (which seeks to preclude ResCap from presenting evidence about its valuation of claims, pre-mediation statements, or the fact of the mediation), HLC will not introduce evidence regarding mediation confidentiality. *See infra* at 34-36.

However, if the Court does allow in any evidence about mediation or pre-mediation statements, *e.g.*, Mr. Hawthorne's expert testimony or Mr. Kruger's testimony about pre-mediation negotiations, HLC should be able to show "that the mediation was confidential, that RFC objected to disclosing mediation communications, and that [HLC's] experts could not review mediation communications." (*Id*. at 4.) HLC also argues that subjective views about mediation are relevant to *allocation* under *UnitedHealth Group*, and that HLC needs to talk about the "opacity of mediation" to "rebut RFC's allocation of the bankruptcy settlements." (*Id*. at 7.) In sum, HLC maintains that "the fact that there is no evidence on what occurred in mediation – at least in part because RFC opposed its release – will be critical to the jury's evaluation of the mediation and pre-mediation settlement communications." (*Id*. at 10.)

### C. Ruling

The Court decides this Motion in conjunction with HLC's Motion in Limine No. 2 [Doc. No. 3968], which asks the Court to preclude ResCap from arguing or presenting evidence about its subjective valuation of claims, pre-mediation statements, or the fact of mediation. *See infra* at 34-36.

As an initial matter, the Court will advise the jury that the Bankruptcy Settlements were reached during a confidential mediation. That is a basic fact of this case and a relevant, objective factor for the jury to consider in determining whether the Settlements were reached in good faith. Indeed, at the August 23 hearing, ResCap's counsel conceded that it would not hide the fact that the mediation was confidential, and that HLC could accordingly not discover any materials used in the mediation. (*See* Hearing Tr. at 41.) As such, if ResCap's witnesses discuss the fact of mediation during their testimony, on cross-examination HLC may only note that mediation was confidential, and that no witness, from either party, had access to materials used during the mediation. The same is true for HLC's witnesses discussing the Settlements on direct examination.

However, beyond that, HLC may not introduce evidence or argument to the jury about Judge Glenn's Order and/or any efforts by ResCap to block discovery into mediation, or suggest that HLC is prejudiced by its inability to discover or present to the jury confidential mediation materials. Rather, the Court will inform the jury about the confidential mediation in its preliminary instructions through the following neutral statement: "RFC agreed to settle the claims brought against it by the Trusts and Monoline Insurers during a confidential mediation process directed by the Bankruptcy Court. Because this mediation was confidential, as court mediations usually are, neither party will be able to show you evidence about what exactly happened at this mediation. Moreover, in this case, the Bankruptcy Judge entered an order that prevented any access to materials used during mediation."

Allowing the Court to advise the jury that a confidential mediation occurred will avoid unfair prejudice to either side. Furthermore, HLC's invocation of the "sword and shield" doctrine is inapt here, because *Judge Glenn*, at the behest of multiple parties besides just ResCap, issued a *court order* preventing HLC, or any other party, from accessing materials about mediation. This is not a classic "sword and shield" case like *Bradfield v. Mid-Continent Cas. Co.* (cited in Def.'s Mot. in Limine No. 2 at 10), where one party sought to introduce into evidence confidential materials from a mediation session while at the same time barring any discovery into those same materials. 15 F. Supp. 3d 1253, 1257 (M.D. Fla. 2014). Here, not only did a court block access to confidential materials, but ResCap is not attempting to introduce confidential mediation materials into evidence.

As for the other argument asserted in HLC's Mot. in Limine No. 2 – that ResCap should be barred from introducing evidence about its subjective assessments of the value of settled claims, especially with respect to pre-mediation statements made by some of ResCap's witnesses – the Court disagrees. As ResCap notes, HLC had (and will have) ample opportunity to cross-examine witnesses like Mr. Kruger about the time gap between their pre-mediation statements and the final Settlements, and about other weaknesses or contradictions in their testimony. Allowing the jury to hear this probative testimony would be neither unfair nor highly prejudicial. *Cf. St. Paul Fire & Marine Ins. Co. v. Nat'l Chiropractic Mut. Ins. Co.*, 496 N.W. 2d 411, 415 (Minn. Ct. App. 1993) ("In determining what claims were settled [for allocation purposes], it is appropriate to consider the circumstances and events leading up to the settlement.").

For the foregoing reasons, ResCap's Motion in Limine No. 4 is GRANTED.

**ResCap's Motion in Limine No. 5**

**A.  ResCap's Argument**

ResCap argues that the Court should exclude "previously-undisclosed evidence or argument regarding, (a) specific 'missing' documents or information that purportedly would clear underwriting breaches identified by [ResCap's] experts, and (b) any specific evidence, not offered in [HLC's] expert reports, that supports any argument they intend to offer at trial that any loan files are not authentic as of the time of the loan's sale to RFC." (Pl.'s Mot. in Limine No. 5 [Doc. No. 4023] at 1.)

In late 2017 and early 2018, ResCap served authenticity requests regarding loan files, and "[HLC] agreed to the authenticity of the at-issue loan files *at the time of [ResCap's] document production*, but reserved their right to challenge authenticity of the at-issue loan files as of the time of the loans' origination." (*Id.* at 3 (emphasis in original).) This reservation of rights concerned ResCap. Accordingly, ResCap wants the Court to prevent HLC from "confronting an underwriting expert at trial with previously-unidentified evidence that purports to clear a breach," or even from "speculat[ing] at trial about 'hypothetical' missing documents that might cure a breach." (*Id.* at 4.) Further, any "reference at trial to previously-undisclosed evidence supporting the argument that a loan file was not authentic as of the time of the loan's sale would be prejudicial and at best cause undue delay and waste time." (*Id.* at 5.)

At the August 23 hearing, ResCap's counsel argued, even more broadly, that, based on the Court's summary judgment holding on sole discretion, "all evidence . . . which goes to proving breaches of the originators' rep[resentations] and warranties

18

through re-underwriting is now irrelevant and can be excluded under [Fed. R. Evid.] 401 because it is no longer needed to prove a matter that's at issue at trial." (Hearing Tr. at 180; *accord* Summ. J. Order at 72 ("Based on the plain language of the contract the parties willingly signed, the Court concludes that the Client Guide grants [ResCap] sole discretion to determine Events of Default in all circumstances.").)

## B. HLC's Response

HLC argues the Court should deny this "extraordinary" and "unprecedented" attempt to "limit [HLC's] cross-examination of [ResCap's] re-underwriting experts." (Def.'s Opp. to Pl.'s Mot. in Limine No. 5 [Doc. No. 4218] at 1.) In particular, HLC wants to cross-examine ResCap's experts Richard Payne and Steven Butler about weaknesses in their re-underwriting process (*i.e.*, to prove that fewer HLC loans were in breach than ResCap claims), and to put on evidence from its expert Robert Broeksmit showing that "present-day files of loans often are not exact replicas of files as they existed at origination." (*Id*. at 2.) Indeed, HLC will not offer "idle speculation," but rather "admissible evidence, including fully disclosed expert opinion testimony and documentary evidence concerning RFC's historical practices, from which a jury may draw appropriate inferences." (*Id*. at 4.) Moreover, as a general matter, HLC "should be permitted to use any document that it properly has disclosed under the Rules to cross-examine [ResCap's] re-underwriting experts." (*Id*. at 6.)

With respect to ResCap's broader argument, about the lack of relevance of re-underwriting evidence, HLC's counsel noted that it is discussing "what may or may not remain in the case with respect to re-underwriting." (Hearing Tr. at 187.)

## C. Ruling

This Court's Summary Judgment ruling on sole discretion renders irrelevant under Fed. R. Evid. 401 any re-underwriting evidence disputing RFC's exercise of its sole discretion to identify HLC's breaches of its representations and warranties called for in the Client Guide.

Therefore, ResCap's Motion in Limine No. 5 is DENIED AS MOOT.

## ResCap's Motion in Limine No. 6

### A. ResCap's Argument

ResCap asks the Court to preclude evidence and argument regarding "civil judgments and warrants issued nearly 30 years ago against ResCap's AVM [Automated Valuation Model] expert, Dr. John Kilpatrick." (Pl.'s Mot. in Limine No. 6 [Doc. No. 4024] at 1.) Kilpatrick had 14 civil judgments entered against him between 1985 and 1992, as well as two different arrest warrants in 1990, yet failed to disclose this information under penalty of perjury on multiple state appraisal licensing applications between 1998 and 2013. (Def.'s Opp. to Pl.'s Mot. in Limine No. 6 [Doc. No. 4229] at 2.) Dr. Kilpatrick was not convicted of any crime with respect to these non-disclosures. (Pl.'s Mot. in Limine No. 6 at 1.) ResCap accordingly argues that, under Fed. R. Evid. 608(b),[6] Dr. Kilpatrick's mistakes are "not probative of truthfulness," and that the acts are "too remote in time" to be relevant today. (*Id.* at 4 (citing Fed. R. Evid. 608(b) Advisory Committee's Note).)

