# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| In Re: RFC and RESCAP Liquidating Trust Action<br><br>*This document relates to*:<br><br>ResCap Liquidating Trust v. Home Loan Center, Inc., Case No. 14-cv-1716 (SRN/HB) | Case No. 0:13-cv-3451 (SRN/HB)<br><br>**ORDER RE: ADMISSIBILITY OF CERTAIN EVIDENCE AVAILABLE TO RFC AT THE TIME OF SETTLEMENT** |

SUSAN RICHARD NELSON, United States District Judge

In this Order, the Court addresses the admissibility of five categories of exhibits, all of which constitute evidence available to RFC at the time of the underlying settlements at issue in this indemnification suit. The parties first raised this issue in letters submitted in advance of the October 4 pre-trial hearing. (*See* HLC's Oct. 2, 2018 Letter [Doc. No. 4503] and ResCap's Oct. 3, 2018 Letter [Doc. No. 4508].) The Court then heard extended argument on this topic at the October 4 hearing. (*See* Oct. 4, 2018 Hr'g Tr. [Doc. No. 4539] at 26-57.) The parties subsequently submitted letter briefing in which they clarified the five categories of exhibits for the Court to consider in this Order, and provided further elaboration on the relevant case law. (*See* HLC's Oct. 8, 2018 Letter [Doc. No. 4546] and ResCap's Oct. 9, 2018 Letter [Doc. No. 4557].)

Before delving into the particulars of each category, the Court emphasizes at the outset that the Bankruptcy Settlements differ from the usual *Miller-Shugart* settlement, and this litigation differs from the usual indemnification litigation under Minnesota law. Not only is

this case vastly more complicated than the *Miller-Shugart* case law cited by both parties – with ResCap seeking contractual indemnity for billions of dollars of losses and liabilities arising out of at least four different settlements, all of which relate back to dozens of mortgage originators – but this case is being presented before a jury, where the jury is tasked with, *inter alia*, determining the reasonableness of these settlements. Moreover, the settlements at issue were considered, approved, and found to be reasonable by a federal Bankruptcy Judge in a 134-page order. Neither the parties (nor the Court, in its own research) have pin pointed case law arising out of a jury trial quite analogous to this one, especially under Minnesota law. (*Cf.* Sept. 18, 2018 Order [Doc. No. 4458] at 3 (noting that "Minnesota law treats the reasonableness of pre-trial settlements as an equitable matter to be decided by a court").)

As such, the Court must be more attuned to the "danger[s] of . . . unfair prejudice, confusing the issue, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence," than were this a bench trial or summary judgment hearing. Fed. R. Evid. 403; *accord EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 898 (9th Cir. 1994) (noting that "in a bench trial, the risk that a verdict will be affected unfairly and substantially by the admission of irrelevant evidence is far less than in a jury trial"); *Schultz v. Butcher*, 24 F.3d 626, 632 (4th Cir. 1994) (holding that in civil bench trials "evidence should not be excluded under [Rule] 403 on the ground that it is unfairly prejudicial"). Indeed, in the line of Fifth Circuit cases HLC cites as most similar to this action (*see* HLC's Oct. 8 Letter at 2), the Fifth Circuit expressly noted the trial court's "considerable leeway in deciding what facts are truly relevant to the [allocation] decision," and added that the trial court could limit evidence in an indemnification action to "prevent[] a full-blown retrial of the [underlying] lawsuit." *Am. Int'l*

*Speciality Lines Ins. Co. v. Res-Care Inc*, 529 F.3d 649, 656 (5th Cir. 2008) (citing *Enserch Corp. v. Shand Morahan & Co., Inc.*, 952 F.2d 1485, 1495 (5th Cir. 1992)).

With all of this in mind, the Court overviews general arguments submitted by both parties, and then discusses each of the five categories of exhibits in turn.

