**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

| | |
|---|---|
| In Re: RFC and RESCAP Liquidating Trust Action<br><br>*This document relates to*:<br><br>ResCap Liquidating Trust v. Home Loan Center, Inc., Case No. 14-cv-1716 (SRN/HB) | Case No. 0:13-cv-3451 (SRN/HB)<br><br>**ORDER RE: ADMISSIBILITY OF HLC's "RFC SOLE RESPONSIBILITY" CAUSATION ARGUMENT AND RELATED EVIDENCE** |

SUSAN RICHARD NELSON, United States District Judge

In this Order, the Court addresses the admissibility, at trial, of HLC's "sole responsibility" argument, as well as the evidence offered by HLC in support of this argument.[1]

## I. Background

### A. The Origins of HLC's "Sole Responsibility" Argument

In late 2013, ResCap sued HLC for, *inter alia*, contractual indemnification. (*See Residential Funding Ctr., LLC, v. Home Loan Center, Inc.*, 14-cv-1716 (SRN/HB), Compl. [Doc. No. 1-1].) When HLC answered this complaint in July 2015, it asserted various causation defenses, including that "the harm or damages [ResCap] complains of or seeks were caused by [RFC's] own acts or omissions." (HLC Answer [Doc. No. 601] at 20.) As best the

---

[1] On Friday October 12, 2018, the Court advised the parties that it was "likely" to "entirely foreclose HLC's 'sole responsibility' line of argument due to a lack of non-speculative, competent fact evidence, and no competent expert evidence, to support its position," that HLC "shall refrain from referencing" this argument in its opening statement, and that "a more detailed Order" would be issued "forthwith." (Oct. 12, 2018 Text-Only Order [Doc. No. 4594].)

Court can tell, the only expert evidence HLC (and the other similarly situated originator defendants) developed during discovery directly in support of this "RFC sole cause" defense was that of Steven Schwarcz, a professor at Duke Law School.

In one section of his expert report, Professor Schwarcz opined that "some of RFC's breaches of the R&Ws [representations and warranties] it made to the Trusts and Monoline [Insurers] do not overlap with Defendants' breaches of the R&Ws they made to RFC," and that ResCap's damages expert, Dr. Karl Snow, did not take this "gap" into consideration when allocating originator liability for the Bankruptcy Settlements. (Summ J. Order [Doc. No. 4307] at 111 (citing Schwarcz Rpt. [Doc. No. 3358] ¶¶ 114-27).) In other words, if a "gap" existed between the R&Ws HLC made to RFC, and the R&Ws RFC made to the Trusts or Monoline Insurers, HLC's R&Ws could not be considered "even a contributing cause of" that portion of "RFC's losses and liabilities." (*Id.*)[2]

At the summary judgment stage, ResCap moved for summary judgment on causation, arguing in part that "[t]here is not credible evidence that any of the Trusts' damages were caused by R&W breaches that cannot be attributed to Defendants' own breaches." (ResCap Summ. J. Br. [Doc. No. 3243] at 43 n.11.) Similarly, in its *Daubert* motion, ResCap moved

---

[2] Although Professor Schwarcz primarily focused on an alleged "gap" between "RFC's trust-level underwriting-guidelines" and HLC's R&Ws, Professor Schwarcz also opined that "sole cause" liability may arise when either (a) RFC's breaches of its R&Ws to its investors "concern[ed] RFC's own legal status, i.e., authorization or corporate capacity, rather than the characteristics of the loans," or (b) when RFC's loss was "due to events that occurred (e.g., borrower loses his job) after the effective date of the originating bank's R&Ws (i.e., after RFC's purchase of the loan). (*See* Summ. J. Order at 108-109.) However, because HLC does not appear to defend either of these two theories of "sole cause" liability anymore, the Court will not discuss them further.

to exclude the "sole responsibility" portion of Professor Schwarcz's expert opinion, contending that, despite his ultimate conclusion about the salience of "sole responsibility" liability, Professor Schwarcz "fails to identify a single instance where a loan breached a Trust R&W, but did not also breach a Correspondent R&W." (ResCap Daubert Br. [Doc. No. 3253] at 34.) Indeed, ResCap argued, Professor Schwarcz's only loan-level evidence came from Defendants' re-underwriting expert Mr. Broeksmit, who "reviewed only those loans that were already found to have breached a Correspondent R&W to determine whether they also breached a Trust R&W," and hence "could not possibly identify loans that had Trust R&W breaches, but not Correspondent R&W breaches." (*Id.* at 34-35.)

