## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In Re: RFC and ResCap Liquidating Trust Litigation | Court File No. 13-cv-3451 (SRN/HB) |
| *This document relates to:*<br><br>ResCap Liquidating Trust v. Home Loan Center, Inc., No. 14-cv-1716 | |

**HAND-UP IN SUPPORT OF PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW DISMISSING DEFENDANT HOME LOAN CENTER'S AFFIRMATIVE DEFENSE OF EQUITABLE ESTOPPEL (AND WAIVER)**

**JMOL DISMISSING AFFIRMATIVE DEFENSE OF EQUITABLE ESTOPPEL (AND WAIVER)**

**STANDARD**

A. SJ Order: "HLC must prove that (1) RFC made promises or inducements to HLC; (2) HLC reasonably relied on the promises; and (3) HLC will be harmed if estoppel is not applied." 8/15/2018 SJ Order at 115 [Doc. No. 4307].

B. 10/1/2018 Order: "[T]here may be specific instances in which a high-ranking person at RFC stated that the provisions and remedies of the [Guide] were inapplicable." 10/1/2018 Order [Doc. No. 4497] at 6.

C. 10/1/2018 Order: HLC "must offer evidence of a stated departure from the provisions and remedies of the [Guide] as to specific HLC loans or specific bulk transactions, made by a person with authority at RFC. To the extent HLC seeks to pursue this defense, it must proffer this type of affirmative, admissible evidence in support of its position." *Id.* at 7.

D. 9/14/2018 Hearing: Evidence "could take two forms. One could be actual communications between . . . people with the authority to be able to make that decision between the two companies, or it could be an internal document reflecting that communication." 9/14/2018 Hr'g Tr. 13:8-14:3.

I. **THERE IS NO EVIDENCE OF A "STATED DEPARTURE" FROM THE GUIDE AS REQUIRED**

A. **No evidence Forget agreed to abandon the Guide:**

1. "I had been doing this for 20 years and **it's just not something that you do**. . . . Whether you're on the buying end or the selling end, there are [R&Ws] that are given when you buy a package of loans." Tr. 886:12-887:14 (Forget).

2. "Q. At any dinner that you were at, did you hear anyone from RFC say to [HLC] that the [R&Ws] in the [Guide] about accuracy of information that you get about the loan, and about … borrower fraud would not apply to the purchases of loans from [HLC]? A. No." Tr. 945:4-10 (Forget).

3. "Q. [D]id Mr. Furey ever tell you that … there are no [R&Ws] as to whether or not [HLC's] data is accurate, free of fraud, and free of borrower fraud? A. No, he did not." Tr. 953:21-954:15 (Forget).

1

4. "Q. … [A]t any time **did you tell anybody [at HLC] that the [R&Ws] in the Client Contract and the [Guide] did not apply** to the loans that were being bought? A. **No**, I did not." Tr. 970:20-24 (Forget).

5. "Q. … [D]o you [recall] Ms. Forget coming to you and saying anything like, I want to buy loans from HLC that aren't subject to the Section 2 [R&Ws]? . . . A. I do not." Tr. 427:4-428:11 (Russell, Ms. Forget's supervisor)).

B. **No evidence Joseph agreed to abandon the Guide:**

1. "Q. Are you aware of any instances in which Mr. Joseph promised HLC that HLC's loan sales would not be subject to the [Guide]? A. No." Tr. 778:6-23 (Collins, Mr. Joseph's supervisor).

2. "Q. … [D]id [] Joseph ever ask you for … authority to … tell HLC that they could **sell bulk pools to RFC without any [R&Ws] in the [Guide]? A. No**. Q. If Mr. Joseph had asked you for that permission or authority, would you have said yes? … A. **I would have said no and questioned his competency**." Tr. 779:2-24 (Collins).

C. **Smith does not recall discussing abandoning the Guide:**

1. "My focus of that dinner was to discuss product and expanded parameters," not R&Ws. Tr. 3027:25-3028:3.

2. When he "went in … to this meeting in February of 2006," he "[wasn't] expecting to talk about the [R&Ws] and remedies that accompanied … every loan that [HLC] sold." Tr. 3037:2-7.

