# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

_____

In Re: RFC and ResCap Liquidating      Case No. 13-cv-3451 (SRN/HB)
Trust Litigation

**MEMORANDUM OPINION
AND ORDER**

*This document relates to:*

ResCap Liquidating Trust v. Home Loan
Center, Inc., Case No. 14-cv-1716 (SRN/HB)

_____

SUSAN RICHARD NELSON, United States District Judge

## I.  INTRODUCTION

Before the Court is the Motion for Prejudgment Interest [Doc. No. 4739] filed by

Plaintiff ResCap Liquidating Trust ("ResCap").  For the reasons set forth below, Plaintiff's

motion is granted in part and denied in part.

## II.  BACKGROUND

The facts of this litigation have been thoroughly addressed in prior rulings, which

are incorporated by reference.  In brief, Residential Funding Company, LLC ("RFC")

commenced this action against Defendant Home Loan Center, Inc. ("HLC") on December

16, 2013.[1]  (*Residential Funding Company, LLC v. Home Loan Center, Inc.*, No. 14-cv-

_____

[1] Pursuant to bankruptcy proceedings in the U.S. Bankruptcy Court for the Southern District of New York, ResCap ultimately succeeded to all of RFC's rights and interests and now controls it.  (*Residential Funding Company, LLC v. Home Loan Center, Inc.*, 14-cv-1716, First Am. Compl. [Doc. No. 1-2] ¶ 13.)   Thus, although RFC was the initial plaintiff in this suit, the parties ultimately stipulated to the substitution of ResCap as the sole plaintiff.

1716 (SRN/HB), Affs. of Service [Doc. No. 1-15]) (indicating that service of the Complaint was effected on December 16, 2013); Minn. R. Civ. P. 3.01(a) (stating that an action is "commenced" upon service of process).

In the years preceding its bankruptcy, RFC was in the business of acquiring and securitizing residential mortgage loans from a number of originating lenders, including HLC. (*See* Scheck Decl. [Doc. No. 3258], Ex. 10 (Horst Dep. at 620–23); *id*., Ex. 36 (Ruckdaschel Dep. at 40–41); *id*., Ex. 19 (Corr. Hawthorne Rpt. ¶ 17).) RFC then sold the pooled loans into residential mortgage-backed securitization ("RMBS") trusts ("the Trusts"). (*See id*., Ex. 19 (Corr. Hawthorne Rpt. ¶ 17).) The relationships between RFC and the originating lenders, including HLC, were governed by contracts and a detailed document known as the Client Guide. (*Id.*) Pursuant to the terms of the Client Guide, HLC made various representations and warranties ("R&Ws") concerning the quality of the loans that it sold to RFC. (*Id.*) In addition, the Client Guide contained the following indemnification provision: "[HLC] also shall indemnify GMAC-RFC[2] and hold it harmless against all court costs, attorney's fees and any other costs, fees and expenses incurred by GMAC-RFC in enforcing the Client Contract." (Client Guide § A212).

---

(*See* Sept. 6, 2018 Order [Doc. No. 4350].) The Court therefore refers to RFC in a historical sense, and references to "Plaintiff" are to ResCap.

[2] RFC was a wholly owned subsidiary of GMAC Residential Holding Company, LLC, ("GMAC"). (*See Residential Funding Co., LLC v. Home Loan Center, Inc.*, 14-cv-1716 (SRN/HB), First Am. Compl. ¶ 13.)

2

Just as HLC made R&Ws to RFC pursuant to the Client Guide, RFC made various R&Ws to the Trusts concerning the quality of the loans pursuant to the contracts between RFC and the Trusts.  (Scheck Decl., Ex. 19 (Corr. Hawthorne Rpt. ¶ 17.)  Ultimately, the loans in the RFC-sponsored securitizations experienced a high rate of default.  (*Id.* ¶ 19.)  The Trusts and some of their monoline insurers experienced significant financial losses.  (*Id.*)  In approximately 2008, multiple entities demanded that RFC repurchase its loans and/or filed lawsuits against RFC to recoup their losses.  (*Id.* ¶ 20. )

In May 2012, RFC filed for Chapter 11 relief in the U.S. Bankruptcy Court for the Southern District of New York ("Bankruptcy Court").  It ultimately entered into comprehensive settlements with the Trusts and monoline insurers, subject to the Bankruptcy Court's approval.  In December 2013, in a 134-page ruling, the Bankruptcy Court set forth its reasons for confirming and approving RFC's bankruptcy plan, including the settlements.  (*See id.*, Ex. 28 (Bankr. Findings of Fact).)

