# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

_____

| | |
|---|---|
| In Re: RFC and ResCap Liquidating Trust Litigation | Case No. 13-cv-3451 (SRN/HB) |
| | **MEMORANDUM OPINION AND ORDER** |
| *This document relates to:* | |
| Residential Funding Company, LLC and ResCap Liquidating Trust v. InterLinc Mortgage Services, LLC, in its own Capacity, and as successor to Hometown Mortgage Services, Inc. Douglas Rohm, and Edward Danielczyk, No. 16-cv-3024(SRN/HB) | |

_____

SUSAN RICHARD NELSON, United States District Judge

## I.   INTRODUCTION

Before the Court is the Motion to Bifurcate [Doc. No. 5070] filed by Defendant InterLinc Mortgage Services, LLC ("InterLinc"). For the reasons set forth below, Defendant's motion is denied.

## II.  BACKGROUND

### A. Litigation

In December 2013, Plaintiffs Residential Funding Company, LLC ("RFC") and Rescap Liquidating Trust ("ResCap") sued Defendant Hometown Mortgage Services, Inc. ("Hometown").  *See* Compl., *Residential Funding Co., LLC. v. Hometown Mortg. Servs.,*

*Inc.* ("*RFC v. Hometown*"), No. 13-cv-3509 (SRN/HB) [Doc. No. 1]. Hometown was a mortgage originator owned and managed by Defendants Douglas Rohm and Edward Danielczyk (the "Individual Defendants"). It sold over 2,000 residential mortgage loans to RFC with a principal balance in excess of $200 million. (Am. Compl. [Doc. No. 2611] ¶5.) The parties' contractual relationship required Hometown to make numerous representations and warranties (R&Ws) to RFC about the characteristics and quality of the loans. (*Id.*)

In the lawsuit, Plaintiffs asserted claims for breach of contract and indemnification, alleging that Hometown breached its R&Ws by selling defective loans to RFC, for which it was required to indemnify Plaintiffs for losses that RFC incurred in bankruptcy settlements that it ultimately entered into in the Southern District of New York. (*See id.* ¶¶ 24–25.)

Within a few months of the filing of the lawsuit, however, Plaintiffs contend that InterLinc and the Individual Defendants, who were co-owners of Hometown, formulated a plan to transfer Hometown's operations and assets to InterLinc. (Am. Compl. ¶ 90.) The purpose of this plan, Plaintiffs allege, was to leave Hometown with insufficient assets to satisfy any liability to Plaintiffs or to Hometown's other creditors. (*Id.*) Plaintiffs assert that InterLinc and the Individual Defendants were to be the primary beneficiaries of this plan, under which the Individual Defendants were to receive "lucrative employment with InterLinc." (*Id.*)

The transfer occurred in March 2014, with InterLinc purchasing certain assets and assuming certain liabilities and contracts from Hometown, pursuant to an Asset Purchase

2

Agreement ("APA"). (*Id.*, Ex. G [Doc. No. 2611-35] (APA)). Among the assets that InterLinc purchased—for a grand total of $124,806.70—were furniture and fixtures, property and equipment, software, and leasehold improvements. (APA §§ 101, 102; Sch. 101B, 102B.) Plaintiffs allege that some of Hometown's former employees, utilizing the acquired assets, continued Hometown's business operations as a division of InterLinc known as "InterLinc Alabama." (Am. Compl. ¶¶ 91–92.)

As to liabilities, the APA provided:

1.03 <u>Assumed Liabilities</u>. Buyer is not assuming any of Seller's liabilities, except for the "Assumed Liabilities" which consist solely of the following: Seller's interest in, and to, the leases and other agreements listed on Schedule 1.01, assuming such leases and other agreements are in effect on the closing date[.]

(APA § 1.03.) Schedule 1.01 listed two leases. (*Id.*, Sch. 1.01D.)

In January 2015, Plaintiffs' case against Hometown was consolidated, along with numerous others, into the consolidated case number 13-cv-3451. (Admin. Order [Doc. No. 97].)

In September 2015, Hometown filed for chapter 7 bankruptcy in the Northern District of Alabama. (Hometown Notice of Bankr. [Doc. No. 850].) In Hometown's bankruptcy petition, it listed total assets of $140,930.93 and total liabilities of $286,999.30. (Am. Compl. ¶ 98.) Plaintiffs allege that Hometown failed to disclose that its business was continuing under the InterLinc name and using Hometown's offices, management, and employees. (*Id.* ¶ 100.) In the bankruptcy action, RFC and ResCap filed an unsecured proof of claim for $44 million. *See In re Hometown Mortg. Servs., Inc.* ("*Hometown*

3

*Bankr.*"), No. 15-3478-DSC7 [Doc. No. 1], Ch. 7 Voluntary Pet. (Bankr. N.D. Ala. Sept. 1, 2015).

