# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In Re: RFC and RESCAP Liquidating Trust Action<br><br>*This document relates to*:<br><br>ResCap Liquidating Trust v. Primary Residential Mortgage, Inc., Case No. 16-cv-4070 (SRN/HB) | Case No. 0:13-cv-3451 (SRN/HB)<br><br>**OMNIBUS MEMORANDUM OPINION AND ORDER RE: MOTIONS IN LIMINE** |

SUSAN RICHARD NELSON, United States District Judge

Plaintiff ResCap Liquidating Trust ("ResCap") and Defendant Primary Residential Mortgage, Inc. ("PRMI") are scheduled for trial on Monday, February 10, 2020. Plaintiff has filed three motions in limine in advance of trial [Doc. Nos. 5364, 5366, 5367], to which Defendant has responded [Doc. Nos. 5373, 5375, 5378]. This Order resolves these motions, for the most part. It also defers ruling on some issues until trial. Each motion is addressed in turn. The Court assumes familiarity with the facts and procedural background of this litigation.

In addition, the Court considers certain evidentiary issues raised in Plaintiff's January 21, 2020 letter [Doc. No. 5380], which the parties addressed at the January 23, 2020 pretrial hearing, as well as administrative matters regarding trial.

# I.      RESCAP'S MOTION IN LIMINE NO. 1: Cumulative Testimony

## A.      ResCap's Argument

ResCap moves to exclude portions of the opinions of defense experts Phillip Burnaman, Steven Schwarcz, and Kori Keith regarding the purported industry interpretation of representations and warranties that RFC made to the trusts ("Trust Reps"). (Pl.'s MIL No. 1 [Doc. No. 5364] at 1.)  It argues that pursuant to Federal Rule of Evidence 403, their testimony is cumulative, including testimony regarding the Guideline Reps, MLS Reps, Default Reps, Credit Grade Reps, Loan Program Reps, Prospectus Reps, Occupancy Reps, Fraud Reps, and fraud disclaimers. (*Id.* at 1–2.)  In support of its position, ResCap provides a table summarizing the purportedly overlapping opinions found in the Burnaman Report [Doc. No. 5286], Schwarcz Report [Doc. No. 5286-4], and the Keith Report [Doc. No. 5286-8]. (Pl.'s MIL No. 1 at 4–7 (Table I).)  ResCap points to authority from this District holding that experts' differing backgrounds do not warrant the admission of truly cumulative testimony. (*Id.* at 3 (citing *Finke v. Hunter's View, Ltd.*, 596 F. Supp. 2d 1254, 1262–64 (D. Minn. 2009).)

PRMI argues that each expert is qualified in different ways, with Professor Schwarcz opining from the perspective of a securitization expert, Mr. Burnaman as an RMBS transactional expert, and Ms. Keith as an underwriting expert.  ResCap responds, however, that such differing perspectives are irrelevant. (*Id.*)  In fact, it contends that PRMI has conceded that each expert offers the same opinion. (*Id.* at 2–3 (quoting defense counsel at the Dec. 2, 2019 Hr'g Tr. [Doc. No. 5352] at 29) ("[A]ll of them opine that these reps would not have been reasonably understood to be general warranties against borrower fraud at the time

of the settlements here.").)  Moreover, they assert that Keith makes no distinctions between the opinions of Burnaman and Schwarcz, "repeatedly collapsing the two."  (*Id.* (citing Keith Rpt. ¶¶ 117 ("Schwarcz and Burnaman have both opined that this type of fraud disclaimer would have made it even more clear that . . . RFC was not assuming any liability with respect to fraud or misrepresentation in the origination of the loan."); ¶ 120 ("Schwarcz and Burnaman opine that the 'MLS representation was not written, understood, or intended to be a 'no fraud' representation and warranty.").)

### B.    PRMI's Response

PRMI argues that the Court should deny this motion because ResCap cannot establish that the probative value of PRMI's expert testimony is "substantially outweighed" by any purported concerns about cumulative testimony or waste of time.  It argues that:  (1) the testimony is highly probative; (2) "court after court has recognized that it is *not* needlessly cumulative for different experts to testify about the same subject matter if they testify from different professional perspectives;" and (3) even if Plaintiff's concerns were valid, they would nevertheless not substantially outweigh the probative value of PRMI's expert testimony.  (Def.'s Opp'n to Pl.'s MIL No. 1 [Doc. No. 5373] at 1–2.)

### C.    Ruling

Pursuant to Federal Rule of Evidence 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  This rule grants district courts the discretion to exclude testimony— including expert testimony that would otherwise be admissible—that is unnecessarily

cumulative.  *See Chism v. CNH Am. LLC*, 638 F.3d 637, 642 (8th Cir. 2011) (affirming exclusion of expert testimony under Fed. R. Evid. 403 that was "minimally probative, cumulative, and [that] would have unnecessarily confused the issue"); *Upsher-Smith Labs., Inc. v. Mylan Labs., Inc.*, 944 F. Supp. 1411, 1440 (D. Minn. 1996) ("As allowed by Rule 403, Federal Rules of Evidence, a Court may limit or exclude expert testimony which is cumulative." (citations omitted) (footnote omitted)).  "In weighing the probative value of evidence against the dangers and considerations enumerated in Rule 403, the general rule is that the balance should be struck in favor of admission."  *United States v. Dennis*, 625 F.2d 782, 797 (8th Cir. 1980) (citing *United States v. Day*, 591 F.2d 861, 878 (D.C. Cir. 1978)).  Nevertheless, courts in this district have, on occasion, excluded expert opinions on the same topic where each experts' experience and background were in the same field, but in different subsets of that field.  *See Finke*, 596 F. Supp. 2d at 1262–64 (limiting three experts from testifying to the same opinions despite their slightly different backgrounds).

However, as PRMI notes, even where multiple expert witnesses reach the same conclusion on a given issue, their testimony is not necessarily cumulative for Rule 403 purposes when each expert possesses differing backgrounds and qualifications for giving their opinions.  The Eleventh Circuit has acknowledged this principle.  *See Tran v. Toyota Motor Corp.*, 420 F.3d 1310, 1315 (11th Cir. 2005) (noting that district courts abuse their discretion to exclude cumulative expert testimony where the excluded expert's analysis is "somewhat different," "more comprehensive," and the witness has "different, and arguably better qualifications than the other experts" (citation omitted) (internal quotation marks omitted)); *United States v. Frazier*, 387 F.3d 1244, 1298 (11th Cir. 2004) (noting that in certain fields,

experience is the "predominant, if not sole, basis for a great deal of reliable expert testimony" and that there are "many different kinds of experts, and many different kinds of expertise" (citation omitted) (internal quotation marks omitted)). To that end, "experts from different, albeit related, disciplines may both testify," at the discretion of the Court, "even if their findings are consistent with each other and even if their testimony overlaps." *Celador Int'l, Ltd. v. Walt Disney Co.*, No. CV-04-3541-FMC, 2008 WL 11342595, at *6 (C.D. Cal. Dec. 17, 2008) (Special Master Kough), *adopted in full*, 2009 WL 10675217, at *2 (C.D. Cal. Feb. 13, 2009); *see also Salerno v. Auto Owners Ins. Co.*, No. 8:04-cv-1056-T-24 MAP, 2007 WL 106538, at *1 (M.D. Fla. Jan. 9, 2007) (declining to exclude testimony from two experts opining on the duties an insurance company owed to its insureds where each expert was testifying from "different perspectives," namely, the perspective of an insurance attorney and the perspective of a founding member of an insurance company).

Here, it is undisputed that all three experts are opining on the same issue and reach the same conclusion. However, Professor Schwarcz is opining from the perspective of a securitization expert, Mr. Burnaman from the perspective of an RMBS transactional expert, and Ms. Keith from the perspective of an underwriting expert. Accordingly, while all three experts' opinions overlap, and their expertise coalesces around the same field, each expert appears to have a different perspective and background from which to offer their opinion. *See Celador Int'l, Ltd.*, 2008 WL 11342595, at *6; *Salerno*, 2007 WL 106538, at *1. The Court holds that these differences—however slight—mean that the "probative value" of each experts' testimony is *not* "substantially outweighed" by the danger of wasting time or needlessly presenting cumulative evidence, at least not facially. *See Dennis*, 625 F.2d at 797

(noting that in a Rule 403 balancing test, "the general rule is that the balance should be struck in favor of admission"). However, if it becomes apparent at trial that the "different perspectives" of each expert are, in actuality, the same, or that the testimony becomes excessively cumulative, the Court will entertain an objection to that effect.

While PRMI will be permitted to offer, subject to the warning noted above, the opinions of Professor Schwarcz, Mr. Burnaman, and Ms. Keith, the Court grants one aspect of ResCap's motion. ResCap notes that Ms. Keith's opinions on the various Trust Reps are often accompanied by an affirmation that Professor Schwarcz and Mr. Burnaman have reached a similar conclusion. (*See* Pl.'s MIL No. 1 at 4–7.) In some cases, Ms. Keith simply recites the opinions of Professor Schwarcz and Mr. Burnaman verbatim without offering her own opinion. (*Id.*) As the Court recently noted, experts are not permitted to simply repeat or adopt the findings of other experts without attempting to assess the validity of the opinions of those experts. *See In re ResCap Liquidating Tr. Litig.* ("*PRMI Daubert Order*"), ___ F. Supp. 3d ___, No. 13-cv-3451, 2020 WL 209790, at *16, (D. Minn. Jan. 14, 2020) (citation omitted). Moreover, experts "may not offer opinions which serve no purpose other than to 'bolster' [another expert's] opinions." *Simmons Food, Inc. v. Indus. Risk Insurers*, No. 5:13-CV-05204, 2015 WL 12914256, at *2 (W.D. Ark. Oct. 6, 2015); *see also MCI Comm'ns, Inc. v. Maverick Cutting & Breaking LLC*, 374 F. Supp. 3d 789, 810 (D. Minn. 2019) (noting that experts may offer statements of fact as the basis for their opinions "but may not opine on their veracity or on [another] testifying witnesses' credibility"). At least some of Ms. Keith's testimony violates these principles because, in a few portions of her opinion, she merely recites Professor Schwarcz's and Mr. Burnaman's testimony without any analysis. (*See* Pl.'s

MIL No. 1 at 4–7 (noting ¶¶ 117, 120, 125, 153 of Ms. Keith's report); *see also Simmons Food, Inc.*, 2015 WL 12914256, at *2; *PRMI Daubert Order*, 2020 WL 209790, at *16. Such testimony will not be permitted at trial, and is excluded.

In sum, and in accordance with the guidance provided above, ResCap's Motion in Limine No. 1 is granted in part (as to certain portions of Ms. Keith's testimony) and denied in part (as to ResCap's arguments regarding cumulative evidence).

## II.     RESCAP'S MOTION IN LIMINE NO. 2:  Corporate Designee

### A.     ResCap's Argument

In this motion, ResCap moves affirmatively for an order permitting its corporate designee, Teresa Farley, to testify as to non-hearsay matters that she disclosed during a Rule 30(b)(6) deposition based on facts within Plaintiff's corporate knowledge.  (Pl.'s MIL No. 2 [Doc. No. 5366] at 1.)    The testimony concerns "RFC's subjective interpretation, understanding, and corporate position regarding the history and meaning of representations, warranties, and disclaimers it made in hundreds of RMBS transactions over the years."  (*Id.*)  Plaintiff asserts that the relevant testimony concerns RFC's "collective knowledge [and] subjective belief," (*id.* (citing *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 434 (5th Cir. 2006)), and is "particularly suitable" to disclosure at trial based on corporate knowledge. (*Id.* (citing *Sara Lee Corp. v. Kraft Foods Inc.*, 276 F.R.D. 500, 503 (N.D. Ill. 2011)).)

In fact, ResCap argues, PRMI sought Rule 30(b)(6) testimony on this very subject, as it related to over 500 RMBS trusts, across many different securitization programs, over a 10-year period.  (Pl.'s MIL No. 2 at 2 (citing April 19, 2019 PRMI Letter [Doc. No. 5054]; April 25, 2019 ResCap Letter [Doc. No. 5060]).)  The Court granted PRMI's request, permitting it

to "adequately inquire into RFC's 'understanding' of these four Trust level representations[.]" (30(b)(6) Dep. Order [Doc. No. 5091].)

