# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| In Re: RFC and RESCAP Liquidating Trust Action | Case No. 13-cv-3451 (SRN/HB) |
| *This document relates to*: | **ORDER** |
| ResCap Liquidating Trust v. Primary Residential Mortgage, Inc., Case No. 16-cv-4070 (SRN/HB) | |

SUSAN RICHARD NELSON, United States District Judge

## I. INTRODUCTION

Before the Court is Plaintiff's ResCap Liquidating Trust ("ResCap") objections to Defendant's demonstrative aid, DDX-11, raised in ResCap's February 9, 2020 letter ("Pl.'s Obj.") [Doc. No. 5415], which the parties addressed at the 8:30 a.m. meeting before trial on February 11, 2020. Defendant Primary Residential Mortgage, Inc. ("PRMI") intends to use DDX-11 during the cross-examination of Plaintiff's re-underwriting expert, Steven Butler.[1]

After considering the parties' arguments at oral argument, the Court ruled from the bench. Specifically, the Court precluded PRMI from using DDX-11 as a demonstrative during Mr. Butler's cross-examination. The Court then stated it would follow its ruling with a written order. For the reasons set forth below, PRMI is precluded from using DDX-11 as a

---

[1] PRMI also submitted a letter [Doc. No. 5416] responding to Plaintiff's objections on February 9, 2020 ("Def.'s Resp.").

demonstrative aid and is inadmissible as an exhibit at trial. The Court assumes familiarity with the facts and procedural background of this litigation.

## II. DISCUSSION

RFC's Investor Repurchase Database ("Database") contains entries relating to nearly 10,000 loans that RFC received repurchase requests from investors under a variety of circumstances. PRMI alleges that DDX-11 sorts these 10,000 entries in the Database by using "objective criteria." (Def.'s Resp. at 3.) While both parties agree that Mr. Butler relies on documents from this Database to form his opinion on certain RFC trust-level representations, the parties dispute whether DDX-11 accurately summarizes the entries contained in the Database. Ultimately, DDX-11 depicts a chart with: (i) the alleged number of loans in the Database for which investors purportedly demanded repurchase based on allegations of fraud or misrepresentations, (ii) RFC's purported repurchase rate of those loans, and (iii) the alleged variance in repurchase rates between trusts that included a No Fraud Rep, a fraud disclaimer, or neither provision.

ResCap challenges DDX-11 on the grounds that the demonstrative in fact contains inaccurate results and moreover was prepared by PRMI using unreliable methodology, rendering it "unfairly prejudicial, confusing, misleading, and a waste of time." (Pl.'s Obj. at 3.) For example, ResCap points to at least four loans that suggest DDX-11 is inaccurate, resulting in highly misleading statements and conclusions in the chart. (*Id.* (finding that investors for these four loans "did not allege fraud or misrepresentation defects for any of these loans," contrary to the information in DDX-11).) ResCap further argues that DDX-11 is "especially problematic" for use with Mr. Butler, because this witness did not create this

demonstrative; defense counsel at Williams & Connolly prepared the demonstrative. (*Id*.) As an exhibit, ResCap argues that DDX-11 is inadmissible under Federal Rule of Evidence 1006 because PRMI cannot demonstrate that this chart fairly summarizes voluminous trial evidence or assist the factfinder, and the witness who prepared the chart is not subject to cross-examination to lay foundation. (*Id.* at 3–4.)

PRMI counters that, in ResCap's written interrogatory responses, ResCap directed PRMI to "rely" on the Database when seeking to evaluate the information Mr. Butler relied on. (Def.'s Resp. at 5.) Because of ResCap's written discovery response, PRMI argues that it identified loans from the Database using search terms that were "objective" and "conservative." (*Id.*) PRMI argues that any "error" identified above only reflects PRMI's "conservative" approach, and PRMI is "happy to remove those four entries from the demonstrative." (*Id.*) PRMI contends that the demonstrative "fairly summarizes" the content of the Database by applying "objective search terms and filters," and ResCap does not identify a relevant database entry that PRMI missed. (*Id.*) PRMI further argues that DDX-11 would plainly assist the factfinder given the difficulty of using the approximately 10,000 entries in the Database. (*Id.*) Finally, PRMI argues that it would be "unnecessary and inefficient to require a sponsoring witness" to testify about the creation of the document because the parties have already stipulated that the Database is authentic. (*Id.* at 5–6.) If the Court requires a sponsoring witness, however, PRMI is willing to make available the defense attorney who created the chart to testify at trial. (*Id.* at 6.)

