# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| In Re: RFC and RESCAP Liquidating Trust Action<br><br>*This document relates to*:<br><br>ResCap Liquidating Trust v. Primary Residential Mortgage, Inc., Case No. 16-cv-4070 (SRN/HB) | Case No. 0:13-cv-3451 (SRN/HB)<br><br>**ORDER RE: VIDEOCONFERENCING OF REMAINING WITNESSES**<br><br>Redacted Version of Sealed Order at Doc. No. 5471, approved by the Court on 3/13/2020. |

SUSAN RICHARD NELSON, United States District Judge

This matter comes before the Court regarding a recent development involving the coronavirus, otherwise known as COVID-19.[1] Currently, Plaintiff ResCap Liquidating Trust ("ResCap") and Defendant Primary Residential Mortgage, Inc. ("PRMI") are engaged in a bench trial before the Court that began on February 10, 2020. (*See* Minute Entry [Doc. No. 5425].) The Court held trial on February 10, 11, 12, 13, 14, 18, 19, 20, and 21, as well as March 3 and 4, 2020. (*See* Minute Entries [Doc. Nos. 5425, 5429, 5432, 5433, 5434, 5446, 5447, 5450, 5451, 5464, 5465].) The trial is scheduled to resume on Thursday, March 12,

---

[1] The coronavirus (COVID-19) is a respiratory disease that was first detected in China but has now been identified in more than 100 locations internationally, including the United States. The "COVID-19" moniker is an abbreviation of the diseases name "coronavirus disease 2019." *See Coronavirus Disease 2019 (COVID-19) Situation Summary*, CDC (Mar. 9, 2020), https://www.cdc.gov/coronavirus/2019-ncov/summary.html.
 The Court takes judicial notice of the Centers for Disease Control and Prevention website. *See Missourians for Fiscal Accountability v. Klahr*, 830 F.3d 789, 793 (8th Cir. 2016) (citing *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 648 (7th Cir. 2011) for the authority of a court to take judicial notice of government websites).

2020, with closing arguments anticipated the following day. (*See* Minute Entry [Doc. No. 5465].) There are two PRMI witnesses remaining: Dr. Justin McCrary and James Crawford.

On March 10, 2020, the Court was informed of the following facts. Sometime prior to March 2, 2020, a Quinn Emanuel attorney in New York who is not a member of ResCap's trial team contracted COVID-19. (*See* Pl.'s March 10, 2020 Letter [Doc. No. 5467] at 1.) During the week of February 24, 2020, prior to any diagnosis of the infected attorney, ▮

▮

▮

▮

▮ This past weekend, Quinn Emanuel became aware that the infected attorney had been diagnosed with COVID-19. (Pl.'s March 10, 2020 Letter at 1.) ▮

▮

Out of an abundance of caution, Quinn Emanuel's New York office was temporarily closed after the infected attorney tested positive. (*Id.*)

Upon learning of the temporary closure of Quinn Emanuel's New York office, PRMI's counsel contacted counsel for ResCap, as well as PRMI's two remaining witnesses, Dr. McCrary and Mr. Crawford. (Def.'s March 10, 2020 Letter [Doc. No. 5468] at 1.) Dr. McCrary, who lives in New York, and Mr. Crawford, who lives in Utah, have requested that they not be ordered to travel to Minnesota to provide testimony on March 12. (*Id.* at 2.)

▮



ResCap proposes that trial continue as scheduled, with the Court and parties exploring safety measures by which the witnesses could testify in person, while reducing the risk of viral transmission. (Pl.'s March 10, 2020 Letter at 2.) Alternatively, ResCap proposes that Dr. McCrary, and Mr. Crawford, as necessary, participate by videoconference. (*Id.*) Doing so would allow trial to continue as scheduled, without requiring either witness to travel to Minnesota. (*Id.*)