---

[6] Fed. R. Evid. 608(b) allows a party to introduce extrinsic evidence attacking a witness's credibility on cross-examination, if the evidence relates to specific instances that are "probative of the [witness's] character for untruthfulness."

In addition, ResCap notes that, though Judge Cote of the Southern District of New York allowed cross-examination of Dr. Kilpatrick on this issue during her bench trial in *Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*, she later called "the entire line of cross-examination unhelpful in determining" what weight and credibility to give Kilpatrick's expert testimony. 104 F. Supp. 3d 441, 516 (S.D.N.Y. 2015). Finally, ResCap argues that this evidence would "needlessly prejudice the jury's view of Dr. Kilpatrick's credibility and qualifications." (Pl.'s Mot. in Limine No. 6 at 6.)

However, as with ResCap's Mot. in Limine No. 5, ResCap's counsel broadly argued at the August 23 hearing that the Court's Summary judgment holding on sole discretion should "render moot" "any challenge to the individual at-issue appraisals" discussed in Dr. Kilpatrick's testimony, and any of HLC's challenges to that testimony. (Hearing Tr. at 78.)

### B. HLC's Response

In response, HLC first notes that two federal courts have allowed parties to introduce evidence concerning Dr. Kilpatrick's failure to disclose information on state licensing applications. *See Nomura*, *supra*; *Mass Mut. Life Ins. Co. v. DLJ Mortg. Cap., Inc.*, No. 11-cv-30047 (D. Mass). HLC also cites instances where appellate courts have upheld lower courts decisions "allowing examination concerning false statements made on applications or in receiving licenses" under Fed. R. Evid. 608(b). *See, e.g.*, *United States v. Carlin*, 698 F.2d 1133, 1137 (11th Cir. 1983). Further, HLC argues that because this evidence "bearing on the witness's credibility is directly related to his qualifications as an [appraisal] expert," Dr. Kilpatrick's application answers on his appraiser licensing applications are particularly probative here. (Def.'s Opp. at 7.)

## C. Ruling

As with the Court's ruling on ResCap's Motion in Limine No. 5, the Court reiterates that, to the extent the re-underwriting evidence at issue in Dr. Kilpatrick's testimony goes to ResCap's sole discretion to determine breaches of the Client Guide, this proposed cross-examination is irrelevant under Fed. R. Evid. 401 in light of this Court's Summary Judgment ruling.

For the foregoing reasons, ResCap's Mot. in Limine No. 6 is DENIED AS MOOT.

## ResCap's Motion in Limine No. 7

### A. ResCap's Argument

In this motion, ResCap asks the Court to preclude HLC from "introducing evidence or argument," particularly during the cross-examination of ResCap's expert Dr. Karl Snow, "concerning the feasibility of re-underwriting every loan in its case, in lieu of utilizing statistical sampling." (Pl.'s Mot. in Limine No. 7 [Doc. No. 4028] at 1.) ResCap argues that this evidence is irrelevant, particularly in light of the Court's Summary Judgment ruling deeming statistical sampling permissible. (*See* Summ. J. Order at 57-69 (holding that ResCap may use statistical sampling to prove its claims and need not re-underwrite each at-issue loan); *accord Daubert* Order at 6-14 (finding all of Dr. Snow's proposed expert testimony with respect to statistical sampling permissible).) ResCap also asserts that a "feasibility" line of questioning would be "misleading, confusing, and prejudicial insofar as it ignores the feasibility of re-underwriting the tens of thousands of loans that were at issue during the discovery and re-underwriting phases." (Pl.'s Mot. in Limine No. 7 at 1.)

Moreover, ResCap contends that a "mini-trial" on "feasibility" would be "wasteful and result in undue delay because it would require extensive rebuttal evidence concerning the procedural history of [ResCap's] multiple litigations and the time and expense devoted to loan re-underwriting." (*Id*.)

## B. HLC's Response

HLC argues that the Court should deny this motion "because it improperly would bar [HLC] from questioning [ResCap's] sampling expert [Dr. Snow] about his chosen methodology of proof and analysis." (Def.'s Opp. to Pl.'s Mot. in Limine No. 7 [Doc. No. 4234] at 1.) In particular, HLC wants to cross-examine Dr. Snow "about the fact that [ResCap] could have achieved higher precision by re-underwriting HLC additional loans and that it would have been feasible to do so." (*Id*.) For instance, HLC contends that Dr. Snow's sample has a margin of error at plus/minus 15 percentage points, and that the 1,980 HLC loans at issue in this case could have been re-underwritten for less than $800,000, "a small fraction of the $60 million [ResCap] seeks to recover here." (*Id*. at 4, 6.)

HLC argues that this line of questioning is relevant because it goes to the weight the jury should give Dr. Snow's sampling methodology, as well as to "whether RFC can carry its burden to prove damages to a degree of reasonable certainty." (*Id*. at 2.) Indeed, HLC contends that "it would be fundamentally unfair to permit Dr. Snow to opine that sampling is justified due to the 'time and expense of reviewing additional loans,' but then bar [HLC] from inquiring about the feasibility of reviewing the 1,980 HLC loans at issue." (*Id*. at 7.) Further, that "[ResCap] chose to file other cases against other originators is wholly irrelevant here." (*Id*. at 2.) HLC maintains that, if ResCap wants to explain to the jury why

sampling made the most sense here, as a practical matter, it "can put Dr. Snow's decisions in 'context' on redirect examination." (*Id.*)

## C. Ruling

As the Court stated at the August 23 hearing, HLC may "vigorously cross-examine Dr. Snow at trial about his methodology," including the "efficacy of sampling and the way in which he engaged in it." (Hearing Tr. at 175-177.) For instance, HLC may point out at trial that Dr. Snow's sample had a sizeable margin of error.

However, attacking Dr. Snow's testimony on the ground that it would have been economically feasible for him to re-underwrite the 1,980 HLC loans at issue would be misleading, confusing, and unfairly prejudicial under Fed. R. Evid. 403. Further, "feasibility" evidence would entail unnecessary diversions into how discovery was conducted in this litigation. Accordingly, this specific line of cross examination will not be permitted.

For the foregoing reasons, ResCap's Motion in Limine No. 7 is GRANTED.

## ResCap's Motion in Limine No. 8

## A. ResCap's Argument

Because HLC sought to elicit "general and anecdotal" evidence about RFC's broker channel affiliate, Homecomings Financial, during depositions, ResCap seeks an order excluding evidence about "Homecomings and the loans that it originated and transferred to RFC and its other affiliates," as irrelevant, unfairly prejudicial, and confusing. (Pl.'s Mot. in Limine No. 8 [Doc. No. 4029] at 1, 4.) This evidence would be irrelevant to breach, causation, or allocation, ResCap argues, because of the Court's Summary Judgment rulings

on sole discretion and but-for causation. (*See* Summ. J. Order at 69-74 (holding that ResCap maintains sole discretion over determining breaches of the Client Guide); *id*. at 95 (holding that ResCap need not prove that HLC's "breaches were the *sole* cause of [ResCap's] liabilities and losses," but only that HLC's breaches "were a *contributing* cause of those liabilities and losses").) Further, because ResCap's damages analysis relies on "the breach rate of a Global Sample of all loans in the Trusts," damages calculations "do not turn on the breach rate of Homecomings' loans in the Trusts." (Pl.'s Mot. in Limine No. 8 at 3.)

ResCap contends that this evidence would "create an undue risk that the jury will improperly blame RFC or Homecomings for [HLC's] breaches, essentially importing something akin to a 'contributory negligence' concept into a [contractual indemnification] case." (*Id*. at 5.)

At the August 23 hearing, ResCap's counsel clarified that it is not seeking to completely bar any mention of Homecomings at trial. ResCap accepts that Homecomings will be discussed "by virtue of [its] appearance in [Dr. Snow's] global sample." (Hearing Tr. at 107.) Still, ResCap's counsel emphasized that HLC should not be allowed to go "much further than that" during Dr. Snow's cross-examination for the reasons stated. (*Id*.)