I. **General Arguments**

A. **HLC**

HLC makes three general arguments in support of the admissibility of any evidence available to the settling parties at the time of the Bankruptcy Settlements. HLC first argues that, in cases involving allocation of a settlement, "'the entire record' from the underlying case, up 'until the point' the parties executed the settlement, 'is admissible' to prove allocation, because 'that information would have been available to a reasonable person in [the insured's] position at the time of the Settlement." (HLC's Oct. 2 Letter at 2 (quoting *UnitedHealth Grp. Inc. v. Columbia Cas. Co.*, 47 F. Supp. 3d 863, 886 (D. Minn. 2014)) and citing other out-of-circuit case law; *see also id*. at 3-4.)

Moreover, HLC contends, "[t]he record from the underlying litigation, including expert reports from the settling parties, is admissible to determine reasonableness." (*Id*. at 2 (citing *Koch Indus., Inc. v. Aktiengesellschat*, 727 F. Supp. 2d 199, 225 (S.D.N.Y. 2010)).) In particular, HLC points to Judge Glenn's statement that, on the question of reasonableness, HLC and the other defendants "remain free to challenge the merits of the claim subject to the Global Settlement and the defenses available at the time, [as well as] the methodologies and conclusions in the publicly available expert reports offered in support of the Global Settlement." *In re ResCap, LLC*, 536 B.R. 132, 150 (Bankr. S.D.N.Y. 2015).

Finally, HLC broadly contends that this evidence is not hearsay because it is not being asserted for the truth of the matter asserted. Rather, it is being introduced for its effect on the listener, *i.e.*, "what a reasonable person would have concluded based on the information that was there at the time." (Hr'g Tr. at 30.) To that end, HLC provides the Court with a limiting instruction that would "accompany introduction of documents available to the settling parties at the time of the settlements." (HLC's Oct. 8 Letter at 8.)[1]

**B. ResCap**

In response, ResCap makes two general points and one general concession. First, ResCap asserts that HLC wants to introduce documents like the pre-petition complaints and pre-petition expert reports, which contain allegations of fraud against RFC, "with the hope and expectation that the jury will consider them for their truth and thereby be improperly influenced," and that a limiting instruction will not alleviate this prejudice. (ResCap's Oct. 9 Letter at 2.)

Second, ResCap notes that the law HLC cites for the proposition that "the entire record" from the underlying case may be admitted to the fact finder either arose on summary judgment and/or a bench trial (*see, e.g.*, *UnitedHealth*), or was not objected to by either party, or was admitted to the jury with a more direct foundation than that available here. (*Id.*)

---

[1] The proposed limiting instruction reads: "This exhibit includes out-of-court statements. I am going to admit the exhibit for a limited purpose only. It is not admitted or received for the truth of the statements in the exhibit. In other words, you should not consider the exhibit as evidence of whether the statements contained in the document are true or not. It is simply received to show information that was available to the settling parties at the time of the settlements. You must consider how an objectively reasonable person in the shoes of RFC at the time of the settlements would have evaluated the information contained in this document."

4

Finally, ResCap concedes that, to the extent its experts rely on hearsay documents in reaching their conclusions, "HLC might be able to use [those] documents for purposes of cross examination." (*Id.* at 1; *see also id.* at 4 ("Mr. Hawthorne's consideration of [certain] materials in connection with reaching his opinion may make them suitable materials to use in his cross examination.").) However, ResCap adds, that does not "establish a separate basis upon which HLC can introduce into evidence uncorroborated and unfairly prejudicial allegations." (*Id.*)

II. **Complaints and Proofs of Claim Filed Against RFC**

A. **HLC's Argument**

With respect to Proofs of Claim, HLC notes that the parties agree that Proofs of Claim are admissible. (*See* HLC Oct. 8 Letter at 3.) For example, both parties include the MBIA and FGIC Proofs of Claim in their exhibit lists. (*Compare* PX0079 and DX-161 (MBIA) *with* PX0074 and DX-129 (FGIC).)[2]