For its part, HLC moved for summary judgment on allocation (among other issues), arguing that, under the *UnitedHealth Group* decisions, ResCap's Allocated Breaching Loss damages model did not provide a "non-speculative basis" for allocating the Bankruptcy Settlements. (*See* Defs. Summ. J. Br. [Doc. No. 3251] at 32-36.) In making this argument, HLC relied partly on Professor Schwarcz's expert report. "Dr. Snow's approach fails," HLC argued, "because he does not account for the value of several non-indemnifiable claims covered by the trust settlement, including claims based on breaches of RFC's representations to trusts for which RFC is solely responsible." (*Id.* at 32.)

In its Summary Judgment opinion, issued on August 15, 2018,[3] the Court found that "the Client Guide gives RFC considerable discretion to act and wide-ranging remedies" (Summ. J. Order at 74), and accordingly ruled that RFC maintained the sole discretion to

---

[3] This order may also be found at *In re RFC and RESCAP Liquidating Trust Action*, --- F. Supp. 3d ---, 2018 WL 3911424 (D. Minn. 2018).

determine breaches of the Client Guide (*id*.), that RFC could seek indemnification even for losses arising out of its own negligence and (mere allegations of) intentional wrongdoing (*id*. at 42), and that originators like HLC were fully liable for any misrepresentation or breach of warranty regardless of whether RFC had any knowledge of the misrepresentation or breach (*id*. at 130). Moreover, the Court held that ResCap need only "show that an individual Defendant's breaches were a *contributing* cause of [its] losses and liabilities." (*Id*. at 95.)

However, with respect to Professor Schwarcz and his opinion on RFC's "sole responsibility," the Court held that, "[o]n this record," "summary judgment as to Defendants' 'sole cause' defense . . . would be premature," as there may be instances in which a Defendant was not even a contributing cause of RFC's losses and liabilities. (*Id*. at 109.) Accordingly, the Court chose to "defer ruling as to the admissibility of Schwarcz's testimony on these issues, pending the development of the factual record, to evaluate whether there is evidence in the record, presumably supplied by fact witnesses, to support his hypothetical argument." (*Id*.)

Shortly after the Court issued its Summary Judgment decision, at the August 23 motions *in limine* hearing, HLC's counsel argued that, despite the Court's rulings about the indemnifiability of mere allegations of fraud and other issues, substantial evidence pertaining to RFC's alleged misconduct remained relevant to HLC's "sole responsibility defense." (*See, e.g.*, Aug. 23, 2018 Hr'g Tr. [Doc. No. 4338] at 145.)

Following this hearing, the Court asked the parties to submit letter briefs and scheduled a hearing for September 14, 2018. (*See* Sept. 4, 2018 Order [Doc. No. 4343].) In its letter brief, filed September 11, 2018, HLC argued that 11 discrete categories of evidence pertained

4

to "RFC-only liability," and included representative exhibits for each category. (*See* Sept. 11, 2018 Letter [Doc. No. 4351] at 6-8.) HLC argued that its representative exhibits provided competent fact evidence from which a jury could find that ResCap had failed to meet its burden on causation and allocation. HLC's "RFC-only liability" evidence primarily consisted of internal e-mails and other documents showing that RFC, at times, allowed HLC to originate loans to third-party underwriting criteria, as well as other documents in which RFC appeared to represent to its investors that its loans were underwritten in substantial conformance with the Client Guide. To HLC, this evidence showed "that a portion of the settled liabilities must be allocated to RFC because [they] resulted from RFC's decision to acquire loans – from many originators – that were not underwritten in compliance with the Client Guide." (*Id*. at 2.)

In its responsive letter, ResCap argued that these categories of documents were not evidence from which a jury could infer that RFC bore "sole responsibility" for some of its losses and liabilities. (*See* ResCap's Sept. 12, 2018 Letter [Doc. No. 4440] at 4-5.) Indeed, ResCap argued, for HLC to show that it was not even a contributing cause to RFC's losses on any loan, HLC would have to adduce evidence, not just that, "(1) [a] loan was not underwritten to the Client Guide's unmodified underwriting criteria," but that "(2) RFC represented to an RMBS trust or monoline insurer that the loan *was* underwritten to the Guide's unmodified underwriting criteria, (3) each and every one of RFC's other representations regarding the loan was true, to the extent the representations could be construed as overlapping with the originator's representations to RFC, and (4) the loan incurred an actual or expected loss." (*Id*. at 3.)