3. **Does not recall discussing the Client Contract or Guide** at the February 2006 meeting. Tr. 3038:21-3039:1.

4. "[T]he fact that the contract or the [] Guide and [R&Ws] didn't come up didn't signal … that RFC was waiving its rights under any contracts or waiving any [R&Ws], right? A. It didn't signify anything either way." Tr. 3039:13-17.

5. "**[R]elief from [R&Ws] … did not come up at the dinner**." When he "went in there to talk about buying in bulk, [he wasn't] focused at all on trying to get some kind of relief or waiver from these [R&Ws] and remedies that RFC required to buy any loan." Tr. 3027:10-3028:3.

2

D. **Furey does not recall discussing abandoning the Guide:**

1. R&Ws never "bec[a]me a question" until "this litigation was filed."  Tr. 3148:6-8.

2. At the February 2006 dinner, "**[t]here was no discussion about the Client Contract, … [R&Ws], … [or] remedies** … [and] [Furey] didn't expect th[ose items] to be discussed in that meeting ..."  Tr. 3148:22-3149:11; *id.* (discussions at the meeting "were only about program parameters and guidelines and pricing.").

3. "[F]rom 2002 to 2007, … [he] never had a discussion with anyone at RFC concerning waiving [R&Ws] or remedies with respect to loans sold by [HLC]."  Tr. 3151:22-3152:2.

4. "No one at RFC ever said to [Furey], or anyone that [he] kn[e]w of[] that [RFC was] buying loans from [HLC] and … waiving [R&Ws] and our rights to remedies."  Tr. 3152:3-8, 3151:11-21 (Forget and Joseph did not "sa[y] to [Furey] that they were waiving any [R&Ws] that [HLC] is making to RFC.").

5. Furey never had "any conversations with anyone at RFC where they told [him] they were waiving … rights and remedies" "with respect to any breach of the … client representations" in the Client Contract; nor did he "have any conversations with[] Home Loan that [RFC] w[as] waiving those rights and remedies."  Tr. 3173:18-3174:8.

6. Furey never "[had] a discussion with anyone at RFC that because RFC was buying loans in bulk…that [R&Ws] and remedies and the Client Contract didn't apply."  Tr. 3171:7-11.

7. Furey never had a discussion with anyone at RFC or HLC that the representations, warranties and remedies in the Client Contract or Client Guide did not apply to POA loans.  Tr. 3171:17-3172:6.

8. There is no statement in any document that reflects Furey's testimony that by buying loans in bulk or buying POA loans, RFC was waiving the representations, warranties and remedies in the Client Contract and the Client Guide.  Tr. 3172:10-15.

E. **Svinth does not recall discussing abandoning the Guide:**  HLC never requested and RFC never "granted an exception request that waived the requirement that

3

the loans that it sold to RFC be prudently originated and []underwritten," that "waived the requirement that [] the loan file had to be complete and documents in the loan file had to be accurate," or that waived the existence of an event of default "if any provider of … information made a false representation or failed to provide information that is true, accurate, and complete." Tr. 719:6-720:23.

II. **NO EVIDENCE OF A "HIGH-RANKING" "PERSON WITH AUTHORITY AT RFC"**

Elements of apparent/ostensible authority: "[1] [t]he principal must have held the agent out as having authority, or must have knowingly permitted the agent to act on its behalf; … [2] the party dealing with the agent must have actual knowledge that the agent was held out by the principal as having such authority or had been permitted by the principal to act on its behalf; and [3] the **proof of the agent's apparent authority must be found in the conduct of the principal**, **not the agent**." *Commerford v. Olson*, 794 F.2d 1319, 1323 (8th Cir. 1986).

- A. **Smith did not identify a person with authority to abandon the Guide:** "Q. Did you think Ms. Forget or Mr. Joseph had the authority to waive the [R&Ws] that you said RFC required before it would buy a loan from [HLC]? A. I don't really know … [W]e really only focused on the parameters …." Tr. 3040:2-9.