In this litigation, RFC asserted breach of contract and indemnification claims under Minnesota state law based on the losses and liabilities it incurred in the Bankruptcy Court settlements.  (*Residential Funding Company, LLC v. Home Loan Center, Inc.*, No. 14-cv-1716 (SRN/HB), First Am. Compl. [Doc. No. 1-2] ¶¶ 78–85; 86–89.)  Following the consolidation of this case with numerous other cases brought in a "first wave" by RFC, the parties engaged in intensive discovery.  The case against HLC was the only of the first-wave cases to go to trial, as Plaintiff and other Defendants settled many of the actions.  Shortly before the HLC trial, pursuant to the parties' stipulation, ResCap withdrew its

breach of contract claim and proceeded to trial against HLC solely on its indemnification claim.  (*See* Oct. 4, 2018 Order on Stip. [Doc. No. 4515].)

The Court presided over the jury trial between ResCap and HLC from October 15 through November 8, 2018.  On November 8, 2018, the jury found HLC liable, and required it to indemnify ResCap for its underlying losses and liabilities.  (*See* Redacted Jury Verdict [Doc. No. 4705].)  It awarded ResCap damages in the amount of $28.7 million. (*Id.*)

ResCap now moves for an award of prejudgment interest, comprised of the following:  (1) $14,066,931.50 in preverdict prejudgment interest running from the commencement of this action through the jury's verdict; (2) preverdict prejudgment interest on any award of attorney's fees and costs, as determined by the Court; and (3) postverdict prejudgment interest running from the date of the verdict through entry of final judgment at a rate of 10% per annum on the total of the jury's award, any attorney's fees and costs, and preverdict interest.

HLC opposes the motion, arguing that:  (1) the jury's damages award was for "future damages," which are not subject to prejudgment interest; (2) Plaintiff is not entitled to prejudgment interest on any award of attorney's fees and costs; (3) any award of preverdict interest should be reduced in light of Plaintiff's dilatory requests for damages discovery; and (4) Plaintiff is not entitled to postverdict prejudgment interest.

## III. DISCUSSION

### A. Preverdict Prejudgment Interest from Commencement of Action Through Jury Verdict

ResCap asserts that Minn. Stat. § 549.09 governs the application of preverdict prejudgment interest for the following reasons: (1) the value of its claim had to be determined by litigation; (2) the proper damages methodology was disputed; (3) there were significant variations in Plaintiff's damages methodologies; and (4) the amount of Plaintiff's claim was dependent on the jury's discretion. (Pl.'s Mem. Supp. Mot. for Prejudgment Int. ("Pl.'s Mem.") [Doc. No. 4741] at 4–6.) Thus, ResCap argues that it is entitled to prejudgment interest on the jury's award.

In its opposition, HLC does not dispute the general applicability of Minn. Stat. § 549.09 to awards of prejudgment interest. Rather, it argues that ResCap is not entitled to preverdict interest on the jury's damages award because the damages constitute "future damages" for liabilities that ResCap has yet to pay. (Def.'s Opp'n Mem. ("Def.'s Opp'n") [Doc. No. 4778] at 4–9.)

Because ResCap's indemnification claim was asserted under state law, Minnesota law governs Plaintiff's request for prejudgment interest. *See Ewald v. Royal Norwegian Embassy*, No. 11-cv-2116 (SRN/SER), 2015 WL 1746375, at *21 (D. Minn. Apr. 13, 2015) (stating general rule that "prejudgment interest is a substantive remedy governed by state law when state-law claims are brought in federal court."). Under Minn. Stat. § 549.09, "[w]hen a judgment or award is for the recovery of money, . . . , interest from the time of the verdict . . . until judgment is finally entered shall be . . . added to the judgment or

award." Minn. Stat. § 549.09, subd. 1(a).  Where the judgment or award exceeds $50,000, subject to certain exceptions that are inapplicable here, "the interest rate shall be ten percent per year until paid." *Id.*, subd. 1(c)(2).

The Minnesota Supreme Court has recognized that preverdict interest is "not conventional 'interest,'" but rather, "it is an element of damages awarded to provide full compensation by converting time-of-demand . . . damages into time-of-verdict damages." *Marvin Lumber & Cedar Co. v. PPG Indus., Inc.*, 401 F.3d 901, 918 (8th Cir. 2005) (citing *Lienhard v. State*, 431 N.W.2d 861, 865 (Minn. 1988)).  It is designed to "compensate[ ] [the plaintiff] for the loss of the use of money occasioned by the defendant's conduct." *Poehler v. Cincinnati Ins. Co.*, 899 N.W.2d 135, 150 (Minn. 2017) (citing *Lienhard*, 431 N.W.2d at 865)).  Additionally, the preverdict interest statute aims to promote good faith settlement negotiations.  *Skifstrom v. City of Coon Rapids,* 524 N.W.2d 294, 297 (Minn. Ct. App. 1994).