In June 2016, ResCap settled the $44 million claim against Hometown in exchange for all of Hometown's books and records relevant to ResCap's discovery requests in the Minnesota federal litigation, along with all of Hometown's computer servers, personal computers, and related equipment, and an assignment of claims belonging to Hometown or its bankruptcy estate. *Hometown Bankr.*, Settlement and Purchase and Sale Agmt. [Doc. No. 63-1] at 3. The bankruptcy court approved the settlement. *Id.*, Approval Order [Doc. No. 75].

In September 2016, Plaintiffs commenced a new lawsuit against the current Defendants, InterLinc and the two Individual Defendants. *Residential Funding Co. v. InterLinc Mortg. Servs., LLC*, 16-cv-3024 (SRN/HB) (Compl. [Doc. No. 1].) Plaintiffs allege that under a theory of successor liability, Hometown merged into InterLinc in order to shield Hometown's assets and protect it against liabilities. (*Id.* ¶¶ 5, 10, 24–26, 93, 130.) In addition to Plaintiffs' breach of contract and indemnification claims, they also assert claims of constructive and actual fraudulent transfer against InterLinc and the Individual Defendants. (*Id.*, Counts III & IV.)

On June 1, 2017, Plaintiffs filed the Amended Complaint, which is the operative pleading here. The parties have since exchanged and responded to written discovery. Discovery was stayed from August 21, 2018 through November 28, 2018, during which the first trial commenced in the consolidated action, among other things. (*See* Aug. 21, 2018 Order [Doc. No. 4319]; Nov. 28, 2018 Order [Doc. No. 4731].)

In this motion, InterLinc moves to bifurcate Plaintiffs' claims for actual and constructive fraudulent transfer from the claims for breach of contract and indemnification. (Def.'s Mot. to Bifurcate at 1.) It seeks to first resolve the fraudulent transfer claims and, during that time, stay discovery on the loan-related claims until the fraudulent transfer claims are resolved. (*Id.*) Plaintiffs oppose the motion. (*See generally* Pls.' Opp'n [Doc. No. 5086].) Although the Individual Defendants do not join in the motion, they do not oppose it. (*See* Individual Defs.' Resp. [Doc. No. 5084].)

## II. DISCUSSION

Federal Rule of Civil Procedure 42(b) permits Courts to order bifurcation: "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial." Fed. R. Civ. P. 42(b). The moving party bears a "heavy burden" to prove that separate trials meet the objectives of Rule 42(b). *Collins v. Depositors Ins. Co.*, No. 12-cv-3133 (PAM/LIB), 2014 WL 12616731, at *1 (D. Minn. Aug. 21, 2014). "[T]he potential benefits of bifurcation must outweigh the potential detriment." *Weitz Co., LLC v. MH Washington, LLC*, No. 06-0559-CV-W-DGK, 2008 WL 4371400, at *1 (W.D. Mo. Sept. 20, 2008) (citation omitted). Because piecemeal litigation is inefficient, bifurcation is the exception, and not the rule. *See Transclean Corp. v. Bridgewood Servs., Inc.*, 101 F. Supp. 2d 788, 793 (D. Minn. 2000) (citing Fed. R. Civ. P. 42 Advis. Comm. Notes (1966)). A court considering a motion to bifurcate must weigh the Rule 42(b) factors of whether bifurcation would promote convenience, judicial economy, and the avoidance of prejudice.

*ADT Sec. Servs., Inc. v. Swenson*, No. 07-cv-2983, 2011 WL 4396918, at *5 (D. Minn. Sept. 21, 2011).

InterLinc argues that the fraudulent transfer claims are amenable to adjudication prior to addressing the "more complex, time consuming and expensive loan related claims." (Def.'s Mem. at 13 [Doc. No. 5072].) It contends that the determination of successor liability under Minnesota's fraudulent transfer law is a threshold issue because, InterLinc argues, its potential liability is limited to the lesser of: (1) the amount necessary to satisfy the claim, which, Plaintiffs allege, exceeds $44 million; or (2) the value of the assets transferred under the APA ($124,806.70). Thus, InterLinc argues that bifurcation is warranted under Rule 42(b) because it would save the parties' time and money, expedite the litigation, and conserve judicial resources. (*Id.* at 19–23.)