Teresa Farley was assigned as Plaintiff's 30(b)(6) designee for this topic. (Alden Decl. [Doc. No. 5286], Ex. 3 (Farley Dep.).) While ResCap alleges that Ms. Farley has direct personal knowledge about RFC's securitization practices from "decades" of experience at the company, it is undisputed that Ms. Farley left RFC in 2000. (*See* Pl.'s MIL No. 2 at 3 (citing Alden Decl., Ex. 3 (Farley Dep.) at 21–22, 25, 34).) Before her departure, however, Plaintiff alleges Ms. Farley had "direct personal knowledge" about RFC's securitization practices through varying roles. (*Id*.) From 1985 to 1989, Ms. Farley served RFC as outside counsel at the Dorsey & Whitney law firm, advising RFC on securitizations. From 1989 to 2000, she served as a businessperson in RFC's structured finance group, including as head of that group for several years. (*Id*.) After her departure in 2000, Ms. Farley later worked as a consultant to the Trust and RFC from 2008 to 2018.[1] (*See* Pl.'s MIL No. 2 at 3; *see also* Alden Decl., Ex. 3 (Farley Dep.) at 34–38).)

In addition to the personal knowledge ResCap alleges Ms. Farley gained from these positions, (*see* Pl.'s MIL No. 2 at 3), Plaintiff argues that Ms. Farley should be able to testify about the "supplemental investigation" she conducted to identify information within the corporation's knowledge when preparing for her 30(b)(6) deposition. That investigation

_____

[1] Because Ms. Farley testified that she only answered "ad-hoc type" questions relating to RFC's representations between 2008-2018, PRMI argues that Ms. Farley was only a consultant for ResCap (not RFC). (Def.'s Opp'n to Pl.'s MIL No. 2 [Doc. No. 5375] at 2 (citing Alden Decl., Ex. 3 (Farley Dep.) at 37–38).) The Court need not resolve this factual dispute at this time.

included "a review of documents, depositions, trial transcripts, and RFC's investor repurchase database, as well as interviews with several former RFC securitization lawyers and issuer's counsel." (*Id*. at 3–4 (citing Alden Decl., Ex. 3 (Farley Dep.) at 11–14).)

In sum, ResCap seeks to call Ms. Farley as a fact witness at trial regarding matters within her direct personal knowledge and within RFC's corporate knowledge. First, ResCap intends to call Ms. Farley to testify about her "direct personal knowledge of various relevant facts, including facts relating to trust representations and disclaimers that were implemented during her time at the company in and before the 1990s." (*Id*. at 4.) Second, ResCap intends, if it prevails on this motion, to seek testimony from Ms. Farley regarding facts she learned during her "supplemental" investigation. (*Id*.)

### B. PRMI's Response

In response, PRMI argues that when "a party seeks to call its own corporate witness at trial, the federal rules limit the witness's testimony to matters within her personal knowledge and prohibit hearsay." (Def.'s Opp'n to Pl.'s MIL No. 2 [Doc. No. 5375] at 4.) PRMI argues that Ms. Farley lacks any personal knowledge about RFC's understanding of its representations after 2000 (when she left the company). (*Id*.) Accordingly, PRMI argues that she lacks personal knowledge of "the important periods from (i) 2001-2007, when RFC made representations to the bulk of trusts, and (ii) 2007-2013, when it received the bulk of repurchase demands." (*Id*. at 9.)

Although PRMI alleges that Ms. Farley testified to "numerous matters" about which she lacked personal knowledge and relied on hearsay, PRMI appears to object to two categories of testimony. (*Id*. at 3.) The first category is Ms. Farley's testimony about certain

trust representations and documentation programs instituted after she left RFC. (*Id.* (citing Alden Decl., Ex. 3 (Farley Dep.) at 230–31).) For instance, PRMI argues that Ms. Farley testified about RFC's understanding of its credit-grade representation, which RFC instituted after she left the company. (*Id.*) PRMI argues that her testimony was based on hearsay— RFC's response to a repurchase demand, her conversations with RFC's former attorneys, and her review of other witnesses' testimony. (*Id.*)

The second category that PRMI opposes is Ms. Farley's testimony about analyses that Plaintiff's counsel conducted, without any independent examination of counsel's underlying findings. (*Id.* (citing Alden Decl., Ex. 3 (Farley Dep.) at 92, 95, 101–02).) For example, she testified about the results of research conducted as to whether RFC repurchased any loans based on fraud or misrepresentation claims, notwithstanding its fraud disclaimers. (Alden Decl., Ex. 3 (Farley Dep.) at 92, 95, 101–02.) She further testified to the results of a database search as to whether RFC denied repurchase requests solely as a result of the fraud disclaimer. (*Id.* at 119.) Ms. Farley admitted that the results of such searches were conveyed to her by discussion with Plaintiff's counsel, and she was unaware of the underlying methodology used. (*Id.* at 101–02, 119–20, 125.)

And, although Plaintiff asserts that she will testify only about "non-hearsay matters," PRMI argues that Ms. Farley cannot do so for the time periods above, as any knowledge she may have is based on hearsay she learned while preparing for deposition. (Def.'s Opp'n to Pl.'s MIL No. 2 at 9–10.) Finally, while Ms. Farley continued to work in the RMBS industry after she left RFC in 2000, which ResCap argues should allow her to opine on RFC's understanding of these trust-level representations, PRMI argued at the hearing on this motion

that her RMBS-related experience is irrelevant because she is not qualified as an expert for this trial. Thus, PRMI concludes that Ms. Farley must meet the limitations set forth for non-expert witnesses by the Federal Rules of Evidence. (*Id.*; *see also* Def.'s Opp'n to Pl.'s MIL No. 2 at 5 (citing *Union Pump Co. v. Centrifugal Tech. Inc.*, 404 F. App'x 899, 907 (5th Cir. 2010).)

## C.  Ruling

The admissibility of Ms. Farley's testimony as to matters within the company's knowledge will "depend on the precise testimony, the foundation laid for it, and the purpose for which it is offered." *Hess v. Biomet, Inc.,* No. 3:16-CV-208 JD, 2019 WL 5965172, at *6 (N.D. Ind. Nov. 13, 2019). To the extent, however, that Ms. Farley's testimony is based on hearsay or is not within her personal knowledge, it will be excluded.[2] The Court declines to rule on the precise scope of her testimony until trial. However, the parties' arguments warrant discussion of the analysis the Court will apply at trial.

Ms. Farley was designated as a corporate representative for a deposition under Rule 30(b)(6), since that rule allows a party to serve a notice of deposition on a corporation, identifying specific matters to be discussed. The corporation must then produce a representative who "must testify about information known or reasonably available to" the corporation on those matters. Fed. R. Civ. P. 30(b)(6).

---

[2]     The Court's guidance uniformly applies to both parties. For instance, at the hearing, PRMI's counsel represented that it intends to call its own corporate witness, Dave Zitting, to testify regarding PRMI's corporate understanding of how Assetwise Direct approvals impacted "compliance" with the R&Ws in the Guides. To the extent that Mr. Zitting's testimony is based on hearsay and/or is not based on personal knowledge, it will similarly be excluded.

As PRMI correctly notes, an "adverse party," under Rule 32(a)(3), may then use at trial the deposition of a party's designee under Rule 30(b)(6). Ms. Farley is Plaintiff's own corporate representative, and Rule 32(a)(3) does not allow a party to use its own designee in this manner. *See Union Pump*, 404 F. App'x at 907–08 ("Federal Rule of Civil Procedure 30(b)(6) allows corporate representatives to testify to matters within the corporation's knowledge during deposition, and Rule 32(a)(3) permits an *adverse* party to use that deposition testimony during trial. However, a corporate representative may not testify to matters outside [her] own personal knowledge to the extent that information is hearsay not falling within one of the authorized exceptions.") (citation, quotation, and alteration omitted); *see also* Fed. R. Civ. P. 32(a)(1)(B) (stating that a deposition may be used under this rule "to the extent it would be admissible under the Federal Rules of Evidence if the deponent were present and testifying").

Although ResCap principally relies on *Brazos,* 469 F.3d at 416, to assert that Ms. Farley needs no direct personal knowledge as a corporate representative, the facts of *Brazos* are distinguishable. There, an adverse party sought to introduce a corporation's deposition at trial under Rule 32(a)(3). *Id.* at 432. In response, the corporation made its designee available at trial but argued that he lacked personal knowledge. *Id.* While ResCap argues that *Brazos* did not limit its ruling to only a party calling an opposing party's corporate designee, (*see* Pl.'s MIL No. 2 at 8), the Fifth Circuit rejected the corporation's attempt to subvert Rule 32(a)(3). *See Brazos*, 469 F.3d at 434 (stating that a "deposition of an *adversary*" under the Federal Rules of Civil Procedure may be introduced "as part of his substantive proof

regardless of an *adversary's* availability to testify at trial[.]") (citation omitted) (emphasis added).

Thus, notwithstanding that Plaintiff produced Ms. Farley in response to a Rule 30(b)(6) notice, Ms. Farley's testimony at trial will still have to comply with the Rules of Evidence in order to be admitted. To the extent that such information is within Ms. Farley's knowledge, the Court will not exclude her from testifying. Like the Rule 30(b)(6) corporate designee in *Hess*, for example, Ms. Farley could still testify as to non-hearsay matters regarding the corporation's intent at the time RFC instituted certain representations. *See Hess*, 2019 WL 5965172, at *5–6 (allowing corporate designee to testify about conversations with corporation's founders if statements expressed founders' current state of mind about understanding of agreements). The Court will, however, exclude Ms. Farley from testifying as a corporate representative to matters outside her own personal knowledge if such testimony is hearsay not falling within one of the authorized hearsay exceptions.

The Court further notes that, contrary to PRMI's suggestions, (Def.'s Opp'n to Pl.'s MIL No. 2 at 10 n.4), the personal knowledge requirement set forth in Federal Rule of Evidence 602 does not require first-hand observation or experience. The rule also does not require that personal knowledge be acquired contemporaneous with the events at issue. Indeed, "[p]ersonal knowledge or perception acquired through review of records prepared in the ordinary course of business, or perceptions based on industry practice, is a sufficient foundation for lay opinion testimony." *Qwest Corp. v. City of Santa Fe*, No. 10-CV-0617 RB/KBM, 2013 WL 12239494, at *1 (D.N.M. Apr. 15, 2013) (internal citation omitted); *see also Stuart v. UNUM Life Ins. Co. of Am.*, 217 F.3d 1145, 1155 (9th Cir. 2000) (ruling vice

president of Corporate Services had sufficient personal knowledge of company procedures to testify that his employer contributed directly to its insurance plans).

Accordingly, as to the first category of testimony that PRMI opposes, the Court cannot determine from the present record whether Ms. Farley has sufficient personal knowledge about certain trust representations that RFC instituted after she left the company. It is undisputed that Ms. Farley is a former employee of RFC, now consulting for the Trust, whose responsibility has been advising RFC on securitizations. PRMI argues that because Ms. Farley was not employed by RFC during the years in which the "bulk" of RFC's representations to the trusts were made and RFC received repurchase demands, Ms. Farley has no personal knowledge of RFC matters between 2000-2013, and her testimony would violate the Rules of Evidence. Based on the current record, however, the Court need not restrict her testimony to a certain time frame. Although certain evidence that Ms. Farley reviewed does not appear to be directly prepared by her, or contemporaneous with her employment, she certainly may testify from her knowledge based on her prior employment with RFC, "presuming that a sufficient foundation is laid and [her] testimony is not otherwise objectionable." *See Qwest Corp.*, 2013 WL 12239494, at *1.

Moreover, as to the second category of testimony that PRMI opposes, the Court will exclude Ms. Farley from testifying about any evidence solely learned from Plaintiff's counsel when preparing for her deposition. (Def.'s Opp'n to Pl.'s MIL No. 2 at 3.) Knowledge of any such evidence was not acquired through a "review of records in the ordinary course of business" or "perceptions based on industry practice." *Qwest Corp.*, 2013 WL 12239494, at

*1. And even under the legal authorities that ResCap cites, witnesses are not allowed to gain personal knowledge solely from deposition preparations.

Finally, PRMI argues that Ms. Farley cannot testify to opinions that exceed those allowed by a lay witness. When a witness has not been identified as an expert, she may only express opinions that are rationally related to her perception, helpful to understanding her testimony or a fact in issue, and "not based on scientific, technical, or other specialized knowledge . . ." Fed. R. Evid. 701. Under Rule 701, courts have allowed lay witnesses to express opinions about a business "based on the witness's own perceptions and 'knowledge and participation in the day-to-day affairs of [the] business." *United States v. Munoz-Franco*, 487 F.3d 25, 35 (1st Cir. 2007) (citation omitted) (internal quotation marks omitted). At this point, if Ms. Farley's testimony is based on her knowledge of RFC's securitization practices that she acquired during her employment there, this does not require expert testimony. If ResCap attempts to introduce an expert opinion through Ms. Farley at trial, the Court trusts that PRMI will object. The Court will consider limiting her testimony should the need arise and defers ruling on this motion.