The Court agrees with ResCap and precludes PRMI from introducing DDX-11 as either a non-admitted demonstrative aid or Rule 1006 exhibit. Demonstrative aids may only

be effective in illustrating relevant information to a factfinder when a proper foundation can be laid. *See, e.g.*, *Dahlberg v. MCT Transp., LLC*, 571 F App'x 641, 647 (10th Cir. 2014). In assessing foundation in this context, courts consider (among other things) whether the demonstrative exhibit "fairly and accurately summarize[s]" the underlying evidence. *Id*; *see also Valente v. Textron, Inc*., 931 F. Supp. 2d 409, 416-29 (E.D.N.Y. 2013) (holding that, even where expert witness created a demonstrative simulation, courts must "carefully examine such materials to insure their reliability and probative value.").

Additionally, under Federal Rule of Evidence 1006, a party may "use a summary chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in the court." Summary charts are only admissible if "(1) the charts fairly summarize voluminous trial evidence; (2) they assist the jury in understanding the testimony already introduced; and (3) the witness who prepared the charts is subject to cross-examination with all documents used to prepare the summary." *United States v. Needham*, 852 F.3d 830, 837 (8th Cir. 2017). Courts in this District have held that "parties may submit a summary of the contents of voluminous documents . . . *only if its proponent lays the adequate foundation and only if the person who prepared the summary is available for cross-examination.*" *In re Ceridian Corp. Sec. Litig.*, 504 F. Supp. 2d 603, 620 (D. Minn. 2007) (citations omitted) (emphasis added).

At the outset, the Court notes that the dispute here is *not* whether the Database itself is reliable or accurate; indeed, the parties have stipulated to the database's authenticity. Rather, the dispute here is whether DDX-11 accurately summarizes the Database's contents, and otherwise complies with the requirements of Rule 1006. The Court concludes that (1) DDX-

11 inaccurately summarizes the entries in the Database because the underlying methodology employed was unreliable; and (2) DDX-11 does not otherwise meet the requirements for admissibility under Rule 1006.

First, DDX-11 misidentifies four loans, at minimum, that were allegedly subject to repurchase demands based on investor "allegations of fraud or misrepresentation," when in fact, the loan files suggest otherwise. (Pl.'s Obj. at 3.) At oral argument, ResCap highlighted additional infirmities in the conclusions stated in the chart. For example, ResCap demonstrated that certain loan files in the Database contained "blank entries" that did not identify (i) the reason for the repurchase request; and/or (ii) RFC's response to the repurchase request. Thus, even assuming the search terms PRMI employed in the Database were "objective," (*see* DDX-11 at 2 n.5), the overall conclusions stated in DDX-11 are highly unreliable because certain loan entries in the Database did not capture such information. *See, e.g., SMD Software, Inc. v. EMove, Inc*. 945 F. Supp.2d 628, 637 (E.D.N.C. 2013) (excluding expert testimony and comparison chart when based upon "speculative assumptions not supported by the record.").

Moreover, the Court notes that PRMI could have designated either a fact witness or expert to lay the proper foundation for the underlying methodology used in generating DDX-11. PRMI chose to do neither. Indeed, the record reflects that the Database (and Mr. Butler's reliance on the Database) was disclosed by ResCap during discovery. PRMI replies, without citing any authority, that "specialized knowledge" is not required to assess the number of repurchase requests in the Database because ResCap identified this Database in its written interrogatory responses. This contention has no merit whatsoever. On its face, the

demonstrative aid unreliably assesses the loan entries in the Database. PRMI concedes that DDX-11 misidentifies, at minimum, four loans. PRMI cannot ignore available discovery tools for months and then, on the eve of trial, seek to use a demonstrative aid premised on an unreliable analysis of a Database that ResCap identified. The Court agrees with ResCap that PRMI improperly delayed in disclosing this information and is precluded from using this misleading demonstrative on cross-examination.

Second, PRMI's summary was not created by a witness being called at trial and subject to cross-examination, but rather an attorney working for the law firm representing PRMI. As the Eighth Circuit has noted, however, Rule 1006 requires a summary to "have been prepared by a witness available for cross-examination, *not by the lawyers trying the case.*" *United States v. Grajales-Montoya*, 117 F.3d 356, 361 (8th Cir. 1997). PRMI's offer to make available the attorney who created the summary for cross-examination does not cure this violation.

### III. CONCLUSION

In light of the foregoing, the Court sustains ResCap's objections to the use or admission of DDX-11.

**IT IS SO ORDERED.**

Dated: February 11, 2020    s/Susan Richard Nelson  
　　　　　　　　　　　　　　　　　　　　　　SUSAN RICHARD NELSON  
　　　　　　　　　　　　　　　　　　　　　　United States District Judge