PRMI's counsel, however, objects to the use of videoconferencing technology for this purpose. (Def.'s March 10, 2020 Letter at 2–3.) Counsel contends that presenting testimony in this fashion would be "patently unfair," given Dr. McCrary's "compelling interest in presenting his testimony in person, just as Plaintiff did with respect to its expert, Dr. Snow." (*Id.* at 2.) Counsel argues that Dr. McCrary would be hindered in his ability to clearly convey his testimony if he was required to do so via videoconference. (*Id.* at 2–3.) Counsel also

---

²     The CDC has indicated that the symptoms of a COVID-19 infection may appear anywhere from two to fourteen days after infection. *See Symptoms*, CDC (March 10, 2020), https://www.cdc.gov/coronavirus/2019-ncov/about/symptoms.html.

objects to any suggestion that PRMI submit Mr. Crawford's testimony by deposition. (*Id.* at 3.) Counsel contends that because it had planned to present Mr. Crawford's live testimony at trial, it had no reason to ask him questions on redirect during his deposition and did not do so. (*Id.*) Counsel argues that requiring PRMI to submit designations from its own witness, based on Plaintiff's questions, would be fundamentally unfair. (*Id.*)

PRMI therefore requests that the Court reschedule the final two days of trial for the first available dates amenable to the Court and the parties. (*Id.*) ResCap states that while it is sympathetic to the witnesses' concerns, reasonable arrangements can be made to avoid the prejudice of further delays in the trial schedule. (Pl.'s March 10, 2020 Letter at 3.)

Pursuant to Federal Rule of Civil Procedure 43(a), "[a]t trial, the witnesses' testimony must be taken in open court unless a federal statute, the Federal Rules of Evidence, these rules, or other rules adopted by the Supreme Court provide otherwise." However, the rule also provides that "[f]or good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location." Fed. R. Civ. P. 43(a). Accordingly, the decision to require testimony by videoconference falls within the Court's discretion. *See Thomas v. Anderson*, 912 F.3d 971, 977 (7th Cir. 2018) ("[U]nder Rule 43(a), the judge has discretion to allow live testimony by video for 'good cause in compelling circumstances and with appropriate safeguards.'"), *cert. denied*, ___ S. Ct. ___ (2019). Moreover, the Court's discretion on this question is supplemented by its "wide latitude in determining the manner in which evidence is to be presented" under the Federal Rules of Evidence. *Parkhurst v. Belt*, 567 F.3d 995, 1002 (8th Cir. 2009) (citing Fed. R. Evid. 611(a)).

4

Conducting a trial by videoconference is certainly not the same as conducting a trial where witnesses testify in the same room as the factfinder. *Thornton v. Snyder*, 428 F.3d 690, 697 (7th Cir. 2005), *cert. denied*, 547 U.S. 1192 (2006). Indeed, "[v]ideoconference proceedings have their shortcomings." *Id.* " '[V]irtual reality is rarely a substitute for actual presence and . . . even in an age of advancing technology, watching an event on the screen remains less than the complete equivalent of actually attending it.' " *Id.* (quoting *United States v. Lawrence*, 248 F.3d 300, 304 (4th Cir. 2001)). Certain features of testimony useful to evaluating credibility and persuasiveness, such as " '[t]he immediacy of a living person' " can be lost with video technology, and the " 'ability to observe demeanor, central to the fact-finding process, may be lessened[.]' " *Id.* (citations omitted). Accordingly, "remote transmission [of testimony] is to be the exception and not the rule." *Lopez v. NTI, LLC*, 748 F. Supp. 2d 471, 479 (D. Md. 2010).