### B. HLC's Response

HLC responds that "Homecomings was, by far, the largest contributor of loans covered by RFC's Settlement," and that "[ResCap's] own experts [*i.e*., Dr. Snow] show that Homecomings' loans caused billions of dollars in losses to the trusts and had higher-than-average breach rates." (Def.'s Opp. to Pl.'s Mot. in Limine No. 8 [Doc. No. 4246] at 1.) Although this evidence might not be relevant to causation or breach after the Court's

summary judgment ruling, HLC contends that it is relevant to the allocation of damages under the Court-approved "Allocated Breaching Loss Approach." (*See* Summ. J. Order at 176 (holding that the Allocated Breaching Loss Approach provided the only "reliable, non-speculative basis for calculating damages in this case").) That is, because ResCap's global sample of at-issue loans (from which Dr. Snow derives an overall breach rate) includes 89 Homecomings loans, HLC should be able to question Dr. Snow about whether he underestimated Homecomings' breach rate. (Def.'s Opp. at 3.) After all, "to the extent [ResCap's] experts failed to uncover Homecomings' breaches, the damages against HLC potentially are inflated." (*Id*. at 8.)

Further, HLC wants to introduce evidence about Homecomings' weak quality-control practices in the event that ResCap attacks HLC's quality-control practices. (*Id*. at 8-9.) Finally, HLC contends that evidence related to Homecomings is not prejudicial because HLC is not trying to use Homecomings to show "guilt by association," but rather to highlight that "RFC's own affiliate was a chief contributor to the very settlement for which [ResCap] seeks indemnity." (*Id*. at 9-10.)

At the August 23 hearing, HLC's counsel expressed concern about the breadth of this motion, as HLC contends that ResCap does not specify exactly what Homecomings evidence it seeks to exclude. (Hearing Tr. at 99-100.)

### C. Ruling

As a threshold matter, the Court agrees that, in light of the Court's Summary Judgment holdings on breach and but-for causation, evidence about Homecomings is irrelevant under Fed. R. Evid. 401 with respect to the questions of breach and causation.

26

Still, because Dr. Snow uses data about Homecomings' breach rate in his damages analysis, the Court rules that HLC may inquire into those calculations as a means of rebutting Dr. Snow's conclusions. Because of the risk of unfair prejudice to ResCap, however, the Court will require HLC to make a proffer of any Homecomings-related evidence or line of questioning before presenting that evidence or argument to the jury.

For the foregoing reasons, ResCap's Motion in Limine No. 8 is DEFERRED.

## ResCap's Motion in Limine No. 9

### A. ResCap's Argument

In this motion, ResCap argues that the Court should preclude HLC from referencing two consent orders related to RFC's (and the company it sold its servicing business to, Ocwen Financial's) role in the so-called "robosigning" scandal of 2010-2011, or "any other Non-Bankruptcy Lawsuits and Settlements." (Pl.'s Mot. in Limine No. 9 [Doc. No. 4031] at 1.) These prior proceedings are irrelevant to this case, ResCap contends, and "referencing them at trial would be unfairly prejudicial to [ResCap]." (*Id*. at 2.) For one, there is no evidence that these consent orders or lawsuits have a connection to the Settlements for which ResCap seeks indemnity, and HLC never sought to obtain evidence demonstrating such a connection during discovery. (*Id*. at 3.)

The only possible connection to this case, ResCap avers, is that Dr. Snow relied upon certain data from the "Vision website" in researching his damages calculations. (Id. at 3 n.3.) ("Vision" is an investor reporting portal maintained by RFC, and later Ocwen.) However, ResCap notes that "Ocwen's servicing practices have nothing to do with this data." (*Id*.) Moreover, ResCap argues that introducing evidence related to these other

lawsuits would unfairly bias the jury, entail wading through inadmissible hearsay found in the complaints, and trigger a "trial within a trial." (*Id*. at 4-6.) "Indeed, given that the Consent Orders alone raise complicated (but irrelevant) issues concerning foreclosure practices . . . [ResCap] would likely need to call at least three additional witnesses at trial just to address them." (*Id*. at 6.)

### B. HLC's Response

HLC first argues that the robosigning consent orders are directly relevant to how a reasonable party would have valued servicing claims at the time of settlement. (Def.'s Opp. to Pl.'s Mot. in Limine No. 9 [Doc. No. 4262] at 3 (citing *UnitedHealth Grp*., 870 F.3d at 861-66).) Further, HLC argues the fact that it did not conduct substantial discovery into these lawsuits is of no moment. "[T]hat RFC and its affiliates were aware of and settled government allegations relating to servicing claims, among others, is directly relevant to what RFC knew at the time of the bankruptcy settlements and how a 'reasonable party' would have valued similar claims." (*Id*. at 4.) HLC similarly argues that ResCap's expert Mr. Hawthrorne opines on the value (or non-value) of servicing lawsuits, and thus makes these prior proceedings relevant material for cross-examination. (*Id*. at 4-5.)

In response to ResCap's hearsay contention, HLC notes that it would only admit complaints from the prior proceedings and consent orders to show their effect on a listener (*i.e.*, a reasonable person trying to place a value on the settled claims), not for the truth of the matter asserted. (*Id*. at 10.) Finally, HLC contends that ResCap "opened the door" to Ocwen evidence when Dr. Snow relied on Vision data to calculate damages. "If RFC's

expert relies on Ocwen data to calculate damages, HLC is entitled to examine that expert about the reliability *vel non* of that data." (*Id.* at 11.)

## C.  Ruling

The Court finds that, under Fed. R. Evid. 403, the risk of ResCap being unfairly prejudiced by the introduce of these two consent orders and any other non-bankruptcy lawsuits and settlements substantially outweighs the probative value of such evidence. Dr. Snow's use of the Vision website did not "open the door" to any and all evidence related to Ocwen, particularly other lawsuits and consent decrees that have nothing to do with the contractual indemnity claim here. HLC may cross-examine Dr. Snow as to the reliability of the data upon which he relies. But it may not open a door that might result in a mini-trial on separate, unrelated lawsuits. Moreover, "[c]omplaints, and the charges and allegations they contain, are hearsay under the Federal Rules of Evidence." *Insignia Sys. Inc.*, 2011 WL 382964, at *2.

For the foregoing reasons, ResCap's Motion in Limine No. 9 is GRANTED.

## ResCap's Motion in Limine No. 10

### A.  ResCap's Argument

In this perfunctory motion, ResCap argues that "arguments and evidence inconsistent with the Court's rulings [on Summary Judgment and *Daubert*] should not be presented to the jury." (Pl.'s Mot. in Limine No. 10 [Doc. No. 4032] at 3.)

### B.  HLC's Response

HLC agrees that it "goes without saying that neither party will seek to re-litigate before the jury the Court's holding on legal issues." (Def.'s Opp. to Pl.'s Mot. in Limine

No. 10 [Doc. No. 4277] at 3.) However, it contends, ResCap's "generalized request to bar evidence and argument, regardless of relevance, that is inconsistent with future decisions is premature and overbroad." (*Id.*)

### C. Ruling

Because the Court has already issued its Summary Judgment and *Daubert* Orders, and because the Court agrees with HLC that "it goes without saying that neither party will seek to re-litigate before the jury the Court's holding on legal issues," ResCap's Motion in Limine No. 10 is DENIED AS MOOT.

## II. HLC'S MOTIONS IN LIMINE

### <u>HLC's Motion in Limine No. 1</u>

### A. HLC's Argument

HLC makes two different arguments in this motion. *First*, HLC argues that ResCap "should be precluded from arguing or introducing evidence that the bankruptcy court's findings support the reasonableness or good faith of the settlements." (Def.'s Mot. in Limine No. 1 [Doc. No. 3962] at 1.) It is black-letter law, HLC contends, that a "court's prior judgment or ruling is inadmissible hearsay if it is offered to prove the truth of the matter asserted." *UnitedHealth Grp.*, 870 F.3d at 864. Although a judicial ruling is not hearsay if offered to prove its operative legal effect, HLC believes that ResCap intends to introduce Judge Glenn's Confirmation Order and the Findings of Fact to prove that the Settlements were reasonable and reached in good faith, especially through the testimony of its reasonableness expert, Mr. Hawthorne. (Def.'s Mot. in Limine No. 1 at 4-5.)

Moreover, HLC argues that it would be "fundamentally unfair" to introduce Judge Glenn's Findings of Fact to the jury. (*Id.* at 5.) Not only did HLC not have a chance to cross-examine Judge Glenn, HLC argues, but "juries are likely to give disproportionate weight to judicial findings because of the imprimatur that has been stamped upon them by the judicial system." *Herrick v. Garvey*, 298 F.3d 1184, 1192 (10th Cir. 2002). Finally, because Judge Glenn used a different, federal bankruptcy, standard in assessing the reasonableness of the Settlements than that required by Minnesota law, HLC contends that introducing his Findings of Fact could confuse the jury. (Def.'s Mot. in Limine No. 1 at 5-6.)