However, HLC argues that admitting the Proof of Claim is not enough, and that the underlying complaints, most of which are attached to the Proofs of Claim, must be introduced for two reasons: (1) to counter ResCap's allocation case (*e.g.*, whether ResCap's experts acted improperly by not allocating any of the MBIA settlement to non-indemnifiable servicing claims) (HLC's Oct. 2, 2018 Letter at 3), and (2) to provide foundation for HLC's sole cause

---

[2] HLC's most recent priority Exhibit List may be found in Appendix A of HLC's Oct. 9, 2018 Letter [Doc. No. 4566-1]. ResCap's most recent priority Exhibit List may be found in its submission dated Oct. 2, 2018 [Doc. No. 4501]. Both Exhibit Lists note the witness(es) through which the parties intend to introduce each exhibit.

5

defense (HLC's Oct. 8, 2018 letter at 4). HLC does not argue that it intends to introduce the pre-petition complaints or Proofs of Claim on the question of reasonableness.

### B. ResCap's Response

As noted above, the parties agree about the admissibility of Proofs of Claim filed against RFC.

However, with respect to the pre-petition complaints (many of which are attached to the Proofs of Claim), ResCap makes two points. First, ResCap argues that the complaints are not relevant on the question of allocation because the allegations of fraud contained in the complaints are no longer "relevant to allocating as between indemnifiable and non-indemnifiable losses and liabilities," and it would therefore be unfairly prejudicial to introduce such allegations to the jury. (ResCap's Oct. 9 Letter at 3 (citing Motion in Limine Order [Doc. No. 4551] at 9-10).)[3] Second, ResCap contends that, even if the allegations in MBIA and FGIC's complaints could lay the foundation for HLC's sole-cause defense, the allegations are still "unproven and hearsay." (*Id*. (citing *Shows v. Owens*, 400 F.2d 603, 609-10 (8th Cir. 1968)).)

Still, ResCap offers a concession. To the extent the jury needs to view the pre-petition complaints to understand what the underlying allegations against RFC were, ResCap would not object to offering the Annexes to the Proofs of Claim, which "describ[e] generally the claims and their bases," so long as the Court gives a proper limiting instruction that the materials are not to be considered for the truth of the matter asserted. (*See id*. at 4; *see also*

---

[3] ResCap does not address HLC's argument that allegations in the MBIA complaint still relate to the allocation of servicing claims in the MBIA settlement.

Hr'g Tr. at 40-41.) For instance, the MBIA Proof of Claim on both parties' exhibit list contains an eight-page Annex essentially summarizing MBIA's 54-page complaint against RFC. (*See* DX-161.)

## C. Ruling

*Proofs of Claim*: In light of the parties' agreement, the Proofs of Claim against RFC will be admissible.[4] The Court will give a limiting instruction that these documents may only be considered for their legal effect and/or for their effect on the listener, at the parties' request.

*Annexes to Proofs of Claim*: In light of ResCap's concession, the Annexes to the Proofs of Claim will be admissible as non-prejudicial evidence of what claims RFC faced at the time of the Bankruptcy Settlements. An appropriate limiting instruction will be given.

However, it is not clear to the Court what constitutes an "Annex to a Proof of Claim" versus what constitutes an "underlying complaint." For instance, although the FGIC Proof of Claim includes a document that HLC describes as a "pre-petition complaint" (*see* HLC's Oct. 8 Letter at 3 (citing DX-164)), upon closer inspection that document appears to be something more akin to an Annex. (*Compare* DX-164 (FGIC's Proof of Claim) *with* DX-129 (what appears to be FGIC's actual complaint against RFC).) The parties should meet and confer to determine what attachments to the Proofs of Claim constitute Annexes that both parties agree could be shown to the jury, and propose to the Court an appropriate limiting instruction.

---

[4] In a separate Order, the Court addresses the admissibility of MBIA's Proofs of Claim against GMAC Mortgage and Residential Capital, LLC. (*See* HLC's Oct. 8 Letter at 4-6.)