5

The Court heard extended argument on this issue at the September 14 hearing. (*See generally* Sept. 14, 2018 Hr'g Tr. [Doc. No 4470].) Shortly after that hearing, on September 19, 2018, the Court issued its *Daubert* opinion.[4] In addressing ResCap's motion to exclude the "sole responsibility" opinions offered by Professor Schwarcz, the Court re-affirmed its Summary Judgment ruling. The Court ruled that Professor Schwarcz's expert testimony "lacks support" because "[h]e identifies no actual loans for which RFC breached representations and warranties and originating banks did not." (*Daubert* Order [Doc. No. 4471] at 56-57.) Because Professor Schwarcz's opinion was "purely hypothetical," the Court ruled that it "does little to assist the finder of fact." (*Id*. at 57.) However, the Court again declined to preemptively bar Schwarcz's expert opinion, and HLC's accordant "sole responsibility" argument, as it recognized that "competent fact evidence may be introduced at trial to support [Schwarcz's] opinion." (*Id*.) The Court, in turn, advised the parties that it would "entertain a proffer at the appropriate time to reconsider whether Schwarcz's testimony is admissible." (*Id*.)[5]

Two weeks later, the Court ruled on the evidence presented in HLC's September 11 letter, as argued at the September 14 hearing, relating to "sole responsibility." (*See* Oct. 1, 2018 Order [Doc. No. 4497].) The Court began by noting that "ResCap unquestionably bears the burden of establishing its damages and allocation," especially through the testimony of its

---

[4] This order may also be found at *In re RFC and RESCAP Liquidating Trust Action*, 2018 WL 4489684 (D. Minn. Sept. 19, 2018).

[5] The Court also held that Professor Schwarcz "may not supplement his report with additional support for these opinions." (*Id*.)

6

damages expert, Dr. Snow. (*Id.* at 8.) However, the Court continued, "[i]f HLC wishes to cross-examine [Dr.] Snow with respect to RFC-only liability based on a 'gap or mismatch' [between HLC's R&Ws to RFC and RFC's R&Ws to the Trusts and Monolines]," "HLC must present non-speculative, admissible evidence in support of this defense." (*Id.*) With respect to the categories of documents proffered with the September 11 letter, the Court held that documents showing that RFC had represented to some Trusts on some occasions that its loans "were underwritten in 'substantial' compliance with the Client Guide," and that "RFC occasionally bought loans that were underwritten pursuant to non-RFC underwriting standards," "do not support HLC's defense of RFC-only liability." (*Id.* at 9.) Still, the Court offered HLC the opportunity to proffer further evidence "regarding sole responsibility" at a pre-trial hearing scheduled for October 9. (*Id.*)

### B. HLC Proffers Its "Sole Responsibility" Evidence at the October 9 Pre-Trial Hearing

At the October 9 hearing, HLC's counsel proffered the factual evidence it planned to introduce in support of its "sole responsibility" argument, by way of a PowerPoint presentation. (*See* Oct. 9, 2018 Hr'g Tr. [Doc. No. 4610] at 45-76 (HLC's Proffer), 77-92 (ResCap's Response), 92-107 (HLC's Rebuttal); *see also* PowerPoint Presentation Re: Sole Responsibility [Doc. No. 4573].) At this hearing, HLC primarily described "sole responsibility" as an allocation argument, rather than as a causation argument. Specifically, HLC argued that ResCap's damages expert, Dr. Snow, does not attempt to analyze what portion of RFC's settlements with the Trusts and Monolines were solely caused by RFC's own breaches. Therefore, HLC argued, it should be allowed to present evidence to the jury

7

that, in performing his allocation analysis, Dr. Snow overlooked a major source of potentially non-indemnifiable liability.

As for "evidence," HLC pointed to (1) MBIA's pre-petition allegations that RFC breached its representation of substantial compliance with the Client Guide by purchasing loans through "negotiated commitments" and "bulk purchases," and RFC's response that such purchases did not breach its representation; (2) repurchase correspondence between MBIA and RFC in which RFC acknowledged that it allowed clients like HLC to underwrite to different Loan-to-Value ratios than those stated in the Client Guide; (3) one particular at-issue HLC loan, No. 11339503, in which (i) HLC sold RFC the loan pursuant to an underwriting exception, and (ii) RFC included the loan in a securitization in which RFC represented that "all of the Mortgage Loans have been underwritten in substantial compliance with the criteria set forth in the Program Guide"; and (4) analogous loans from two other originators.[6] (*See generally* PowerPoint Presentation.)