- B. **Furey did not identify a person with authority to abandon the Guide**: It "never occurred to [Furey] that [Forget or Joseph] had the authority to waive [R&Ws] in the standing contract about accuracy of data, fraud, borrower fraud, or remedies." Tr. 3173:13-17. It never occurred to Furey that Mand would have the authority to waive the R&W's and remedies in the Client Contract or Client Guide. Tr. 3177:20-3178:6.

- C. **Forget did not have authority to abandon the Guide:** "Q. … [D]id you have the authority to change any of the [R&Ws] that were in the [] Guide? A. No." Tr. 917:4-7; *see also* Tr. 428:12-23 (Russell) (Forget was "[a]bsolutely not" "authorized to even consider such a thing without consulting with [Russell] and the other senior members of RFC's management team"), 428:18-23.

- D. **Joseph did not have authority to abandon the Guide:** "[T]raders," including "Allen Joseph specifically," did not have "authority to waive the [Guide] remedies like the indemnification remedy." *See* Tr. 777:24-779:15 (Collins).

4

III.    **WAIVER**

    A.    HLC mistakenly believes that a "waiver defense remains in the case as to [bulk and POA] loans and should be included in any instruction on affirmative defenses." 10/26/2018 HLC's Proposed Closing Instructions and Objections to Plaintiff's Proposed Closing Instructions at 55 (Plaintiff's Proposed Instruction No. 15) [Doc. No. 4656].

    B.    Actually, waiver has long since been resolved. *See* 8/23/2018 Hr'g Tr. at 200:1-4 (THE COURT: "I don't think that the Court ruled that waiver could go to the jury."); 211:9-12 (THE COURT: "[A]ny waiver under the Client Guide had to be in writing, and I really view these other arguments as being estoppel arguments, I have to say."); SJ Order at 7 (under Guide A200, "there can be no waiver … unless RFC expressly makes such a waiver in writing"), 132 ("Defendants [did] not cite to any evidence indicating that RFC waived [A200]"), 129 ("Defendants [did] not raise[] a triable issue of fact that RFC waived [A200]").

    C.    In any event, for same reasons the Court previously articulated, and for similar reasons as to estoppel, no reasonable jury could determine that HLC has proven the elements of waiver.

Date:  November 6, 2018

| | |
|---|---|
| FELHABER LARSON<br><br>By:  */s/ Jessica J. Nelson*<br>Donald G. Heeman, #286023<br>Jessica J. Nelson, #347358<br>Randi J. Winter, #0391354<br>220 South Sixth Street, Suite 2200<br>Minneapolis, MN  55402-4504<br>Telephone:  (612) 339-6321<br>Facsimile:  (612) 338-0535<br>dheeman@felhaber.com<br>jnelson@felhaber.com<br>rwinter@felhaber.com | QUINN EMANUEL URQUHART<br>& SULLIVAN, LLP<br><br>Peter E. Calamari (*pro hac vice*)<br>Jennifer J. Barrett (*pro hac vice*)<br>Sascha N. Rand (*pro hac vice*)<br>Isaac Nesser (*pro hac vice*)<br>51 Madison Avenue, 22nd Floor<br>New York, NY 10010<br>Telephone:  (212) 849-7000<br>Facsimile:  (212) 849-7100<br>petercalamari@quinnemanuel.com<br>jenniferbarrett@quinnemanuel.com<br>sascharand@quinnemanuel.com<br>isaacnesser@quinnemanuel.com<br><br>QUINN EMANUEL URQUHART<br>& SULLIVAN, LLP<br>William C. Price (*pro hac vice)*<br>Anthony P. Alden (*pro hac vice*)<br>Johanna Ong (*pro hac vice*)<br>K. John Shaffer (*pro hac vice*)<br>Matthew Scheck (*pro hac vice*)<br>865 S. Figueroa Street, 10th Floor<br>Los Angeles, CA 90017<br>Telephone:  (213) 443-3000<br>Facsimile:  (213) 443-3100<br>williamprice@quinnemanuel.com<br>anthonyalden@quinnemanuel.com<br>johannaong@quinnemanuel.com<br>johnshaffer@quinnemanuel.com<br>matthewscheck@quinnemanuel.com |

*Attorneys for Plaintiff ResCap Liquidating Trust*