Where damages "are not readily ascertainable," preverdict interest "should be calculated exclusively under section 549.09." *Hogenson v. Hogenson*, 852 N.W.2d 266, 274 (Minn. Ct. App. 2014).  For instance, section 549.09 applies "when there exist numerous methods of computing damages which reach vastly different results." *Matthew v. Unum Life Ins. Co. of Am.*, 639 F.3d 857, 865 (8th Cir. 2011); *see also Hutchinson Utils. Comm'n v. Curtiss-Wright Corp.*, 775 F.2d 231, 242 (8th Cir. 1985) (finding damages not readily ascertainable where plaintiff submitted two different methods of computing damages, the court used a third method, and damages were "further complicated" by possible issues concerning allocation of damages between defendants).  Plaintiff here

6

developed three damages methodologies, two of which were precluded on summary judgment, and the case also involved allocation issues among the originating lenders.

Also, where the value of a claim must be determined by litigation, as was the case here, it is not "readily ascertainable." *Hogenson*, 852 N.W.2d at 274.   HLC strongly contested ResCap's valuation, although it did not develop its own damages methodology. (*See* May 28, 2015 Hr'g Tr. [Doc. No. 509] at 95, 96; Trial Tr. [Doc. No. 4722] at 2797.) Moreover, Minnesota courts have also found that where damages depend upon a jury's discretion, they are not readily ascertainable. *See Potter v. Hartzell Propeller*, 189 N.W.2d 499, 504 (Minn. 1971); *Noble v. C.E.D.O., Inc.*, 374 N.W.2d 734, 743 (Minn. Ct. App. 1985).   As noted, the damages in this case were awarded by a jury.

This case involved multiple damages methodologies, and the value of Plaintiff's claim was determined by litigation and a jury verdict.   Accordingly, the Court finds that the damages in this case were not readily ascertainable, and are subject to the provisions of Minn. Stat. § 549.09 for awards of prejudgment interest, absent some exception.

## 1.   Future Damages

HLC points to a limited statutory exception under § 549.09 which excludes prejudgment interest for "judgments or awards for future damages," and argues that it applies here.  Minn. Stat. § 549.09, subd. 1(b)(2).  Under HLC's theory, "[w]hen a plaintiff pursues an indemnity claim for 'liabilities' as opposed to 'losses,' it seeks a form of 'future damages' within the meaning of Section 549.09," that are not subject to an award of prejudgment interest.  (Def.'s Opp'n at 5.)  HLC contends that Minnesota courts recognize that indemnity claims for "losses" seek to recover past losses, whereas indemnity claims

for "liabilities" seek to recover future losses.  (*Id.* at 6–7) (citing *Christy v. Menasha Corp.*, 211 N.W.2d 773, 776–77 (Minn. 1973); *Aetna Cas. & Sur. Co. v. Bros.*, 33 N.W.2d 46, 48 (Minn. 1948)).  The jury's award here, HLC argues, was for future damages for "liabilities" that Plaintiff has yet to pay.  (*Id.* at 7.)  Thus, HLC contends that Plaintiff is not entitled to prejudgment interest on its indemnity claim.  (*Id.*)

As the Court recognized in its ruling on the parties' cross motions for summary judgment, under Minnesota law, "parties may contract for indemnity against losses suffered as well as for indemnity against liabilities incurred."  (SJ Order [Doc. No. 4307] at 82) (citing *Johnson v. Johnson*, 902 N.W.2d 79, 85 (Minn. Ct. App. 2017)).  Under the Client Guide, HLC contracted to indemnify RFC for "liabilities as well as for out-of-pocket losses," including "from all . . . judgments."  (*Id.*) (citing Client Guide § A212).  This Court found that the Bankruptcy Court's Confirmation Order approving the Second Amended [Bankruptcy] Plan was a final judgment.  (*Id.* at 83.)  Pursuant to that judgment and the Bankruptcy plan, as of December 2013, RFC incurred indemnifiable liabilities, for which the jury in this case ultimately awarded $28.7 million in damages.