Plaintiffs, however, dispute any benefit of bifurcation. (Pls.' Opp'n at 2.) Rather, they argue that bifurcation would make the case longer and more expensive to resolve, as it would involve two rounds of discovery and trials, with many overlapping witnesses and interconnected issues. (*Id.*) In addition, Plaintiffs contend that InterLinc's position on the limits of its liability is incorrect, as InterLinc conflates a fraudulent transfer claim with the distinct doctrine of successor liability based on fraudulent transfer. (*Id.*)

The Court finds that bifurcation here would not serve the purposes of convenience or judicial economy. Rather bifurcation would be inconvenient because the claims at issue are not as separate as InterLinc asserts. "Bifurcation furthers convenience only when the separable claims are 'substantially different.'" *Collins*, 2014 WL 12616731, at *1 (citing *ADT Sec. Servs.*, 2011 WL 4396918, at *7). Under the facts here, the claims of breach of

contract, indemnification, and fraudulent transfer are intertwined. As Plaintiffs note, under both Minnesota and Alabama law, constructive fraudulent transfer involves an insolvent debtor who transfers its assets without receiving reasonably equivalent value at the time, or the debtor becomes insolvent as a result of the transfer. *See* Minn. Stat. § 513.45; Ala. Code § 8-9A-5(a). Plaintiffs allege that Hometown's liability to them for indemnity and breach of contract is Hometown's largest liability, by far. (Am. Compl. ¶¶ 107–22.) InterLinc disputes the liability, and disputes that Hometown was insolvent, or rendered insolvent, as a result of the transaction with Hometown. (*Id.* ¶¶ 96, 123–39; InterLinc Answer ¶¶ 96, 123–39.) But as Plaintiffs state, "[b]ecause Hometown's disputed insolvency is almost entirely a function of its disputed liability to Plaintiffs for indemnity and breach of contract, the two issues are intertwined." (Pls.' Opp'n at 10.) The Court agrees.

Also when determining motions to bifurcate, this Court considers whether any of the same witnesses would be required to appear for both trials—a fact that weighs against bifurcation. *See Collins*, 2014 WL 12616731, at *1; *Sobolik v. Briggs & Stratton Power Prods. Grp., LLC*, No. 09-cv-1785 (JRT/LIB), 2011 WL 5374440, at *1 (D. Minn. Nov. 7, 2011); *ADT Sec. Servs.*, 2011 WL 4396918, at *7–8; *i-Sys., Inc. v. Softwares, Inc.*, No. 02-cv-1951 (JRT/FLN), 2004 WL 742082, at * 18 (D. Minn. Mar. 29, 2004); *Transclean Corp.*, 101 F. Supp. 2d at 792–93. Here, Plaintiffs intend to use the same witnesses to establish their damages against InterLinc and to demonstrate Hometown's liability as they would to prove Hometown's insolvency for purposes of the fraudulent transfer claim. (*Id.* at 11.) Moreover, a number of witnesses relevant to the Hometown R&W claims now

7

work for InterLinc. (*Id.*) For example, in addition to the Individual Defendants, Plaintiffs have previously noticed the deposition of Kimila Tucker, a senior underwriter at Hometown who later worked for InterLinc. (*Id.*) Like the Individual Defendants, Ms. Tucker has knowledge of Hometown's loan business, as well as the transaction with InterLinc. (*Id.*) If this case were bifurcated, these witnesses would be required to testify twice, likely offering the same testimony.

This Court also considers whether the party seeking bifurcation has demonstrated prejudice absent bifurcation. *Collins*, 2014 WL 12616731, at *2 ("Failure to show prejudice alone warrants denial of a motion for separate trials."); *Church v. City of St. Michael*, No. 15-cv-1575 (DWF/JSM), 2016 WL 10490445, at *1–2 (D. Minn. Sept. 21, 2016) (denying motion to bifurcate and noting that "failure to bifurcate the trial will not result in prejudice to either party.") InterLinc does not identify the prejudice that it hopes to avoid through bifurcation. The Court presumes that the purported "prejudice" is implicit in InterLinc's expenditure of time and money to litigate the R&W claims alongside the fraudulent transfer claims, compounded by InterLinc's position that liability is quite limited under Minnesota's fraudulent transfer statute. But that issue is strongly disputed by Plaintiffs, who assert that under successor liability principles, InterLinc is liable for Hometown's debts and liabilities. (Pls.' Opp'n at 16–25.)

The Court need not resolve the issue of liability limits at this time, nor must it determine whether Minnesota or Alabama law applies at this time. InterLinc is certainly subject to potential liability in some amount based on Plaintiffs' intertwined claims of breach of contract, indemnity, and fraudulent transfer. The prejudice that would inure to

8

Plaintiffs if the fraudulent transfer claims were tried separately is significant, due to overlapping witnesses and overlapping proof. In addition, forcing the breach of contract and indemnification claims to grind to a halt would further delay Plaintiffs' day in court on those claims. And finally, from the Court's perspective, bifurcation would undermine the convenience and judicial efficiency of a single trial, on all of the claims.

For all of the foregoing reasons, which the Court has weighed, InterLinc has not met the heavy burden necessary for bifurcation under Rule 42(b).

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Defendant InterLinc's Motion to Bifurcate [Doc. No. 5070] is **DENIED.**


Dated: June 3, 2019                               s/Susan Richard Nelson
                                                  SUSAN RICHARD NELSON
                                                  United States District Judge