## III.    RESCAP'S MOTION IN LIMINE NO. 3: Previously Decided Issues

### A.    ResCap's Argument

In this motion, ResCap seeks rulings regarding the admissibility of certain categories of evidence and arguments that the Court previously addressed in *ResCap Liquidating Trust v. Home Loan Center, Inc.*, No. 13-cv-3451 (SRN/HB)/No. 14-cv-1716 (SRN/HB), and in the Court's ruling on summary judgment in this case, *In re ResCap Liquidating Trust Litigation*, __ F. Supp. 3d __, No. 13-cv-3451 (SRN/HB), 2019 WL 7038234 (D. Minn. Dec.

20, 2019) ("*PRMI SJ Order*"). (Pl.'s MIL No. 3 [Doc. No. 5367] at 1.) The evidence in question concerns breach and causation, as well as bankruptcy-related issues. (*Id.* at 1–6.)

Regarding breach and causation, ResCap seeks the following rulings: (1) the exclusion of evidence made irrelevant by Plaintiff's sole discretion to determine breaches, including (a) previously undisclosed evidence or argument offered in opposition to ResCap's reunderwriting findings; and (b) "any re-underwriting evidence disputing RFC's exercise of its sole discretion to identify [PRMI's] breaches of its representations and warranties ("R&Ws") called for in the Client Guide;" (2) the exclusion of anecdotal, hearsay underwriting variance evidence; and (3) the exclusion of any evidence or argument regarding Homecomings Financial's ("Homecomings'") practices as irrelevant under Fed. R. Evid. 401 with respect to questions of breach and causation. (*Id.* at 1–3.)

As to bankruptcy-related issues, ResCap seeks the following rulings: (1) the exclusion of any evidence or argument that is inconsistent with the legal effect of RFC's Bankruptcy Plan and the Bankruptcy Court's related orders, including any assertions that: (a) the RMBS Trust Settlement included a separate $250 million Allowed Claim for the Additional Settling Trusts; (b) the RMBS Trust Settlement did not allocate $96 million to servicing claims; (c) the "value" of the Allowed Claims established by the Bankruptcy Settlements is different than their face amount as set forth in the Bankruptcy Plan; (d) RFC's creditors' claims were fully satisfied in bankruptcy; and (e) this litigation will not benefit RFC's creditors because some Trust units have traded or were distributed to GMAC's and ResCap's creditors in exchange for the pooling of their assets in the Trust; (2) the exclusion of any evidence challenging the reasonableness of the Bankruptcy Settlements and servicing allocation, including that: (a) the

16

Bankruptcy Settlements were not reasonable and in good faith; and (b) Plaintiff's allocations of $73 million and $0, respectively, to RMBS Trust and Monoline servicing claims were not reasonable; (3) the exclusion of unproven assertions of alleged misconduct, including pre-bankruptcy litigation documents such as complaints, Rule 26 expert disclosures, and legal briefs; (4) the exclusion of any evidence or argument concerning proofs of claim against GMAC Mortgage, ResCap, and other RFC affiliates, including evidence related to the claims of RFC's creditors against RFC's parent, Ally Financial ("Ally"); and (5) the exclusion of any evidence and argument regarding the "Allowed Fee Claim," as defined in the Bankruptcy Plan. (*Id.* at 3–6.)

### B. PRMI's Response

Procedurally, PRMI objects to Plaintiff's motion as a "grab bag of issues," in violation of the Court's pretrial order that each motion in limine be limited to a single, discrete issue. (Def.'s Opp'n to Pl.'s MIL No. 3 [Doc. No. 5378] at 1; *see also* PRMI's Jan. 7, 2020 Letter [Doc. No. 5368].)

Substantively, PRMI asks that Plaintiff's motion be denied, and denied as moot. As to breach and causation, PRMI argues that the specific evidence or argument that Plaintiff seeks to exclude is unclear. (Def.'s Opp'n to Pl.'s MIL No. 3 at 1–2.) Further, it argues, to the extent that the Court's prior rulings permit it to challenge certain of Plaintiff's reunderwriting findings, PRMI plans to rely on its disclosed expert opinions and identified trial exhibits and will cross examine Plaintiff's witnesses using previously disclosed materials. (*Id.* at 2.)

While ResCap moves to exclude any reunderwriting evidence that challenges Plaintiff's exercise of its sole discretion to identify Client Guide breaches, PRMI observes that "Plaintiff does not seek any such ruling with respect to the seven sample loans sold under the AlterNet Guide (which lacks any sole-discretion provision)." (*Id.* at 2–3.) PRMI contends that the Court should deny this motion as moot, in light of the summary judgment ruling on sole discretion. (*Id.* at 3.) PRMI asserts that it does not intend to dispute Plaintiff's assertion of Client Guide breaches on the loans subject to Plaintiff's motion. (*Id.*) However, it maintains that it is entitled to present evidence supporting its estoppel and waiver defenses related to certain loans sold with Assetwise Direct Approval Certificates or originated for Countrywide. (*Id.*)

Regarding Plaintiff's motion to exclude anecdotal underwriting variance evidence, PRMI argues that "[t]he Court should deny the motion, as Plaintiff merely seeks to re-litigate an issue it lost on summary judgment." (*Id.*) It states that the Court ruled on summary judgment that "PRMI may submit relevant and clear anecdotal evidence, subject to these requirements and the applicable evidentiary rules." (*Id.* at 3–4 (quoting *PRMI SJ Order*, 2019 WL 7038234, at *55).) PRMI also contends that Plaintiff's motion is vague, as it fails to identify the specific anecdotal hearsay evidence of generalized variances. (*Id.* at 4.) PRMI asserts that with respect to Assetwise, it intends to present both loan-specific and general evidence "that RFC offered PRMI a written agreement with *limited representations* to induce PRMI to use Assetwise Direct; that RFC repeatedly told PRMI to rely on Assetwise Direct approval certificates; and that PRMI did so rely." (*Id.*) To the extent that Plaintiff objects to

particular exhibits or testimony, PRMI asks that the Court address such objections as they arise at trial. (*Id.*)

As to the portion of Plaintiff's motion concerning evidence regarding Homecomings' practices, PRMI maintains that it does not intend to submit evidence or argument "blaming" Homecomings for RFC's bankruptcy. (*Id.* at 5.) However, it contends that there is no cause for a blanket order that prohibits "any mention of Homecomings," and notes that Plaintiff's own expert uses data about Homecomings' breaches in his damages model. (*Id.*) It asks the Court to defer considering Homecomings-related evidence until trial, as the Court did in the First Wave. (*Id.*)

Regarding evidence or argument "inconsistent with the legal effect of RFC's Bankruptcy Plan and the Bankruptcy Court's related orders," PRMI argues that a request for a generalized order is too broad and ill-defined. (*Id.*) It also asserts that the Court should deny the subparts of Plaintiff's motion. In light of the Court's summary judgment ruling, PRMI asserts that it does not intend to argue that the RMBS Trust Settlement included a separate $250 million Allowed Claim for the Additional Settling Trusts, and this motion should be denied as moot. (*Id.* at 5–6.) Yet PRMI argues that the Supplemental Term Sheet is "still relevant to *allocating* that allowed claim," as it shows that the parties contemporaneously valued claims relating to the Original Settling Trusts for $7 billion and claims relating to the Additional Settling Trusts for $250 million. (*Id.* at 6.) Similarly, PRMI seeks "clarification" that the Court's *Daubert* order does not preclude Dr. McCrary from testifying about the opinions in his Supplemental Report, which relate to differences between

the Additional Settling Trusts and the Original Settling Trusts insofar as they relate to allocation.  (*Id.*)

PRMI argues that the Court should deny as moot the portion of Plaintiff's motion that seeks to exclude evidence or argument that the RMBS Trust Settlement did not allocate $96 million to servicing claims.  (*Id.* at 7.)  PRMI contends that in light of the Court's summary judgment ruling on servicing, it does not intend to advance any such argument at trial.  (*Id.*)  Similarly, as to the portion of Plaintiff's motion seeking to exclude evidence or argument that the "value" of the Allowed Claims "is different than their face amount," PRMI asserts that it will not advance such an argument in light of the summary judgment ruling, and the motion should be denied as moot.  (*Id.*)  Likewise, with respect to the portion of Plaintiff's motion that seeks to exclude evidence or argument that RFC's creditors' claims were fully satisfied in bankruptcy, PRMI states that it will not present any such evidence, in light of the summary judgment ruling.  Accordingly, it argues, the motion should be denied as moot.

As to the portion of Plaintiff's motion seeking to exclude any evidence or argument that "this litigation will not benefit RFC's creditors because certain units either have traded or were distributed to GMAC's and ResCap's creditors," PRMI argues that it does not intend to advance such an argument.  Therefore, it argues, the Court should deny Plaintiff's motion as moot.  (*Id.* at 7–8.)  However, PRMI states that to the extent Plaintiff intends to discuss the beneficiaries of this suit, it should be limited to the neutral terms the Court approved in the First Wave.  (*Id.* (citing *In re ResCap Liquidating Tr.* Action, No. 13-cv-3451 (SRN/HB), 2018 WL 4863597, at *3, 17 (D. Minn. Oct. 8, 2018) ("*HLC MIL Order*").)

Regarding Plaintiff's motions concerning the reasonableness of the Bankruptcy Settlements and servicing allocation, PRMI contends that in light of the Court's summary judgment rulings, it does not intend to offer any evidence or argument at trial suggesting that the Bankruptcy Settlements were not reasonable and in good faith, or that Plaintiff's allocations to the Trust and Monoline servicing claims were unreasonable. (*Id.* at 8.) However, PRMI states, "[f]or clarity, . . . . certain bankruptcy documents remain relevant to the issues of allocation and causation." (*Id.*)

PRMI also argues that the Court should deny as moot the portion of Plaintiff's motion seeking to exclude any evidence or argument that unproven assertions of RFC's alleged misconduct are evidence of misconduct, including pre-bankruptcy litigation documents. (*Id.* (citing Pl.'s MIL No. 3 at 4).) PRMI asserts that it does not intend to present any documents from the Monolines' pre-bankruptcy litigation, nor advance any such argument.

PRMI argues that the Court should deny as moot the portion of Plaintiff's motion seeking a ruling that proofs of claim are admissible only for their legal effect or effect upon the listener, and that annexes are admissible only as evidence of the claims that RFC faced at the time of the Settlements. (*Id.* at 8.) PRMI asserts that it seeks to admit the proofs of claim and annexes only for these purposes. (*Id.* at 8–9.)

As to Plaintiff's motion to preclude evidence or argument concerning proofs of claim against GMAC Mortgage, ResCap, and other RFC affiliates, in light of the Court's summary judgment ruling, PRMI states that it will not seek to introduce these proofs of claim at trial. (*Id.* at 9.) Accordingly, PRMI asks the Court to deny Plaintiff's motion as moot. (*Id.*)

Regarding ResCap's motion to exclude any evidence or argument relating to the non-indemnifiable claims asserted by the Trusts and Monolines against RFC's parent corporation, Ally, PRMI argues that Plaintiff misconstrues the Court's summary judgment order. (*Id.*) It contends that the Court "merely denied PRMI's summary-judgment motion, in which it argued that Plaintiff failed to raise a triable issue on allocation due to its disregard of the Ally claims." (*Id.*) But, in denying the motion, PRMI contends that the Court did not affirmatively grant Plaintiff summary judgment on the "Ally issue." (*Id.*) Therefore, PRMI argues, the question of whether ResCap should have allocated a portion of the Settlements to non-indemnifiable claims against Ally "remains a live issue." (*Id.*) Moreover, PRMI argues that because ResCap never moved for summary judgment on this issue, it may not do so now through a motion in limine. (*Id.* at 10–11.)

Similarly, as to ResCap's motion to exclude any evidence or argument related to the Allowed Fee Claim, PRMI argues that the Court's denial of summary judgment to Defendant on this issue did not affirmatively grant Plaintiff summary judgment. (*Id.* at 11.) PRMI again asserts that ResCap improperly seeks to use a motion in limine as a means of removing a contested issue from the case. (*Id.*)

### C.     Ruling

Contrary to Defendant's assertions of ResCap's procedural violations, Plaintiff did not violate the Court's requirement of submitting single-issue motions in limine. Plaintiff's Motion in Limine Number 3 addresses a single issue: the Court's prior rulings. Much of it was necessitated by Defendant's strained or confused reading of certain of those rulings.