Still, advances in technology minimize these concerns. The near-instantaneous transmission of video testimony through current technology permits "the jury [or, in a bench trial, the Court] to see the live witness along with his hesitation, his doubts, his variations of language, his confidence or precipitancy, [and] his calmness or consideration[.]" *In re Vioxx Prods. Litig.*, 439 F. Supp. 2d 640, 644 (E.D. La. 2006) (citations omitted) (cleaned up). Given the speed and clarity of modern videoconference technology, where good cause and compelling circumstances are shown, such testimony "satisfies the goals of live, in-person testimony and avoids the short-comings of deposition testimony." *Id.*

"Courts most frequently allow remote testimony in special circumstances, such as where a vital witness would be endangered or made uncomfortable by appearing in a

courtroom." *Eller v. Trans Union, LLC*, 739 F.3d 467, 478 (10th Cir. 2013) (citing *Parkhurst*, 567 F.3d at 997 (child victim of sexual abuse); *Jennings v. Bradley*, 419 Fed. App'x 594, 598 (6th Cir. 2011) (unpublished) (three witnesses posed security threats while fourth witness would be deprived of necessary mental health support if forced to testify in person)). Courts also occasionally permit the use of remote testimony in situations where a witness is located far from the site of the trial or hearing. *Id.* (collecting cases). The variations in the case law illustrate that the question of whether good cause and compelling circumstances exist such that remote testimony should be permitted is a case-specific question.

The Advisory Committee Notes to Rule 43(a) are instructive here. After observing the "good cause in compelling circumstances" requirement, the advisory committee notes that "[t]ransmission cannot be justified merely by showing that it is inconvenient for the witness to attend the trial." Fed. R. Civ. P. 43(a) advisory committee's note to 1996 amendment. Rather, "[t]he most persuasive showings of good cause and compelling circumstances are likely to arise when a witness is unable to attend trial for unexpected reasons, such as accident or illness, but remains able to testify from a different place." *Id.* Notably, the use of "[c]ontemporaneous transmission *may be better than an attempt to reschedule the trial*[.]" *Id.* (emphasis added).

Turning to the facts of this case, the Court finds that there is good cause and compelling circumstances that, with appropriate safeguards, justify the use of contemporaneous remote video testimony for both Dr. McCrary and Mr. Crawford, as opposed to postponing the trial any further. First, with respect to good cause, the occurrence of COVID-19—and its impact on the health and safety of the parties and witnesses—is undoubtably an "unexpected"

6

occurrence that nevertheless still permits witnesses "to testify from a different place." Fed. R. Civ. P. 43(a) advisory committee's note to 1996 amendment. The virus was detected in China only recently in December 2019, and in three months has spread around the world.[3] The International Health Regulations Emergency Committee of the World Health Organization has declared the virus outbreak a "public health emergency of international concern" and the United States Health and Human Services Secretary has declared the virus a "public health emergency."[4] Moreover, the severity of the illness is not yet fully understood.[5] And while the exact method by which the virus spreads is not known with certainty, the CDC has generally classified the virus as a "community spread" disease that "spread[s] easily and sustainably in the community[.]"[6] Under the circumstances, COVID-19's unexpected nature, rapid spread, and potential risk establish good cause for remote testimony. Indeed, one court faced with a request for a temporary restraining order addressing the movement of patients infected with COVID-19 considered the virus to pose a "threat of an immediate and irreparable injury." *City of Costa Mesa v. United States*, No. 8:20-cv-00368-JLS (JDE), 2020 WL 882000, at *1 (C.D. Cal. Feb. 21, 2020). Several courts have announced COVID-19-related restrictions on in-person appearances.[7] And, of particular

---

[3] *See* Coronavirus Disease 2019, *supra* n.1
[4] *Id.*
[5] *Id.*
[6] *See How COVID-19 Spreads*, CDC (Mar. 10, 2020), https://www.cdc.gov/coronavirus/2019-ncov/about/transmission.html.
[7] *See* United States Courts for the Ninth Circuit, March 9, 2020 Announcements, https://www.ca9.uscourts.gov/content/view.php?pk_id=0000001034; *see also* United States District Court for the Eastern District of Texas, Marshall Division, Standing Order Regarding the Novel Coronavirus (COVID-19) (providing guidance and directing parties to "meet and

concern here, the virus has been positively identified near—though not directly in contact with—████████████████████████████████████████. (*See* Pl.'s March 10, 2020 Letter at 1.)