*Second*, HLC argues that the Court should preclude ResCap "from arguing or introducing evidence that the Bankruptcy Court approved the Settlements." (*Id.* at 7.) Because HLC does not challenge the finality of the Settlements, or that they have an operative legal effect, this evidence is not relevant, it contends. (*Id.*) Further, because a jury would give "exaggerated weight" to a federal judge's approval of a Settlement, the Court should exclude it as unduly prejudicial. (*Id.* at 8.)

### B. ResCap's Response

In response, ResCap clarifies that it is "not seeking to introduce Judge Glenn's decisions as evidence of the strength or merits of the underlying claims, or that they were settled for a reasonable amount." (Pl.'s Opp. to Def.'s Mot. in Limine No. 1 [Doc. No. 4192] at 1.) However, it does plan to introduce the Findings of Facts and the Settlement Approval "(1) to demonstrate the good faith of the Settlements; (2) to establish the terms of

the Settlements; and (3) to rebut HLC's collateral attacks based on the bankruptcy process and the parties' purported incentives." (*Id*. at 1-2.)

As to good faith, ResCap notes that "the fact that negotiations were supervised by a court and an independent mediator" is permissible for a factfinder to consider under Minnesota's objective *Miller-Shugart* inquiry. (*Id*. at 3 (citing, *inter alia*, *Zurich Reins. (UK) Ltd. v. Can. Pac. Ltd.*, 613 N.W.2d 760, 762-64 (Minn. Ct. App. 2000) (lengthy negotiations and mediation process constituted evidence of absence of bad faith in settlement)).)

Moreover, ResCap argues that it is introducing the Bankruptcy Court's Findings of Fact, not for the truth of the matter asserted therein, but "to establish the terms of the settlements and that Judge Glenn's oversight and approval were important parts of the good faith process by which the parties in RFC's bankruptcy entered into the Settlements." (*Id*. at 5.) In addition, ResCap notes that, unlike the plaintiff insurer in *UnitedHealth Group*, ResCap is not introducing Judge Glenn's Findings of Fact to demonstrate the strength or weakness of the claims settled. (*Id*. at 7.) Rather, to defend its reasonableness argument, ResCap will rely on the independent analysis conducted by its expert Mr. Hawthorne. (*Id*.)

Furthermore, because HLC planned to attack the "incentives" Judge Glenn had to approve the Settlements through its (now excluded) expert Professor Triantis (*see Daubert* Order at 60), ResCap wanted to use the Bankruptcy Court's Findings of Fact "to show the jury that the Settlements were subject to a good faith process," and that Judge Glenn did not simply "rubber stamp" the parties' findings. (Pl.'s Opp. at 9.) Introduction of this evidence, ResCap argues, would not be unfairly prejudicial. It is "common sense," ResCap contends,

that judicial oversight is an important indicia of good faith, not to mention an appropriate fact to consider under Minnesota's objective *Miller-Shugart* inquiry. (*Id*. at 10.) "HLC should not be allowed to conceal from the jury that two federal bankruptcy judges were involved in overseeing the process by which the Settlements were reached." (*Id*.)

At the August 23 hearing, in response to the Court's questioning about how ResCap would treat Judge Glenn's involvement in this case if Professor Triantis and Professor David Skeel were not offering testimony about the Bankruptcy Court's incentives, ResCap's counsel clarified that it did not intend to introduce the Bankruptcy Court's Findings of Fact for anything other than their operative legal effect. (Hearing Tr. at 32-34.) Counsel then added that ResCap did not intend to introduce the "discrete" "Findings of Fact that establish good faith or reasonableness." (*Id*.) However, ResCap's counsel also argued that it nonetheless wanted to show the jury "the fact of approval by the [Bankruptcy] Court" and "the fact of court oversight" as "objective indicia of good faith," especially through the testimony of Mr. Hawthorne. (*Id*. at 34.) "The fact that [these events] occurred," ResCap's counsel noted, is "different than the actual findings themselves." (*Id*.)

## C. Ruling

To resolve this issue, the Court will permit Mr. Hawthorne (and/or others) to testify as to the amount of the Allowed Claims found by Judge Glenn in his Bankruptcy Order. Judge Glenn's findings in the amount of the Allowed Claims is not hearsay because it is being introduced for its operative legal effect. Indeed, the Settlements would not have had legally binding effect without Judge Glenn's Findings of Fact and subsequent approval. *See American Prairie Constr. Co. v. Hoich*, 594 F.3d 1015, 1024 (8th Cir. 2010) ("It is a

33

recognized principle of bankruptcy law that a bankruptcy court is required to approve any compromise or settlement proposed in the course of a Chapter 11 reorganization before such compromise or settlement proposed can be deemed effective.").

In addition, the fact that the Settlement occurred under the auspices of two federal judges, and the fact that the Bankruptcy Court approved the Settlements, are objective indicia of good faith under Minnesota law, and are therefore appropriate for the jury to consider by way of Mr. Hawthorne's testimony. That HLC does not dispute the finality of the Settlements does not render Judge Glenn's approval irrelevant under Fed. R. Evid. 401, nor will HLC be unfairly prejudiced by the jury merely learning that the Bankruptcy Court approved the Settlements. HLC will still have a full and fair opportunity to call into question the reasonableness of the Settlements, be it through cross-examination of Mr. Hawthorne or otherwise.

For the foregoing reasons, HLC's Motion in Limine No. 1 is GRANTED IN PART and DENIED IN PART.

## HLC's Motion in Limine No. 2

### A. HLC's Argument

In this motion, HLC *first* argues that ResCap should be precluded from arguing or introducing evidence about its subjective evaluations of settled claims, particularly "testimony that its counsel and officers primarily were concerned with the value of repurchase claims, as opposed to fraud claims," during mediation. (Def.'s Mot. in Limine No. 2 [Doc. No. 3968] at 7.) HLC argues that, because ResCap invoked the "shield" of privilege to prevent any witnesses from testifying to HLC about what happened at

mediation, ResCap should not be able to use "subjective evaluations" of the value of "fraud versus repurchase claims" now as a "sword" against HLC. (*Id*. at 6-7.) HLC avers that "[f]undamental fairness demands that [ResCap] be precluded from selectively introducing evidence on a subject on which it blocked discovery." (*Id*. at 8.)

*Second*, HLC argues that ResCap "also should be precluded from arguing or introducing evidence about the settling parties' pre-mediation statements relating to the value of claims." (*Id*.) HLC is particularly concerned about statements made by former RFC officers Tammy Hamzehpour and Lewis Kruger, in which both witnesses alleged that fraud claims were not an important part of pre-petition negotiations. (*Id*. at 3.) HLC notes that ResCap's expert Mr. Hawthorne relied on these statements when opining that repurchase claims were the "primary driver" of the final settlement. (*Id*. at 9.) "Because [HLC] was denied discovery into mediation communications, it cannot effectively test [ResCap's] assertions that pre-mediation statements accurately reflect the values parties later ascribed to claims at mediation." (*Id*. at 8.)

*Third*, and most broadly, HLC asserts that it would be unduly prejudicial to allow ResCap to tell the jury that the Settlements were reached in a mediation. "It would be unfair and highly prejudicial for [ResCap] to attempt to buttress the bona fides of its settlements by enshrining them in a mediation that has been completely off limits to [HLC]." (*Id*. at 11.)

## B. ResCap's Response

In response, ResCap *first* argues that the "sword and shield" metaphor is inapposite because Judge Glenn, not ResCap, maintained the confidentiality of mediation. Indeed, multiple parties relied on the confidentiality of mediation; ResCap could not unilaterally

waive this condition even if it wanted to. (Pl.'s Opp. to Def.'s Mot. in Limine No. 2 [Doc. No. 4196] at 4-5.) Further, HLC had ample opportunity to question ResCap's witnesses and experts about their "subjective evaluations of settled claims." During depositions, ResCap avers, it only invoked privilege to protect confidential mediation communications or to stop HLC from eliciting improper views about ResCap's current litigation against it. (*Id*. at 6-7.) Moreover, under *UnitedHealth Group*, "to prove allocation, parties can present testimony from attorneys involved in the underlying lawsuits." 870 F.3d at 863.

*Second*, ResCap argues that HLC also had ample opportunity to depose the aforementioned fact and expert witnesses about their pre-mediation statements and whether their positions had changed since before they began mediation. (Pl.'s Opp. at 8.) There is therefore no merit, ResCap contends, to HLC's argument that it is unable to rebut ResCap's witnesses' testimony. Furthermore, pre-mediation statements are also admissible for allocation purposes under *UnitedHealth Group*, as the decision "makes clear that the proceedings leading up to the Settlement are relevant, including the views of counsel, expert testimony, hearing transcripts, and the underlying evidence in the action." (*Id*. at 9 (citing 870 F.3d at 863).)