*Pre-Petition Complaints*: The Court agrees with ResCap that the pre-petition complaints are essentially irrelevant on the question of allocation. (*See* Motion in Limine Order at 9-10.) Unlike the *UnitedHealth* case, for instance, the jury does not need to look to the "allegations in the complaints in the settled cases to determine what claims had been settled and whether those claims fell within the contractual scope of indemnity," because the Court has already ruled, as a matter of law, that the fraud allegations in the complaints are indemnifiable. (HLC's Oct. 2 Letter at 4.) The only possible way this evidence could relate to allocation, then, is through the allocation of non-indemnifiable servicing claims in the MBIA settlement. Indeed, that is the only relevance HLC asserts in its briefing. (*See id.* at 3.)[5]

However, the probative value of the complaint for that purpose is far outweighed by the substantial risk of the jury reading the lengthy fraud allegations against RFC and exhibiting unfair prejudice against ResCap here. Moreover, the Annex attached to MBIA's Proof of Claim notes that MBIA asserted servicing claims against RFC, which HLC may draw on in rebutting ResCap's allocation experts. (*See* DX-161 at 4.) Furthermore, as ResCap concedes, HLC may use these documents during its cross-examination of ResCap's experts. It may not, however, publish them to the jury as exhibits, at least for the allocation purposes described in HLC's October 2 and October 8 letters.[6]

---

[5] As the Court noted in its Motion in Limine Order, the Bankruptcy Court already definitively allocated the non-indemnifiable servicing claims in the Trust Settlement. (*See* Motion in Limine Order at 54-55.)

[6] Again, in its most recent letter to the Court, HLC did not argue that it intended to use pre-petition complaints to prove that the Bankruptcy Settlements were objectively unreasonable. Even if it did make that argument, though, the Court's Rule 403 analysis applies to reasonableness with equal force.

To the extent pre-petition complaints could serve as "foundation for RFC-only liability," the Court will address that in its forthcoming Order on HLC's sole cause defense.

### III. Rule 26 Expert Disclosures from the Pre-Petition Litigation Against RFC

#### A. HLC's Argument

HLC wishes to introduce as evidence six Rule 26 expert disclosure documents from the MBIA pre-petition litigation. (*See* DX-137 (Mason Rep. in Support of MBIA); DX-138 (Aronoff Rep. in Support of MBIA); DX-139 (Cipone Rep. in Support of MBIA); DX-140 (Gutterman Rep. in Support of MBIA); DX-141 (James Rep. in Support of RFC); DX-142 (Gelman Rep. in Support of MBIA).) HLC intends to introduce these documents during its cross-examinations of Mr. Hawthorne, Mr. Kruger, and Mr. Lipps (and, with respect to DX-141, Dr. Snow.) (*See* HLC Ex. List at 7.) These documents are not signed under penalty of perjury, and the witnesses were not deposed in this case. However, HLC contends that these two facts are irrelevant because the reports are not being admitted for the truth of the matter asserted, and are independently admissible as part of the record available to the settling parties at the time of settlement. (*See* HLC's Oct. 8 Letter at 6.) Moreover, HLC notes that ResCap offers "declarations and unsworn expert reports from certain bankruptcy experts in this case," too, which ResCap intends to introduce through the testimony of Mr. Lipps. (*Id.* (citing PX0042 (Pfeiffer Dec. in Support of Plan Confirmation); PX0044 (Sillman Dec. in Support of RMBS Trust Settlement); and PX0091 (Sillman Direct Examination in Support of RMBS Settlement).) Finally, as a fallback argument, HLC argues that, at the least, it is "plainly entitled to cross examine [ResCap's] witnesses regarding the reports." (*Id.* at n.3.)