In its October 10, 2018 letter, HLC supplemented these facts by noting that Mr. Broeksmit's analysis purportedly identifies "7 of the 59 HLC sample loans for which [ResCap] alleges a Client Guide breach where (1) the loans, in fact, were sold outside the Client Guide pursuant to the Assetwise Direct Criteria Agreement or a bulk transaction or sold pursuant to a documented exception, but (2) the loans reasonably could be understood to

---

[6] The fourth criteria is relevant, HLC argued, as evidence that Dr. Snow incorrectly formulated the global sample (and correspondent breach rate) he used as his base for HLC's proposed allocation (*i.e.*, HLC argued that he relied on the "wrong denominator"). (*See* Oct. 9 Hr'g Tr. at 69.)

8

have breached RFC's trust-level representations that the loans were underwritten in substantial compliance with the Client Guide." (HLC's Oct. 10, 2018 Letter [Doc. No. 4572] at 1; *see also* Broeksmit Analysis [Doc. No. 4575] (identifying the seven loans).) HLC also noted that it had identified "47 letters from Dorian Whealdon, the director of RFC's investor repurchase department, to MBIA that reflect loan-level examples of RFC's sole responsibility." (HLC's Oct. 10 Letter at 1-2.)

HLC argued that it should be permitted to present these facts to the jury through its re-underwriting expert Robert Broeksmit and through "RFC repurchase witnesses, people who worked at RFC in the repurchase group who are on this correspondence as evidence of the existence of this RFC-only liability, not just with respect to HLC loans but also in the broader MBIA population." (Oct. 9 H'rg Tr. at 72.) HLC then acknowledged that "this was not an exercise our expert [*i.e.*, Professor Schwarcz] undertook," but that the evidence was nonetheless admissible because it is simply "responding to the nature of the analysis that [ResCap's] expert [*i.e.*, Dr. Snow] did." (*Id*. at 73-74.)

### C. ResCap Responds to HLC's Proffer

In a letter submitted October 11, 2018 [Doc. No. 4582], ResCap argued that the Court should exclude the "sole responsibility" evidence offered in HLC's proffer for at least four reasons.

First, ResCap argued that HLC cannot, at this late date, rely on its re-underwriting expert, Mr. Broeksmit, to provide factual testimony about loans it now alleges are RFC's "sole responsibility," much less expert testimony, because he never analyzed these loans with

9

respect to this particular issue in his expert report. Nowhere in Mr. Broeksmit's report, ResCap emphasizes, is any opinion about "sole cause" liability. (*Id*. at 2.)[7]

Moreover, to the extent Mr. Broeksmit could provide factual information about the seven purportedly "sole cause" loans, ResCap contends, his testimony could not lay sufficient foundation for "sole cause" liability because none of these loans actually give rise to the kind of non-indemnifiable "sole responsibility" liability contemplated in Professor Schwarcz's report (*i.e.*, RFC liability to the Trusts and Monolines that does not, in any way, flow back to HLC's breaches of its R&Ws to RFC). (*Id*. at 3 and n.2.) "It is telling that HLC cannot identify even one loan where it is undisputed that there is no breach of HLC's representations to RFC," ResCap notes. (*Id*. at n.2.)[8]

---

[7] For instance, ResCap notes that Mr. Broeksmit never reviewed loans for which there had been a breach of RFC's R&Ws to investors, but not a breach of HLC's R&Ws to RFC, citing Mr. Broeksmit's deposition testimony that, "if there was no [originator breach] alleged or found by me through the affirmative review breach of the lender rep, then I did not look at whether there had been a breach of the securitization rep." (*Id*. (citing 12/1/2017 Broeksmit Tr. 168:24-22).)