This was not an award of future damages, nor did the jury's award include any such relief.  As Plaintiff notes, future damages are those that are "more likely to occur than not to occur" in the future, such as damages for future pain and suffering or lost profits.  *See Pietrzak v. Eggen*, 295 N.W.2d 504, 506 (Minn. 1980).  Here, Plaintiff recovered damages for losses and liabilities incurred over five years ago—not for future damages.  As the Court noted in its summary judgment order, albeit in the context of a statute-of-limitations argument, "final and actual liability is required for the accrual of an indemnification claim"

8

in Minnesota.  (SJ Order at 146) (citing *Metro. Prop. & Cas. Ins. Co. v. Metro Transit Comm'n*, 538 N.W.2d 692, 695 (Minn. 1995)).  The Court held that Plaintiff's indemnity claim accrued when its liability "became finally fixed and ascertained," in December 2013, when the Bankruptcy Court approved the underlying settlements.  (*Id.* at 148.)  Plaintiff incurred damages as of that date, not in the future.

While HLC argues that these liabilities are nonetheless future damages because Plaintiff has not paid them yet, (Def.'s Opp'n at 1), the Court disagrees.  As ResCap observes, whether or not it is able to pay its creditors, or has paid them, is irrelevant to an award of prejudgment interest, "because it has no bearing on the fact that HLC has owed Plaintiff money since December 2013, when Plaintiff incurred an indemnifiable liability and commenced this action."  (Pl.'s Reply [Doc. No. 4800] at 4.)  HLC cites no authority to the contrary.  Rather, Minnesota courts have rejected the argument that unpaid liabilities, or liabilities paid by a third party, constitute "future damages" under Minn. Stat. § 549.09. *See Jonas v. End Health Ctr., Inc.*, No. C5-95-1407, 1996 WL 107405, at *4 (Minn. Ct. App. Mar. 12, 1996) (affirming plaintiff's entitlement to prejudgment interest for incurred medical expenses, even though the plaintiff did not pay them); *Ruhland v. Carr's Tree Serv., Inc.*, 2008 WL 5325427[3] (Scott Cty., Minn. Dist. Ct.  Aug. 11, 2008) (awarding prejudgment interest on amounts paid by insurance providers for plaintiff's past damages). In *Jonas*, the Minnesota Court of Appeals explained, "There is no question that someone was liable for the medical bills when those bills were sent.  The question is not when the

---

[3] The Westlaw version of *Ruhland* does not contain internal page numbers.

damages were 'paid' but when they were 'incurred'—the statute does not distinguish between special damages that are paid by third parties and those that are not." 1996 WL 107405, at *4.  Likewise, the court in *Ruhland* explained, "[Minn. Stat. § 549.09] is concerned with all damages that were *incurred,* not simply those that were *paid*," and past damages were certainly incurred, "regardless of who ultimately paid the bills." 2008 WL 5325427.  The same is true here.

HLC argues that Plaintiff "pursued a damages theory at trial focused solely on RFC's liabilities in the form of allowed claims,"  (Def.'s Opp'n at 7), but ResCap did not present any evidence at trial regarding damages likely to occur in the future. *See Children's Broad. Corp. v. Walt Disney Co.*, 357 F.3d 860, 869 (8th Cir. 2004) (finding that because plaintiff's expert used future earnings to determine the present value of plaintiff's loss, but did not seek future damages, prejudgment interest was properly awarded on plaintiff's damages).  HLC's misplaced focus on "liabilities" versus "losses" ignores the fact that Plaintiff sought, and obtained, damages that were incurred *before* the verdict:  the damages that RFC incurred when settling its claims in Bankruptcy Court.    In short, the damages here are not "future damages."  As such, they are not subject to the limited exception that excludes prejudgment interest on awards of future damages.

Moreover, if the Legislature meant to include damages that have not been "paid" as a form of future damages, ineligible for prejudgment interest, it knew how to do so.  Other subdivisions of Minn. Stat. § 549.09 refer to disbursements "paid or incurred" by the judgment creditor. *See* Minn. Stat. § 549.09, subds. 3 & 4.  The exception for future damages, however, contains no language suggesting that "unpaid" damages are future

damages.  *See id.*, subd. 1(b)(2).  It merely states that preverdict interest shall not be allowed on "judgments or awards for future damages."  *Id.*

The Court finds that Plaintiff is therefore entitled to prejudgment interest under Minn. Stat. § 549.09 on the jury's award of $28.7 million.  This award serves the statute's objectives of compensating Plaintiff for the lost use of its money occasioned by Defendant's conduct, *Poehler*, 899 N.W.2d at 150, and encouraging settlement.  *Adams v. Toyota Motor Corp.*, 867 F.3d 909, 919 (8th Cir. 2017) (citing *Burniece v. Ill. Farmers Ins. Co.*, 398 N.W.2d 542, 544 (Minn. 1987)).  All of the Defendants in this consolidated action were well aware of the additional economic risk of incurring prejudgment interest and attorney's fees, if they were to lose at trial.  In fact, that risk likely animated many, if not all, of the settlements in this consolidated action.  HLC chose to proceed to trial, where it lost.