Given the time constraints of trial, it is in the parties' best interest to resolve issues of potential evidentiary dispute in advance of trial.

### 1. Undisclosed Evidence or Argument Offered in Opposition to ResCap's Reunderwriting Findings

As to Plaintiff's motion to exclude "any previously undisclosed evidence or argument offered in opposition to ResCap's reunderwriting findings," the Court presumes that there will be no ambush at trial. To the extent that Plaintiff has objections to specific evidence, the Court will address the objections as they arise at trial, with reference to particular exhibits or testimony. Accordingly, the Court defers ruling on this portion of Plaintiff's motion.

### 2. Reunderwriting Evidence Disputing Plaintiff's Exercise of its Sole Discretion to Determine Client Guide Breaches

Plaintiff seeks to exclude any reunderwriting evidence disputing Plaintiff's exercise of its sole discretion to determine Client Guide breaches.[3] The Court's summary judgment ruling on RFC's sole discretion under the Client Guide, *see PRMI SJ Order*, 2019 WL 7038234, at *26–28, renders any such evidence irrelevant under Fed. R. Evid. 401. Consistent with the Court's ruling and excepting loans that PRMI contends are subject to its estoppel and waiver defenses, PRMI does not intend to challenge Plaintiff's assertion of breaches on loans subject to the Client Guide. (Def.'s Opp'n to Pl.'s MIL No. 3.) Accordingly, this motion is denied as moot.

---

[3] Plaintiff notes that its motion is limited to loans subject to the Client Guide and is not applicable to the seven sample loans for which PRMI claims sole discretion is lacking. (Pl.'s MIL No. 3 at 2 n.1.)

### 3.      Anecdotal Underwriting Variance Evidence

As noted, ResCap seeks to exclude from evidence any anecdotal, hearsay evidence of generalized variances from RFC's underwriting criteria in support of PRMI's estoppel and waiver defenses.  (Pl.'s MIL No. 3 at 3.)  Plaintiff also seeks clarification as to whether the Court intended to use the word "non-anecdotal" rather than "anecdotal" in the summary judgment order, in the final sentence quoted below:

> Anecdotal evidence showing only generalized variances related to underwriting criteria does not satisfy the evidentiary burden required to show estoppel, and the admissibility of all evidence is subject to exclusion under the hearsay rule. Whether or not it proves sufficient ultimately to meet its burden of proof, PRMI may submit relevant and clear **anecdotal** evidence, subject to these requirements and the applicable evidentiary rules.

(*Id.*) (quoting *PRMI SJ Order*, 2019 WL 7038234, at \*55) (emphasis added).

PRMI argues that the clarification ResCap seeks would improperly reverse the Court's ruling from a denial to a grant of Plaintiff's motion on that issue.  (Def.'s Opp'n to Pl.'s MIL No. 3 at 4.)

Separately, but entirely related, in ResCap's January 21, 2020 letter, Plaintiff argues that:  (1) none of PRMI's evidence is sufficient to support an estoppel or waiver defense; (2) PRMI's non-specific Assetwise-related exhibits should be excluded; and (3) its Assetwise witnesses should also be excluded.  (Pl.'s Jan. 21, 2020 Letter [Doc. No. 5380] at 3–5.) Plaintiff asserts that PRMI has identified a mere five loans, accounting for approximately $425,000 of Plaintiff's damages claim, that are subject to Defendant's Assetwise defense. (*Id.* at 3 & Ex. A.)  Because one of these loans arose under the AlterNet Guide, which does not contain a sole discretion provision, Plaintiff focuses on four loans that are subject to

PRMI's Assetwise-based estoppel and waiver defenses. As to these four loans, Plaintiff's expert, Mr. Butler, has invalidated the Assetwise Direct approval certificates.

At the hearing on this motion, counsel for Plaintiff asserted that even if the streamlined Assetwise R&Ws supplanted the related R&Ws in the Client Guide, as PRMI asserts, PRMI does not dispute that the remaining provisions of the Client Guide remained in force. Notably, Plaintiff contends that RFC's sole discretion to determine breaches is among the other provisions of the Client Guide that remained in force. Because RFC maintained the ability to determine breaches, and Mr. Butler has found that these four Assetwise loans were in breach, ResCap argues that PRMI's estoppel and waiver defenses are irrelevant.[4]

In response, at the hearing, counsel for PRMI objected to Plaintiff's motion on both procedural and substantive grounds. PRMI argues that on summary judgment, the Court denied Plaintiff's motion, and permitted PRMI to present its estoppel and waiver defenses. It disagrees with Plaintiff's argument that RFC's sole discretion to determine breaches renders its estoppel and waiver defenses irrelevant and argues that Plaintiff may not assert a new summary judgment argument.

The Court provides the following guidance. First, the Court intended the use of the word "anecdotal" in the summary judgment order. The Court's reference to the admissibility of such evidence "subject to these requirements" refers to the following portion of the Court's summary judgment ruling:

> In order to prove that ResCap waived the Guides' quality- and credit-related
> R&Ws or should be estopped from enforcing all of the Guides' R&Ws and

---

[4] Plaintiff advances the same argument with respect to one loan originated to Countrywide's underwriting guidelines.

remedies, even as applied to loans made under different underwriting criteria, PRMI must show that an RFC agent with at least apparent authority to bind RFC either represented or promised that certain provisions of the Guides' R&Ws or remedies did not apply, or failed to speak up and ensure that that was the understanding when under a duty to do so, and that PRMI relied to its detriment on those representations.

*PRMI SJ. Order*, 2019 WL 7038234, at *54. Because Plaintiff sought to reaffirm an issue decided in Wave One concerning the use of anecdotal evidence on summary judgment, *see id.,* at *16, the Court used Plaintiff's terminology. However, as the Court explains below, the admissibility of Assetwise evidence here is not necessarily dependent on whether the evidence is "anecdotal" or not, but on whether the evidence directly references a relevant communication, or silence, when under a duty to communicate, between RFC and PRMI. And of course, to the extent that PRMI seeks to introduce hearsay evidence, it is inadmissible unless an exception to the hearsay rule applies. Accordingly, to the extent that ResCap's motion seeks to exclude anecdotal evidence per se, it is denied. To the extent that PRMI's evidence is subject to the hearsay rule, PRMI must be prepared to identify the exception that it contends is applicable.

Second, to the extent that PRMI has relevant, admissible evidence, it may present its estoppel and waiver defenses, just as ResCap is free to present evidence in opposition, including evidence concerning its sole discretion to determine breaches as to the Assetwise loans in question and the Countrywide loan.

Third, when considering the bounds of admissible evidence in support of the estoppel and waiver defenses, some fundamental legal precepts control the Court's determinations. The Court provides the following guidance.

Waiver and estoppel, while sometimes used interchangeably, are two distinct concepts. *See Slidell, Inc. v. Millennium Inorganic Chems., Inc.*, 460 F.3d 1047, 1056 (8th Cir. 2006) ("We must be careful not to confuse waiver and estoppel, however, because they are entirely different."); *Engstrom v. Farmers & Bankers Life Ins. Co.*, 41 N.W.2d 422, 424 (Minn. 1950) ("Waiver and estoppel are often confused, but they are not convertible terms."); *Clark v. Dye*, 197 N.W. 209, 226 (Minn. 1924) ("Waiver and estoppel are entirely different."). As the Court noted previously in its summary judgment order in this case, Minnesota law provides that "'[a] party seeking to invoke the doctrine of equitable estoppel has the burden of proving three elements: (1) that promises or inducements were made; (2) that it reasonably relied upon the promises; and, (3) that it will be harmed if estoppel is not applied.'" *PRMI SJ Order*, 2019 WL 7038234, at *53 (quoting *Hydra-Mac, Inc. v. Onan Corp.*, 450 N.W.2d 913, 919 (Minn. 1990)). The doctrine's purpose has long been to "prevent the unconscientious and inequitable assertion or enforcement of claims or rights which might have existed or been enforceable by other rules of law, unless prevented by the estoppel[.]" *Dimond v. Manheim*, 63 N.W. 495, 497 (Minn. 1895). The Minnesota Court of Appeals acknowledged three key principles of the doctrine:

> 'First[,] [t]o create an estoppel, the conduct of the party need not consist of affirmative acts or words. It may consist of silence or a negative omission to act when it was his duty to speak or act. Second[,] [i]t is not necessary that the facts must be actually known to a party estopped. It is enough if the circumstances are such that a knowledge of the truth is necessarily imputed to him. Third[,] [i]t is not necessary that the conduct be done with a fraudulent intention to deceive, or with an actual intention that such conduct will be acted upon by the other party. It is enough that the conduct was done under such circumstances that he should have known that it was both natural and probable that it would be so acted upon.'

*Pollard v. Southdale Gardens of Edina Condo. Ass'n., Inc.*, 698 N.W.2d 449, 454 (Minn. Ct. App. 2005) (quoting *Dimond*, 63 N.W. at 497).

In contrast, "[w]aiver is the intentional relinquishment of a known right." *Frandsen v. Ford Motor Co.*, 801 N.W.2d 177, 182 (Minn. 2011). The burden of proving waiver rests on the party asserting waiver. *Id.* To show a valid waiver, that party must prove two elements: "(1) knowledge of the right, and (2) an intent to waive the right." *Id.* "Waiver may be express or implied—'knowledge may be actual or constructive and the intent to waive may be inferred from conduct.' " *Id.* (quoting *Valspar Refinish, Inc. v. Gaylord's Inc.*, 764 N.W.2d 359, 367 (Minn. 2009)); *see also State ex rel. Swanson v. 3M Co.*, 845 N.W.2d 808, 819 (Minn. 2014) (stating, "intent to waive [a contractual provision] may be inferred from conduct."). "Although waiver can be express or implied, both types of waiver require an expression of intent to relinquish the right at issue." *Frandsen*, 801 N.W.2d at 182 (citation omitted). Mere inaction is insufficient to establish waiver. *Id.* The key distinguishing feature of a waiver is the lack of any requirement of detrimental reliance by the party asserting waiver. *See Slidell, Inc.*, 460 F.3d at 1056 (citing Minnesota case law). Still, where a theory of waiver is based on a course of conduct, such implied waiver rests on a "theory of estoppel" and "requires detrimental reliance." *Hedged Inv. Partners, L.P. v. Norwest Bank Minn., N.A.*, 578 N.W.2d 765, 771–72 (Minn. Ct. App. 1998); *but see Slidell, Inc.*, 460 F.3d at 1056 (citing *Pollard* and noting that "post-*Hedged-Investment Partners* cases have not required a finding of detrimental reliance for waivers," so "while a waiver based on estoppel *may* require detrimental reliance, not every form of implied waiver requires such reliance" (emphasis added)).

Where a contract contains a nonwaiver clause, waiver becomes even more limited. The business relationship between RFC and PRMI was governed by Client Contracts that incorporated the terms of longer, more detailed agreements called "Guides." *PRMI SJ Order*, 2019 WL 7038234, at *3. Specifically, RFC and PRMI entered into a Client Contract in March 2000, and a subsequent Client Contract in June 2001. *Id.* (citing Nesser Decl. in Supp. of Pl.'s Mot. for Summ. J., Ex. 1 (Mar. 30, 2000 Client Contract) [Doc. No. 5278]; *Id.*, Ex. 2 (June 25, 2001 Client Contract).) The Client Contracts each contain a section entitled "Guides" or "Incorporation of Guides by Reference" which states that the Guides selected on the agreement were incorporated into the parties' agreement by reference and are binding on the parties, including any amendments to those Guides. (*Compare* Nesser Decl., Ex. 1 at 1, *with id.*, Ex. 2 at 1.) Each Contract then sets forth several checkboxes that could be selected. (*Id.*) The March 2000 Client Contract incorporated the AlterNet Guide, whereas the June 2001 Client Contract incorporated the Client Guide. (*Id.*)

The March 2000 Client Contract states that it "may not be amended or modified orally" and "no provision of this Contract may be waived or amended except in writing signed by the party against whom enforcement is sought" and even then only when the "written waiver expressly reference[s] [the] Contract," although the agreement permits RFC to modify the Guides from time to time on its own. (Nesser Decl., Ex. 1 at 1.) The June 2001 Client Contract, in contrast, states that it may "only be amended in writing signed by *both* parties" and that the Guides "may be amended only as set forth in the applicable Guide." (*Id.*, Ex. 2 at 1 (emphasis added).) Each Client Contract explicitly

29

states that PRMI makes all the representation and warranties set forth in the applicable Guide to RFC. (*Compare id.*, Ex. 1 at 2, *with id.*, Ex. 2 at 1.) Moreover, each Client Contract notes that its terms contain the "entire understanding between the parties." (*Compare id.*, Ex. 1 at 3, *with id.* Ex. 2 at 2.) Neither contract makes any reference to, nor incorporates any documents or components of, RFC's automated underwriting system, Assetwise. *See PRMI SJ Order*, 2019 WL 7038234, at *3 (discussing the Assetwise Direct Criteria Agreement).