Compelling circumstances also exist for the witnesses in this case. As PRMI notes in its letter, Dr. McCrary, who lives in New York, and Mr. Crawford, who lives in Utah, have requested that they not be ordered to travel to Minnesota to provide testimony on March 12 in light of the COVID-19 virus. (Def.'s March 10, 2020 Letter [Doc. No. 5468] at 2.) ██

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████

██████████████ The Court is very sympathetic to these concerns, particularly in light of the many unknowns inherent in a virus outbreak. While the Court is unaware of a case fitting these exact circumstances, remote testimony is most often permitted "in special circumstances, such as where a vital witness would be endangered or made uncomfortable by appearing in a courtroom." *Eller*, 739 F.3d at 478. The desire to avoid potentially infecting family members with a disease whose risk factors, transmission vectors, and characteristics are not entirely understood certainly falls within that category, particularly where the witnesses at issue remain "able to testify from a different place" that does not present the risk

---

confer regarding the appropriate means to conduct [impacted] … trial[s]" and to "consider, among other things … [w]hether video conferencing would be appropriate and effective").

or discomfort avoided by requiring live testimony.  Fed. R. Civ. P. 43(a) advisory committee's note to 1996 amendment.

The Court is also confident that "appropriate safeguards" designed to "ensure accurate identification of the witness and that protect against influence by persons present with the witness" can be established through videoconference testimony.  *Id.*  Moreover, the Court is certain that "[a]ccurate transmission" of the contents of the witnesses' testimony will occur.  *Id.*  Finally, the Court is unpersuaded by defense counsel's assertions that "[r]equiring testimony by videoconference" from Dr. McCrary would "severely hinder [his] ability to convey his testimony (which concerns complicated subject matters) in a clear and comprehensible manner to the Court."  (Def.'s Mar. 10, 2020 Letter at 2–3.)  If this were a jury trial, the Court's concerns about clarity would perhaps be heightened.  However, as this is a bench trial, the Court is confident it will adequately understand Dr. McCrary's testimony, even through videoconference technology.  In any event, any issues with clarity can be addressed during testimony.  *See* Fed. R. Evid. 614(b) (permitting the Court to examine a witness regardless of who calls the witness).

Finally, the Court holds that the use of "[c]ontemporaneous transmission" for remote testimony is absolutely preferable over "an attempt to reschedule the trial[.]"  Fed. R. Civ. P. 43(a) advisory committee's note to 1996 amendment.  This trial has been spread out over nearly a month and a half, and it is unclear precisely when the Court could schedule additional trial days in the near future.  The next two consecutive open days in the Court's schedule, which are in late April 2020, are being held open in light of a *pro se* criminal jury trial that may carry over from the preceding week.  In addition, the prospect of a delay until late April

9

would prejudice Plaintiff, as it would give PRMI an additional seven to eight weeks to prepare their damages expert. Moreover, the COVID-19 outbreak itself presents further complications, as postponing the trial for any length of time could merely postpone the possibility of infection at a later date, which itself might require additional delays. Given the availability of contemporaneous videoconference technology for receiving the testimony of both Dr. McCrary and Mr. Crawford, such a lengthy delay is untenable. The use of videoconference technology in this case balances the witnesses' valid concerns about safety with the need for expeditious trial proceedings.

Accordingly, the Court denies PRMI's request to reschedule the final two days of trial. Instead, the Court will preside over the final two days of trial by videoconference. The Court is advised by IT staff in this District that the most reliable, secure video link may be obtained at other federal courthouses. The parties are therefore directed to conduct their direct and cross examinations on Thursday and Friday, March 12 and 13 respectively, from a local federal courthouse of their choice. By 11:00 a.m., Eastern Time, tomorrow, Wednesday, March 11, 2020, they shall identify the courthouse and the lead IT videoconferencing person from each courthouse so that our IT videoconferencing staff can communicate with them promptly. The videoconference link will allow all three locations to be seen on a split screen, simultaneously.

**IT IS SO ORDERED.**

Dated: March 10, 2020                          s/Susan Richard Nelson
                                                                                 SUSAN RICHARD NELSON
                                                                                  United States District Judge