*Finally*, ResCap argues that there is no basis to exclude all references to mediation. At the least, "the fact that negotiations were supervised by an independent mediator [*i.e*., a sitting federal bankruptcy judge] is relevant to determining good faith." (*Id*. at 11.)

## C. Ruling

For the reasons stated in the Court's discussion of ResCap's Motion in Limine No. 4, *see supra* at 13-17, HLC's Motion in Limine No. 2 is DENIED.

## HLC's Motion in Limine No. 3

### A. HLC's Argument

As noted above, *see supra* at 6, this motion is related to ResCap's Motion in Limine No. 1. In this motion, HLC makes two arguments. *First*, HLC argues that the Court should "preclude [ResCap] from arguing or introducing evidence that RFC's bankruptcy creditors have not been 'made whole' for their alleged injuries." (Def.'s Mot. in Limine No. 3 [Doc. No. 3979] at 1.) As a legal matter, HLC contends that ResCap "is suing in its capacity as the assignee of RFC's rights," and therefore "may seek recovery only for injuries that RFC itself suffered [*i.e.*, the Allowed Claims], not for injuries allegedly suffered by RFC's bankruptcy creditors." (*Id*. at 3.) HLC contends, therefore, that it would be irrelevant and confusing to suggest to the jury that RFC's creditors are the injured party in this case. It would also prejudice HLC by "inviting the jury to award damages based on sympathy for those creditors, even though their purported injuries are irrelevant to any damages analysis here." (*Id*. at 5.)

*Second*, HLC contends that ResCap "should be barred from arguing or introducing evidence that 'RFC's bankruptcy creditors' will be the 'beneficiaries' of this action or from otherwise misleadingly identifying the owners or composition of the Liquidating Trust." (*Id*. at 1.) At the time of plan confirmation, HLC argues, "only 33% of the units of the Liquidating Trust were held by creditors of the RFC debtor group [*e.g.*, the trust and monoline creditors]." (*Id*. at 6-7.) Further, because most units are purportedly tradeable, "the vast majority of units in the Liquidating Trust now are held by hedge funds and other third-party investors who were never RFC's creditors." (*Id*. at 7 (citing Max Frumes, *The Last*

*Mortgage Crisis Bet Will Soon Be Over: Which Major Hedge Funds and Banks Will Come Out Ahead*, Forbes (May 29, 2015)).) It would therefore be "highly misleading, if not false, for RFC to argue or introduce evidence that the beneficiaries of a recovery in this case will be 'RFC's bankruptcy creditors.'" (*Id.*)

*Finally*, to the extent the Court allows ResCap to describe the Liquidating Trust, HLC argues that counsel "should be required to state accurately that the beneficiaries are the Liquidating Trust's unitholders, only a fraction of units were assigned to RFC's bankruptcy creditors at plan confirmation, and those units have been traded for more than four years." (*Id.* at 2.)

## B. ResCap's Response

ResCap offers three arguments in response. *First*, ResCap argues that "the jury is entitled to know that the Trust is the true plaintiff, and barring [ResCap] from explaining this to the jury would be extremely prejudicial to [it]." (Pl.'s Opp. to Def.'s Mot. in Limine No. 1 [Doc. No. 4201] at 1-2.) Indeed, as the Court's September 6, 2018 Order confirms, the Liquidating Trust is the true plaintiff in this action, not RFC. (*See* Doc. No. 4350.) Further, in prior decisions, both this Court and Judge Glenn have stated that "the Plan provides for *RFC's creditors* to share in any recoveries obtained by the Trust and for the Trust to distribute such funds." *In re RFC and ResCap Liquidating Trust Litig.*, 2017 WL 3129748, at *5 (D. Minn. July 21, 2017) (emphasis added); *accord In re Residential Cap., LLC*, 515 B.R. 52, 67 (S.D.N.Y. 2014) ("Any recovery in this action will go to RFC's creditors under the terms of the confirmed Plan.").

*Second*, ResCap argues that it is accurate to describe itself as advocating on behalf of "RFC's creditors" because "the recovery here will flow to many of the same creditors that settled their claims against RFC in the bankruptcy, including all of the RMBS Trusts." (Pl.'s Opp. at 2.) As a factual matter, ResCap contends that the RMBS Trusts "received approximately 75% of the Units allocated to RFC's creditors, and they are expressly prohibited from trading Units." (*Id.* at 5 (citing Jennifer J. Barrett Decl. [Doc. No. 4033] Ex. 1, RMBS Claims Trust Agreement § 7.01).) Furthermore, ResCap argues that the Trusts, Monolines, and other RFC unsecured creditors "have not been made whole" because they have "only received about 12 cents on the dollar." (*Id.* at 6-7, 7 n.3.) Although HLC's expert Professor Triantis asserts that RFC's creditors have actually been "made whole," ResCap argues that, in fact, RFC's creditors "are still owed billions of dollars." (*Id.* at 8-9.) Indeed, ResCap notes that RFC's creditors were "given Trust Units for the very purpose of retaining the right to recover on those liabilities." (*Id.* at 9.) And, in any event, ResCap avers, the Court rejected Professor Triantis's "made whole" argument on Summary Judgment, and later excluded all of his expert testimony in its *Daubert* Order. *See supra* at 5.

*Third*, ResCap argues that "the fact that there were secondary purchasers of units issued by the Trust, or the identity of such purchasers, is irrelevant to the adjudication of [ResCap's] Claims against HLC." (Pl.'s Opp. at 2.) Even if some Trust units have been sold, ResCap asserts, "current Trust unitholders are no different under the law than RFC's creditors as they existed at the time of its bankruptcy." (*Id.* at 5.) "That some of RFC's creditors chose to sell their units, rather than wait years to recover on their claims, does not change that [ResCap] is pursuing this action for the benefit of RFC's creditors." (*Id.* at 6.)

If the Court does allow evidence concerning unitholders, though, ResCap asks that such evidence be presented to the jury through a Court-issued statement or jury instruction.

## C. Ruling

For the reasons stated in the Court's discussion of ResCap's Motion in Limine No. 1, *see supra* at 6, HLC's Motion in Limine No. 3 is DENIED. However, ResCap must describe "RFC's creditors" in the manner used by the Court in its neutral statement to the jury about the beneficiaries of this lawsuit.

## HLC's Motion in Limine No. 4

### A. HLC's Argument

In this short motion, HLC argues that it would be irrelevant and unfairly prejudicial to allow ResCap to "argue or introduce evidence" that RMBS Trust investors were "pension plans of ordinary people" who "lost a lot of money." (Def.'s Mot. in Limine No. 4 [Doc. No. 3984] at 1.)

### B. ResCap's Response

ResCap does not oppose this motion, so long as: "(1) HLC is similarly precluded from presenting to the jury argument or evidence that some Liquidating Trust units have traded and that current Liquidating Trust unitholders are not RFC's creditors; and (2) ResCap is not precluded from referring to the RMBS Trusts as claimants in the bankruptcy or Liquidating Trust unitholders." (Pl.'s Opp. to Def.'s Mot. in Limine No. 4 [Doc. No. 4216] at 1-2.)

### C. Ruling

In light of the Court's rulings on ResCap's Motion in Limine No. 1 and HLC's Motion in Limine No. 3, the Court agrees with ResCap's compromise proposal. ResCap is precluded from introducing any evidence or argument about the identity of the investors in the at-issue RMBS Trusts. HLC is precluded from presenting to the jury argument or evidence that some Liquidating Trust units have traded and that current Liquidating Trust unitholders are not RFC's creditors. ResCap is not precluded from referring to the RMBS Trusts as claimants in the bankruptcy or Liquidating Trust unitholders, so long as it complies with this Court's rulings in ResCap Motion in Limine No. 1 and HLC Motion in Limine No. 3.

For the foregoing reasons, HLC's Motion in Limine No. 4 is DENIED AS MOOT.

## HLC's Motion in Limine No. 5

### A. HLC's Argument

HLC sets forth two slightly different arguments in this motion. *First*, HLC argues that the Court should "preclude any argument or evidence that HLC's sale of loans contributed to the 2007-08 financial crisis, caused job losses, or otherwise harmed the United States or Minnesota economy." (Def.'s Mot. in Limine No. 5 [Doc. No. 3989] at 2.) Such evidence would be irrelevant and prejudicial, HLC contends, while citing several decisions in which analogous "financial crisis" evidence has been excluded. *See, e.g.*, *Aristocrat Leisure Ltd. v. Deutches Bank Trust Co. Americas*, No. 04-cv-10014 (PKL), 2009 WL 3111766, at *7 (S.D.N.Y. Sept. 28, 2009) (granting in limine motion prohibiting plaintiff from "linking the Bondholders, or hedge funds in general, to the financial crisis").