For instance, Mr. Hawthorne "relies on four of the six at-issue reports" in his Expert Report. (*Id.*)

## B. ResCap's Response

ResCap first asserts that these six "unsworn expert reports, by themselves, have no probative value and are inadmissible hearsay." (ResCap's Oct. 9 Letter at 5 (citing *Balfour Beatty Rail, Inc. v. Kansas City S. Ry. Co.*, 173 F. Supp. 3d 363, 413-14 (N.D. Tex. 2016)).) Moreover, even if the reports could be introduced for non-hearsay purposes, the fact that "these experts never testified under oath, were never cross-examined on their reports, [were] never exposed to *Daubert* or *in limine* challenges," and were never deposed in this case renders this evidence unduly prejudicial to ResCap. (*Id.*) Indeed, to ResCap's mind, "HLC's request to introduce these documents is a backdoor attempt to offer improper expert reports and legal arguments that HLC failed to develop in more than four years of litigation." (ResCap's Oct. 3 Letter at 2.)

ResCap also distinguishes the three exhibits HLC cites from its exhibit list by noting that all three exhibits "are sworn statements of expert witnesses that were deposed in *this* litigation, but who are not available for trial." (ResCap's Oct. 9 Letter at 5 n.5 (citing Fed. R. Evid. 804(b)(1)).)

## C. Ruling

The Court finds that the probative value of these unsworn expert reports, written by experts with no connection to this trial, is substantially outweighed by the reports' prejudicial effect on ResCap and by the risk of juror confusion. *See Nichols v. Am. Nat. Ins. Co.*, 154 F.3d 875, 884 (8th Cir. 1998) ("Because '[e]xpert evidence can be both powerful

and quite misleading,' a trial court must take special care to weigh the risk of unfair prejudice against the probative value of the evidence under Fed. R. Evid. 403.") (quoting *Daubert v. Merrell Dow. Pharm., Inc.*, 509 U.S. 579, 595 (1993)). In evaluating the objective reasonableness of the Bankruptcy Settlements, and other issues in this trial, the jury is not tasked with re-litigating the underlying case brought by MBIA or digging through the entire record of that case, much less through the unsworn reports at issue here. *See UnitedHealth Grp.*, 47 F. Supp. 3d at 883 (noting that in a complex allocation case, the jury "need[s] the assistance of the expert testimony of an attorney who participated in litigating the underlying cases or an attorney who is hired to give expert testimony . . . Without expert testimony to guide the jury [as to allocation] . . . the jury would simply be left to speculate, and juries may not return verdicts based on speculation.").

Although Judge Glenn contemplated that the trier of fact may consider "the methodologies and conclusions in the publicly available expert reports *offered in support of the Global Settlement*" in determining reasonableness, that does not mean that HLC is entitled to show the jury the entire corpus of expert evidence from the underlying MBIA litigation. *In re ResCap, LLC*, 536 B.R. at 150 (emphasis added). As such, though HLC may use these documents in its cross-examination of Mssrs. Hawthorne, Kruger, Lipps, and Snow, subject to any further objections by ResCap, it may not publish these unsworn expert reports to the jury.

As a final matter, the Court notes that HLC's invocation of ResCap's three exhibits is only partially on point. Most importantly, HLC does not appear to object to the two exhibits relating to Mr. Sillman, PX0044 and PX0091. (*See* ResCap's Ex. List at 3, 6.) HLC

did, however, object to Mr. Pfeiffer's Declaration in Support of the Bankruptcy Plan on hearsay and relevance grounds. (*Id.* at 3.) Although this report is one of the "publicly available expert reports offered in support of the Global Settlement" that Judge Glenn referenced, and its author was deposed in this case, the Court notes that this report, standing alone, nonetheless constitutes hearsay. Absent an explanation that a declaration like this is not being introduced for the truth of the matter asserted, and does not raise Rule 403 concerns, ResCap, like HLC, cannot publish this evidence to the jury.[7]