[8] Specifically, ResCap argued that, for four of the seven loans, Mr. Broeksmit opined that "the loans contained no Client Guide breaches at all," or that the breach was immaterial, which would preclude him from contending that there was *any* breach for which RFC could be solely responsible. Moreover, finding RFC solely responsible for the other loans would require HLC to prove that "the Assetwise Direct Criteria Agreement supersed[ed] the Client Guide, or that "RFC cannot recover for breaches of which it purportedly received notice in bid tapes," both of which constitute "mistaken and unsupported" contentions. Finally, with respect to Loan No. 11339053, which HLC featured in its proffer, RFC argued that (a) the Client Guide's underwriting criteria applied (based on evidence submitted with the letter); (b) RFC's re-underwriting experts already found that the loan breached HLC and Trust R&Ws; and (c) even if the Client Guide didn't apply because of the bid tape's underwriting exception, that argument was never made in the underlying MBIA litigation and, hence, could not relate to RFC's allocation at the time of settlement.

Second, ResCap argues that the Court already considered representative samples of the 47 repurchase correspondence documents identified in HLC's follow-up letter in its October 1 Order, and found that they did not support HLC's sole responsibility argument because the Client Guide "expressly contemplated that RFC would purchase loans that did not comply with 'one or more criteria stated in the standard Loan Program Chapters of the Guide.'" (*Id.* at 4 (quoting Oct. 1 Order at 5.).) Moreover, even if "sole cause" liability could be inferred from modified underwriting guidelines (as evidence that the Client Guide did not apply to a group of loans), "HLC must also demonstrate that the loan is otherwise 'clean' – *i.e.*, that there was not another breach for which the originator could be held liable and that could have been construed as a breach of RFC's own representations." (*Id.* at 5.) ResCap notes that, although the repurchase letters cited by HLC suggest that the only breach on the loan was that of underwriting criteria, closer inspection reveals that the Monoline's re-underwriting expert also found other breaches. (*Id.* at 5-6.) Further, even if a loan contained both "sole responsibility" breaches and HLC-responsible breaches, HLC would still have to indemnify RFC for the entirety of the loss under the Client Guide's "contributing cause" standard. (*See* Summ. J. Order at 95.)

Third, ResCap argues that, to the extent HLC relies on "sole responsibility" liability as an affirmative defense to causation, HLC bears the burden of proof. "Because HLC has not adduced evidence supporting its affirmative sole-cause defense as to any of the HLC at-issue loans for which Plaintiff is seeking indemnity," ResCap asserts, "that defense should be dismissed with prejudice." (ResCap's Oct. 11 Letter at 6.)

Finally, to the extent HLC's argument actually functions as a counterargument to ResCap's allocation case (for which ResCap bears the burden of proof), HLC should still be precluded from presenting its "sole responsibility" evidence because "this Court has already concluded that [ResCap's] Allocated Breaching Loss Approach 'offers a highly sophisticated methodology to provide a basis for the factfinder to determine a Defendant's damages, if any,' and a 'reliable, non-speculative basis for calculating damages in this case.'" (*Id.* (quoting Summ. J. Order at 175-76).) Even if HLC finds it "remarkable" that Dr. Snow did not allocate any liability to non-indemnifiable "sole cause" claims, ResCap argues that its experts were "under no obligation to anticipate and disprove every mistaken hypothetical argument for which there is no evidence of materiality." (*Id.* (citing *Zurich Reinsurance (UK) Ltd. v. Canadian Pac. Ltd.*, 613 N.W.2d 760, 765 (Minn. Ct. App. 2000)).) After all, ResCap adds, its burden is merely to provide the jury "a non-speculative basis to allocate" the settlements, not a precise mathematical accounting of every conceivable claim it faced at the time of settlement. (*Id.* (citing Summ. J. Order at 165 and *UnitedHealth Grp., Inc. v. Exec. Risk Speciality Ins. Co.*, 870 F.3d 856, 863 (8th Cir. 2017)).)

In sum, ResCap concludes by calling HLC's entire "sole responsibility" argument "speculative." Despite "being granted eight opportunities to make a proffer,"[9] ResCap argues, "HLC cannot credibly contend there exist a meaningful number of 'unicorn' loans that (a) are

---

[9] ResCap points to (1) Professor Schwarcz's expert report; (2) HLC's summary judgment briefing; (3) HLC's opposition to ResCap's *Daubert* motion; (4) the August 23 pre-trial conference; (5) HLC's September 11 letter; (6) the September 14 pre-trial conference; (7) the October 8 proffer and accompanying PowerPoint; and (8) HLC's October 10 letter.

noncompliant with the Client Guide due to a breach that cannot be traced back to an originator, (b) have no other breach that could be traced back to the originator, and (c) happened to have been included in one of the 16 out of 506 RMBS Trusts to which RFC had given a 'substantial compliance' representation." (*Id*. at 6-7.)