Preverdict prejudgment interest here shall run from the commencement of this action on December 16, 2013, when service was effective, through November 8, 2018, when the jury rendered its verdict, and shall be at the statutory rate of ten percent per year. *See* Minn. Stat. § 549.09, subd. 1(b); 1(c)(2).  Prejudgment preverdict interest on the jury's award is calculated as follows:

| Period | Interest |
|---|---|
| 12/16/2013 – 12/31/2013 | $125,808.22 |
| 1/1/2014 – 12/31/2014 | $2,870,000.00 |
| 1/1/2015 – 12/31/2015 | $2,870,000.00 |
| 1/1/2016 – 12/31/2016 | $2,877,863.01[4] |

---

[4] Interest for 2016 is higher because it was a leap year.  (*See* Heeman Decl. [Doc. No. 4742] ¶ 8.)

| 1/1/2017 – 12/31/2017 | $2,870,000.00 |
| 1/1/2018 – 11/8/2018 | $2,453,260.27 |
| **TOTAL** | **$14,066,931.50** |

In sum, as an element of Plaintiff's damages, it is entitled to $14,066,931.50 in preverdict prejudgment interest on the jury's award of $28.7 million.

## B. Prejudgment Interest on Attorney's Fees

ResCap has filed a separate petition for an award of attorney's fees and costs, which is under advisement.  (*See* Pl.'s Mot. for Atty's Fees [Doc. No. 4852].)   In the instant motion, Plaintiff also seeks prejudgment interest on any award of attorney's fees and costs. (Pl.'s Mem. at 7–10.)  However, HLC argues that such interest is prohibited by Minn. Stat. § 549.09, subd. 1(b)(5), which provides that preverdict interest shall not be awarded for "that portion of any verdict, award or report which is founded upon interest, or costs, disbursements, attorney fees, or other similar items *added by the court* or arbitrator."  Minn. Stat. § 549.09, subd. 1(b)(5) (emphasis added); (Def.'s Opp'n at 9–15.)

As noted, the parties here stipulated that attorney's fees would be determined by the Court. (Oct. 10, 2018 Stip. [Doc. No. 4570].)   However, neither this stipulation nor the law dictates that an award of attorney's fees in this action is "added by the Court," and therefore excepted from prejudgment interest, as HLC acknowledges.  (Def.'s Opp'n at 12, n.2); *see also St. Jude Med., S.C., Inc. v. Biosense Webster, Inc.*, 12-cv-621 (ADM/TNL), 2014 WL 6673664, at *10 (D. Minn. Nov. 24, 2014) (stating that parties' stipulation that court would determine attorney's fees did not cause attorney's fees to be "added by the court" for purposes of prejudgment interest).

12

Where attorney's fees are the subject matter of the lawsuit, awarding prejudgment interest on a judgment for attorney's fees is permitted. *Gaughan v. Gaughan*, 450 N.W.2d 338, 344 (Minn. Ct. App. 1990). Such fees are not considered to be "added by the court" under Minn. Stat. § 549.09, subd. 1(b)(5).

Plaintiff argues that its attorney's fees are "part and parcel of [its] contractual indemnity claim," (Jan. 31, 2019 Hr'g Tr. [Doc. No. 4976] at 16) (citing *Vesta State Bank v. Indep. State Bank of Minn.*, Nos. CO-96-115, CO-96-1129, CO-96-795, 1996 WL 653967, at *6–7 (Minn. Ct. App. Nov. 12, 1996)), and therefore, its fees are part of the subject matter of this lawsuit. It first points to Section A212 of the Client Guide, which provides for indemnification for "all court costs, attorney's fees and any other costs, fees and expenses" incurred by RFC in enforcing its agreement with HLC. (Pl.'s Mem. at 8.) Plaintiff then relies on the Minnesota Supreme Court's statement in *United Prairie Bank-Mountain Lake v. Haugen Nutrition & Equipment*, 813 N.W.2d 49, 59 (Minn. 2012), that "when a party seeks attorney fees under the express provisions of a contract, the fees are an agreed element of damages available under the contract and are not collateral," and are a "direct consequence of [the defendants'] breach."

But *United Prairie* arose in a different context, addressing the question of whether, under the Minnesota Constitution, the determination of attorney's fees must be made by a jury. *Id.* at 56–63. It did not concern prejudgment interest, nor did it involve a third-party lawsuit or underlying lawsuit. Instead, for the first time under Minnesota law, the court held that where a contract provides for an award of attorney's fees, the right to such fees is a legal claim, not an equitable one, and is subject to a jury trial. *Id.* at 63.