The AlterNet Guide and the Client Guide—incorporated in the March 2000 and June 2001 Client Contracts, respectively—both contained explicit nonwaiver clauses stating:

> [AlterNet/Client] Representations and Warranties and Covenants[5]
>
> The [AlterNet Seller] Client acknowledges that [RFC] GMAC-RFC purchases Loans in reliance upon the accuracy and truth of the [AlterNet Seller's] Client's warranties and representations and upon the [AlterNet Seller's] Client's compliance with the agreements, requirements, terms and conditions set forth in the [AlterNet Seller] Client Contract and this [AlterNet] Client Guide.
>
> All such representations and warranties are absolute, and the [AlterNet Seller] Client is fully liable for any misrepresentation or breach of warranty *regardless of whether it or [RFC] GMAC-RFC actually had, or reasonably could have been expected to obtain, knowledge of the facts giving rise to such misrepresentation or breach of warranty*.
>
> The representations and warranties pertaining to each Loan purchased by [RFC] GMAC-RFC survive the Funding Date, any simultaneous or post-purchase sale of servicing with respect to the Loan and any termination of the [AlterNet Seller] Client Contract, *and are not affected by any*

---

[5] Differences between the two guides are denoted with the AlterNet Guide's text appearing in brackets.

> investigation or review made by, or on behalf of, [RFC] GMAC-RFC except
> when expressly waived in writing by [RFC] GMAC-RFC.

(Pl.'s Mem. in Supp. of Mot. for Summ. J., App'x 1 (Spreadsheet Comparing Client &
AlterNet Guide Provisions) [Doc. No. 5276] § A200 (emphasis added); *see also* Nesser
Decl. in Supp. of Pl.'s Mot. for Summ. J., Ex. 3 (AlterNet Guide) § 250; *Id.*, Ex. 4 (Client
Guide, Version 1-03-G01) § A200.)

Nonwaiver clauses "must be given [their] fairly intended effect." *Marblestone Co.
v. Phoenix Assur. Co. Ltd.*, 210 N.W. 385, 387 (Minn. 1926). In *Pollard*, the Minnesota
Court of Appeals held that "[b]ecause a nonwaiver clause may be modified by subsequent
conduct, the mere presence of a nonwaiver clause does not automatically bar a waiver
claim." 698 N.W.2d at 453 (citing *Green v. Minn. Farmers' Mut. Ins. Co.*, 251 N.W. 14,
17 (1933)). In *Langford Tool & Drill Co. v. 401 Group, LLC*, however, the Court of
Appeals clarified that *Pollard* "merely" stood for the proposition that "under *some
circumstances*, parties to a contract may orally modify a nonwaiver clause by their words
or conduct, rendering the clause ineffective." No. A11-1166, 2012 WL 896418, *4 (Minn.
Ct. App. Mar. 19, 2012) (emphasis added) (declining to find waiver of nonwaiver clause
by rejecting the notion that lender's past conduct in advancing funds, despite existence of
a lien, waived its future rights to withhold funds as long as the lien existed). The facts
giving rise to such "circumstances" will necessarily be case-specific. As such, while it is
not impossible to waive a nonwaiver provision that itself requires any waiver to be in
writing, *see Albany Roller Mills, Inc. v. N. United Feeds & Seeds, Inc.*, 397 N.W.2d 430,
433 (Minn. Ct. App. 1986) (noting that under the U.C.C., requirement of a writing to waive

contract provisions may be waived via oral modification), courts have held that, for example, mere "cooperation between businesses to resolve product performance issues under a contract, without more, is insufficient to raise an issue of fact regarding waiver of express terms of an agreement." *Valspar*, 764 N.W.2d at 368.

PRMI states that with respect to Assetwise, it "intends to present evidence (both loan-specific and general) that RFC offered PRMI a written agreement with *limited representations* that induced PRMI to use Assetwise Direct; that RFC repeatedly told PRMI to rely on Assetwise Direct approval certificates; and that PRMI did so rely." (Def.'s Opp'n to Pl.'s MIL No. 3 at 4.) With respect to loan-specific evidence, PRMI proposes to introduce Assetwise Direct Approval Certificates. The Court finds that the Assetwise Direct Approval Certificates are relevant to the issues of estoppel and waiver, and therefore, are generally admissible.[6]

As to general evidence, PRMI plans to introduce the testimony of its former CEO and President, Dave Zitting. PRMI proposes that he will testify to his understanding that PRMI's Assetwise-approved loans were governed by the applicable quality- and credit-related R&Ws in the Assetwise Agreement, in lieu of the broader quality- and credit-related R&Ws in the Guides. (Nesser Decl., Ex. 11 (Zitting Dep. [5278-8]) at 181–82; *see also id.* at 140–41).) However, in his deposition, he acknowledged that *other* Guide R&Ws, unrelated to the credit and quality of the loans, applied to the Assetwise-approved loans. (*Id.* at 181–82.) Zitting cannot recall whether anyone at RFC specifically ever told PRMI "Don't worry about the

---

[6]     The admissibility of any of this evidence is subject to compliance with the requirements of the Rules of Evidence.

provisions in [the Client Contracts] . . . you don't need to follow them," or that "we're waiving any of the provisions in this contract." (*Id.* at 206.)

Subject to admissibility on other bases, the Court finds it relevant for PRMI's witnesses to testify about time- and place-specific communications, oral or written, between PRMI and RFC that pertain to the use of Assetwise and PRMI's sale of the Countrywide-underwritten loan. However, in light of the legal requirements necessary to establish waiver and estoppel, particularly when faced with the clear language of the Client Contracts and Client Guide, generalized musings or "common sense" understandings about the use of Assetwise or the purchase of loans to Countrywide's guidelines are not relevant to the defenses of estoppel or waiver. (*See, e.g.*, *id.* at 350 (testifying that when RFC purchased loans that had been underwritten to Countrywide's requirements, it was also accepting Countrywide's R&Ws, because, "By taking them, they did. They had to have. There's no other—it's just common sense. There's no possible way they could have not.")). Nor are vague references to RFC's communications relevant without regard to the identity of the speaker, the time, or place. (*See, e.g., id.* at 215–18 (testifying generally about people in RFC's training and sales groups communicating about the effect of Assetwise on PRMI's obligations)).

ResCap argues that even if PRMI is permitted to introduce some non-loan-specific evidence in support of its Assetwise defense, the Court must limit the use of such evidence. (Pl.'s Jan. 21, 2020 Letter at 4.) For example, Plaintiff asserts that "[o]f the approximately 680 documents on PRMI's exhibit list (which excludes certain exhibits that PRMI recently dropped), over 300 appear to solely concern the purported Assetwise defense." (*Id.*) In other

words, Plaintiff contends, "approximately 46% of PRMI's total exhibit list appears to relate solely to the Assetwise Defense." (*Id.*) As ResCap notes, PRMI's list includes "seven news articles on Assetwise and/or automated underwriting technology, scores of communications regarding an irrelevant private-branded Assetwise, and at least two dozen emails discussing Assetwise loans that are not in dispute." (*Id.* (citing, *e.g.*, DTX-058; DTX-071; DTX-206, DTX-061 (not an at-issue PRMI loan); DTX-064–DTX-066 ("operationally everything [at PRMI] is peachy," "[u]nderwriting is pretty good"); DTX-082 (PRMI's "files for the most part are clean and in good shape"); DTX-090 (non-PRMI loan); DTX-178 (Homecomings bid letter); DTX-223 (regarding correspondent lender Mortgagetree); DTX-303 (PRMI underwriting for an at-issue loan).) Plaintiff seeks the exclusion of such evidence as irrelevant and lacking in probative value. (*Id.*) Again, while the Court will permit some non-loan-specific communications, much of the evidence that Plaintiff has identified above appears insufficient, even cumulatively, to establish waiver or estoppel, and will be subject to exclusion.

In light of this guidance, the Court directs the parties to meet and confer within five days of this ruling about the evidence that PRMI intends to use in support of its estoppel and waiver defenses. To the extent that significant disputes remain, the Court will consider the admissibility of PRMI's evidence in the context of trial. The Court addresses Plaintiff's concerns regarding particular Assetwise witnesses in Section IV of this Order.

### 4. Homecomings Evidence on Breach and Causation

Regarding evidence concerning RFC's broker channel affiliate, Homecomings, as it relates to breach and causation, the Court incorporates by reference its discussion of such

34

evidence in the *HLC MIL Order*, 2018 WL 4863597, at *12. For the same reasons noted there, and in light of the Court's rulings on breach and but-for causation in this action, such evidence is irrelevant under Rule 401, as it relates to breach and causation. *See id.*; *PRMI SJ Order*, 2019 WL 7038234, at *36.

At the hearing on this motion, counsel for Plaintiff clarified that it seeks to exclude Homecomings evidence only as to breach and causation issues. PRMI's primary objection was that the blanket exclusion of all Homecomings evidence was overbroad. It noted that Dr. Snow refers to Homecomings evidence in his damages analysis. Plaintiff has now confirmed the limited scope of its motion. Consistent with the Court's ruling in *HLC*, the Court grants Plaintiff's motion to exclude Homecomings evidence regarding breach and causation.

### 5.    "Separate" Settlement for Additional Settling Trusts

As a general matter, as to several bankruptcy-related issues, ResCap urges the Court to admit the Bankruptcy Plan and the Bankruptcy Court's rulings in connection with their legal effect. (Pl.'s MIL No. 3 at 3 n.3.) The Court agrees. As the Court has previously explained, the Chapter 11 Plan and the Bankruptcy Court's rulings are admissible for their legal effect (and as objective indicia of good faith), including findings as to the amount of the Allowed Claims. *See In re ResCap Liquidating Tr. Action*, 399 F. Supp. 3d 804, 818 n.8 (D. Minn. 2019) ("*HLC JMOL Order*") (citing *HLC MIL Order*, 2018 WL 4863597, at *15). In contrast, however, Judge Glenn's factual findings that the Settlements were reasonable, for example, is inadmissible as hearsay. *HLC JMOL Order*, 399 F. Supp. 3d at 818 n.8 (citing *HLC MIL Order*, 2018 WL 4863597, at *15).

Although PRMI initially states that it does not intend to advance the argument that the RMBS Trust Settlement included a separate $250 million Allowed Claim for the Additional Settling Trusts, it argues that the Supplemental Term Sheet (in which the separate allocation is noted) is "still relevant to *allocating* that allowed claim." (Def.'s Opp'n to Pl.'s MIL No. 3 at 6–7.) Further, it asks the Court to "clarify" that the *Daubert* order does not preclude Dr. McCrary from testifying about the opinions in his Supplemental Report as they relate to allocation. (*Id.*) In addition, PRMI advises the Court to change its ruling if the Court disagrees with PRMI, stating, "If the Court concludes that its summary-judgment order completely precludes the opinions in Dr. McCrary's supplemental report, its [sic] should amend its *Daubert* opinion to deny Plaintiff's motion as 'moot,' just as it denied as 'moot' the motions to exclude certain of Dr. Snow's opinions in the first wave." (*Id.* at 6–7 & n.2.)

The Court reiterates its *Daubert* ruling: Dr. McCrary is precluded from testifying about the opinions in his Supplemental Report. *See PRMI Daubert Order*, 2020 WL 209790, at *29. As the Court explained in the summary judgment order, there is no need to "separately allocate" for the Additional Settling Trusts because no such separate allocation was present in the Chapter 11 Plan, nor in Judge Glenn's Confirmation Order, or Findings of Fact. *PRMI SJ Order*, 2019 WL 7038234, at *65–69. Factually and legally, there is no *relevance* to evidence concerning a separate allocation for the Additional Settling Trusts—whether the evidence comes from the Supplemental Term Sheet, Dr. McCrary, or from the cross examination of Plaintiff's witnesses. The underlying "Additional Settling Trust Settlement" was not the RMBS Trust Claim allowed by the Bankruptcy Court, for which ResCap seeks indemnification in this lawsuit. Instead, the Bankruptcy Court allowed a single, unallocated

claim to the RMBS Trusts. *Id.* at *69. Evidence concerning the Additional Settling Trust Settlement is simply irrelevant, as it is inconsistent with the legal effect of the Chapter 11 Bankruptcy Plan and the Bankruptcy Court's Confirmation Order and Findings of Fact.