*Second*, HLC argues that the Court should "preclude RFC from arguing or introducing evidence that [HLC] drove RFC out of business or contributed to its demise." (Def.'s Mot. in Limine No. 4 at 4.) HLC first contends that this evidence is speculative and unsupported, as ResCap "has adduced no evidence that it went out of business because of alleged breaches by [HLC] (whose loans made up an infinitesimal fraction of loans purchased by RFC)," especially when compared to RFC's in-house originator Homecomings. (*Id*. at 5.) HLC also argues that this evidence is irrelevant because ResCap is not seeking damages for lost profits from going out of business. (*Id*. at 5-6.) Finally, this evidence would be prejudicial because RFC was a local Minneapolis company. (*Id*. at 6.)

However, in a footnote, HLC clarified that it "does not seek to preclude RFC from presenting evidence that [HLC's] alleged breaches purportedly caused RFC to incur losses or liabilities in connection with bankruptcy settlements." (*Id*. at 6 n.1.) Rather, it "instead seeks to prevent [ResCap] from arguing or introducing evidence that [HLC's] alleged breaches caused or contributed to RFC going out of business in the first place." (*Id*.)

## B. ResCap's Response

As to the *first argument*, ResCap agrees to not connect HLC to the global financial crisis, job losses, or the economic downturn, so long as HLC is "similarly precluded from offering evidence or testimony that (i) RFC or Homecomings contributed to the global financial crisis or disruption in the residential mortgage market; or (ii) that the financial crisis was the cause of the loss suffered on HLC's loans." (Pl.'s Opp. to Def.'s Mot. in Limine No.5 [Doc. No. 4225] at 1-2; *see also* Pl.'s Mot. in Limine No. 8 (seeking to exclude prejudicial evidence about Homecomings).)

42

As to the *second argument*, ResCap argues that, to provide relevant background to the jury, it must be able to explain "how the practices of HLC and other originators contributed to the suits that forced RFC into bankruptcy." (Pl.'s Opp. at 4.) Because ResCap must "tie [HLC's] breaches to losses and liabilities incurred in bankruptcy" in order to prove but-for causation, ResCap must accordingly "present evidence that the types of practices [HLC] engaged in contributed to RFC's bankruptcy, and that [HLC's] breaches caused RFC to incur specific losses and liabilities." (*Id*. at 4-5.) Presenting this kind of causation evidence would not prejudice HLC because "both parties are sophisticated entities and the claims arise from contracts that were negotiated at arms-length." (*Id*. at 5.) Further, "given the passage of time," RFC's Minnesota roots will not bias the jury in favor of them. (*Id*.) To the extent some jurors may be unfairly biased in favor of RFC, ResCap avers, those biases "can be explored in *voir dire*." (*Id*.)

However, at the August 23 hearing, ResCap's counsel clarified that "all [it] intend[s] to do is say that, in the face of these lawsuits [from the Trusts and Monoline Insurers], [RFC] sought the protection of the Bankruptcy Court." (Hearing Tr. at 170.) "It's just part of the story of how we got here," ResCap's counsel continued, "we're not going to bang the table and say they put a local company out of business. It's just that we filed for bankruptcy in the face of these significant and kind of company-ending suits." (*Id*.)

### C.  Ruling

*First Argument*: The Court finds ResCap's proposed compromise reasonable. Accordingly, ResCap is precluded from advancing any argument or evidence that HLC's sale of loans contributed to the 2007-08 financial crisis, caused job losses, or otherwise

harmed the United States or Minnesota economy. HLC is similarly precluded from offering evidence or testimony that (i) RFC or Homecomings contributed to the global financial crisis or disruption in the residential mortgage market; or (ii) that the financial crisis was the cause of the loss suffered on HLC's loans.

*Second Argument*: The Court agrees with HLC that it would be unfairly prejudicial for ResCap to argue or present evidence that HLC "drove RFC out of business" or "contributed to RFC's demise," and it will not be allowed to do so. Rather, in line with HLC's footnote and ResCap's concession at the August 23 hearing, in its description of the case the Court will read the following statement to the jury: "Between 2008 and 2012, the residential mortgaged-backed securities Trusts and the Monoline Insurers sued RFC over mortgage loans it had sold them. In the face of these lawsuits, RFC and its affiliates went into bankruptcy."

For the foregoing reasons, HLC's Motion in Limine No. 5 is GRANTED IN PART and DENIED AS MOOT IN PART.

## HLC's Motion in Limine No. 6

### A. HLC's Argument

HLC asks the Court to preclude "RFC from using, for purposes of allocation, information obtained through 'employer subpoenas' that RFC issued in 2015 and later, years after the bankruptcy settlement," as that attempt to use new information would "directly contravene" *UnitedHealth Group*. (Def.'s Mot. in Limine No. 6 [Doc. No. 3995] at 1.) In particular, HLC focuses on the fact that both this Court and the Eighth Circuit in *UnitedHealthGroup* rejected an affidavit (the so-called "Slottje affidavit") because it was

"produced months after" the parties executed the at-issue settlement agreement and hence the affidavit could "not inform how a reasonable person would have allocated the settlement at the time it was reached." *UnitedHealth Grp.*, 870 F.3d at 864. Even worse, HLC argues, the data collected by subpoena here was not even in RFC's possession at the time of the Bankruptcy Settlements. Rather, ResCap's counsel acquired this information from third parties for its expert witnesses' re-underwriting analyses "years after the at-issue settlements." (Def.'s Mot. in Limine No. 6 at 3.)

However, HLC notes that, in this motion, it only seeks to preclude use of this evidence for allocation purposes. "Should [ResCap] seek to introduce such information for another purpose, [HLC] reserves the right to object at trial and, if necessary, seek an appropriate limiting instruction." (*Id.*)

**B. ResCap's Response**

ResCap responds by arguing that "the information at issue – borrowers' employment status and income at or around the time of origination of their loans – existed at the time of the Bankruptcy Settlements and is directly relevant to how a reasonable party would have valued and allocated claims arising out of such borrowers' loans." (Pl.'s Opp. to Def.'s Mot. in Limine No. 6 [Doc. No. 4230] at 1-2.) ResCap points out that, under *UnitedHealth Group*, a factfinder can consider information from "events and circumstances happening after settlement," so long as they "inform how a reasonable party would have valued and allocated the claims at the time of settlement." 870 F.3d at 864. Unlike the Slottje affidavit, "the employer records subject to [HLC's] motion existed at the time of the bankruptcy settlements." (Pl.'s Opp. at 3.) Indeed, ResCap notes that, in its *Daubert* Order, the Court

adopted ResCap's reading of *UnitedHealth Group*. In deeming Dr. Kilpatrick's expert testimony admissible, the Court held that Dr. Kilpatrick's "use of post-settlement [tax assessment values] as a proxy input in the [Greenfield Automated Valuation Model] does not violate the requirement that 'we look to what the parties knew at the time of settlement'" because this information "was available to the parties" at the time of settlement, even if the assessments were actually conducted after the settlement. (*Daubert* Order at 24 (quoting *UnitedHealth Grp.*, 870 F.3d at 863).)

Moreover, ResCap argues that there is no "line of demarcation" between using the at-issue evidence to "demonstrate that individual loans breached [HLC's] R&Ws under the Guide," versus using it for allocation. (Pl.'s Opp. at 4-5.) For instance, in determining a global Breach Rate for damages purposes, Dr. Snow "relies upon the findings of [ResCap's] re-underwriting experts' opinions regarding loan-level losses that were based upon information obtained through the employer subpoenas." (*Id.* at 5.) If this use of the subpoenas is appropriate for damages, it should be equally appropriate for allocation under *UnitedHealth Group*.

### C. Ruling

The Court effectively decided this motion in its *Daubert* ruling. That is, because the employment status and income information "was available to the parties" at the time of the Bankruptcy Settlements, the jury may properly consider the expert analyses based off that information. (*Daubert* Order at 24 (quoting *UnitedHealth Grp.*, 870 F.3d at 863).)

HLC's Motion in Limine No. 6 is accordingly DENIED.