## IV. Legal Briefs from the Pre-Petition and Bankruptcy Litigation

### A. HLC's Argument

HLC also intends to offer into evidence various briefs and advocacy documents available to RFC at the time of the settlements. (*See* DX-0160 (Internal Memo Regarding MBIA's Claims Against Ally Financial); DX-0168 (Debtors' Response to Third-Party Submissions); DX-0179 (Reply Br. Regarding MBIA's Claims Against Ally Financial); DX-0197 (RFC's Submission to Bankruptcy Examiner); DX-0198 (MBIA's Submission to the Bankruptcy Examiner); DX-0200 (Creditor Committee's Submission to the Examiner).) According to its most recent Exhibit List, HLC intends to introduce these briefs and advocacy documents during HLC's cross-examination of Mssrs. Hawthorne, Kruger, and Lipps. HLC generally asserts that this evidence is "admissible as part of the record available

---

[7] Although ResCap invokes Fed. R. Evid. 804, it is not clear to the Court that Mr. Pfeiffer is unavailable under 804(a) or that a sworn declaration constitutes "former testimony" under 804(b)(1) (defining "former testimony" as "testimony that was given as a witness at a trial, hearing, or lawful deposition," and is being offered against a party who had a similar motive and opportunity to challenge the testimony).

12

to the settling parties at the time of settlement," and will be used for "non-hearsay purposes." (HLC's Oct. 8 Letter at 6-7.)

HLC also argues that ResCap is hypocritical in objecting to this evidence because it "seeks to introduce numerous 'unsworn' pleadings and other documents from the bankruptcy record to prove reasonableness and allocation," during the testimony of Mr. Lipps, too. (*Id*. at 7 (citing PX0065 (Debtors' Motion for an Order Authorizing the Debtors to Enter a Plan Support Agreement); PX0069 (Trusts' Statement Regarding Debtors' Motion); PX0070 (Investors' Statement in Support of Settlement and Response to Settlement Objections).)

HLC also notes that ResCap "intends to introduce repurchase requests from monoline insurers and investors that never were filed with the bankruptcy court but were available to the settling parties at the time of settlement," during the testimony of Mr. Ruckdaschel. (*Id*. (citing PX0179 (FGIC repurchase request to RFC); PX0180 (same); PX0181 (same); PX0185 (Deutsche Bank repurchase request to RFC).)[8]

**B. ResCap's Response**

In response, ResCap contends that "briefs and advocacy pieces are inadmissible for the entirely separate reason that they would constitute inadmissible lay opinion testimony under Fed. R. Evid. 701 from witnesses that are not available for cross examination." (ResCap's Oct. 9 Letter at 3 n.3.) Besides that, ResCap only generally notes that this kind of

---

[8] At the October 4 hearing, though, HLC's counsel expressed an openness to withdrawing HLC's hearsay objections to such repurchase correspondence. (Hr'g Tr. at 94-95.)

13

evidence is hearsay, or is unduly prejudicial even if introduced for a non-hearsay purpose. ResCap did not respond to HLC's charge that it is also seeking to introduce hearsay legal documents from the bankruptcy litigation.

With respect to the repurchase requests from monoline insurers that it intends to introduce into evidence (*see, e.g.*, PX-0179, PX-0180, PX-0181, PX-0185), though, ResCap's counsel argued at the October 4 hearing that although it is seeking to admit these documents to show "what RFC was thinking at the time when it entered into settlements," (Hr'g Tr. at 86), unlike HLC's submissions, the repurchase requests it intends to introduce "are all related to witnesses who are going to be here testifying live that can be cross-examined about the documents." (*Id.* at 99.) For example, PX-0181 is a May 28, 2009 letter from FGIC to RFC that is addressed directly to Mr. Ruckdaschel. (However, none of the other exhibits appear to mention Mr. Ruckdaschel.)

### C. Ruling

With respect to legal briefs – regardless of the offering party – the Court finds that, apart from the obvious hearsay concerns, the unfair prejudice and confusion of offering a third party's legal advocacy substantially outweighs the probative force of those documents. As with the expert reports described above, this kind of evidence is not necessary to determine allocation or reasonableness, and risks introducing backdoor opinion testimony to the jury from an attorney that has no connection to this lawsuit, and that neither party has had a chance to cross-examine.