## II. DISCUSSION

The Court finds that, regardless of whether HLC's "sole responsibility" argument is considered an affirmative defense on causation, or a rebuttal to ResCap's allocation case, HLC cannot present the evidence raised in its proffer for two, independent reasons. First, introducing complex evidence to the jury about such an important issue in the case, without competent expert testimony to guide them in analyzing this evidence, would improperly invite speculation. Second, in the absence of such expert analysis, the probative value of this evidence is far outweighed by the risk of unfair prejudice and juror confusion. *See* Fed. R. Evid. 403. This is especially so when the underlying factual evidence does not, in fact, show that "sole responsibility" claims constitute a "substantial" source of non-indemnifiable liability.

### A. Lack of Expert Guidance

As HLC conceded at its "sole responsibility" proffer, its argument is not based on an analysis undertaken by either Professor Schwarcz or Mr. Broeksmit. (*See* Oct. 9 Hr'g Tr. at 73.) It is sheer speculation, therefore, that such an analysis would support a challenge to the integrity of Dr. Snow's damages model.

Judge Schiltz's decision in *UnitedHealth* is instructive on this point. *See UnitedHealth Grp., Inc. v. Columbia Cas. Co.*, 47 F. Supp. 3d 863, 882-83 (D. Minn. 2014). Although Judge

Schiltz was considering the question from the opposite vantage point (*i.e.*, whether the *plaintiff* had met its burden of providing the jury a "reliable, non-speculative" basis for allocating a settlement between indemnifiable and non-indemnifiable claims), his remarks on the need for competent expert testimony in complex allocation cases rings true here. In that case, Judge Schiltz noted that there were three kinds of evidence a party could introduce to a fact finder to convince them that a settlement was properly allocated between indemnifiable and non-indemnifiable claims:

> (1) a party may introduce evidence of how the settling parties and their attorneys valued the claims at the time of settlement; (2) a party may introduce evidence of what was known to the parties and their attorneys at the time of settlement and ask the jury to assess the settlement value of each of the claims based on that information; or (3) a party may introduce expert testimony about the settlement value of the settled claims. *Id*. at 882.

Judge Schiltz then added that the appropriate evidentiary approach turns on the complexity of the case. For instance, a lay jury may be able to deduce the proper allocation of a settlement from merely looking at the record available to the parties at the time of settlement if the underlying facts are "uncomplicated," such as in a "simple slip-and-fall case." *Id*. However, in a complex case like the one in *UnitedHealth*, which involved allocating settled ERISA and antitrust class action claims, "the jury would *need* the assistance of the expert testimony of an attorney who participated in litigating the underlying cases or an attorney who is hired to give expert testimony." *Id*. at 883 (emphasis added); *see also Walstad v. Univ. of Minn. Hosps*., 442 F.3d 634, 639 (8th Cir. 1971) ("when the causal relation issue is not one within the common knowledge of laymen, causation in fact cannot be determined without expert testimony"). And if a party does not have an expert that can present testimony on this issue

(which the plaintiff did not have in *UnitedHealth*), it cannot "fix this problem by handing the [evidence from the underlying record] to the jury and asking the jury to perform the [allocation] analysis that it failed to ask [its expert] to perform." *UnitedHeath*, 47 F. Supp. 3d at 881. To do so would be to leave a "jury of farmers and mechanics and nurses and factory workers" to return a verdict "based on speculation." *Id*. at 883.

Here, the Court has already held that one of ResCap's proposed damages analyses – the Allocated Breaching Loss Model – survived summary judgment because it offered the jury a "reasonably certain basis for assessing and allocating damages that is not 'speculative, remote, or conjectural.'" (Summ. J. Order at 174.) Thus, although ResCap still must convince the jury that the liability it allocates to HLC is, in fact, "reasonably certain," the Court will not allow HLC to respond at this late date, during trial, with what is effectively an alternative damages model based on attorney argument and conjecture.