13

Yet *United Prairie* did not overrule long-standing Minnesota precedent holding that attorney's fees due under a contract are not "part of the original debt," and are "not really due when suit is brought, for the services of the attorney are not then fully performed." *Campbell v. Worman*, 60 N.W. 668, 669 (1894). A claim for attorney's fees under a promissory note, for example, is not "part of the cause of action alleged," nor is it "a distinct cause of action." *First State Bank of Grand Rapids v. Cohasset Wooden Ware Co.*, 161 N.W. 398, 399 (1917). Instead, as the dissent in *United Prairie* observed, such claims are "not to be submitted with the issues upon which the liability of a defendant depends," 813 N.W.2d at 65 (Dietzen, J. dissenting) (quoting *First State Bank*, 161 N.W.2d at 399), as the right to contractual attorney's fees "does not accrue until the payee incurs the liability." *Campbell*, 60 N.W. at 669.

When considering the application of prejudgment interest to an attorney's fee award, Minnesota courts generally distinguish between attorney's fees incurred in underlying litigation, which are often the subject of a subsequent lawsuit to recover fees, and attorney's fees that arise contemporaneously in a single suit.

### 1. Underlying Litigation

As to attorney's fees arising from underlying litigation, in *Seaway Port Authority of Duluth v. Midland Insurance Co.*, 430 N.W.2d 242, 252 (Minn. Ct. App. 1988), a declaratory judgment suit, the Minnesota Court of Appeals affirmed an award of prejudgment interest associated with Seaway's costs of defending itself in underlying bond default actions. The court observed that "the costs and fees for which [the plaintiff] is reimbursed have not been 'added by the court' to this judgment, they are the subject matter

of the judgment itself." *Id.* at 252.  The court did not address the question of whether attorney's fees related to the declaratory judgment action itself were subject to prejudgment interest, however.

Relying on *Seaway*, in *Gaughan*, the Minnesota Court of Appeals found that where the action arose out of an attorney's retainer agreement, the unpaid legal fees were the subject matter of the lawsuit.  450 N.W.2d at 343–44.  The law firm in question had sought relief in two separate proceedings, filing a civil suit for breach of contract and filing an application for an attorney's lien in an existing family law action, where the firm represented a party in dissolution proceedings.  *Id.* at 340–41.  The trial court consolidated the proceedings and entered an attorney's lien in the law firm's favor.  *Id.* at 341.  On appeal, despite the appellate court's finding that the legal fees were the subject matter of the lawsuit, it denied prejudgment interest because such interest "is authorized only for money judgments," and an attorney's lien is not considered a money judgment.  *Id.* at 344 (citing Minn. Stat. § 549.09, subd. 1(a)).  Accordingly, the Minnesota Court of Appeals held that the fees were not eligible for prejudgment interest in a statutory attorney's lien action.[5]  *Id.* at 344 (*comparing* the attorney's lien statute, Minn. Stat. § 481.13, which contained no language regarding prejudgment interest, *with* mechanic's lien statute, Minn. Stat. § 514.135 (1988), under which prejudgment interest was expressly available).

---

[5] However, the Minnesota Court of Appeals also found that the two proceedings were improperly consolidated, and remanded the matter to the trial court.  *Gaughan*, 450 N.W.2d at 344.  This suggests that if the law firm chose to proceed with its civil contract suit and prevailed, any resulting damages award would be subject to prejudgment interest, as the limitations of the attorney's lien statute would not be implicated.

In *Vesta State Bank*, a fraud lawsuit, the trial court added the plaintiff's attorney's fees from two underlying actions as consequential damages, but declined to award prejudgment interest on the fees pursuant to Minn. Stat. § 549.09, subd. 1(b)(5).  1996 WL 653967, at *6.  The Minnesota Court of Appeals reversed the decision on prejudgment interest, ruling that attorney's fees arising from the underlying actions were subject to prejudgment interest, because they were "part of the damage being compensated, rather than additional awards to [the plaintiff] 'added by the court.'"  *Id.* at 6–7.