Moreover, as the Court noted in its ruling on the parties' *Daubert* motions, Dr. McCrary's Supplemental Report was "submitted past the expert report deadline and without leave of court." *PRMI Daubert Order*, 2020 WL 209790, at *29. Despite years of litigation, numerous experts, and overlapping issues and legal counsel with respect to the First Wave and Second Wave of cases, the argument concerning the Additional Settling Trusts emerged for the first time in Dr. McCrary's belatedly produced Supplemental Report. Dr. McCrary indicated that the Supplemental Report was served late *because counsel did not inform him of the information* until after the deadline. (Alden Decl., Ex. S (McCrary Suppl. Rpt.) ¶ 4) (emphasis added). Also, given the presence of the Supplemental Term Sheet in RFC's underlying bankruptcy proceedings, Dr. McCrary's opinion on this issue was not based on newly obtained evidence. Defendant provides no persuasive explanation for its late filing. Although the Court did not expressly rule on the basis of PRMI's failure to comply with Rule 26 in its *Daubert* order, it noted the failure, which provides additional support for the exclusion of Dr. McCrary's opinions in the Supplemental Report. His opinion on the Additional Settling Trusts is both irrelevant and untimely. Accordingly, Plaintiff's motion in limine on this issue is granted.

The Court also declines to accept PRMI's suggestion to modify or amend its *Daubert* order to state that Plaintiff's motion to exclude Dr. McCrary's Supplemental Report is denied as moot, as opposed to granted, which is the current language in the order.

### 6. Allocation of $96 Million to Servicing Claims

Because PRMI does not intend to dispute that the RMBS Trust Settlement allocated $96 million to servicing claims, Plaintiff's motion is denied as moot on this issue.

### 7. The "Value" of the Allowed Claims is Different Than Their Face Amount

PRMI states that it does not intend to present evidence that the value of the Allowed Claims is different than their face value, therefore, the Court denies this portion of Plaintiff's motion as moot.

### 8. RFC's Creditors' Claims Were Fully Satisfied in Bankruptcy

Because PRMI does not intend to argue that RFC's creditors' claims were fully satisfied in bankruptcy, this portion of Plaintiff's motion is denied as moot.

### 9. Whether This Litigation Will Benefit RFC's Creditors

As noted, Plaintiff seeks to exclude evidence or argument that "this litigation will not benefit RFC's creditors because certain units either have traded or were distributed to GMAC's and ResCap's creditors." (Pl.'s MIL No. 3 at 4.) Because PRMI does not intend to advance this argument, this portion of Plaintiff's motion is denied as moot. The Court agrees that any references to the beneficiaries of the instant litigation shall be consistent with the language approved by the Court in Wave One. *See HLC MIL Order*, 2018 WL 4863597, at *3, 17.

### 10. Reasonableness and Good Faith of the Bankruptcy Settlements

Because PRMI will not offer evidence concerning the reasonableness of the Bankruptcy Settlements at trial, Plaintiff's motion is denied as moot in part. However, PRMI states, "for clarity," that "certain bankruptcy documents remain relevant to the issues of

allocation and causation." (Def.'s Opp'n to Pl.'s MIL No. 3 at 8.) If these documents concern claims against RFC affiliates, the Allowed Fee Claim, or any other bankruptcy documents rendered irrelevant by the Court's prior rulings, they are inadmissible. At the hearing on this motion, the Court made clear that Defendant may not use allocation and causation to effectively circumvent the Court's summary judgment rulings. Accordingly, Plaintiff's motion is granted in part as to any such documents.

### 11. Unproven Assertions of Alleged Misconduct

Because PRMI states that it will not present evidence regarding the Monolines' pre-bankruptcy litigation, nor will it assert any unproven allegations of RFC's alleged misconduct, this motion is denied as moot.

### 12. Proofs of Claim are Admissible Only for Their Legal Effect or Effect on the Listener; Annexes to Proofs of Claim are Admissible Only as Evidence of the Claims that RFC Faced at the Time of the Settlements

PRMI asserts that it only intends to present proofs of claim for their legal effect or effect on the listener, and annexes only as evidence of the claims that RFC faced at the time of the Settlements. Accordingly, this motion is denied as moot.

To the extent PRMI has refused to meet and confer about the use of bankruptcy-related exhibits, the Court orders the parties to meet and confer within five days of this Order.

### 13. Claims Against RFC Affiliates

Since PRMI maintains that it will not seek to introduce proofs of claim against GMAC Mortgage, ResCap, and other RFC affiliates, the Court denies this motion as moot.

### 14. Non-Indemnifiable Claims that the Trusts and Monolines Asserted Against RFC's Parent, Ally

As noted, Plaintiff moves to exclude any evidence or argument relating to the claims of RFC's creditors against Ally. PRMI observes that although the Court denied its summary judgment motion in this regard, it did not affirmatively grant summary judgment to ResCap on this issue. It therefore contends that "it remains a live issue whether Plaintiff should have allocated some portion of the settlements to non-indemnifiable claims against Ally," (Def.'s Opp'n to Pl.'s MIL No. 3 at 9), and that the parties to the Bankruptcy Settlements used RFC as a "conduit" to settle non-indemnifiable claims against Ally. The Court rejects Defendant's argument that the allocation of claims to Ally is at issue in this case.

On summary judgment, the Court denied PRMI's motion that ResCap's RMBS Trust allocation methodology failed because it failed to account for the value of non-indemnifiable claims against Ally. *PRMI SJ Order*, 2019 WL 7038234, at *73. The Court quoted the unambiguous language of the Chapter 11 Bankruptcy Plan: "The RMBS Trust Claims, which the RMBS Trust portion of the Global Settlement resolved against RFC for $7.091 billion, consist of claims against the 'Debtors.' " *Id.* (citing Nesser Decl., Ex. 25 (Second Am. Ch. 11 Plan) at 59, § IV.C.2.a; *id.* at 30, § IA.267). In fact, PRMI acknowledged that Ally was not in bankruptcy, *id.*, and therefore was not a debtor. The Chapter 11 Plan—which, along with the Bankruptcy Court's Confirmation Order and Findings of Fact, are the operative Bankruptcy documents underlying the current indemnification suit for the RMBS Trust Settlement's Allowed Claims—defined the "RMBS Trust Claims" as "all the claims, including RMBS Cure Claims and RMBS R+W Claims of the RMBS Trusts against the

Debtors which shall be Allowed under Article IV.C.2(a) of the Plan as non-subordinated unsecured Claims." (Nesser Decl., Ex. 25 (Second Am. Ch. 11 Plan at 54–55).) Ally, not a debtor, was not included in that definition.[7] Nor does the portion of the Chapter 11 Plan describing its implementation include the RMBS Trusts as recipients of Ally's contribution.[8] (*Id.* (Second Am. Ch. 11 Plan § IV.A.a).)

PRMI's effort to rebut Plaintiff's damages allocation based on claims against Ally, appears to be in reliance on the opinion of the defendants' excluded expert from Wave One, George Triantis.[9] *See In re: ResCap Liquidating Tr. Litig.,* No. 14-cv-1716 (SRN/HB), 2018 WL 4489685, at *25–25 (D. Minn. Sept. 19, 2018) ("*HLC Daubert Order*"). The Court

---

[7]      In contrast, the Chapter 11 Plan's definition for "Private Securities Claims," denotes claims brought by securities claimants against Ally, RFC, and other affiliates, and states that such claims are against the Debtors, "including the Debtors and Ally." (Nesser Decl., Ex. 25 (Second Am. Ch. 11 Plan at 54–55).)

[8]      In contrast, this portion of the Plan accounts for Ally's contribution to the Private Securities Claims Trust, however, consistent with the preceding footnote. (Nesser Decl., Ex. 25 (Second Am. Ch. 11 Plan § IV.A.a).)

[9]      Specifically, as relevant here, Triantis opined:

> Under the Plan, Ally did not pay the RMBS trusts directly for the release of their claims against it. Rather, the consideration paid for that release came from the Ally contribution, which was paid to the Debtors' estates and then distributed from the estates to the RMBS trusts on account of their allowed claims against Debtors. In this way, while the RMBS trusts technically received allowed claims only against the Debtors pursuant to the RMBS settlement, the consideration the trusts received for the release of their claims against Ally was in fact included in the recoveries the trusts received under that settlement. The amount of the RMBS trusts' allowed claim against the Debtors may also have been affected by their agreement to the Third Party Release.

(Rand Decl., Ex. 45 (Triantis Rpt.) [Doc. No. 3385] ¶ 157.)

precluded the entirety of his testimony, finding that Triantis was not qualified to offer it, as he lacked any experience in RMBS litigation or settlement, and that his opinion was speculative. *Id.*

While PRMI concedes that Ally was not a bankruptcy debtor, it argues that such a distinction places form over substance. Under its "conduit" theory, PRMI asserts that Ally simply passed money through to RFC. But as Plaintiff notes, the Debtors had substantial estate claims against Ally—notably, veil piercing and alter ego claims—which were assets that the Debtors used in negotiating the Settlements. And, as Plaintiff observes, "that Ally contributed to the bankruptcy estates that helped *fund* distributions on the Allowed Claims does not mean that the Allowed Claims are on account of claims against Ally." (Pl.'s Jan. 21, 2020 Letter at 2.) In the Court's ruling on motions in limine in *HLC*, the Court precluded "evidence or argument that the value of the Allowed Claims established by the [B]ankruptcy Settlements is, or should be, different than their face amount as established by the [B]ankruptcy Plan and Judge Glenn's Findings of Fact." *HLC MIL Order*, 2018 WL 4863597, at *2 (D. Minn. Oct. 8, 2018).

In the *PRMI* summary judgment order, the Court found no disputed issue of fact that Ally was not a debtor, and therefore there was no "failure" of Plaintiff's methodology to account for the value of claims against Ally. *PRMI SJ Order*, 2010 WL 7038234, at *73. The fact that Ally was not a debtor is irrefutable. Nevertheless, PRMI maintains that allocation for the Ally claim remains a live issue simply because the Court denied summary judgment to PRMI on an issue for which ResCap did not seek summary judgment.

Granted, when issues of material fact remain in dispute, denying summary judgment for one party does not amount to granting summary judgment for the other party. *See, e.g., News Am. Mktg. In-Store Servs., LLC v. Floorgraphics, Inc.*, 576 F. App'x 111, 115 (3d Cir. 2014). However, where, as here, there is no disputed issue of fact, such that the Court rules as a matter of law, the denial of summary judgment "effect[ively] terminate[s] any further consideration" of PRMI's allocation argument concerning Ally. *See Helm Fin. Corp. v. MNVA, Inc.*, 212 F.3d 1076 (8th Cir. 2000) (holding that denial of summary judgment as a matter of law had the effect of terminating further consideration of UFTA and breach of fiduciary duty claims in the district court); *see also Acton v. City of Columbia, Mo.*, 436 F.3d 969 (8th Cir. 2006) (finding that denial of summary judgment to one party was, "in some and substance," a grant of summary judgment to the other party where the "district court made no reference to any factual disputes that required resolution at trial in either of its summary judgment denials."). That is the effect of the Court's summary judgment ruling here, as evidence concerning Ally, a non-debtor in Bankruptcy Court, is irrelevant to Plaintiff's damages allocation. Plaintiff's request to preclude any such evidence is granted.

### 15. Allowed Fee Claim

As with evidence relating to non-indemnifiable claims against Ally, PRMI reasserts its losing Allowed Fee Claim argument from summary judgment, arguing that such evidence remains relevant to allocation because the Court merely denied PRMI's summary judgment motion on this issue, but did not affirmatively grant Plaintiff summary judgment. In the summary judgment order, the Court held that "[t]he fact that the RMBS Trusts agreed to give some of their recovery to attorneys for their investors has no bearing on RFC's liability to the

43

RMBS Trusts, nor on PRMI's obligation to indemnify RFC for that liability." *PRMI SJ Order*, 2019 WL 7038234, at *74. PRMI points to no legal authority or factual disputes that alter the Court's summary judgment ruling. For the reasons noted in the discussion of the Ally claims, and based on the same legal authority, evidence concerning the Allowed Fee claim is simply not relevant, as a matter of law. ResCap's motion is therefore granted as to the Allowed Fee Claim evidence.

For all of the foregoing reasons, ResCap's Motion in Limine No. 3 is granted in part, denied in part, denied as moot in part, and deferred in part.