### HLC's Motion in Limine No. 7

### A. HLC's Argument

In this motion, HLC asks the Court to exclude two pieces of evidence related to appraisers used by HLC on at-issue loans. *First*, HLC seeks to preclude ResCap from "arguing or introducing into evidence that certain appraisers who appraised properties underlying at-issue loans signed a petition concerning pressure on appraisers in the real estate industry." (Def.'s Mot. in Limine No. 7 [Doc. No. 3998] at 1.) HLC notes that, in Dr. Kilpatrick's expert report for ResCap, Dr. Kilpatrick referenced a "petition concerning pressure on appraisers in the real estate industry," and observed that "six at-issue appraisals 'were completed by appraisers who signed the petition.'" (*Id.* at 2 (quoting Def.'s *Daubert* Br. [Doc. No. 3194] Ex. 1, 66-67 (Corrected Kilpatrick Rpt., May 19, 2017)).) HLC first contends that the petition is inadmissible hearsay because ResCap offers it to "prove that certain appraisers were influenced by industry pressure when completing at-issue appraisals." (*Id.* at 3; *see also Wolfe v. McNeil-PPC, Inc.*, No. 07-cv-348, 2012 WL 38694, at *5 (E.D. Pa. Jan. 9, 2012) (excluding citizen's petition).) Further, HLC argues that the petition is irrelevant because it does not particularly reference HLC or any at-issue loan. In fact, the petition does not say that appraisers succumbed to pressure, but rather "were concerned" about improper pressure in the industry. (Def.'s Mot. in Limine No. 7 at 3.) Finally, HLC contends that the petition would "invite jurors to improperly speculate that [HLC] somehow pressured appraisers." (*Id.* at 4.)

*Second*, HLC seeks to preclude ResCap from arguing or introducing into evidence that certain appraisers who appraised properties underlying at-issue loans "were subject to disciplinary action unrelated to their appraisals on at-issue loans." (*Id.* at 1, 4.) Such

references to disciplinary action would be irrelevant and unduly prejudicial, and would constitute improper character evidence. *See* Fed. R. Evid. 404(a) (prohibiting the admission of "evidence of a person's character . . . to prove that on a particular occasion the person acted in accordance with the character"). The references to disciplinary action would be particularly prejudicial here, as ResCap "does not even try to suggest a 'nexus' between any appraiser's work on at-issue loans and any disciplinary action, which occurred after completion of the at-issue appraisals in all but one case." (Def.'s Mot. in Limine No. 7 at 5.)

### B. ResCap's Response

With respect to the *first argument*, ResCap notes that "six of the nineteen appraisals (or roughly 32%) found materially inflated by Dr. Kilpatrick were performed by appraisers who signed the Petition." (Pl.'s Opp. to Def.'s Mot. in Limine No. 7 [Doc. No. 4242] at 3.) As such, ResCap contends that the petition provides circumstantial evidence to establish the "falsity of HLC's appraisal- and LTV-related representations." (*Id*. at 4-5.) Further, the petition is not hearsay, ResCap contends, because it would be offered to show that a "third of the appraisers that performed appraisals on the HLC sample properties *believed* during the relevant period that they were under pervasive pressure to inflate values." (*Id*. at 7 (emphasis in original); s*ee also United States v. Kohan*, 806 F.2d 18, 22 (2d Cir. 1986) (noting the exception to hearsay for "circumstantial evidence" showing a relevant actor's "state of mind").) Finally, ResCap cites two federal courts that have specifically found this petition admissible and reliable. *See Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*, 104 F. Supp. 3d 441, 517 (S.D.N.Y. 2015); *Alig v. Quicken Loans Inc*., No. 5:12-cv-114 (JPB), 2017 WL 5054287, at *7 (N.D. W. Va. July 11, 2017).

With respect to the *second argument*, ResCap notes that "four of nineteen, or more than 20% of the appraisers for the at-issue HLC inflated appraisals, were subject to disciplinary action against their appraisal licenses." (Pl.'s Opp. at 4.) This evidence is relevant because "the disciplinary records relate to the *same* appraisers who performed the at-issue appraisals and violations of the *same* binding standard, [the Uniform Standards of Professional Appraisal Practice ("USPAP")], applicable to the at-issue appraisals." (*Id*. at 9 (emphasis in original).)

Further, ResCap argues that this evidence is not improper character evidence because it is being introduced to "show the appraisers' opportunity and knowledge in preparing a deficient appraisal, notwithstanding submitting a certification to the contrary." (*Id*. at 10; *see also* Fed. R. Evid. 404(b)(2) (character evidence permissible if used to prove, *inter alia*, "opportunity" or "knowledge").) The disciplinary records would not be unfairly prejudicial either, as they are "based entirely on the publicly available records from appraisal board determinations after a full investigation or adjudication." (Pl.'s Opp. at 10.)

## C. Ruling

In the event ResCap attempts to introduce the petition into evidence (through a proper witness and with the appropriate foundation, of course), the Court rules that the petition is relevant and admissible "state of mind" evidence for the six appraisers who allegedly issued materially inflated appraisals to HLC. The Court will, however, give an appropriate limiting instruction should the evidence be proffered.

However, the Court agrees with HLC that the probative value of the disciplinary records outweighs the risk of unfair prejudice. Not only did the purported disciplinary

actions arise after almost all of the at-issue appraisals, the evidence will not draw a connection between the disciplinary actions and the loans at issue here. ResCap is therefore precluded from arguing or introducing into evidence that certain appraisers who appraised properties underlying at-issue loans were subject to disciplinary action unrelated to their appraisals on at-issue loans.

For the foregoing reasons, HLC's Motion in Limine No. 7 is GRANTED IN PART and DENIED IN PART.

## HLC's Motion in Limine No. 8

### A. HLC's Argument

In this brief motion, HLC argues that the Court should "preclude [ResCap's] experts from providing testimony that vouches for the opinions of other expert witnesses or merely parrots other experts' opinions." (Def.'s Mot. in Limine No. 8 [Doc. No. 4003] at 1.) HLC points to two examples: (1) Mr. Hawthorne's opinion that the work done by RFC's re-underwriting experts (*e.g.*, Steve Butler) was "reasonable and appropriate" and "consistent with how experts in other cases conducted re-underwriting analyses." (*Id.*) (2) Dr. Kilpatrick's statement that another expert's appraisal work was "credible." (*Id.*)[7] HLC cites to some authority for the proposition that an "expert may not . . . simply vouch for another expert's findings without having conducted an analysis of those findings." *See, e.g.*, *Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 809 (N.D. Ill. 2005) (excluding the testimony of an expert where they "vouch[ed] for [the other expert's] labor-added

_____

[7] HLC also contends that Judge Richard Solum engaged in impermissible vouching. (*Id.*) However, Judge Solum's testimony was excluded in the Court's *Daubert* Order. (*See Daubert* Order at 15-19.)

methodology, when he has absolutely no knowledge of whether [their methodology] is valid and reliable").

## B. ResCap's Response

With respect to Mr. Hawthorne, ResCap argues that, "while Mr. Hawthorne considered Mr. Butler's methodology in evaluating whether Mr. Butler's findings supported his reasonableness opinions (as he also did in evaluating the work done by the re-underwriting experts that issued reports in [RFC's] underlying bankruptcy), Mr. Hawthorne never vouches for, or parrots, the opinions of Mr. Butler or any of [ResCap's] other re-underwriting experts." (Pl.'s Opp. to Def.'s Mot. in Limine No. 8 [Doc. No. 4244] at 3-4; *cf. Daubert* Order at 29, 39 (rejecting HLC's argument that Mr. Hawthorne "provid[ed] opinions beyond the scope of his expertise," and later noting that Mr. Hawthorne's expert opinions are "based on his experience in trying and settling RMBS cases").)

HLC similarly argues that Mr. Kilpatrick does not engage in impermissible vouching because, in the appraisal world, "credible" is a term of art and means "adherence to appraisal standards." (Pl.'s Opp. at 4; *see also Nomura*, 2015 WL 353929, at *6 (S.D.N.Y. Jan. 28, 2015) (noting this "objective" definition of credibility).) Thus, "viewed in its proper context," "Dr. Kilpatrick (like Mr. Hawthorne) is describing his evaluation of Mr. Albert's methodology and findings in connection with his consideration of whether Mr. Albert's USPAP findings support the appraisal opinions he, Dr. Kilpatrick, separately reached using the GAVM." (Pl.'s Opp. at 4.)

Finally, ResCap cites to a case from this District holding that "it is common in technical fields for an expert to base an opinion in part on what a different expert believes

on the basis of expert knowledge not possessed by the first expert," and argues that that is the case here. *Am. Med. Sys. v. Laser Peripherals, LLC*, 712 F. Supp. 2d 885, 896-97 (D. Minn. 2010) (citing *Dura Auto. Sys. of Indiana, Inc. v. CTS Corp.*, 285 F.3d 609, 613 (7th Cir. 2002)).

### C. Ruling

To the extent any impermissible vouching or parroting occurs during trial, the Court will address it then. HLC's Motion in Limine No. 9 is therefore DENIED WITHOUT PREJUDICE.