However, to the extent any of the legal advocacy offered by either party connects more closely to a testifying witness (*e.g.*, the witness participated in writing the brief or

14

motion), and can be introduced to the jury as an exhibit without the prejudice and hearsay concerns detailed here (*e.g.*, the motion does not contain legal advocacy), the Court will consider such arguments on a document-by-document basis. And, of course, to the extent any of the expert witnesses relied on these documents in crafting their expert reports, they may be cross examined about those documents.

With respect to the repurchase requests, the Court agrees with HLC in principle that ResCap should not be permitted to introduce a hearsay document for non-hearsay purposes if HLC is not allowed to do the same with the same or similar document. However, the short, rote repurchase correspondence seems to raise fewer prejudice concerns than the briefs, expert reports, and pre-petition complaints HLC seeks to admit.

Still, the Court will defer ruling on the admissibility of any repurchase correspondence, and advises the parties to continue meeting and conferring on this issue. (*See* Hr'g Tr. at 95 (HLC's Counsel: "[M]y strong sense is that it would be productive for the parties to meet and confer. I think there is room here in principle for some kind of agreement about these types of documents on both sides.").)

V. **RFC's Internal Analyses of Defect Rates on Settled Loans / Pre-Petition Settlement Expert Modeling**

The parties appear to disagree about exactly what evidence falls into this category. (*Compare* HLC's Oct. 8 Letter at 7 *with* ResCap's Oct. 9 Letter at 5 (listing only one common exhibit between them, DX-155 (e-mail and attachment from Gary Lee to John Mack regarding materials for ResCap board meeting)).) As such, the Court declines to issue a categorical ruling at this juncture. However, the Court notes that, as a general matter,

15

documents in and attached to e-mail chains will not be admitted unless a testifying witness lays foundation for that specific message or document. (*See generally* Hr'g Tr. at 22-25 (detailing the Court's view on foundation and hearsay e-mails.) Moreover, with these e-mails and internal communications, as with any exhibit, the Court maintains the same Rule 403 concerns described above, and will not publish to the jury a message or document simply because it may have been seen by an RFC employee at or before the time of settlement.[9]

### VI. Ally Financial SEC Filings and Related Memoranda

Because the parties' disagreement on this issue appears to revolve around HLC's ability to lay foundation, the Court also declines to issue a categorical ruling as to this category of documents. (*See* ResCap's Oct. 9 Letter at 7 (arguing against the admissibility of these documents because "HLC will not have a single Ally employee lay proper foundation, or provide necessary context, for these accounting-related materials," and because HLC "has failed to proffer any testimony from a single author or contributor to the relevant accounting policy"); *see also* ResCap's Oct. 11 Letter Regarding Evidence Related to Ally [Doc. No. 4579] ("Although the parties have not resolved their dispute regarding the admissibility of such evidence [related to Ally Financial], they have agreed that resolution can be deferred until such time as HLC seeks to question any witness or otherwise introduce evidence relating to claims against Ally.").)

---

[9] The Court also encourages the parties to continue meeting and conferring as to what messages or documents written by RFC or HLC employees constitute admissions by the agent or employee of a party opponent (*see* Fed. R. Evid. 801(d)(2)), or fall within any other hearsay exception (*see, e.g.*, Fed. R. Evid. 803(6) (business records exception)).

16

As noted in the prior section, though, the Court takes seriously both parties' obligation to lay proper foundation for a document, even if relevant, before publishing that document to the jury.

* * * *

As a final housekeeping matter, the Court acknowledges that, near the close of the October 9 pre-trial hearing, HLC's counsel requested further argument time on these issues. (*See* Rough Oct. 9, 2018 Hr'g Tr. at 156.) To the extent HLC wishes to be heard on any issue covered in this Order, the Court will entertain such argument on Monday October 15, following jury selection.

Dated: October 11, 2018       **/s/ Susan Richard Nelson**
                              SUSAN RICHARD NELSON
                              United States District Judge