To paraphrase Judge Schiltz, HLC cannot make up for the fact that it never developed a factual record to support Professor Schwarcz's assertion that "sole responsibility" claims constituted a "significant potential source of non-indemnifiable liability," by "handing" dozens of repurchase letters and a handful of loan files "to the jury" in a complex securitization case and "asking the jury to perform the [allocation] analysis that it failed to ask [its expert] to perform." *UnitedHeath*, 47 F. Supp. 3d at 881.[10]

---

[10] The Court acknowledges Judge Schiltz's statement that the defendant in an allocation case, at least at the summary judgment phase, may simply "point[] out the flaws in [the plaintiff's] position," without adducing "any evidence" to support its own position. *Id*. at 882 n.15. However, the Court does not invoke Judge Schiltz's decision for its holdings on the burden of proof. Rather, the Court invokes his decision for its thoughtful discussion on the challenges of presenting complex allocation evidence to a lay jury.

## B. Rule 403 Concerns

Especially in the absence of any alternative expert analysis, handing the jury HLC's proffered "sole responsibility" evidence would raise substantial Rule 403 concerns. As the Court elucidated in an earlier opinion, given the complex factual and legal issues before the jury, Rule 403 is of particular importance in this trial. (*See* Order Re: Admissibility of Certain Evidence Available to RFC at the Time of Settlement [Doc. No. 4592] at 1-2 (explaining why the Court "must be more attuned" to Rule 403 concerns in this case "than were this a bench trial or summary judgment hearing").)[11] And, as the Court repeatedly noted at pre-trial hearings, it is very challenging to distinguish HLC's "sole responsibility" argument, on which summary judgment was deferred, from HLC's arguments related to the non-indemnifiability of fraud claims against RFC and/or HLC's knowledge and reliance-based affirmative defenses, both of which did *not* survive summary judgment. (*See, e.g.*, Aug. 23 H'r Tr. at 142 (expressing concern that allowing sole responsibility evidence would permit HLC "to argue to this jury early on that RFC was fraudulent here, [which] obviously has lots of 403 concerns, when it's not at all clear that you can establish that RFC was solely responsible for those breaches"); Sept. 14 Hr'g Tr. at 24 (noting the "circular nature" of HLC's attempt to distinguish between indemnifiable fraud claims and non-indemnifiable "sole responsibility" claims); Oct. 9 Hr'g Tr. at 49 (stating that HLC's "sole responsibility" argument "sounds like a motion for reconsideration of my ruling that the negligent misrepresentation and fraud

---

[11] This order may also be found at *In re RFC and RESCAP Liquidating Trust Action*, 2018 WL 4929394 (D. Minn. Oct. 11, 2018).

claims, because they were allegations and unproven, are indemnifiable").) If the Court has trouble delineating these distinctions, it suspects a lay jury would as well.

As such, introducing HLC's "sole responsibility" evidence, most of which revolves around MBIA suing RFC for allegedly misrepresenting the underwriting standards it held its originators to, would invite the jury to find that ResCap failed to meet its burden on allocation and damages, not because the Allocated Breaching Loss Method does not prove allocation to a reasonable degree of certainty, but because RFC engaged in allegedly fraudulent behavior and should not be indemnified (wholly or in part) because of that. *Cf. United States v. Hawley*, 562 F. Supp. 2d 1017, 1048 (N.D. Iowa 2008) (evidence of a party's alleged involvement in bankruptcy fraud inadmissible under Fed. R. Evid. 403 because it "would tend to invite a jury to punish [a party] for conduct that is not at issue in a case," and "would also have the potential to confuse the issues and generate a trial within a trial"). This Rule 403 concern is only exacerbated by the absence of any factual evidence, and accompanying expert testimony, to support this theory beyond mere speculation.

\* \* \* \*

All told, after carefully considering HLC's proffer in support of Professor Schwarcz's "purely hypothetical" expert opinion, the Court precludes Professor Schwarcz from speculating as to "RFC-only" liability. (*See Daubert* Order at 56-57.)

Furthermore, for the reasons articulated in this Order, HLC is precluded from arguing to the jury that "RFC sole responsibility" claims constitute a "significant potential source of non-indemnifiable liability." As for the evidence proffered by HLC in support of this argument, that evidence is not admissible on this issue. Similarly, the testimony of the factual

17

and expert witnesses which HLC identified as solely relevant to "RFC-only liability" in its Second Amended Witness List [Doc. No. 4612] is inadmissible.

Dated:  October 22, 2018              ___/s/ Susan Richard Nelson___
                                      SUSAN RICHARD NELSON
                                      United States District Judge