### 2.  Fees Contemporaneously Incurred

In certain circumstances, Minnesota courts have awarded prejudgment interest on attorney's fees contemporaneously incurred in the litigation at hand.  For instance, in *Kraus-Anderson Construction Co. v. Transportation Insurance. Co.*, No. A10-698, 2011 WL 1364251, at *13 (Minn. Ct. App. 2011), after an arbitration award was entered against Kraus-Anderson related to defective construction work, the company brought a declaratory judgment action against several insurance companies for breach of their duty to defend. *Id.* at *1–2.  The Minnesota Court of Appeals affirmed an award of prejudgment interest for Kraus-Anderson's attorney's fees incurred in the second lawsuit. *Id.* at *13.  The court concluded that because attorney's fees in a declaratory judgment action "arise directly as a result of an insurer's breach of its duty to defend and are recoverable as contract damages of that breach," they qualify as "the subject matter of the lawsuit," which are not "added by the court" and thus fall outside the scope of Minn. Stat. § 549.09 subd. 1(b)(5). *Id.*

ResCap argues that the facts of this case are similar those in *Kraus-Anderson*.  (Pl.'s Mem. at 10.)  But *Kraus-Anderson* did not involve a contractual provision for attorney's

fees. Instead, the fees were awarded pursuant to Minnesota's exception to the "American rule" that allows for recovery of attorney's fees for a successful duty-to-defend declaratory judgment action against an insurer. 2011 WL 1364251, at *13–14 (citing *Morrison v. Swensen*, 142 N.W.2d 640 (Minn. 1966)). The Minnesota Supreme Court has explicitly recognized the narrowness of the "*Morrison* exception," which only applies to a duty-to-defend claim against an insurer. *See In re Silicone Implant Ins. Coverage Litig.*, 667 N.W.2d 405, 425 (Minn. 2003) (stating that *Morrison* is limited to duty-to-defend claims).

Similarly, in *St. Jude*, 2014 WL 6673664, at *9–10, the Court held that prejudgment interest was properly applied to an attorney's fee award. The Court granted summary judgment to St. Jude against St. Jude's competitor, Biosense, and a former St. Jude employee, who had left to work for Biosense, on claims of breach of contract and tortious interference. *Id.* at *1–2. A jury awarded damages to St. Jude, and the Court ordered Biosense to pay attorney's fees under the "third-party exception to the 'American rule,'" based on the costs St. Jude was forced to incur in suing the individual employee. *Id.* The Court also awarded prejudgment interest on the attorney's fees, which were "one portion of the judgment for compensatory damages based on Biosense's tortious interference." *Id.* at *10.

However, in *Select Comfort Corp. v. Arrowood Indemnity Co.*, No. 13-cv-2975 (JNE/FLN), 2015 WL 4992351, at *9 (D. Minn. Aug. 20, 2015), a different judge of this Court declined to follow *Kraus-Anderson* and *St. Jude* and denied prejudgment interest on attorney's fees in a third-party action. In *Select Comfort*, the plaintiff sued its insurer for

some of the costs it had incurred to defend itself in the "*Stearns*" litigation brought by consumers over defective mattresses.   *Id.* at *1–2.  As Judge Ericksen explained,

> Minnesota courts have explained that Minn. Stat. § 549.09, subd. 1(b)(5) "does not preclude adding prejudgment interest to a judgment for attorney fees when the fees are the subject matter of the lawsuit." *Gaughan v. Gaughan*, 450 N.W.2d 338, 344 (Minn. Ct. App. 1990).   But Select Comfort's [attorney fees award]—regardless of the rationale underlying it— is not the subject matter of this lawsuit; its *Stearns* defense costs are.  To the extent that the unpublished decisions offered by Select Comfort reach a different conclusion, the Court does not find them persuasive. Select Comfort's *Morrison* award falls squarely within the plain language of the exclusion at Minn. Stat. § 549.09, subdivision 1(b)(5), and Select Comfort cites no other authority by which pre-judgment interest may be added.

*Id.* at *9.

Defendant correctly notes "the unpublished decisions" that Judge Ericksen refers to includes *Kraus-Anderson*.  (Def.'s Opp'n at 14 n.4) (noting that while the Court did not mention these cases by name, the Plaintiff's unpublished legal authorities included *Kraus-Anderson*).  As in *Select Comfort*, the attorney's fees and costs incurred in *this* suit were not  the subject matter of this litigation.  Had Plaintiff sought to recover here the attorney's fees that it incurred in defending itself in the underlying lawsuits or in Bankruptcy Court, it could plausibly claim that such fees formed part of its damages.   But Plaintiff's indemnification claim was the subject matter of this litigation, and it did not involve damages for RFC's underlying attorney's fees.  Now, however, Plaintiff seeks to recoup its attorney's fees and costs incurred in this very litigation.  The Court finds that the fees and costs here fall under the exception that excludes prejudgment interest on awards of attorney's fees and costs added by the court.  Minn. Stat. § 549.09, subd. 1(b)(5).