## IV.     ISSUES RAISED IN PLAINTIFF'S JANUARY 21, 2020 LETTER

### A.     Evidence Regarding RFC's Bankruptcy

#### 1.     Claims Against Ally and the Allowed Fee Claim

Plaintiff asserts that PRMI has designated substantial deposition testimony regarding claims against Ally, and Ally's payment to RFC and its debtor affiliates in the bankruptcy. (Pl.'s Jan. 21, 2020 Letter at 2 (citing, *e.g.*, Hamzehpour Dep. at 243–46; Kruger Dep. at 94– 95, 106–09, 126–27, 138–39; Major Dep. at 80–81, 117–19, 127–30; Devine Dep. at 149– 51, 205–06).) Likewise, it states that PRMI has disclosed exhibits (DTX-573–DTX-574) concerning the Allowed Fee Claim. (*Id.*)

For the reasons noted earlier, the impact of claims brought against Ally and the effect of the Allowed Fee Claim on the damages allocation here are simply not relevant and will not be admitted.

### 2. Evidence Possibly Related to Reasonableness

#### a. Ally Reserve Disclosures

PRMI seeks to admit evidence of internal Ally documents and presentations regarding Ally's financial statements and reserve accounting, and related deposition testimony from Ally's corporate representative, Tim Devine. (*See, e.g.*, DTX-422, DTX-428–DTX-429; Devine Dep. at 44–50, 67–68, 71–73, 95–102.) This includes evidence concerning Ally's pre-bankruptcy disclosure of $0 to $4 billion in potential R&W litigation exposure. (*See, e.g.*, Hamzehpour Dep. at 82–83, 89–90, 111–12; Devine Dep. at 104–05.) ResCap argues that this evidence is not relevant in light of the Court's prior rulings, and, even if it were relevant, PRMI lacks a witness through whom these documents could be admitted. (Pl.'s Jan. 21, 2020 Letter at 3.)

As the Court has explained, there is no triable issue of fact regarding Ally, and the Court held on summary judgment that the Bankruptcy Settlements were reasonable as a matter of law. Accordingly, this evidence is simply irrelevant to allocation and reasonableness. Moreover, as Plaintiff notes, there is no Ally employee to provide foundation, nor does PRMI have an expert who can address these accounting-related documents. This evidence is inadmissible.

#### b. Original RMBS Settlement and Financial Modeling

PRMI seeks to admit evidence and testimony regarding the Original RMBS Settlement, including financial modeling, (*see, e.g.*, Hamzehpour Dep. at 243–46; Devine Dep. at 71–73, 77–78, 164; DTX-431; DTX-434–DTX-437), and analyses and communications concerning distributions that creditors might receive under various

hypothetical settlements. (*See, e.g.,* DTX-430, DTX-434–DTX-433; Devine Dep. at 127–28.) Plaintiff argues that such evidence is irrelevant, as the Court held on summary judgment that the Bankruptcy Settlements were reasonable as a matter of law. (Pl.'s Jan. 21, 2020 Letter at 3.)

The Court agrees with ResCap. As the Court has explained, *see PRMI SJ Order*, 2019 WL 7038234, at *63–69, ResCap seeks indemnification for the single, unallocated RMBS Trust Settlement claim that the Bankruptcy Court allowed. As part of the Bankruptcy Settlements, the Court found that the RMBS Trust Settlement was reasonable as a matter of law. *Id.* at *17–23. This evidence, including distribution amounts, is not relevant here as to either reasonableness or allocation, and is excluded.

### c. Unsworn Expert Reports, Briefs, and Annexes to Proofs of Claim

PRMI's exhibit list includes unsworn expert reports, briefs, and annexes to proofs of claim, some of which attach complaints. (*See, e.g.*, DX-530, DX-531, DX-534, DX-541, DX-570, DX-578.) Plaintiff seeks a ruling that such documents are excludable as hearsay if offered for the truth of the matter asserted and asserts that many lack foundation. (Pl.'s Jan. 21, 2020 Letter at 3.) For instance, ResCap notes that Dr. Cornell admits to "parroting" his lawyer's information about legal defenses. (*Id.* (citing Cornell Dep. at 142; *see also id.* at 71–72, 125, 131–33).)

At the hearing on this motion, PRMI's counsel responded that such documents will be offered "not to prove the truth of the matter asserted," but to show the "type of information available" to a reasonable person in RFC's position at the time of the Settlement, i.e., to show the effect on the listener. PRMI's counsel further argued that ResCap's motion is

"speculative, general, and nonspecific" and in fact, encompasses exhibits on ResCap's own exhibit list, such as Mr. Sillman's expert report which qualifies as an "unsworn brief" filed in the underlying bankruptcy proceedings. In response to PRMI's characterization of the "speculative" and "general" nature of the motion, ResCap's counsel asserted that PRMI refused to meet and confer with ResCap in good faith about objections to specific bankruptcy-related documents and designations.

The Court orders the parties to meet and confer, in good faith, within five days of this Order about any objections to the introduction of specific documents in the bankruptcy record. The Court will address any remaining objections at trial and therefore defers ruling on this issue.

### B. Assetwise-Related Witnesses

The Court has provided guidance, *supra,* Section III, regarding the scope of the evidence it finds relevant to PRMI's Assetwise defense. (Pl.'s Jan. 21, 2020 Letter at 3 & Ex. A.) It therefore confines its discussion here to Plaintiff's request to exclude certain witnesses whom PRMI intends to call in support of its Assetwise defense.

PRMI intends to call at least two former RFC employees to testify regarding Assetwise: Brenda Evans and Sharon Maki. Plaintiff moves for their exclusion. (*See* Pl.'s Jan. 21, 2020 Letter at 5.) The Court grants its request as to Ms. Evans and denies its request as to Ms. Maki.

As Plaintiff notes, when Ms. Evans was deposed, she could not recall any of the repurchase correspondence between RFC and PRMI. (*Id*.) Moreover, PRMI has indicated that it hoped to establish through her testimony that in the limited instances in which RFC

demanded repurchase, the breaches were not issues that Assetwise had cleared. (*Id.*) PRMI argues that Evans will provide corroborative evidence in support of its estoppel and waiver defenses. But RFC had the right to demand repurchase or not, as the Court has found, and the lack of evidence of repurchase demands carries no import. As Plaintiff's counsel stated at the hearing, "the absence of evidence is not evidence of absence." The implication that PRMI seeks to elicit from Ms. Evans' testimony is also utterly speculative.

Moreover, (1) Ms. Evans did not remember working with PRMI, (Evans Dep. at 22); (2) she authored only nine of the 26 RFC-PRMI repurchase letters on Defendant's exhibit list, has no memory of them, and cannot lay foundation for the rest, (*id.* at 69, 74, 80, 98, 120–21; DX-169; DX-204); (3) the letters do not reference Assetwise; (4) she does not remember the specifics of Assetwise, nor its requirements, (Evans Dep. at 52); and (5) she lacks knowledge of the ARMS database that PRMI apparently wishes to use on these issues. (*Id.* at 32–34; 54; 58–59; 63.) Thus, she lacks the necessary knowledge and foundation to present probative testimony. Plaintiff's request to exclude Ms. Evans' testimony is granted on this basis as well.

PRMI also proposes to call Sharon Maki, a former RFC underwriter, to testify in support of its Assetwise defense. Plaintiff seeks to exclude her testimony, arguing that it is irrelevant, a waste of time, and inconvenient for a third party. (Pl.'s Jan. 21, 2020 Letter at 5.) As Plaintiff notes, Ms. Maki testified that she has no knowledge of, or involvement in, any written or verbal waiver of the Client Guide R&Ws as to Assetwise loans, nor did she have the authority to grant such waivers. (*Id.* (citing Maki Dep. at 229–233, 239).)

Defendant argues that Ms. Maki was "on the ground communicating with PRMI about Assetwise direct approvals." Defendant contends that she will testify that if there was a question about whether an Assetwise-underwritten loan was to follow the Client Guide's program criteria guidelines or the streamlined Assetwise requirements, it was to follow the Assetwise requirements.

Ms. Maki may be able to provide general information about the daily workings of Assetwise, which she describes as "just a tool to get to investment quality loans [in] a little sooner fashion." (Maki Dep. at 230.) On the ultimate question of estoppel and waiver, however, she testified that she was unaware of anyone, including herself, ever expressing in words or substance, the notion that (1) Assetwise somehow superseded a client contract as between RFC and PRMI, (2) Assetwise superseded the Client Guide, and (3) the use of Assetwise waived RFC's rights under the Client Guide. (*Id.* at 230–31.) Moreover, she testified that she never waived any of RFC's rights or PRMI's obligations with respect to the purchase of loans from PRMI, nor was she aware of anyone else waiving RFC's rights or PRMI's obligations. (*Id.* at 231–32.) Ms. Maki could remember no one ever expressing, in words or substance, in writing or orally, the idea that RFC had waived any of its rights or PRMI's obligations with respect to PRMI's loans. (*Id.* at 232.)

The Court finds that Ms. Maki's testimony is of limited relevance, given her prior testimony going to the ultimate questions of estoppel and waiver. Nevertheless, the Court will permit her testimony.

### C.     Disputed Countrywide Loan

Among the at-issue loans in this case is a single loan that was underwritten to Countrywide's underwriting guidelines. This loan accounts for approximately $30,000 of Plaintiff's approximately $5.5 million damages claim. (Pl.'s Jan. 21, 2020 Letter at 6.) In support of its estoppel/waiver defense with respect to this loan, PRMI intends to offer testimony from its former President, David Zitting, and from one of its employees, James Crawford. (*Id.*)

ResCap seeks to strike Mr. Crawford from PRMI's witness list on the following grounds: (1) the sole subject on which Mr. Crawford will testify is the Countrywide loan; (2) he will not testify regarding an explicit waiver or estoppel as to the Countrywide loan made by someone in authority at RFC, but will testify regarding his "common sense" understanding about the R&Ws on the Countrywide loan; (3) because Mr. Crawford has never been deposed, PRMI proposed that his deposition take place in Salt Lake City, which would likely generate more attorneys' fees and costs than the Countrywide loan is worth; (4) PRMI stated that Mr. Crawford's testimony could be relevant to some other, unidentified issues; and (5) PRMI stated that it would persist in its position unless Plaintiff agreed to drop its claim on the loan entirely. (*Id.* at 6.) Plaintiff asserts that PRMI "is not entitled to engage in waste, to pursue testimony for improper reasons, or to manipulate the judicial process so as to make it practically impossible for Plaintiff to obtain relief in an economically feasible manner." (*Id.*)

PRMI contends that Mr. Crawford will also testify about Assetwise, although Plaintiff asserts that PRMI has not indicated that Mr. Crawford's testimony concerns a specific loan.

Finally, Plaintiff notes that PRMI's exhibit list contains no evidence of an express waiver or estoppel, and that some documents, like DX-207, which contains a generic discussion of RFC-Countrywide competition, should be excluded. (Pl.'s Jan. 21, 2020 Letter at 6 n.2.)

Consistent with the guidance provided earlier regarding Assetwise, Mr. Crawford may testify about date, time, and place-specific communications between RFC and PRMI regarding the R&Ws on the Countrywide loan and Assetwise-approved loans. He may not testify about his generic, "common sense" understanding. PRMI may submit evidence of communications between RFC and PRMI concerning the credit- and quality-related requirements applicable to the Countrywide loan. Documents containing general discussions of competition between RFC and Countrywide are irrelevant and will be excluded. Any deposition of Mr. Crawford will occur in Minneapolis or Saint Paul, either before or during trial, and the parties shall meet and confer within five days of this ruling to discuss the place, time, and duration of the deposition.

On a related note, there is a dispute over a different witness, Mr. Russell, who was disclosed by ResCap as a possible rebuttal witness. He has not been deposed. At the pretrial hearing, ResCap informed the Court that it does not intend to call Mr. Russell, but disclosed him in order to preserve its right to call him should the need arise. If ResCap determines that it might call Mr. Russell, even on rebuttal, it must notify PRMI of its determination promptly. Just like Mr. Crawford, any deposition of Mr. Russell (which would likely be during trial) will be held in Minneapolis or Saint Paul, with the exact time and date to be determined after the parties meet and confer.