## HLC's Motion in Limine No. 9

### A. HLC's Argument

This motion is related to HLC's opposition to RFC's Motion in Limine No. 1 and HLC's own Motion in Limine No. 1. In this motion, HLC asks the court to preclude ResCap from "arguing or introducing evidence that the Bankruptcy Court's Findings of Fact show that the parties to the RMBS Trust settlement agreed to allocate $96 million in Allowed Claims to non-indemnifiable servicing claims." (Def.'s Mot. in Limine No. 9 [Doc. No. 4010] at 1.) Again, HLC argues that the supplemental terms sheet of the Settlement show that the parties and Judge Glenn (allegedly) mistakenly allocated only 1% of the Allowed Claims to (non-indemnifiable) servicing claims in the Trusts' bankruptcy Settlement when they should have allocated something more like 14%. In defense of its motion, HLC first argues that the hearsay rule bars ResCap from "introducing the Bankruptcy Court's Factual Findings for their truth to prove the terms of the parties' May 2013 Trust settlement." (Def.'s Mot. in Limine No. 9 at 4.)

HLC also argues that introducing Judge Glenn's Finding of Fact related to the allocation of servicing claims would "create unfair prejudice and confuse the jury." (*Id*. at 1.) For one, HLC argues that "juries are likely to give disproportionate weight to such findings of fact because of the imprimatur that has been stamped upon them by the judicial systems," without appreciating that a bankruptcy court's findings may result from a "default by an opposing party, stipulations between the parties, or a strategic choice by a party to not contest certain factual claims." *Herrick*, 298 F.3d at 1192. Here, HLC contends that Judge Glenn made an "imprecise statement" in his Findings of Fact, which is "squarely contradicted by the parties' Supplemental Terms Sheet." (Def.'s Mot. in Limine No. 9 at 6.)

## B. ResCap's Response

ResCap primarily retorts that "Judge Glenn was not just describing the Settlements – he was effectuating them." (Pl.'s Opp. to Def.'s Mot. in Limine No. 9 [Doc. No. 4251] at 2.) To ResCap, then, Judge Glenn's Finding of Fact, in which he states what portion of the Trusts' Settlement is allocated to servicing claims, is being introduced for its operative legal effect. *See, e.g.*, *UnitedHealth Grp*., 47 F. Supp. 3d at 885. And, as noted in the Court's discussion of HLC's Motion in Limine No. 1, *see supra* at 33, at the August 23 hearing ResCap's counsel clarified that ResCap is not relying on Judge Glenn's "discrete" Findings of Fact to prove reasonableness or good faith. As such, ResCap asserts, the Finding of Fact reciting the allocation of servicing claims is relevant and not hearsay, so long as it is solely used to show the legal effect of that allocation.

With respect to HLC's prejudice argument, ResCap contends that "it is [HLC] that is attempting to confuse the jury by excluding Judge Glenn's clear and precise finding of what

he was approving when he approved the Settlements." (Pl.'s Opp. at 7.) "While [HLC] can attack the reasonableness of the $96 million servicing settlement amount, the $96 million is what Judge Glenn's Findings of Fact says it was." (*Id*. at 8; *see also* Summ. J. Order at 108 n.39 ("Issues regarding servicing breaches pertain exclusively to the reasonableness of the settlement: Did the parties in settling these claims reasonably identify the value and litigation risk of indemnifiable versus non-indemnifiable claims?").)

Finally, to the extent this evidence relates to allocation, ResCap asserts that, "because the RMBS Settlement approved by Judge Glenn allocated between servicing and non-servicing claims, there is no need to devote trial time to a post-settlement re(allocation)." (Pl.'s Opp. at 10.) Therefore, ResCap avers, *UnitedHealth Group* is not applicable to the question of the proper allocation of the servicing claims here, as that case only applied to situations when "the settlement did not allocate the amount paid among the various claims." (*Id*. at 10 (citing 870 F.3d at 862 (in turn citing *Bor-Son Bldg. Corp. v. Emp'r Com. Union Ins. Co*., 323 N.W. 2d 58, 60 (Minn. 1982).) Here, ResCap notes, the Trust Settlement approved by Judge Glenn already allocated the non-indemnifiable servicing claims.

### C. Ruling

The Court will not rehash its ruling for HLC's Motion in Limine No. 1, detailed above. As the Court stated, both here and in its October 1 Order, Mr. Hawthorne and/or others may testify that Judge Glenn approved an allocation in the RMBS Trust Settlement which allocated $96 million in Allowed Claims to non-indemnifiable servicing claims. That ruling "definitely allocate[d] the amount paid for servicing claims" in the Trust Settlement, and is not hearsay. (*See* Oct. 1, 2018 Court Order [Doc. No. 4497] at 11.)

With respect to HLC's speculation that Judge Glenn made an "imprecise statement" in his Findings of Fact, which is "squarely contradicted by the parties' Supplemental Terms Sheet," the Court will not permit such speculative evidence to go to the jury.

For the foregoing reasons, HLC's Motion in Limine No. 9 is DENIED.

\* \* \* \*

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. ResCap's Motion in Limine No. 1, to exclude certain arguments and evidence regarding the value of Allowed Claims, the Identity of Unit Holders, and the Mechanics of Bankruptcy Plan Distribution [Doc. No. 4015], is **GRANTED**.

2. ResCap's Motion in Limine No. 2, to preclude HLC from offering unproven assertions of RFC's alleged misconduct [Doc. No. 4017], is **GRANTED IN PART** and **DEFERRED IN PART**.

3. ResCap's Motion in Limine No. 3, to exclude evidence of attorney representation [Doc. No. 4019], is **GRANTED IN PART** and **DEFERRED IN PART**.

4. ResCap's Motion in Limine No. 4, to exclude evidence and argument that highlights or disparages the confidentiality of the mediation in RFC's bankruptcy case [Doc. No. 4021], is **GRANTED**.

5. ResCap's Motion in Limine No. 5, to exclude previously undisclosed evidence and argument in opposition to re-underwriting findings [Doc. No. 4023], is **DENIED AS MOOT**.

6. ResCap's Motion in Limine No. 6, to exclude certain evidence and argument concerning ResCap's AVM expert [Doc. No. 4024], is **DENIED AS MOOT**.

7. ResCap's Motion in Limine No. 7, to exclude evidence and argument concerning the feasibility of re-underwriting every at-issue loan [Doc. No. 4028], is **GRANTED**.

8. ResCap's Motion in Limine No. 8, to exclude evidence and argument regarding Homecomings' practices [Doc. No. 4029], is **DEFERRED**.

9. ResCap's Motion in Limine No. 9, to preclude HLC from referencing non-bankruptcy-related proceedings against RFC, Ocwen, or their affiliates [Doc. No. 4031], is **GRANTED**.

10. ResCap's Motion in Limine No. 10, to exclude evidence and argument inconsistent with forthcoming orders concerning the parties' summary judgment and Daubert motions [Doc. No. 4032], is **DENIED AS MOOT**.

11. HLC's Motion in Limine No. 1, to exclude the Bankruptcy Court's findings and approval of the settlements [Doc. No. 3962], is **GRANTED IN PART** and **DENIED IN PART**.

12. HLC's Motion in Limine No. 2, to preclude ResCap from arguing or presenting evidence about its valuation of claims, pre-mediation statements, or the fact of mediation [Doc. No. 3968], is **DENIED**.

13. HLC's Motion in Limine No. 3, to exclude certain arguments and evidence regarding RFC's bankruptcy creditors [Doc. No. 3979], is **DENIED**.

14. HLC's Motion in Limine No. 4, to exclude arguments and evidence regarding identities of investors in the RMBS trusts [Doc. No. 3984], is **DENIED AS MOOT**.

15. HLC's Motion in Limine No. 5, to exclude certain arguments and evidence regarding the financial crisis and RFC's loss of business [Doc. No. 3989], is **GRANTED IN PART** and **DENIED AS MOOT IN PART**.

16. HLC's Motion in Limine No. 6, to preclude ResCap from using information from post-settlement employer subpoenas to allocate the settlements [Doc. No. 3995], is **DENIED**.

17. HLC's Motion in Limine No. 7, to exclude evidence or argument regarding appraiser-specific research [Doc. No. 3998], is **GRANTED IN PART** and **DENIED IN PART**.

18. HLC's Motion in Limine No. 8, to preclude ResCap's experts from improperly vouching for other experts [Doc. No. 4003], is **DENIED WITHOUT PREJUDICE**.

19. HLC's Motion in Limine No. 9, to exclude the Bankruptcy Court's findings regarding the settlements of the Trusts' servicing claims [Doc. No. 4010], is **DENIED**.

Dated:  October 8, 2018                        s/Susan Richard Nelson
                                               SUSAN RICHARD NELSON
                                               United States District Judge