Moreover, Defendant correctly observes that the attorney's fees here are unlike damages incurred as of the date of the commencement of suit, which are properly subject to prejudgment interest to account for the lost time-value of money. *See* Minn. Stat. § 549.09, subd. 1(b). Rather, here, ResCap seeks to recover prejudgment interest on attorney's fees that it incurred *after* the commencement of this litigation—fees that greatly increased shortly before and during trial.

For all of the forgoing reasons, the Court declines to award prejudgment interest on any potential award of attorney's fees. As noted, Plaintiff's attorney's fee petition remains under advisement and a separate order will be forthcoming.

## C.  Whether a Reduction is Appropriate

HLC argues that if the Court awards any preverdict prejudgment interest, it should reduce the award in light of "Plaintiff's extraordinary delay in seeking discovery related to its allocation theory of damages." (Def.'s Opp'n at 15.) HLC asserts that even though Minn. Stat. § 549.09 governs the award of prejudgment interest, it does not displace the common law, (*id.*) (citing *Hogenson*, 852 N.W.2d at 273, under which courts have the discretion to reduce or even deny preverdict interest. (*Id.*) (citing *Val-U Const. Co. of S.D. v. Rosebud Sioux Tribe*, 146 F.3d 573, 582 (8th Cir. 1998)).

The Eighth Circuit has advised that "prejudgment interest should ordinarily be granted unless exceptional or unusual circumstances exist making the award of interest inequitable." *Stroh Container Co. v. Delphi Indus., Inc.*, 783 F.2d 743, 752 (8th Cir. 1986). In fact, some Minnesota courts have held that the language of Minn. Stat. § 549.09

*mandates* an award of prejudgment interest, eliminating any discretion to reduce an award. *See Tate v. Scanlan Int'l, Inc.*, 403 N.W.2d 666, 674 (Minn. Ct. App. 1987).

This Court has presided over this consolidated litigation for more than four years. During this time, the Court held 38 monthly status conferences and presided over numerous motion hearings and teleconferences dedicated to resolving the parties' discovery disputes and streamlining these cases for trial or settlement. Even if this Court has the discretion to reduce or eliminate an award of prejudgment interest under Minn. State. § 549.09, the Court declines to do so. Delays in this litigation occurred on both sides, prompted by numerous factors, including the complexity of legal issues, allocation, and the breadth of evidence. *See Stroh*, 783 F.2d at 752 (denying request to reduce prejudgment interest where any delays were "simply those reasonably to be expected in the course of ordinary litigation."). Nor is there any allegation of bad faith on the part of ResCap. ResCap's conduct does not render the award of prejudgment interest inequitable. In fact, the contrary is true—reducing or denying prejudgment interest would be inequitable to ResCap, which has been deprived of the interest on the damages that it incurred over five years ago.

### D.  Postverdict Prejudgment Interest

Finally, ResCap seeks postverdict prejudgment interest, running from verdict to entry of final judgment. (Pl.'s Mem. at 10–11.) HLC argues that because Plaintiff is not entitled to preverdict prejudgment interest on the jury's award or ResCap's attorney's fees and costs, it is likewise not entitled to postverdict prejudgment interest. (Def.'s Mem. at 17.)

Under Minnesota law, "[b]ecause preverdict interest is part of compensatory damages, it is part of a prevailing party's judgment or award." *Hogenson*, 852 N.W.2d at 276. In *Hogenson*, the defendant argued that the plaintiff should have received postverdict prejudgment interest only on the damages that the jury awarded, not on the sum of damages plus preverdict interest. *Id.* The Minnesota Court of Appeals rejected this argument. Thus, when awarding postverdict prejudgment interest, courts may "include[e] the preverdict interest in the total sum of the award upon which postverdict, prejudgment interest [is] calculated." *Id.*

The Court thus finds that Plaintiff is entitled to postverdict prejudgment interest on its damages award, inclusive of preverdict prejudgment interest on the jury's award.

## IV.    ORDER

1.    Plaintiff's Motion for Prejudgment Interest [Doc. No. 4739] is **GRANTED IN PART and DENIED IN PART**.

2.    Plaintiff is awarded $14,066,931.50 in preverdict prejudgment interest on the jury's damages award from commencement of the litigation through the jury's verdict on November 8, 2018.

3.    Plaintiff is awarded postverdict prejudgment interest on the total award of damages, inclusive of preverdict prejudgment interest on the jury's award.

4.    Plaintiff is denied prejudgment interest on any award of attorney's fees and costs.

Dated: March 18, 2019                          s/Susan Richard Nelson
                                               SUSAN RICHARD NELSON
                                               United States District Judge