### D.      RFC Investor Repurchase Activity

As Plaintiff notes, PRMI intends to call two former RFC employees who worked in its investor repurchase group, Dorian Whealdon and Megan Gallagher, to provide testimony concerning the meaning of the Trust Reps and fraud disclaimer.  (Pl.'s Jan. 21, 2020 Letter at 6.)  It also seeks to introduce exhibits through them.  (*Id.*)

ResCap correctly observes that this Court has twice found that Ms. Whealdon's testimony is of tangential relevance, at best.  In *HLC*, the Court barred her trial testimony because HLC failed to connect Ms. Whealdon to its "sole cause" defense theory or to the reasonableness of RFC's Bankruptcy Settlement.  (See Oct. 22, 2018 Order [Doc. No. 4641] at 9, 13–18; *HLC* Trial Tr. at 1297–1300.)  And here, PRMI has attempted to depose Ms. Whealdon for her purported "contemporaneous understanding of the various trust level representations and warranties."  (*See* Def.'s Feb. 19, 2019 Letter [Doc. No. 5020] at 2.)  The Court previously precluded Ms. Whealdon's deposition, observing that her experience was not particularly relevant to the specific issues on which PRMI desired to depose her, and that her mobility was quite restricted.  (March 8, 2019 Order [Doc. No. 5036] at 1–2.)

At the hearing on the present motion, defense counsel conceded that Ms. Whealdon was not directly involved in the repurchase correspondence at the client level with PRMI.  Nonetheless, PRMI's counsel argued that Ms. Whealdon's testimony is relevant because she corroborated several other witnesses testifying that "if Assetwise [Direct] approved a loan, [] RFC would purchase the loan as long as the information that was input was correct."  PRMI's counsel argued that she further testified that if Assetwise approved a specific characteristic, then RFC personnel assumed that characteristic was "acceptable."  And at deposition in Wave

One, PRMI's counsel asserted that Ms. Whealdon testified that the Assetwise approval "would replace the guideline criteria." Accordingly, PRMI's counsel concluded that Ms. Whealdon's testimony provides "context" and "corroboration" of "RFC's understanding" that this is how PRMI should similarly approach Assetwise.

First, on the general subject for which PRMI initially identified Whealdon's testimony as relevant—her contemporaneous knowledge of trust-level R&Ws—during her time with investor repurchase, Ms. Whealdon worked almost exclusively with MBIA repurchase demands, and her primary criteria for determining RFC's response was to evaluate the loan's compliance with the Client Guide. (*See* Whealdon Dep. at 79.) PRMI has included over 75 repurchase demands from FGIC to RFC on its exhibit list, none of which Whealdon responded to, nor does she possess any personal knowledge of the letters or RFC's responses. (Pl.'s Jan. 21, 2020 Letter at 7 n.3.) None of the six investor repurchase letters from Whealdon to MBIA on PRMI's exhibit list relate to either PRMI loans or any disputed Trust Rep. (*See, e.g.*, DX-327.) Ms. Whealdon's knowledge of the disputed Trust Reps is very limited.

Second, her ability to provide relevant Assetwise testimony, for which the Court has provided guidance, *supra*, Section III, is even more limited. Given her limited involvement with PRMI loans, she lacks sufficient information concerning communications between RFC and PRMI, whether loan-specific or general, concerning Assetwise.

Accordingly, because the Court finds Ms. Whealdon's testimony only tangentially relevant to the purposes for which PRMI seeks to elicit testimony, and because of her significant mobility problems, the Court grants Plaintiff's request to exclude her testimony.

Former RFC employee Megan Gallagher worked with Ms. Whealdon in investor repurchase at RFC. (Gallagher Dep. at 21, 35.) Ms. Gallagher worked at RFC during the relevant time period and was directly involved in responding to repurchase requests. (*Id*.) At the hearing on this motion, PRMI's counsel argued that Ms. Gallagher's testimony is relevant to "issues regarding RFC's investor repurchases practices." Specifically, PRMI's counsel argued that her testimony rebuts the testimony of certain ResCap witnesses, like Ms. Farley and Mr. Butler, who have generally opined that "RFC understood its fraud disclaimer [to be] of little value and not a silver bullet against repurchase claims predicated on fraud or misrepresentation." Ms. Gallagher, on the other hand, will allegedly testify at trial that RFC was "acutely focused" on its fraud disclaimer in responding to incoming repurchase requests. As support, PRMI's counsel asserted that it intends to introduce exhibits through Ms. Gallagher that reflect her "direct involvement in discussions" and "personal knowledge" regarding RFC's fraud disclaimer. These exhibits were not previously raised in Ms. Gallagher's Wave One deposition.

Based on the Court's review of the exhibits, the Court concludes that Ms. Gallagher lacks the necessary knowledge about the fraud disclaimer and/or the lack of a no-fraud representation in RFC securitizations. (*See* Pl.'s Jan. 21, 2020 Letter at 7.) As Plaintiff notes, DX-414 and DX-415 simply show that Ms. Gallagher intended to seek legal advice about repurchase demands, and DX-413 and DX-416 contain her speculation about the meaning of certain contractual provisions. The Court agrees that such internal speculation is irrelevant, and Ms. Gallagher lacks the necessary knowledge to testify about the fraud disclaimer. (*See, e.g.*, DX-416 (Email from M. Gallagher stating "all [her] hours watching Law and Order are

not paying off" when speculating about the meaning of contractual provisions). Additionally, when deposed, Ms. Gallagher specifically testified that she had no knowledge regarding the Trust Reps, which was "outside the scope" of her position. (Gallagher Dep. at 44–45.) Accordingly, Ms. Gallagher has no direct personal knowledge about the relevant issues in this case, and Plaintiff's request to exclude her testimony is granted.

### E. Damages Calculations

Plaintiff states that the parties have met and conferred to develop a means of determining a damages award in the event that the Court finds PRMI liable to a lesser degree than contemplated by Plaintiff's expert, such as if the Court eliminates the Assetwise-approved loans or Countrywide loan from any damages award. (Pl.'s Jan. 21, 2020 Letter at 7–8.) Plaintiff proposes that Dr. Snow will present his Allocated Breaching Loss methodology at trial, along with the output of his methodology, on the basis of inputs from Plaintiff's underwriting expert. (*Id.* at 8.) If the Court requests a calculation using different assumptions, Plaintiff seeks permission for Dr. Snow to provide such a report in writing, using his already-disclosed model with different inputs. (*Id.*) PRMI would then be permitted to offer a written response. (*Id.*)

While PRMI disagrees with this proposal, it has offered no other alternative or identified any prejudice from the proposal. (*Id.*) The Court understands that the parties are meeting and conferring on this issue, and if they are unable to reach agreement, they shall submit their positions to the Court in writing within four business days.

**F.      Deposition Designations**

The question of deposition designations was raised in ResCap's January 21, 2020 Letter.  (See Pl.'s Jan. 21, 2020 Letter at 8.)  Specifically,  ResCap noted that the parties had collectively designated 15 hours of deposition testimony and, contrary to PRMI's request that all 15 hours be played in open court, requested that the Court review the designated testimony *in camera*.  (*Id.*)

At the pretrial hearing, the Court ruled on this issue, stating that there would be a presumption against playing deposition testimony at trial, subject to a finding of "good cause" for playing it live to the Court.    The Court accepted ResCap's *in camera* proposal, and ordered the parties to first exchange designations, meaningfully meet and confer, and resolve as many issues as possible.  Anything unresolved will then be submitted to the Court so it can rule on the matter.   Following the Court's ruling on unresolved designations, the parties will edit the videos to accommodate the Court's ruling, and provide the Court with a copy of the resulting transcript.

**V.      ADDITIONAL ADMINISTRATIVE ISSUES**

Finally, the Court addressed several administrative matters at the pretrial hearing.

**A.      Disclosure of Exhibits; Effect of Rulings**

Regarding the presentation of contested exhibits to the Court, in order to avoid presenting the Court with thousands of pages of documents on which the Court must rule within 48 hours, the parties shall meaningfully meet and confer regarding their objections. To that end, at the pretrial hearing, the court directed the parties to meet and confer *now* about every exhibit that they intend to disclose.  Counsel for PRMI suggested that the

parties utilize a 72–hour disclosure rule, which they should likewise discuss. The Court also noted at the pretrial hearing that the record on any issue the Court ruled on in its summary judgment or *Daubert* orders is complete. (*Id.*) Neither party may supplement the record on those motions at trial. (*Id.*)

**B.    Trial Schedule**

Trial schedule was also discussed at the pretrial hearing, and per that discussion, is as follows:

**Week One (Feb. 10–14, 2020):**
Mon., Feb. 10        —— 8:30 a.m. meeting; 9:00 a.m. to 5:00 p.m. trial
Tue., Feb. 11        —— 8:30 a.m. meeting; 9:00 a.m. to 5:00 p.m. trial
Wed., Feb. 12       —— 8:30 a.m. meeting; 9:00 a.m. to 5:00 p.m. trial
Thur., Feb. 13      —— 8:30 a.m. meeting; 9:00 a.m. to 5:00 p.m. trial
Fri., Feb. 14        —— 8:30 a.m. to 11:15 a.m. trial

**Week Two (Feb. 18–21, 2020):**
Tue., Feb. 18        —— 8:30 a.m. meeting; 9:00 a.m. to 5:00 p.m. trial
Wed., Feb. 19       —— 8:30 a.m. meeting; 9:00 a.m. to 5:00 p.m. trial
Thur., Feb. 20      —— 8:30 a.m. meeting; 9:00 a.m. to 5:00 p.m. trial
Fri., Feb. 21        —— 8:30 a.m. meeting; 9:00 a.m. to 5:00 p.m. trial

**Week Three (February 24–28, 2020) -** No trial

**Week Four (March 3–4, 2020):**
Tue., Mar. 3         —— 8:30 a.m. meeting; 9:00 a.m. to 5:00 p.m. trial
Wed., Mar. 4        —— 8:30 a.m. meeting; 9:00 a.m. to 5:00 p.m. trial

The Court ruled at the hearing that each party would have one hour for opening statements. Moreover, the Court agreed to the parties' use of the designation "PTX" for plaintiff exhibits, and "DTX" for defense exhibits.

## C.    Breach of Contract Claim

In PRMI's summary judgment motion, it urged the Court to dismiss Plaintiff's breach of contract claim as a matter of law. In response, ResCap argued that it was premature to dismiss the claim, but acknowledged that Plaintiff withdrew its contract claim in Wave One before the *HLC* trial. Previously, the Court had directed Plaintiff to update the Court, by the time of the pretrial hearing, as to whether it consents to the dismissal of its contract claim here. At the pretrial hearing, ResCap's counsel informed the Court that the parties were attempting to negotiate a stipulation "with the same terms" as the stipulation entered in *HLC*. (*See* [Doc. No. 4513].) That is, ResCap would withdraw its contract claim against PRMI "without prejudice to reassertion" if there is a reversal on appeal or reconsideration of one or both of the following issues decided by this Court in Wave One: (i) statute of limitations for loans sold before May 14, 2006, or (ii) Plaintiff's Breaching Loss Approach. Alternatively, ResCap seeks an order voluntarily dismissing this claim without prejudice.

Rejecting the *HLC* stipulation, PRMI continues to seek summary judgment for this claim. PRMI takes the position that ResCap is "collaterally estopped" from challenging both Wave One issues above because (1) a final judgment was entered in *HLC* and (2) ResCap did not raise both Wave One issues in this case. At the hearing, PRMI argued that it has not had a chance to respond to Plaintiff's Breaching Loss Approach in this action. Thus, PRMI asserts that ResCap should not be allowed to "revive" this theory of damages here.

At the pretrial hearing, the Court directed ResCap to respond to PRMI's arguments in writing. ResCap shall respond to PRMI's arguments within five days of this order. ResCap should address whether it seeks voluntary dismissal under Fed. R. Civ. P. 41(a) or leave to

amend its complaint under Fed. R. Civ. P. 15(a)(2). PRMI may submit a response to ResCap's arguments by the start of trial.

## VI. ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. ResCap's Motion in Limine No. 1 [Doc. No. 5364], to exclude certain arguments and evidence as cumulative, is **GRANTED in part and DENIED in part**.

2. ResCap's Motion in Limine No. 2 [Doc. No. 5366], to permit testimony by Plaintiff's corporate designee, is **DEFERRED**.

3. ResCap's Motion in Limine No. 3 [Doc. No. 5367], regarding previously decided issues, is **GRANTED in part, DENIED in part, DENIED AS MOOT in part, and DEFERRED in part**.

4. The issues raised in Plaintiff's January 21, 2020 Letter [Doc. No. 5380] are **ADDRESSED AS SET FORTH HEREIN**.

Dated: January 31, 2020      s/Susan Richard Nelson_____
               SUSAN RICHARD NELSON
               United States District Judge